UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICIA CUMMINGS,

                Plaintiff,

       - against -

THE CITY OF NEW YORK, *et al*.,

           Defendants.

Index No.: 19-CV-1664-SJF

**DEFENDANTS ANDRE PERRY AND HECHINGER INSTITUTE'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................... 1

RELEVANT FACTS FROM THE COMPLAINT........................................................ 3

    A.    The Hechinger Defendants ............................................................... 3

    B.    The Daily News Published A Widely-Reported Cover Story About Cummings ....... 4

    C.    Dr. Perry's Column on Race in Education.................................................. 5

    D.    This Litigation............................................................................... 6

ARGUMENT .................................................................................................. 7

    I.    APPLICABLE LEGAL STANDARDS ................................................... 7

    II.    THE DEFAMATION CLAIM SHOULD BE DISMISSED ........................... 8

        A.    Cummings Has Failed to Allege Facts Sufficient to Show that the Hechinger Defendants Acted in a Grossly Irresponsible Manner ................... 8

        B.    The Statements at Issue Are Non-Actionable Opinion................................. 12

    III.    THE NEGLIGENCE AND EMOTIONAL DISTRESS CLAIMS SHOULD BE DISMISSED...................................................... 15

        A.    The Negligence and Emotional Distress Claims Should Be Dismissed Because They Arise from the Same Facts as the Defamation Claim............................................................................ 15

        B.    The Complaint Fails to State a Claim for Negligence, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress ........................................................................ 17

CONCLUSION................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................7

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................................................7

*Brian v. Richardson,*
  87 N.Y.2d 46 (1995)..................................................................................................13

*Biro v. Conde Nast,*
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)......................................................................11

*Bryks v. Canadian Broadcasting Corp.,*
  928 F. Supp. 381 (S.D.N.Y. 1996) ..........................................................................12

*Butler v. Delaware Otsego Corp.,*
  203 A.D.2d 783 (3d Dep't 1994) ..............................................................................16

*Cabello-Rondón v. Dow Jones & Co.,*
  16-CV-3346, 2017 U.S. Dist. LEXIS 131114
  (S.D.N.Y. Aug. 16, 2017) ...........................................................................................9

*Catalanello v. Kramer,*
  18 F. Supp. 3d 504 (S.D.N.Y. 2014)........................................................................15

*Celle v. Filipino Reporter Enterprises Inc.,*
  209 F.3d 163 (2d Cir. 2000)......................................................................................12

*Chaiken v. VV Publ'g Corp.,*
  119 F.3d 1018 (2d Cir. 1997)....................................................................................16

*Chapadeau v. Utica Observer-Dispatch, Inc.,*
  38 N.Y.2d 196 (1975)..............................................................................................8, 9

*Chau v. Lewis,*
  771 F.3d 118 (2d Cir. 2014)......................................................................................12

*Colon v. City of Rochester,*
  307 A.D.2d 742 (4th Dep't 2003).............................................................................16

*Deronette v. City of NY,*
  05-CV-5275, 2007 U.S. Dist. LEXIS 21766
  (E.D.N.Y. Mar. 27, 2007) .........................................................................................17

*Dillon v. City of NY*,
261 A.D.2d 34 (1st Dep't 1999) ...........................................................18

*Doe v. White Plains Hosp. Med. Ctr.*,
10-CV-5405, 2011 U.S. Dist. LEXIS 76076
(S.D.N.Y. July 8, 2011) ...............................................................12, 16

*Duane Reade Inc. v. Local 338*,
6 Misc. 3d 790 (Sup. Ct., N.Y. County 2004) ............................9, 11, 12

*EEOC v. Die Fliedermaus, L.L.C.*,
77 F Supp. 2d 460 (S.D.N.Y. 1999)...................................................17

*Fabry v. Meridian VAT Reclaim Inc.*,
99-CV-5149, 2000 U.S. Dist. LEXIS 15092
(S.D.N.Y. Oct. 10, 2000) ...................................................................11

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974)...........................................................................8

*Immuno AG. v. Moor–Jankowski*,
77 N.Y.2d 235 (1991) .......................................................................12

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998)...................................9, 12, 13

*Jimenez v. United Fed'n of Teachers*,
239 A.D.2d 265 (1st Dep't 1997) .......................................................8

*Karaduman v. Newsday*,
51 N.Y.2d 531 (1980) .........................................................................9

*Konikoff v Prudential Ins. Co. of Am.*,
234 F.3d 92 (2d Cir. 2000)...............................................................8

*Lorain Journal Co. v. Milkovich*,
474 U.S. 953 (1985) ...........................................................................8

*Lerman v. Chickleberry Publ'g Inc.*,
521 F. Supp. 228 (S.D.N.Y. 1981) .....................................................9

*Macineirghe v. Cnty. of Suffolk*,
13-CV-1512, 2015 U.S. Dist. LEXIS 94635
(E.D.N.Y. July 21, 2015) ...................................................................18

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964) ...........................................................................8

*Papasan v. Allain*,
    478 U.S. 265 (1986) ....................................................................................7

*Ratajack v. Brester Fire Dep't, Inc*.,
    178 F. Supp. 3d 118 (S.D.N.Y. 2016) ...............................................14, 15

*Rivera v. NYP Holdings, Inc*.,
    114858/2006, 2007 N.Y. Misc. LEXIS 5684
    (Sup. Ct., N.Y. County Aug. 2, 2007) ..............................................11, 12

*Rivers v. Towers, Perrin, Forster & Crosby, Inc.*,
    07-CV-5441, 2009 U.S. Dist. LEXIS 26301
    (E.D.N.Y. Mar. 27, 2009) ..................................................................16, 18

*Russell v. Davies*,
    97 A.D.3d 649 (2d Dep't 2012) ............................................................14

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (2d Dep't 2015) ......................................................14, 15

*Steinhilber v. Alphonse*,
    68 N.Y.2d 283 (1986) ..........................................................................12

*Thomas v. City of NY*,
    17-CV-06079, 2018 U.S. Dist. LEXIS 189305
    (E.D.N.Y. Nov. 5, 2018) ....................................................................16, 17

*Trachtenberg v. FailedMessiah.com*,
    43 F. Supp. 3d 198 (E.D.N.Y. 2014) ......................................................18

*Visentin v. Haldane Cent. Sch. Dist*.,
    4 Misc. 3d 918 (Sup. Ct., Putnam County 2004) ....................................8

**Statutes and Rules**

Fed. R. Civ. P. 8 ......................................................................................7

Fed. R. Civ. P. 12(b)(6) ............................................................................7

Defendants Hechinger Institute on Education and the Media, an institute of Teachers College, Columbia University (the "Hechinger Institute"), and Dr. Andre Perry ("Dr. Perry," collectively, the "Hechinger Defendants"), submit this memorandum of law in support of their motion to dismiss the Complaint in its entirety.

## PRELIMINARY STATEMENT

It is a well-settled legal maxim in New York law that a defendant who repeats statements that were originally published in a reputable media outlet cannot be held liable for defamation unless the defendant knew or should have known those statements were untrue.  Here, Dr. Perry merely relied on statements published in the Daily News to provide context for his broader academic column on race and education.  The Complaint does not contain any allegations upon which it could be plausibly found that Dr. Perry knew or should have known that these statements made in the Daily News cover story at issue were false.  As a result, and for the other reasons discussed herein, the Complaint should be dismissed in its entirety.

*        *        *

Dr. Perry is a professor and thought-leader in the field of education, and a fellow at the non-partisan Brookings Institution.  Dr. Perry publishes a weekly column on the Hechinger Report, which is an academic blogging platform for the Hechinger Institute at Columbia University.  On February 6, 2019, Dr. Perry published a column on the Hechinger Report that offered several insights into contemporary education in America in the historical lens of slavery and racism in the United States.  To provide context for the academic discussion in his column, Dr. Perry referenced several recent events in the media, including a video from a high school classroom in Pittsburgh, a 2013 incident in a Manhattan public school, and a reported incident in a Bronx middle school involving the plaintiff, Cummings.

The references to Cummings were explicitly and exclusively based on the reporting by the New York Daily News (the "Daily News"). In fact, according to the Complaint, the Daily News had run several stories about Cummings prior to Mr. Perry's column, including a story with three experienced reporters on the byline and a cover story. The Daily News reported that Cummings, a middle school teacher, made three black students lay on the ground while teaching about slavery. According to the article, Cummings then stepped on at least one student's back and said, "see how it feels to be a slave?" After the story about Cummings appeared on the cover of the Daily News, it was reported widely in the media and entered the public consciousness in New York. Dr. Perry did not offer any reporting on Cummings in particular, and only made passing reference to the facts as outlined in the Daily News article. Dr. Perry's article does not include photographs of Cummings or sensational language. In fact, Dr. Perry's column largely was not about Cummings. Instead, Dr. Perry simply used the widely reported and discussed story to provide context for his larger academic discussion of addressing race in the classroom.

The Hechinger Defendants are permitted to rely on the reporting conducted by the Daily News. The law does not require every person that comments on a news story to conduct an independent investigation to confirm the veracity of the reporting. Instead, the law allows these persons to rely on the reporting of the original publisher so long as doing so would not be grossly irresponsible – *i.e.*, it is not shown that the defendant knew or should have known that the original reporting was not accurate. Cummings has not pled any facts to suggest that the Hechinger Defendants knew or should have known that the Daily News' reporting was inaccurate, warranting dismissal.

Moreover, the Hechinger Defendants did not purport to publish any new facts or news about Cummings.  Instead, Dr. Perry simply used the previous reporting about Cummings in a broader academic column about addressing race in education.  Dr. Perry's column, when read in context, is clearly understood by its intended audience as his opinion and an academic's ruminations on race in the classroom.  Thus, dismissal is also proper because Dr. Perry's article consists of his opinions – not statements of fact that are actionable on a defamation claim.

Finally, Cummings' emotional distress and negligence claims should be dismissed because they are merely duplicative of her defamation claim and rely on the same set of facts. Cummings has also failed to plead the elements of these additional tort claims. Therefore, the Hechinger Defendants respectfully request that this Court dismiss the Complaint in its entirety.

## RELEVANT FACTS FROM THE COMPLAINT[1]

### A.    The Hechinger Defendants

Dr. Perry is a "leader, author and advisor to people working to improve education in K-12 and postsecondary institutions. He is the David M. Rubenstein Fellow in the Metropolitan Policy Program at the Brookings Institution, and his research focuses on race and structural inequality, education, and economic inclusion."  Compl. ¶ 28.  "Prior to his work at the Brookings Institution, Dr. Perry has been a founding dean, professor, award-winning journalist, and activist in the field of education."  Compl. ¶ 29.  "Since 2013, Dr. Perry's column on educational equity has appeared in the Hechinger Report, a nonprofit news organization focused on producing in-depth education journalism. Dr. Perry also contributes to TheRoot.com and the Washington Post. His views, opinions and educational leadership have been featured on CNN,

---

[1]    Solely for the purposes of this Motion, Defendants accept the statements found in the Complaint as true.

PBS, National Public Radio, The New Republic and NBC. Dr. Perry's academic writings have concentrated on race, structural inequality, and urban schools."  Compl. ¶ 31.

The Hechinger Institute, part of Teachers College, Columbia University, provides nonpartisan, in-depth writings that focus "on inequality and innovation in education."  Compl. ¶ 32.

Cummings was a teacher at a public middle school in the Bronx.  Compl. ¶ 16.

**B.**     **The Daily News Published A Widely-Reported Cover Story About Cummings**

Ben Chapman ("Chapman") is an award-winning reporter employed by the Daily News. Compl. ¶ 23, Ex. B.  Mr. Chapman covers education in New York City and has written more than 2,000 articles about New York City schools for the Daily News since joining the newspaper in 2009.  *Id.*  The Daily News is a print and online newspaper with a daily circulation of hundreds of thousands of readers.  Compl. ¶ 26.  The Daily News is one of the world's leading news outlets.  Compl. ¶ 129.

On February 1, 2019, the Daily News first published the online article, which documented Cummings's mistreatment of students in her middle school social studies class. Compl., Ex. B.  This article then ran as the cover story in the Daily News on February 2, 2019.  . Compl. Ex. A.  The Daily News article ran with three journalists on the byline, including Mr. Chapman.  Compl., Ex. B.  The article stated that Cummings "shocked and traumatized children in her social studies classes when she singled out black students and told them to lie on the floor for a lesson on U.S. slavery — and then stepped on their backs to show them what slavery felt like, students and a staffer said."  Compl., Ex. B.

One of Cummings's students reported that Cummings "picked three of the black kids, and instructed them to get on the floor in front of the class. 'She said, 'You see how it was to be a slave?' She said, 'How does it feel?'"  Compl., Ex. B.  The article reported that Cummings

4

stepped on the back of one black student and said "How does it feel? . . See how it feels to be a slave?"  Compl., Ex. B.  The article also quoted an Education Department spokesperson who stated that an investigation into Cummings had begun.  Compl., Ex. B.

After this story ran in the Daily News, it was "promulgated and promoted" by "[p]oliticians, parents, students, investigators, the Department of Education, irresponsible media, and school officials."  Compl. ¶ 119.

### C.      Dr. Perry's Column on Race in Education

It was only after this story was widely reported that Dr. Perry published his column in the Hechinger Report on February 6, 2018, titled "Teachers, how does it feel to be oppressors?"  Compl. ¶ 117.  In his column, Dr. Perry used this recent Daily News story as a jumping off point to provide his views on race in education more generally.  Rochford Decl., Ex. A.[2]

The column provides Dr. Perry's view that black students are often subject to humiliation and are unfairly punished at disproportionate rates.  Dr. Perry suggests that teachers use narratives written by slaves in order to teach about slavery from the perspective of slaves and properly educate their students on the horrors of slavery.  Dr. Perry suggests that colleges of education should do more to address the psychological bases of racism in students.  Dr. Perry then shares his view that racism is borne out of a desire to control and that current trends in education continue to favor control over black students.  Finally, Dr. Perry shares his opinion that teachers can uproot racism in the classroom by "educating themselves about culturally responsive teaching; establishing deeper connections with their students; asking students and families what they want to learn; and not making white norms the standard."  Rochford Decl., Ex. A.

---

[2]    Dr. Perry's column is incorporated into the Complaint by reference at ¶ 119 n. 9.

Dr. Perry's column spans 15 paragraphs and more than 1,000 words. Rochford Decl., Ex. A. Only one paragraph and less than 100 of those words refer to the Daily News article and the facts alleged to have occurred in Cummings's classroom. Dr. Perry's column explicitly notes that his source for the allegations against Cummings is the Daily News: "The New York Daily News reported on February 1 – the start of Black History Month – that a teacher in a majority-minority school in the Bronx, NY, instructed three black children in her seventh-grade class to lie on the floor during a lesson on slavery." Compl. ¶ 119 n. 9.

### D.  **This Litigation**

Cummings commenced this action by Summons with Notice in the Supreme Court of the State of New York, Suffolk County, on January 10, 2019. The action was timely removed to this Court and Cummings filed the Complaint on May 17, 2019. (Doc. No. 13). The Complaint asserts a claim for defamation against the Hechinger Defendants arising from five statements contained in Dr. Perry's column. Based on the same underlying facts as the defamation claim, the Complaint also asserts claims for intentional and negligent infliction of emotional distress and negligence against the Hechinger Defendants.

Against this backdrop, the Hechinger Defendants move to dismiss each of Cummings's claims.[3]

---

[3]  To the extent other defendants move to dismiss the Complaint and arguments offered by those defendants apply equally to the Hechinger Defendants, the Hechinger Defendants respectfully request that the Court consider those arguments as well to the extent they are relevant to any or all of the claims against the Hechinger Defendants.

# ARGUMENT

## I.

## APPLICABLE LEGAL STANDARDS

To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a plaintiff must demonstrate grounds for relief beyond mere "labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must set forth "[f]actual allegations [that are] . . . enough to raise a right to relief above the speculative level." *Id.* Otherwise, "a plaintiff with 'a largely groundless claim' [could] . . . 'take up the time of a number of other people with the right to do so representing an *in terrorem* increment of the settlement value.'" *Id.* at 558 (internal citations omitted).

While well-pled factual allegations of a complaint are to be accepted as true for purposes of a Rule 12(b)(6) motion, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted) (alteration in original) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). When the facts are equally consistent with non-liability, the plaintiff fails to state a claim. *See Twombly*, 550 U.S. at 570.

Additionally, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must do more than present a "conceivable" claim -- it must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (emphasis added); *see also Iqbal*, 556 U.S. at 697.

## II.

## THE DEFAMATION CLAIM SHOULD BE DISMISSED

Cummings's defamation claim against the Hechinger Defendants should be dismissed on two independently sufficient grounds: (i) Cummings has failed to plead facts to plausibly show that the Hechinger Defendants acted in a grossly irresponsible manner; and (ii) the statements at issue are unactionable statements of opinion.

### A.   *Cummings Has Failed to Allege Facts Sufficient to Show that the Hechinger Defendants Acted in a Grossly Irresponsible Manner*

Cummings's conclusory pleading with respect to the Hechinger Defendants fails to show that they acted in a grossly irresponsible manner as required by New York law.    In *New York Times Co. v. Sullivan*, the Supreme Court held that for a public official to maintain a suit for defamation, the public official must demonstrate that the defendant acted with actual malice. 376 U.S. 254 (1964).  With respect to non-public (private) plaintiffs, the Supreme Court held that the States may determine the proper standard for liability.[4]  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

In *Chapadeau*, the New York Court of Appeals set the standard for defamation claims by private plaintiffs.  The holding in *Chapadeau* requires the plaintiff to demonstrate that "the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975); *see also Konikoff v*

---

[4]   Cummings alleges that she is a private figure, but whether a public school teacher is a public official/figure or a private figure is not settled law.  *See, e.g., Lorain Journal Co. v. Milkovich*, 474 U.S. 953, 958 (1985) (Brennan, J., dissenting) ("[T]he status of a public school teacher as a 'public official' for purposes of applying the *New York Times* rule follows *a fortiori* from the reasoning of the Court in *Rosenblatt*."); *Jimenez v. United Fed'n of Teachers*, 239 A.D.2d 265 (1st Dep't 1997) (a public school principal is a public official); *but see Visentin v. Haldane Cent. Sch. Dist.*, 4 Misc. 3d 918, 920 (Sup. Ct., Putnam County 2004).  If Cummings is a public official/figure, then she must plead that the Hechinger Defendants acted with actual malice, which she has also failed to do.

*Prudential Ins. Co. of Am*., 234 F.3d 92, 101 (2d Cir. 2000) (discussing and applying the *Chapadeau* standard).

In *Karaduman v. Newsday*, the New York Court of Appeals, expanding on *Chapadeau*, held that the republication of statements is only actionable if the defendant-republisher acted in a "grossly irresponsible" manner in relation to the republication.  51 N.Y.2d 531, 539 (1980).  Thus, pursuant to *Karaduman,* any irresponsibility on behalf of the original publisher does not flow through to the republisher.  Instead, "[u]nder New York law, a republisher of factual statements may rely on the research of the original publisher so long as the defendant was not grossly irresponsible."  *Duane Reade Inc. v. Local 338*, 6 Misc. 3d 790, 794 (Sup. Ct., N.Y. County 2004).

Courts interpreting the holding in *Karaduman* have held that a republisher can only be said to have acted in a grossly irresponsible manner if the republisher "had, or should have had, substantial reasons to question the accuracy of the articles or the bona fides of (the) reporter." *See Lerman v. Chickleberry Publ'g Inc*., 521 F. Supp. 228, 235 (S.D.N.Y. 1981) (citing *Karaduman*, 51 N.Y.2d at 550); *see also Cabello-Rondón v. Dow Jones & Co*., 16-CV-3346, 2017 U.S. Dist. LEXIS 131114, at *27-28 (S.D.N.Y. Aug. 16, 2017) ("[R]epublishers are entitled to rely upon the research of the original publisher, absent a showing that the republisher had, or should have had, substantial reasons to question the accuracy of the articles or the bona fides of [the] reporter." (alterations in original)); *see also Jewell v. NYP Holdings, Inc*., 23 F. Supp. 2d 348, 371 (S.D.N.Y. 1998) ("New York recognizes a general republication defense applicable to anyone who republishes material from any source, provided that there was no substantial reason to question the accuracy of the material or the reputation of the reporter.").

The standard set forth by *Karaduman* and its progeny is sometimes referred to in the case law as the "republisher privilege."

Thus, for Cummings's defamation claim to survive this motion to dismiss, the Complaint must allege facts that demonstrate plausibly on their face that the Hechinger Defendants "had, or should have had, substantial reasons to question the accuracy of" the Daily News articles "or the bona fides" of the three reporters listed on the byline. The Complaint wholly fails to meet this burden.

The Complaint alleges that the facts relating to Cummings's alleged treatment of her students first appeared in the Daily News article published on February 1, 2019, which was attributed to three reporters. Compl., Ex. B. This article then appeared in a cover story in the Daily News on February 2, 2019. Compl. Ex. A. According to the Complaint, the February 1 article referred to Ben Chapman, one of the reporters, as "an award-winning reporter who covers education for the New York Daily News" and "has written more than 2,000 articles about New York City schools for the Daily News since joining the paper in 2009." Compl., Ex. B. In addition to the Daily News, Cummings states that the story about her has been "promulgated and promoted" by "[p]oliticians, parents, students, investigators, the Department of Education, irresponsible media, and school officials." Compl. ¶ 119.

It was only after this story was widely reported that Dr. Perry published his column in the Hechinger Report on February 6, 2018. Compl. ¶ 117. Indeed, Dr. Perry's column explicitly notes that his sole source was the Daily News. Compl. ¶ 119 n. 9.

The Complaint is completely devoid of factual pleading that sets forth a plausible reason that the Hechinger Defendants had or should have had substantial reasons to question the accuracy of the reporting in the Daily News or the bona fides of the award-winning reporter who

wrote the article.  Indeed, a central premise of the Complaint is that the Daily News, "one of the World's leading news outlets," and Mr. Chapman knew the allegations that they were publishing were unverified, but that they did not notify the public of this fact.  Compl. ¶ 129.  The Complaint does not point to any fact known by Dr. Perry or the Hechinger Report on February 6, 2018, that would have caused them to doubt the accuracy of this widely-reported story.

The case law makes clear that the Hechinger Defendants appropriately relied on the reporting in a respected newspaper, such as the Daily News.  For example, in *Duane Reade*, a New York court found that reliance on an article in the New York Post was not grossly irresponsible, because "relying on a long-running New York City daily newspaper . . . is clearly not grossly irresponsible."  6 Misc. 3d at 794; *see also Rivera v. NYP Holdings, Inc*., 114858/2006, 2007 N.Y. Misc. LEXIS 5684, at * (Sup. Ct., N.Y. County Aug. 2, 2007) (dismissing defamation claim where the defendant merely republished statements that were previously made in the New York Post).

Similarly, in *Biro*, the Court dismissed claims against several defendants who merely republished statements that originally appeared in the *New Yorker* magazine, because the plaintiff failed to plead actual factual allegations that the republishers had "serious doubts as to the truth of [the] publication" in the *New Yorker*.  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 281 (S.D.N.Y. 2013).

Because Cummings has failed to plead facts to plausibly demonstrate that the Hechinger Defendants knew or should have known that the Daily News cover story was inaccurate, the defamation claim must be dismissed.  *See, e.g., Fabry v. Meridian VAT Reclaim Inc.*, 99-CV-5149, 2000 U.S. Dist. LEXIS 15092, at *3 (S.D.N.Y. Oct. 10, 2000) (defamation claim dismissed based on holding "that the statements were qualifiedly privileged because under New

11

York State law, Meridian may reasonably rely on the accuracy of a reputable newspaper when republishing its statements absent 'substantial reasons' to doubt the statements' veracity"); *Bryks v. Canadian Broadcasting Corp.*, 928 F. Supp. 381, 382 (S.D.N.Y. 1996) (defamation claim against CNN dismissed where CNN relied on reporting by the Canadian Broadcasting Channel); *Duane Reade Inc.*, 6 Misc. 3d at 794; *Rivera*, 2007 N.Y. Misc. LEXIS 5684.

**B.     *The Statements at Issue Are Non-Actionable Opinion***

Even if Cummings did properly allege that the Hechinger Defendants acted in a grossly irresponsible manner – which she did not – her defamation claim still fails because none of the allegedly defamatory statements asserted by Cummings are actionable.  Each of the statements Cummings claims is defamatory is actually a statement of opinion that is constitutionally protected speech.  "In determining whether a statement can reasonably constitute defamation, the threshold issue which must be determined, as a matter of law, is whether the complained of statements constitute fact or opinion."  *Doe v. White Plains Hosp. Med. Ctr.*, 10-CV-5405, 2011 U.S. Dist. LEXIS 76076, at *17 (S.D.N.Y. July 8, 2011).  "Only factual statements are actionable as defamation because "New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"  *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) (citing *Immuno AG. v. Moor–Jankowski*, 77 N.Y.2d 235, 252 (1991); *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289 (1986)).  "Unlike the Federal Constitution, the New York Constitution provides for absolute protection of opinions."  *Celle v. Filipino Reporter Enterprises Inc*., 209 F.3d 163, 178 (2d Cir. 2000). "The New York Court of Appeals has repeatedly held that the New York Constitution provides greater protection than the United States Constitution and, accordingly, that the inquiry under the two constitutional regimes is different."  *Jewell*, 23 F. Supp. 2d at 375.

The determination of whether a statement is actionable on a claim for defamation is a two-step inquiry: First, the Court must determine whether the statements at issue are statements

of opinion.  Second, the Court must determine whether those statements are based upon disclosed or undisclosed facts.  *Jewell*, 23 F. Supp. 2d at 376.  If the statements at issue are opinion and based on disclosed facts, then no defamation claim may be based on those statements.

In determining whether the statements at issue are opinion, the Court should consider the following factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood;
>
> (2) whether the statements are capable of being proven true or false; and
>
> (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995).

The Complaint asserts that five statements in Dr. Perry's column are defamatory:

- "A teacher literally stepped on children to 'teach' them about slavery."

- "Cummings' slavery lesson wasn't only cruel; it was redundant."

- "Black students know too well what it's like to be humiliated, held in captivity and to suffer from inhumane conditions created by educators.  Many compliant students who sit quietly accepting demeaning lessons like the ones administered by Cummings and others like her are viewed as obedient and law-abiding.  Their counterparts who resist are deemed disorderly and subjected to harsh disciplinary policies, often ending up in jail by way of the school-to-prison pipeline.  Whether you are obedient or "woke" -- conscious of your oppression -- you are being oppressed in schools.  Yep, black students already know what it's like to be stepped on."

- "There are white teachers like Cummings who have not reckoned with what it means to oppress."

–  "While most teachers probably won't see themselves in either Black or
Cummings, most should recognize that they associate with white norms, which
makes it possible to act in racist ways..."

Compl. ¶ 117.

Dr. Perry's column makes clear that he is providing his own ruminations on education

and race and not offering any factual statements with respect to Cummings.  Dr. Perry's column

is directed to educational academia and is understood to be his opinion.  Indeed, the Complaint

acknowledges that Dr. Perry offers his "views, opinions and educational leadership. . . ."  Compl.

¶ 31.  The specific statements addressed in the Complaint are not provably true or false (with the

exception of the first statement), but instead are Dr. Perry's views on education and race based

on his expertise in the field.

Moreover, statements concerning whether the author believes an individual to be racist

have consistently been found to be nonactionable opinion.  *See Ratajack v. Brester Fire Dep't,*

*Inc.*, 178 F. Supp. 3d 118 (S.D.N.Y. 2016).  For example, in *Silverman v. Daily News, L.P.,*

certain "Daily News articles questioned whether the plaintiff should be overseeing a school with

a large minority population in light of his controversial writings," which the Daily News deemed

"racist writings."   129 A.D.3d 1054, 1055 (2d Dep't 2015).  The Second Department found that

these writings were opinion, because "the context of the complained-of statements was such that

a reasonable reader would have concluded that he or she was reading opinions, and not facts."

*Id.*; *see also Russell v. Davies*, 97 A.D.3d 649, 651 (2d Dep't 2012) (dismissing defamation

action arising out of statements that plaintiff was racist and anti-Semitic, because those

statements are opinion).

In *Ratajack*, the Court found that the statements at issue were opinion when read in

context, because the defendant was "not asserting new facts against Plaintiff, but is expounding

upon the corollaries of the purported facts that he has presented."  See *Ratajack*, 178 F. Supp. 3d at 165.  Here, similarly, Dr. Perry is not asserting any new facts against Cummings and it is clear that Dr. Perry's statements are his opinions about the current educational system and racism at large.

The second step in the inquiry also leads to the conclusion that the statements complained of are merely unactionable opinion, because Dr. Perry clearly discloses the facts underlying his limited references to Cummings.  In fact, Dr. Perry's column begins by explicitly referencing the February 1 Daily News article.  Because Dr. Perry fully disclosed that his reference to Cummings is based on the Daily News article, these statements are unactionable statements of opinion.  *See Silverman,* 129 A.D.3d at 1055 ("[T]he statements of opinion are nonactionable on the additional basis that there was full disclosure of the facts supporting the opinions.").

Accordingly, the Complaint should be dismissed, because Cummings's defamation claim cannot be premised on Dr. Perry's statements of opinion.  *See, e.g., Catalanello v. Kramer*, 18 F. Supp. 3d 504, 518 (S.D.N.Y. 2014) ("Read in context, these statements are properly viewed as statements of opinion—an academic's ruminations—and therefore are not actionable as defamation.").[5]

### III.

### THE NEGLIGENCE AND EMOTIONAL
### DISTRESS CLAIMS SHOULD BE DISMISSED

**A.    *The Negligence and Emotional Distress Claims Should Be Dismissed Because They Arise from the Same Facts as the Defamation Claim***

As a threshold matter, each of Cummings's claims for negligence and emotional distress should be dismissed, because they rely on the same facts as Cummings's defamation claim.  It is

---

[5]   Should the Court determine that only certain of the statements at issue are non-actionable opinion, Hechinger Defendants request that the Court dismiss the Complaint as to those statements and strike those statements from the Complaint.

well-settled that a tort claim "based on the same conduct underlying [a] defamation claim fails as a matter of law, because New York cases have held that a separate cause of action for what are essentially defamation claims should not be entertained."  *Thomas v. City of NY*, 17-CV-06079, 2018 U.S. Dist. LEXIS 189305, at \*31-32 (E.D.N.Y. Nov. 5, 2018); *see also Chaiken v. VV Publ'g Corp.*, 119 F.3d 1018, 1034 (2d Cir. 1997) (plaintiffs "cannot avoid the obstacles involved in a defamation claim by simply relabeling it as a claim for intentional infliction of emotional distress").

Beyond those facts outlined in connection with her defamation claim, Cummings does not add any additional underlying facts to support her other tort claims.  This attempt to recast a defamation claim as various other torts is not permitted and cannot be used to avoid the clear legal framework that requires dismissal of the defamation claim, as discussed above.[6]

Accordingly, the claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress should be dismissed as well.  *See, e.g., Rivers v. Towers, Perrin, Forster & Crosby, Inc.*, 07-CV-5441, 2009 U.S. Dist. LEXIS 26301, at \*27 (E.D.N.Y. Mar. 27, 2009) ("plaintiff's intentional infliction of emotional distress claim should be dismissed because it is within the ambit of the tort of defamation"); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785 (3d Dep't 1994) (negligence claim dismissed where "[t]he facts alleged by plaintiff are, in essence, inseparable from the tort of defamation and, as such, plaintiff is relegated to any remedy that would have been available on that basis"); *Colon v. City of Rochester*, 307 A.D.2d 742, 744 (4th Dep't 2003) (negligence claim properly dismissed, because a "defamation cause of action is not transformed into one for negligence merely by casting it as [such]" (alteration in original)); *White Plains Hosp. Med. Ctr.*, 2011 U.S. Dist. LEXIS 76076, at

---

[6]   Even if the Court were to allow some or all of the defamation claim to survive summary judgment, the other tort claims should be dismissed for the reasons set forth in this section.

*17 ("[T]he underlying facts supporting his negligence claim are the same as his defamation

claim. Therefore, since the facts alleged by plaintiff are inseparable from the tort of defamation,

plaintiff may not recover on a negligence theory."); *EEOC v. Die Fliedermaus, L.L.C*., 77 F

Supp. 2d 460, 472 (S.D.N.Y. 1999) (IIED claim dismissed "where the plaintiffs have also

asserted a defamation claim arising from the same conduct"); *Deronette v. City of NY*, 05-CV-

5275, 2007 U.S. Dist. LEXIS 21766, at *18 (E.D.N.Y. Mar. 27, 2007) ("a claim for negligent

infliction of emotional distress should be dismissed where the conduct for the underlying claim

may be redressed by way of traditional tort remedies").

**B.    The Complaint Fails to State a Claim for Negligence, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional Distress**

Even if the Court were to consider whether Cummings's additional tort claims are

sufficiently plead – which it should not for the reasons discussed in Section III.A above – it

should nonetheless conclude that dismissal is warranted.  Cummings has failed to plead facts

sufficient to meet the elements of each of these claims.

1.    Cummings has failed to plead facts sufficient to support her emotional distress claims.

"Under New York law, the tort of intentional infliction of emotional distress has four

elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a

causal connection between the conduct and the injury; and (4) severe emotional distress."

*Thomas*, 2018 U.S. Dist. LEXIS 189305, at *31-32.  Cummings has failed to meet the first

element, because the Complaint does not allege that the Hechinger Defendants' conduct was

"beyond all possible bounds of decency" or so "extreme that it can be regarded as atrocious, and

utterly intolerable in a civilized society."  *Id.*

Under New York law, negligent infliction of emotional distress requires the same

standard of "extreme and outrageous" conduct as does intentional infliction of emotional

distress, warranting dismissal of that claim as well.  *Rivers*, 07-CV-5441, 2009 U.S. Dist. LEXIS

26301, at \*28; *see also Dillon v. City of NY*, 261 A.D.2d 34, 41 (1st Dep't 1999) (dismissing

emotional distress claims because "[a] cause of action for either intentional or negligent

infliction of emotional distress must be supported by allegations of conduct by a defendant so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"

(internal quotations omitted)).

     2.    <u>Cummings has failed to plead facts sufficient to support her negligence claim.</u>

     "To state a negligence claim, plaintiff must allege: (1) a duty owed to plaintiff, (2) a

breach of that duty, (3) causation, and (4) damages."  *Trachtenberg v. FailedMessiah.com*, 43 F

Supp. 3d 198, 205 (E.D.N.Y. 2014).  Cummings has not pled any duty that was owed to her by

the Hechinger Defendants, and, thus, she has also not pled the breach of any such duty.

Cummings's negligence claim should be dismissed for failure to plead the requisite elements of

duty and breach.  *See, e.g.*, *Trachtenberg*, 43 F Supp. 3d at 205 ("[P]laintiff's failure to plead that

defendant owed a duty to plaintiff and that defendant breached that duty strongly suggests that

plaintiff's negligence claim is duplicative of her defamation claim. Here, the conduct plaintiff

alleges — that defendant published a false article about her — falls well within the tort of

defamation; therefore, defamation, and not negligence, is where plaintiff's claim appropriately

lies."); *Macineirghe v. Cnty. of Suffolk*, 13-CV-1512, 2015 U.S. Dist. LEXIS 94635, at \*37

(E.D.N.Y. July 21, 2015).

## **CONCLUSION**

Based on the foregoing, Hechinger Defendants respectfully request that this Court grant their motion to dismiss the Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:   June 28, 2019
         New York, New York

                                    HAYNES AND BOONE, LLP
                                    *Attorneys for Hechinger Defendants*

                                    By: s/Richard D. Rochford
                                        Richard D. Rochford
                                         Joseph Lawlor
                                         30 Rockefeller Plaza, 26th Floor
                                         New York, New York 10112
                                         Telephone: (212) 659-4984
                                         richard.rochford@haynesboone.com
                                         joseph.lawlor@haynesboone.com