UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PATRICIA CUMMINGS,                                     )
                                                       )
                        Plaintiff,                     )
                                                       )
        – against –                                    )
                                                       )
THE CITY OF NEW YORK; NEW YORK CITY                    )
DEPARTMENT OF EDUCATION; CITY OF NEW                   )
YORK OFFICE OF SPECIAL INVESTIGATIONS;                 )
NYC MAYOR BILL de BLASIO; GIULIA COX;                  )
COURTNEY WARE; BEN CHAPMAN; NEW YORK                   )
DAILY NEWS; DR. ANDRE PERRY;                           )
THE HECHINGER REPORT a/k/a HECHINGER                   )
INSTITUTE ON EDUCATION AND THE MEDIA;                  )
LENARD LARRY McKELVEY a/k/a *CHARLAMAGNE*              )
*THA GOD*; WWPR-FM (105.1 MHZ); iHEARTMEDIA;          )   Case No.: 19-cv-01664-SJF/SIL
CLEAR CHANNEL COMMUNICATIONS, INC.; NEW                )
YORK STATE SENATOR, KEVIN S. PARKER;                   )
COUNCILMAN, JUMAANE D. WILLIAMS;                       )
COUNCILMAN, DANIEL DROMM; COALITION OF                 )
EDUCATIONAL JUSTICE; ANGEL MARTINEZ;                   )
NATASHA CAPERS, and "JOHN DOE AND JANE                 )
DOE# 1-100" said names being fictitious, it being      )
the intent of Plaintiff to designate any and all individuals, )
officers, members, agents, servants, and/or employees of )
the aforementioned agencies owing a duty of care to    )
Plaintiff, individually and jointly and severally,     )
                                                       )
                        *Defendants*.                  )
                                                       )

# DEFENDANT CHARLAMAGNE'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT
# PURSUANT TO FED. R. CIV. P. 12(b)(6)

GREENBERG TRAURIG, LLP
54 State Street, 6th Floor
Albany, New York 12207
Tel: (518) 689-1400

*Attorneys for Defendant Lenard Larry*
*McKelvey a/k/a Charlamagne tha God*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... iii

PRELIMINARY STATEMENT ..............................................................................1

STATEMENT OF FACTS .......................................................................................3

      A.   The Parties. ...........................................................................................3

      B.   The Middle Passage Classroom Lesson.................................................4

      C.   The Challenged Broadcast. ...................................................................4

ARGUMENT ...........................................................................................................5

POINT I   TO SURVIVE A MOTION TO DISMISS, THE COMPLAINT MUST
             PLEAD  SPECIFIC FACTS ESTABLISHING A PLAUSIBLE CLAIM
             TO RELIEF ...................................................................................5

POINT II  THE COMPLAINT'S DEFAMATION CLAIM AGAINST
             CHARLAMAGNE SHOULD BE DISMISSED BECAUSE CERTAIN
             STATEMENTS COMPLAINED OF ARE NOT DEFAMATORY .........6

POINT III  THE CHALLENGED COMMENTS ARE EXPRESSIONS OF OPINION
             ENTITLED TO CONSTITUTIONAL PROTECTION .............................8

      A.   The Constitutional Opinion Privilege Promotes the Marketplace
           of Ideas..................................................................................................8

      B.   Determination Of the Opinion Privilege Is a Question of Law. ......................10

      C.   Characterizing Someone as "Racist," "Bigoted," a "Cracker" or a
           "White Devil" Is Protected Opinion As a Matter of Law. ...............................10

           (1)   The Variable Nature Of the Term "Racist." .........................................11

           (2)   The Descriptions of Plaintiff as a "Bigot," "White Devil"
                and "Cracker-Ass Cracker" Are Not Actionable. ...................................13

      D.   Speculation Over State Of Mind Is Intrinsically Unsuitable
           As a Foundation For Libel. .............................................................................14

      E.   The Use of Rhetorical Hyperbole and Exaggerated, Figurative
           Language Signals Protected Opinion.................................................................16

      F.   The Comments Complained of Are Classic, Nonactionable
           "Pure Opinion" Based on Facts in the Public Domain. ...................................17

POINT IV    IN THE ALTERNATIVE, PLAINTIFF HAS NOT PLEADED
            AND CANNOT PLAUSIBLY ALLEGE PUBLICATION OF THE
            CHALLENGED COMMENTARY WITH GROSS IRRESPONSIBILITY –
            A FLAW THAT LIKEWISE REQUIRES THE DISMISSAL OF THE
            COMPLAINT'S DEFAMATION CLAIM ............................................................19

POINT V     THE COMPLAINT'S INTENTIONAL INFLICTION OF EMOTIONAL
            DISTRESS CLAIM AGAINST CHARLAMAGNE SHOULD BE
            DISMISSED ........................................................................................................21

            A.    The Complaint's IIED Claim Should Be Dismissed As an
                  Impermissible Attempt to Avoid Dispositive Constitutional Principles..........21

                  (1)    A Subjective "Outrageousness" Standard Is Prohibited Under
                         the First Amendment..................................................................22

                  (2)    The Complaint's IIED Claim Is Barred As Redundant of Its
                         Defamation Claim. ....................................................................23

            B.    The Disputed Statements Are Not "Extreme and Outrageous" Within
                  the Stringent Definition of the Emotional Distress Tort..................................23

            C.    Charlamagne's Commentary On a Morning Radio Program Broadcast
                  to the General Public Was Not a Campaign of Harassment Directed at
                  Plaintiff. ..........................................................................................................26

POINT VI    THE COMPLAINT'S NEGLIGENT INFLICTION OF EMOTIONAL
            DISTRESS CLAIM FAILS TO STATE A CAUSE OF ACTION AGAINST
            CHARLAMAGNE ..............................................................................................27

POINT VII   THE COMPLAINT'S CLAIM SOUNDING IN NEGLIGENCE FAILS TO
            STATE A CAUSE OF ACTION AGAINST CHARLAMAGNE ..........................28

CONCLUSION......................................................................................................................30

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                          **Page(s)**

*Adler v. Solar Power, Inc.*,
  2018 U.S. Dist. LEXIS 54771 (S.D.N.Y. Mar. 30, 2018) .................................................. 13 n.7

*Albright v. Morton*,
  321 F.Supp.2d 130 (D. Mass. 2004) ....................................................................................... 29

*Anyanwu v. Columbia Broad. Sys.*,
  887 F.Supp. 690 (S.D.N.Y. 1995) .......................................................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 5, 21, 30

*Barnum v. Millbrook Care L.P.*,
  850 F.Supp. 1227 (S.D.N.Y), *aff'd*, 43 F.3d 1458 (2d Cir. 1994) ........................................... 26

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 5, 30

*Biro v Condé Nast*,
  963 F.Supp.2d 255 (S.D.N.Y. 2013) ..................................................................................... 5-6

*Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts*
  *Worldwide, Inc.*, 369 F.3d 212 (2d Cir. 2004) ...................................................................... 3 n.1

*Bose Corp. v. Consumers Union*,
  466 U.S. 485 (1984) ..................................................................................................... 8-9

*Bryks v. Canadian Broadcasting Corp.*,
  928 F.Supp. 381 (S.D.N.Y. 1996) ....................................................................................... 20-21

*Buckley v. Littell*,
  539 F.2d 882 (2d Cir. 1976) ................................................................................................. 13

*Celle v. Filipino Reporter Enters., Inc.*,
  209 F.3d 163 (2d Cir. 2000) ............................................................................................. 6, 9

*Chaiken v. VV Publ'g Corp.*,
  907 F.Supp. 689 (S.D.N.Y. 1995), *aff'd*, 119 F.3d 1018 (2d Cir. 1999) ........................... 21, 23

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ............................................................................................... 8

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ...................................................................................... 6, 7, 8, 18

*DiFolco v. MSNBC Cable LLC*,
    622 F.3d 104 (2d Cir. 2010).................................................................. 3 n.1

*Dworin v. Deutsch*,
    2008 WL 508019 (S.D.N.Y. Feb. 22, 2008)....................................... 9-10

*Edelman v. Croonquist*,
    2010 U.S. Dist. LEXIS 43399 (D.N.J. May 4, 2010) ....................... 13 n.7

*FCC v. Pacifica Foundation*,
    438 U.S. 726 (1978)................................................................................ 22

*Forte v. Jones*,
    2013 U.S. Dist. LEXIS 39113 (E.D. Cal. Mar. 20, 2013) .................10-11

*Gacek v. Owens & Minor Distrib., Inc.*,
    666 F.3d 1142 (8th Cir. 2012) ......................................................... 15 n.8

*Garrison v. Louisiana*,
    379 U.S. 64 (1964).......................................................................... 19 n.10

*Gertz v. Robert Welch*,
    418 U.S. 323 (1974)........................................................................... 9, 19

*Glendora v. Marshall*,
    947 F.Supp. 707 (S.D.N.Y. 1996), *aff'd*, 129 F.3d 113 (2d Cir. 1997)........................... 29 n.13

*Greenbelt Coop. Publ'g Assn'n v. Bressler*,
    398 U.S. 6 (1970) .................................................................................. 16

*H&R Indus., Inc. v. Kirshner*,
    899 F.Supp. 995 (E.D.N.Y. 1995) ......................................................... 10

*Haynes v. Alfred A. Knopf, Inc.*,
    8 F.3d 1222 (7th Cir. 1993) ............................................................ 14, 15

*Heyward v. Credit Union Times*,
    913 F.Supp.2d 1165 (D.N.M. 2012) ................................................ 15 n.8

*Hustler Magazine, Inc. v. Falwell*,
    485 U.S. 46 (1988).......................................................... 19 n.10, 21, 22, 23

*Idema v. Wager*,
    120 F.Supp.2d 361 (S.D.N.Y. 2000), *aff'd* .............................. 24, 25 n.12

*Janklow v. Newsweek, Inc.*,
    788 F.2d 1300 (8th Cir. 1986) ......................................................... 15 n.8

*Karedes v. Ackerly Group, Inc.*,
   423 F.3d 107 (2d Cir. 2005)..................................................................... 6 n.3

*Kelly v. Schmidberger*,
   806 F.2d 44 (2d Cir. 1986)........................................................................ 6

*Lerman v. Chickleberry Publ'g, Inc.*,
   521 F.Supp. 228 (S.D.N.Y. 1981) ........................................................... 20

*Levin v. McPhee*,
   917 F.Supp. 230 (S.D.N.Y. 1996),
   *aff'd*, 119 F.3d 189 (2d Cir. 1997)..................................................6, 19, 23, 26-27

*Lopez v. City of New York*,
   901 F.Supp. 684 (S.D.N.Y. 1995) ........................................................... 27

*McCafferty v. Newsweek Media Group, Ltd.*
   2019 WL 1078355 (E.D. Pa. Mar. 7, 2019),
   *appeal filed*, No. 19-1545 (3d Cir. Mar. 12, 2019)..................................... 11

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)...................................................................................9, 16

*Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*,
   759 F.2d 219 (2d Cir. 1985)..................................................................... 10

*Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*,
   118 F.Supp.2d 126 (D. Mass. 2000) ..................................................... 15 n.8

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964)............................................................................5, 20 n.11

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986)............................................................................ 19 n.10

*Price v. Viking Penguin, Inc.*,
   881 F.2d 1426 (8th Cir. 1989), *cert. denied*, 493 U.S. 1036 (1990)....................... 15

*Puchalski v. Sch. Dist. of Springfield*,
   161 F.Supp.2d 395 (E.D. Pa. 2001) ....................................................... 11

*Pusey v. Bank of Am., N.A.*,
   2015 U.S. Dist. LEXIS 91083 (E.D.N.Y. July 14, 2015) ......................... 29

*Qureshi v. St. Barnabas Hosp. Ctr.*,
   430 F.Supp.2d 279 (S.D.N.Y. 2006) ........................................................ 6

*Raible v. Newsweek, Inc.*,
    341 F.Supp. 804 (W.D. Pa. 1972) ........................................................................ 14

*Ratajack v. Brewster Fire Dep't, Inc.*,
    178 F.Supp.3d 118 (S.D.N.Y. 2016) ........................................................... 13 n.7, 18

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
    53 F.Supp.3d 705 (S.D.N.Y. 2014) ..................................................................... 23

*Rubinstein v. Transp. Workers' Union, Local 100*,
    2005 U.S. Dist. LEXIS 19969 (S.D.N.Y. Sept. 6, 2005) ...................................... 14

*Sellers v. Time Inc.*,
    299 F.Supp. 582 (E.D. Pa. 1969), *aff'd*, 423 F.2d 887 (3d Cir. 1970) .............. 15 n.8

*Smith v. Sch. Dist. of Philadelphia*,
    112 F.Supp.2d 417 (E.D. Pa. 2000) ..................................................................... 13

*Snyder v. Phelps*,
    562 U.S. 443, 131 S. Ct. 1207 (2011) ..................................................... 21, 22, 23

*Squitieri v. Piedmont Airlines, Inc.*,
    2018 U.S. Dist. LEXIS 25485 (W.D.N.C. Feb. 16, 2018) ................................ 13 n.7

*Stevens v. Tillman*,
    855 F.2d 394 (7th Cir. 1988) ....................................................................... 11-12, 13

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002) .......................................................................................... 3 n.1

*Torain v. Liu*,
    279 Fed.Appx. 46 (2d Cir. 2008) .............................................................. 13 n.7, 17

*Towne v. Eisner*,
    245 U.S. 418 (1918) ........................................................................................... 11

*Trachtenberg v. FailedMessiah.com*,
    43 F.Supp.3d 198 (E.D.N.Y. 2014) ................................................................. 28, 29

*Van Buskirk v. New York Times Co.*,
    28 Med. L. Rptr. (BNA) 2525 (S.D.N.Y. 2000) ..................................................... 25

*Whitney Info. Network, Inc. v. Weiss*,
    2008 WL 731024 (E.D.N.Y. Mar. 18, 2008) .......................................................... 9

*Yohe v. Nugent*,
    321 F.3d 35 (1st Cir. 2003) ............................................................................ 15 n.8

*Zerman v. Sullivan & Cromwell*,
   677 F.Supp. 1316 (S.D.N.Y. 1988) ................................................................ 15 n.8

**State Cases**

*600 West 115th Street Corp. v. Von Gutfeld*,
   80 N.Y.2d 130 (1992) ................................................................................ 9, 17

*Aronson v. Wiersma*,
   65 N.Y.2d 592 (1985) .................................................................................. 7, 8

*Bement v. N.Y.P. Holdings, Inc.*,
   307 A.D.2d 86 (1st Dep't 2003) .......................................................................... 25

*Bloomberg v. Cox Enters., Inc.*,
   228 Ga. App. 178 (Ct. App. Ga. 1997) .................................................................. 14

*Borzellieri v. Daily News, LP*,
   975 N.Y.S.2d 365 (Sup. Ct. Queens Cnty. 2013) .................................................. 14

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
   38 N.Y.2d 196 (1975) ................................................................................... 20

*Colon v. City of Rochester*,
   307 A.D.2d 742 (4th Dep't 2003), *lv. denied*, 100 N.Y.2d 628 (2003) .................... 29

*Covino v. Hagemann*,
   165 Misc.2d 465 (Sup. Ct. Richmond Cnty. 1995) ............................................. 13 n.7

*Doe v. American Broadcasting Cos.*,
   152 A.D.2d 482 (1st Dep't 1989) ...................................................................... 27

*Duane Reade Inc. v. Local 338*,
   6 Misc.3d 790 (Sup. Ct. N.Y. Cnty. 2004) ......................................................... 21

*Freihofer v. Hearst Corp.*,
   65 N.Y. 135 (1984) ............................................................................. 24, 25 n.12

*Gross v. New York Times Co.*,
   82 N.Y.2d 146 (1993) ................................................................................. 9, 18

*Howell v. New York Post Co.*,
   81 N.Y.2d 115 (1993) ................................................................................. 24, 25

*Immuno AG. v. Moor-Jankowski*,
   74 N.Y.2d 548 (1989) ............................................................................... 15 n.8

*Immuno AG. v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ................................................................................. 16, 17

*Karaduman v. Newsday, Inc.*,
   51 N.Y.2d 531, *rearg. denied*, 52 N.Y.2d 899 (1980) ........................................... 20

*Lyons v. Globe Newspaper Co.*,
   415 Mass. 258 (1993) ........................................................................ 15 n.8

*Rappaport v. VV Publ'g Corp.*,
   163 Misc.2d 1 (Sup. Ct. N.Y. Cnty. 1984),
   *aff'd*, 223 A.D.2d 515 (1st Dep't 1986) ........................................... 15 n.8

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (1977) ........................................................................ 9, 19

*Rosado v. Daily News, L.P.*,
   2014 N.Y. Misc. LEXIS 6163 (Sup. Ct. N. Y. Cnty. 2014) ........................ 13 n.7

*Rubinstein v. New York Post Co.*,
   128 Misc.2d 1 (Sup. Ct. N.Y. Cnty. 1985) ............................................. 28

*Silverman v. Daily News*,
   129 A.D.3d 1054 (2d Dep't 2015) ........................................................ 18

*Steinhilber v. Alphonse*,
   68 N.Y.2d 283 (1986) ..................................................................... 9, 16-17

*Virelli v. Goodson-Todman Enters., Ltd.*,
   142 A.D.2d 479 (3d Dep't 1989) ..................................................... 21, 28

*Waldron v. Ball Corp.*,
   210 A.D.2d 611 (3d Dep't 1994) .......................................................... 26

## Other Authorities

United States Constitution, First Amendment ........................................ *passim*

Fed. R. Civ. P. 12 .............................................................................. 30

Fed. R. Civ. P. 12(b)(6) ................................................................. 1, 5, 13

New York State Constitution ................................................................. 17

*Restatement (Second) of Torts*, § 46(1) (1977) ........................................ 24

## PRELIMINARY STATEMENT

> "*Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.*" *Thornhill v. Alabama*, 310 U.S. 88, 102 (1940).

This free speech litigation arises out of a highly controversial and widely publicized incident in which Plaintiff Patricia Cummings, formerly a public middle school teacher in the Bronx, reportedly had her students dramatize the horrific conditions by which slaves were transported from Africa to America during the Middle Passage.  As the Complaint indicates, the classroom exercise "sparked outrage around the globe" (*see* Ex. E to Compl.), including protest and criticism by "politicians and activists."  (Compl. ¶ 62)

Defendant Lenard Larry McKelvey a/k/a Charlamagne the God, co-host of *The Breakfast Club* radio show broadcast by WWPR-FM in New York City, respectfully submits this memorandum of law in support of his motion pursuant to Fed. R. Civ. P. 12(b)(6) requesting dismissal of the Complaint as a matter of law.  The Complaint principally alleges that Plaintiff was defamed by comments made by Charlamagne on a "Donkey of the Day" segment aired on February 7, 2018.  However, Plaintiff's ability to impose any such liability based on the personal viewpoints expressed concerning the performance of her classroom educational responsibilities – *speech* involving an essential matter of public concern – is extinguished by the First Amendment.

First, certain of the challenged broadcast comments, given (as they must be) their ordinary meaning as understood by the average listener and considered in their full context, are simply not defamatory.  Needless to say, Plaintiff may not distort the meaning of non-defamatory statements in an effort to uphold an insupportable libel claim.  Threshold defamation rules governing this case flatly prohibit such a result.

<u>Second</u>, even as alleged, the comments complained of are classic examples of rhetorical hyperbole and expressions of "pure" opinion based on facts extensively reported by the media, not actionable assertions of fact. They are therefore fully protected forms of speech and cannot provide the basis of a defamation claim. As set forth more fully below, Plaintiff's real quarrel with the broadcast segment at issue is not with any supposedly false statements made by Charlamagne of objective, verifiable facts; it is instead with what she apparently thinks are unfair assessments and remonstrations concerning her dubious decision to instruct her pupils through a re-enactment of the horrific conditions in which slaves were shipped to America. Plaintiff is, of course, entitled to take issue with those opinions critical of her professional judgment and conduct as a public school teacher. As the Complaint makes clear, she has done just that. What she is not entitled to do, however, is to maintain a lawsuit against Charlamagne over them. They are subjective evaluations based on information widely disseminated in the public domain – statements of opinion, rather than fact, which are not actionable as a matter of constitutional principle.

<u>Third</u>, the Complaint contains no factual allegations that could plausibly establish that the broadcast comments were published in a grossly irresponsible manner – a constitutional fault standard Plaintiff is required to plead (and ultimately prove), even assuming she is a private figure under the First Amendment. Although the Complaint references pervasive media coverage that Plaintiff deems objectionable, it fails to specify any facts showing that Charlamagne knew or should have known that this reportage by reputable news organizations was inaccurate.

<u>Fourth</u>, the Complaint's cause of action for intentional infliction of emotional distress ("IIED") should be rejected as a transparent attempt to circumvent the First Amendment privileges and defenses delineated above which compel the dismissal of Plaintiff's defamation claim. Nor can Plaintiff satisfy the stringent elements required under New York law to sustain an IIED claim,

a theory of recovery disfavored by courts in this Circuit.  The Complaint's ancillary emotional distress claim is therefore defective as pleaded.

<u>Fifth</u>, the Complaint's allegation of negligent infliction of emotional distress ("NIED") should be dismissed because it relies on a constitutionally insufficient basis for the imposition of liability based on the publication of newsworthy information.  In addition, the claim fails – as does the Complaint's separate count sounding in negligence – as a matter of law because Charlamagne owed no duty to Plaintiff in connection with the disputed broadcast.

In the final analysis, this lawsuit blatantly disregards that the First Amendment's core values protect the free flow of ideas on matters of public interest and concern.  The Complaint proceeds on theories of recovery that subvert constitutional free speech principles by threatening to confine discussion of Plaintiff's choice of in-class instruction as a public school teacher within rigid boundaries of acceptable (as deemed by Plaintiff) language and by shifting critical evaluation of her official conduct out of the marketplace of public discourse and into the courtroom.  For the reasons presented below, the Complaint should be dismissed against Charlamagne because Plaintiff's defamation, emotional distress and negligence claims fail to state a cause of action.

## **STATEMENT OF FACTS**[1]

### A.    **The Parties.**

Plaintiff Patricia Cummings was formerly employed as a New York City public school teacher at Middle School 118 in Bronx County, New York.  (Compl. ¶¶ 16, 51)

---

[1]    This section is derived from the factual allegations of the Verified Complaint [Dkt. No. 13] dated May 15, 2019, and ECF-filed May 17, 2019, which Defendant accepts as true for the limited purpose of the instant motion. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  In adjudicating this motion, the Court may consider documents attached to the Complaint as exhibits, and documents incorporated by reference in, or integral to, the Complaint.  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  Accordingly, Defendants submit herewith as **Exhibit 1** a certified stenographic transcript of the complete "Donkey of the Day" segment from *The Breakfast Club* broadcast on February 7, 2018, containing the commentary challenged by the Complaint.

Defendant Lenard Larry McKelvey a/k/a Charlamagne tha God ("Charlamagne") is an American radio personality who co-hosts the nationally syndicated show *The Breakfast Club* broadcast on WWPR-FM, known as Power 105.1, an urban contemporary station licensed in New York City.[2]  (Compl. ¶¶ 33-34)

**B.**   **The Middle Passage Classroom Lesson.**

On January 9, 2018, Plaintiff taught a lesson to her social studies class on the Middle Passage, by which people were transported from Africa to America in the slave trade.  (Compl. ¶¶ 52-53)  On or about February 1, 2018, the *New York Daily News* reported in a "front page story" that Plaintiff " 'singled out black students and told them to lie on the floor for a lesson on US slavery – and then stepped on their backs to show them what slavery felt like.' " (*Id*. ¶¶ 58-59) This reportage was "picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world," including in "several prominent newspapers and televised news programs, as well as on YouTube."  (*Id*. ¶¶ 60-61)

**C.**   **The Challenged Broadcast.**

On February 7, 2018, during the "Donkey of the Day" segment of *The Breakfast Club* that incorporated a CBS news report on Plaintiff's Middle Passage lesson (*see* Ex. 1, p. 7, ll. 10-23; p. 8, ll. 2-4), Charlamagne described Plaintiff as a "racist," a "bigot," a "cracker," and a "white devil."  (Compl. ¶¶ 63, 106-107 and Ex. 1)

---

[2]    Although denominated as a Defendant (*see* Compl. ¶ 34), WWPR-FM (105.1 MHZ) is a non-juridical entity.

## ARGUMENT

### POINT I

### TO SURVIVE A MOTION TO DISMISS, THE COMPLAINT MUST PLEAD SPECIFIC FACTS ESTABLISHING A PLAUSIBLE CLAIM TO RELIEF

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to establish every element of the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Notably, legal conclusions and naked assertions "are not entitled to the assumption of truth," *id*. at 679. The allegations in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the facts alleged by the plaintiff, taken as true, fail to "state a claim to relief that is plausible on its face," the action must be dismissed. *Iqbal*, 556 U.S. at 678. In turn, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678.

Because this case unquestionably implicates Charlamagne's First Amendment right to comment on the news (and particularly news about a highly charged issue of public interest), in evaluating this motion, the Court must "consider this case against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964). In furtherance of this principle, and to protect public debate and safeguard freedom of the press, courts in this Circuit have recognized the " 'particular value' in resolving defamation claims at the pleading stage, 'so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms.' " *Biro v Condé Nast*, 963 F.Supp.2d 255, 264 (S.D.N.Y.

2013) (quoting *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 379 (1995)), *aff'd*, 807 F.3d

541 & 622 F. App'x 67 (2d Cir. 2015).

On the facts alleged, such prompt relief is plainly warranted in this case.

## POINT II

### THE COMPLAINT'S DEFAMATION CLAIM AGAINST CHARLAMAGNE SHOULD BE DISMISSED BECAUSE CERTAIN STATEMENTS COMPLAINED OF ARE NOT DEFAMATORY

Multiple statements alleged to be actionable in the Complaint are non-defamatory on their

face. Under New York law, "it is for the court to decide ... whether the offending words pleaded

in a libel action are susceptible of a libelous meaning."[3] *Kelly v. Schmidberger*, 806 F.2d 44, 46

(2d Cir. 1986). In so doing, the challenged statements are to be read in the context of the

publication as a whole and without straining to give the publication either an innocent or a

defamatory construction. *Levin v. McPhee*, 917 F.Supp. 230, 236 (S.D.N.Y. 1996), *aff'd*, 119 F.3d

189 (2d Cir. 1997). As the Second Circuit has cautioned, "[n]ot all (or even most) maligning

remarks can be considered defamatory." *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014).

A statement is defamatory "if it tends to expose the plaintiff to public contempt, ridicule,

aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and

to deprive him of their friendly intercourse in society." *Qureshi v. St. Barnabas Hosp. Ctr.*, 430

F.Supp.2d 279, 287 (S.D.N.Y. 2006). "A plaintiff in a libel action must identify a plausible

defamatory meaning of the challenged statement or publication." *Celle v. Filipino Reporter*

*Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000). "[I]n New York, courts employ an ordinary person

standard to determine if [a] statement is reasonably susceptible [to] a defamatory connotation."

---

[3]  The Second Circuit has stressed that this determination " 'should ordinarily be resolved at the pleading stage.' " *Karedes v. Ackerly Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005) (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001)).

*Chau v. Lewis*, 771 F.3d at 127 (internal quotation marks, alteration and citation omitted).  If a statement cannot be reasonably interpreted as conveying a defamatory meaning, it is not actionable as a matter of law, and "cannot be made so by a strained or artificial construction."  *Aronson v. Wiersma*, 65 N.Y.2d 592, 594 (1985).

Applying these standards, Plaintiff cannot meet the threshold requirement of demonstrating that several of the challenge comments are reasonably capable of sustaining a defamatory meaning.[4]  Considered, as they must be, in the full context of the "Donkey of the Day" segment aired on February 7, 2018 (*see* Ex. 1), these remarks convey Charlamagne's objection to "a white teacher teaching [a] majority black and Hispanic class" about the Middle Passage because, according to him, as a result the public education system distorts the black historical experience as originating with slavery in this country.[5]  There is nothing in the statements in Exhibit 2 which disparages Plaintiff's professional skills or competence or attributes wrongdoing to her.  They "would not be interpreted by an average [listener] as defamatory."  *Chau*, 771 F.2d at 128.  They merely present Charlamagne's personal observations – certainly not shared by everyone – that, when "white people teach us about us," school lesson plans about slavery should be subject to oversight by a "diversity board" to safeguard against racial insensitivity; that historical accuracy can be better achieved and instructional problems avoided "if you simply have us teaching us" about the slave trade; and that Plaintiff unnecessarily embellished her classroom lesson – "she put extra mayonnaise on it" – on the Middle Passage.  There is no question that these comments

---

[4]    For the convenience of the Court, a chart identifying the non-actionable statements from paragraph 106 of the Complaint that fail to convey a defamatory meaning is annexed hereto as **Exhibit 2**.

[5]    As the broadcast transcript makes clear, Charlamagne expressed the view that "white people in America" tell an incomplete story about black history because, *inter alia*, "[t]hey don't teach young black kids that our people built some of the greatest monuments ever, like the pyramids.  They don't teach that calculus and geometry all go back to African scholars."  (Ex. 1, p. 4, ll. 15-20)  Rather than focus on slavery, Charlamagne stressed that public school educators should "bring to light the stories of people from Africa who have contributed so much to who and what we are today in this society."  (*Id.* p. 5, ll. 16-19)

represent Charlamagne's opinions, but Plaintiff's strong disagreement – she objects to them as "reverse discrimination" (Compl. ¶ 182) – does not render them defamatory. *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993) (words that are "[m]erely offensive or unpleasant . . . are not defamatory").

There is simply no basis from which the average listener to *The Breakfast Club* could draw a defamatory inference from the pedagogical preferences and teaching protocols espoused by Charlamagne, which – while perhaps unorthodox and controversial unto themselves – do not negatively reflect on Plaintiff's reputation in any way, notwithstanding that she felt maligned by them. *Chau*, 771 F.3d at 127 ("To be actionable, therefore, the statement must do more than cause discomfort or affront; the statement is measured not by the sensitivities of the maligned, but the critique of reasonable minds that would think the speech attributes odious or despicable characterizations to its subject."). To conclude otherwise would require the Court to strain to place a particular interpretation upon the challenged comments without any reasonable basis for concluding that they are defamatory. The Complaint's attempt to transmogrify these viewpoints into the basis of a defamation claim should be rejected as a "strained [and] artificial construction" of educational theories, curricular reform suggestions, and expressions of solidarity that are not reasonably susceptible of a defamatory meaning. *Aronson v. Wiersma*, 65 N.Y.2d at 594.

## POINT III

### THE CHALLENGED COMMENTS ARE EXPRESSIONS OF OPINION ENTITLED TO CONSTITUTIONAL PROTECTION

**A.    The Constitutional Opinion Privilege Promotes the Marketplace of Ideas.**

"The First Amendment presupposes that the freedom to speak one's mind is not only an aspect of individual liberty – and thus a good unto itself – but also is essential to the common quest for truth and the vitality of society as a whole." *Bose Corp. v. Consumers Union*, 466 U.S. 485,

503-04 (1984).  It follows from longstanding constitutional principles "that expressions of an opinion 'false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions.' " *Steinhilber v. Alphonse*, 68 N.Y.2d 283, 286 (1986) (citation omitted). Under both the federal and New York Constitutions, only statements that are demonstrably false are actionable.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990) (alleged defamation addressing matter of public concern "must be provable as false before there can be liability"); *600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 139 (1992) ("Because falsity is a necessary element in a defamation claim involving statements of public concern, it follows that only statements alleging facts can properly be the subject of a defamation action.").  In contrast, opinions are not "capable of being proven true or false," *Gross v. New York Times Co.*, 82 N.Y.2d 146, 155 (1993), and are therefore not actionable "no matter how unreasonable, extreme or erroneous" they may be.  *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380-81 (1977).

The principles animating the absolute constitutional protection provided to expressions of opinion were identified more than four decades ago in *Gertz v. Robert Welch, Inc.*:

> Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas.

418 U.S. 323, 339-40 (1974).

In determining the constitutional protection for statements of opinion, and as this Court has affirmed, "[t]he dispositive inquiry . . . is whether a reasonable listener . . . could have concluded that [the defendant] was conveying facts about the plaintiff." *Whitney Info. Network, Inc. v. Weiss*, 2008 WL 731024, at *2 (E.D.N.Y. Mar. 18, 2008).  Moreover, the Second Circuit has emphasized that reviewing courts must analyze statements "in the context of the entire communication and . . . the circumstances" in which they were published.  *Celle*, 209 F.3d at 178; *see also Dworin v.*

9

*Deutsch*, 2008 WL 508019, at *4 (S.D.N.Y. Feb. 22, 2008) (" '[I]n distinguishing between actionable factual assertions and nonactionable opinion, the courts must consider the content of the communication as a whole, as well as its tone and apparent purpose.' ") (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995)).

**B.**   **Determination Of the Opinion Privilege Is a Question of Law.**

The issue of whether the broadcast commentary complained of here constitutes nonactionable opinion is a question of law for the Court.  *H&R Indus., Inc. v. Kirshner*, 899 F.Supp. 995, 1009 (E.D.N.Y. 1995); *Mr. Chow of N.Y. v. Ste. Jour Azur S.A.*, 759 F.2d 219, 224 (2d Cir. 1985) ("[W]hether a statement is opinion or rhetorical hyperbole as opposed to a factual representation is a question of law for the court.").

The Complaint disputes extensive comments on a public radio program that are clearly not actionable by virtue of the opinion privilege.[6]  These statements could only be understood by *The Breakfast Club*'s listeners as impassioned criticism of Plaintiff's conduct in her official capacity as a public school teacher as reported in intensive media coverage, and as Charlamagne's personal ruminations concerning the educational impropriety and racial insensitivity of that conduct.  Further, and as elaborated below, they are "pure opinion" based on facts widely disseminated in the public domain, and are thus absolutely protected as a matter of law.

**C.**   **Characterizing Someone as "Racist," "Bigoted," a "Cracker" or a "White Devil" Is Protected Opinion As a Matter of Law.**

Courts treat statements characterizing people as "racist" as nonactionable opinion because they cannot be proved true or false.  *Forte v. Jones*, 2013 U.S. Dist. LEXIS 39113, at *15, 16 (E.D. Cal. Mar. 20, 2013) ("the allegation that a person is a 'racist' . . . is not actionable because the

---

[6]   For the convenience of the Court, a chart identifying the comments from paragraph 106 of the Complaint that are immunized from liability as protected opinion under the First Amendment is annexed hereto as **Exhibit 3**.

term 'racist' has no factually-verifiable meaning" and therefore "cannot be proven or disproven"). This principle was reaffirmed just four months ago in a defamation case where a minor plaintiff sued a national news magazine over alleged implications of racism arising out of his perceived support for President Trump.  In *McCafferty v. Newsweek Media Group, Ltd.*, plaintiff and his parents alleged *Newsweek* defamed him in a report titled "Trump's Mini-Mes," claiming in part that the report implied plaintiff "supported or defended racism."  2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019), *appeal filed*, No. 19-1545 (3d Cir. Mar. 12, 2019).  The court dismissed the complaint pursuant to the magazine's Rule 12(b)(6) motion, holding that the article did not reasonably convey any implication of racism – and that even if it did, "labeling someone a racist without more, though undoubtedly uncomplimentary, is non-actionable opinion."  *Id.* at *5; *see also Puchalski v. Sch. Dist. of Springfield*, 161 F.Supp.2d 395, 408 n.7 (E.D. Pa. 2001) ("[C]haracterizing someone or something he has said as 'racist' is not alone actionable.") (collecting cases).

### (1)    The Variable Nature Of the Term "Racist."

Together with the context of a statement, the nature of the language used can affect significantly its fair and natural meaning.  As Justice Holmes observed long ago, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."  *Towne v. Eisner*, 245 U.S. 418, 425 (1918).  According to the Seventh Circuit, "[i]n daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face" and thus falls "comfortably within the immunity for name-calling."  *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988).

In *Stevens* the plaintiff, a white principal of an elementary school in Chicago with a predominantly black enrollment, alleged that she was defamed by the following statements made by the defendant, a black activist who launched "a crusade to remove Stevens as principal" (*id.* at 395):

- Our principal is very insensitive to the needs of our community, which happens to be totally black.  She made very racist statements during the boycott.  She is a racist.  She must go.  We cannot have racist people around our children. . . . She made numbers of very racist statements[.]  *Id.* at 400.

- But I mean there is no sense--and our children feel as though they are on a plantation.  And there is no reason in 1981 why we should have a principal making such racist statements.  *Id.*

The *Stevens* court rejected the contention that these statements defamed the plaintiff by "mark[ing] her as unfit to be principal of a public school" (*id.* at 401), reasoning that the emotive force of the epithet confirmed its status as protected opinion:

> Language is subject to levelling forces.  When a word acquires a strong meaning it becomes useful in rhetoric.  A single word conveys a powerful image.  When plantation owners held blacks in chattel slavery, when 100 years later governors declared "segregation now, segregation forever", everyone knew what a "racist" was.  The strength of the image invites use.  To obtain emotional impact, orators employed the term without the strong justification, shading its meaning just a little.  So long as any part of the old meaning lingers, there is a tendency to invoke the word for its impact rather than to convey a precise meaning.  We may regret that the language is losing the meaning of a word, especially when there is no ready substitute.  But we serve in a court of law rather than of language and cannot insist that speakers cling to older meanings.

*Id.* at 402.

Judge Easterbrook may or may not be correct that widespread rhetorical misappropriation of the word "racist" is responsible for "water[ing] down" and "drain[ing] the term of its former, decidedly opprobrious, meaning."  *Id.* at 402.  But the *Stevens* decision is unquestionably correct that "[s]upercharged rhetoric is part of many political debates, as is the careless and inaccurate accusation; these inevitably injure, yet speech must be protected even when it injures, lest the scope of debate be curtailed."  *Id.* at 399.  When employed, as by Charlamagne here, to question and criticize a widely publicized incident in a local public school – political speech protected at the core

of the First Amendment – the description of Plaintiff as "racist" qualifies as constitutionally protected opinion. In short, "[i]f the Constitution protects only moderate speech, it protects nothing." *Id.*

The gravamen of the Complaint is Plaintiff's objection to what she characterizes as Charlamagne's "racist and defamatory rant" (Compl. ¶ 107) on the broadcast segment at issue. As the precedent establishes, however, Plaintiff cannot as a matter of law base a defamation claim on these remarks as they offer an expression of opinion so subjective as to be unprovable.[7] The Court should dismiss this lawsuit as to these statements for failure to state a plausible claim. *Smith v. Sch. Dist. of Philadelphia*, 112 F.Supp.2d 417, 429 (E.D. Pa. 2000) ("While the Court acknowledges that a statement that plaintiff is 'racist and anti-Semitic,' if it was made, would be unflattering, annoying and embarrassing, such a statement does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric.").

**(2)     The Descriptions of Plaintiff as a "Bigot," "White Devil" and "Cracker-Ass Cracker" Are Not Actionable.**

As discussed above, to constitute actionable defamation, a challenged statement must be provably false. *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976). Based on this principle, the

---

[7]     The cases holding that description of a defamation plaintiff as "racist" is not actionable as a matter of law because the term is incapable of objective verification are legion. *Torain v. Liu*, 279 Fed.Appx. 46, 47 (2d Cir. 2008) (affirming district court's grant of Rule 12(b)(6) motion dismissing defamation claim where, considered in context, statement plaintiff was a "sick racist pedophile" could not reasonably be understood as an assertion of objective fact); *Ratajack v. Brewster Fire Dep't, Inc.*, 178 F.Supp.3d 118, 165 (S.D.N.Y. 2016) ("claims that Plaintiff is a racist and may be a future harm are nonactionable opinion"); *Squitieri v. Piedmont Airlines, Inc.*, 2018 U.S. Dist. LEXIS 25485, at *12 (W.D.N.C. Feb. 16, 2018) ("Statements indicating that Plaintiff is racist are clearly expressions of opinion that cannot be proven as verifiably true or false."); *Edelman v. Croonquist*, 2010 U.S. Dist. LEXIS 43399, at *17-18 (D.N.J. May 4, 2010) ("The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Covino v. Hagemann*, 165 Misc.2d 465, 467 (Sup. Ct. Richmond Cnty. 1995) (dismissing defamation claim based on statement plaintiff was "racially insensitive," observing that "an expression of opinion is not actionable as defamation, no matter how offensive, vituperative, or unreasonable it may be" and noting that "[a]ccusations of racism and prejudice" have routinely been found to constitute non-actionable expressions of opinion); *see generally Adler v. Solar Power, Inc.*, 2018 U.S. Dist. LEXIS 54771, at *29-30 (S.D.N.Y. Mar. 30, 2018) ("statement that Plaintiff 'thinks all Chinese are stupid people'" qualifies as opinionated expression not actionable as a matter of law); *Rosado v. Daily News, L.P.*, 2014 N.Y. Misc. LEXIS 6163, at *4 (Sup. Ct. N. Y. Cnty. 2014) ("So-called 'Nazis,' 'racists,' 'terrorists,' 'scabs,' 'fraudsters,' and 'traitors,' no doubt a woefully incomplete list, have all come up empty-handed in court.").

Complaint's allegations arising from the broadcast descriptions of Plaintiff as a "white devil" and a "bigot cracker-ass cracker" similarly fail to state a viable cause of action. *Raible v. Newsweek, Inc.*, 341 F.Supp. 804, 807 (W.D. Pa. 1972) ("[T]o call a person a bigot or other appropriate name descriptive of his political, racial, religious, economic or sociological philosophies gives no rise to an action for libel."); *Rubinstein v. Transp. Workers' Union, Local 100*, 2005 U.S. Dist. LEXIS 19969, at *17 (S.D.N.Y. Sept. 6, 2005) (statement that defamation counter-claimant " 'endorsed and rewarded a confessed bigot' " not actionable as a matter of law); *Borzellieri v. Daily News, LP*, 975 N.Y.S.2d 365, 366 (Sup. Ct. Queens Cnty. 2013) (dismissing defamation complaint based on newspaper report that educator " 'running a Bronx Catholic school where most of the students are black and Latino' " had " 'ties to a white supremacist group' " because "characterization of the plaintiff as a 'principal of hate' " is protected opinion); *Bloomberg v. Cox Enters., Inc.*, 228 Ga. App. 178, 180-81 (Ct. App. Ga. 1997) (statement plaintiff was a "silver-tongued devil" cannot be proven false and therefore cannot be held libelous).

**D.    Speculation Over State Of Mind Is Intrinsically Unsuitable As a Foundation For Libel.**

The observations that, with respect to the students involved in the Middle Passage demonstration, Plaintiff "wanted to break their spirits" and "give them an inferiority complex" reflect inherently subjective evaluations of intent and state of mind, matters not readily verifiable and intrinsically unsuitable as a foundation for libel.  As explained in *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th Cir. 1993), imputing a motive or state of mind to a person, based on that person's publicly reported conduct, is not actionable in defamation.  This is because a person's internal thoughts "can never be known for sure (even by [that person]) and anyone is entitled to speculate on a person's motives from the known facts of his behavior." *Id.* at 1227.  Put differently,

an assertion about what motivated an individual is "not information that the plaintiff might be able to prove false in a trial." *Id.* The case law applying this well settled principle is exhaustive.[8]

A contrary rule would inhibit a wide range of expression. Commentators routinely assert, for example, that people in the news do or say things for various reasons – laudable or lamentable, benign or nefarious, inspiring or infuriating. Under Plaintiff's theory of liability, all of this speculation would be actionable. What motivated or prompted Plaintiff in this instance is unknown – perhaps even by her. As the exhibits to the Complaint demonstrate, journalists have attempted to discern her motivations. Whether or not Plaintiff was influenced – directly or indirectly, consciously or unconsciously – by a desire to induce dispiritedness or inferiority on the part of the students in her social studies class is not capable of being proven true or false. As a result, the attribution of motivation to Plaintiff on the "Donkey of the Day" segment is not actionable in defamation. *Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1432 (8th Cir. 1989) ("Assertions whose

---

[8]  *Zerman v. Sullivan & Cromwell*, 677 F.Supp. 1316, 1320 (S.D.N.Y. 1988) (statement plaintiff aimed to "set up" brokerage houses "is nothing more than speculation about . . . motivations" and, as such, is a "clear statement of opinion" which "does not support a claim for libel"); *Yohe v. Nugent*, 321 F.3d 35, 40-41 (1st Cir. 2003) (speculation about what motivated an attempted suicide not actionable); *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303-04 (8th Cir. 1986) (noting that the "singling out of . . . motive is a subtle and slippery enterprise," and finding that statement's unarticulated "implication" that a criminal prosecution was motivated by revenge was too imprecise and unverifiable to be anything other than opinion); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147-48 (8th Cir. 2012) (allegations that plaintiff caused his co-worker's suicide were non-actionable because statements about motives cannot generally be proven true or false); *Nat'l Ass'n of Gov't Employees v. BUCI Television, Inc.*, 118 F.Supp.2d 126, 131 (D. Mass. 2000) (dismissing defamation claim based on newspaper's "subjective interpretation" of plaintiffs' motives); *Heyward v. Credit Union Times*, 913 F.Supp.2d 1165, 1195 (D.N.M. 2012) (explaining that statements accusing an executive of having a "cowboy style of leadership" stemming from his desire to "show off and make a big splash" reflected critics' opinion or belief rather than any facts about the executive (internal quotation marks and citation omitted)); *Sellers v. Time Inc.*, 299 F.Supp. 582, 586 (E.D. Pa. 1969) (holding a writer's speculation about a subject's thoughts was not actionable because "[s]uch a statement is merely an expression of the opinion of him who makes it," "the truth or falsity [of which] is probably not even susceptible of proof"), *aff'd*, 423 F.2d 887 (3d Cir. 1970); *Immuno AG. v. Moor-Jankowski*, 74 N.Y.2d 548, 560 (1989) ("[s]peculations as to the motivations and potential future consequences of proposed conduct generally are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel"); *Rappaport v. VV Publ'g Corp.*, 163 Misc.2d 1, 9 (Sup. Ct. N.Y. Cnty. 1984), *aff'd*, 223 A.D.2d 515 (1st Dep't 1986) ("Because statements concerning state of mind, such as hypotheses as to motivation, are not readily verifiable as true or false, courts of this State have consistently found them to be protected."); *Lyons v. Globe Newspaper Co.*, 415 Mass. 258, 263-64 (1993) ("The article discussed three alternative explanations for the picketers' motives, thereby confirming that the writer was engaging in speculation.").

elements are unverifiable, including statements regarding motive, are 'intrinsically unsuited' to serve as a basis for libel." (citation omitted)), *cert. denied*, 493 U.S. 1036 (1990).

**E.**     **The Use of Rhetorical Hyperbole and Exaggerated, Figurative Language
Signals Protected Opinion.**

Even a cursory review of the tenor and content of Charlamagne's commentary shows that it is a classic example of the emotionally charged rhetoric of protest, and was obviously understood as such.   As the United States Supreme Court has reaffirmed on numerous occasions, mere "rhetorical hyperbole" that cannot "reasonably [be] interpreted as stating actual facts about an individual" is not actionable.   *Milkovich*, 497 U.S. at 20 (citation omitted).   Far from making verifiable factual assertions, Charlamagne expressed his views with vigorous epithets and exaggerated hyperbole.   "The tone is . . . exaggerated, and heavily laden with emotional rhetoric and moral outrage."   *Id*. at 32 (Brennan, J., dissenting).   The use of such "rhetorical hyperbole and lusty and imaginative expression" signals to the listener that what is being expressed is opinionated advocacy, not fact.   *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 244 (1991).   The remarks challenged here have all the hallmarks of impassioned opinion protected as free speech.

The imposition of liability based on Charlamagne's rhetorically exaggerated descriptions of Plaintiff concerning "a subject of substantial concern to all who lived in the community" is "constitutionally impermissible."   *Greenbelt Coop. Publ'g Assn'n v. Bressler*, 398 U.S. 6, 13 (1970).   Plaintiff cannot recover "because [*The Breakfast Club*'s listeners] would have understood that the [speaker] meant that plaintiff's . . . actions were reprehensible and destructive to the social fabric."   *Milkovich*, 497 U.S. at 25 (Brennan, J. dissenting).   The on-air characterizations of Plaintiff as a "white devil [with] her hoof in my back" and a "bigot cracker-ass cracker" are "the sort of loose, figurative, [and] hyperbolic language" that courts routinely hold to be nonactionable. *Milkovich*, 497 U.S. at 21.   *See also Steinhilber v. Alphonse*, 68 N.Y.2d at 294 (held, in aftermath

of acrimonious labor conflict where " 'audience may anticipate [the use] of epithets, fiery rhetoric or hyperbole,' " statement by defendant union official that plaintiff was a "scab" is nonactionable epithet) (quoting *Information Control Corp. v. Genesis One Computer Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)).

Given the immediate context of the fractious debate over the "lesson taught by the Plaintiff in her social studies class 408, on the Middle Passage" (Compl. ¶ 52) as reported by the global media (*id.* ¶¶ 60-61), and the fact that Charlamagne's comments were made in the setting of a freewheeling morning radio show dedicated to no-holds-barred discussion of public controversies, "the conclusion easily follows that defendant[s'] statements in this case were hyperbolic." *Von Gutfeld*, 80 N.Y.2d at 140.  Indeed, Charlamagne's memorable description of the Middle Passage lesson as "heavy" on the Helman's and covered with "extra mayonnaise" – *i.e.*, drenched in whiteness – can only be understood as figurative criticism.  Accordingly, "it would be plain to the reasonable [listener] of [Power 105.1] that [Charlamagne] was voicing no more than a highly partisan point of view" immunized from a defamation claim.  *Immuno AG.*, 77 N.Y.2d at 255.

## F.     The Comments Complained of Are Classic, Nonactionable "Pure Opinion" Based on Facts in the Public Domain.

In addition, the comments complained of are protected under both the First Amendment and New York State Constitution because they are statements of "pure opinion" based on an incident which, as the Complaint acknowledges, was "picked up by the media worldwide" (Compl. ¶ 60) and therefore known to Charlamagne's listening audience.  Indeed, the factual predicate for Charlamagne's commentary was contained in a CBS news broadcast expressly incorporated as part of the "Donkey of the Day" segment.  (Ex. 1, p. 7, ll. 10-23; p. 8, ll. 2-4)  As a matter of law, "pure" opinions are absolutely privileged and will not support an action for defamation.  *Torain v. Liu*, 279 Fed. Appx. at 47 ("Under New York and federal law, expressions of pure opinion, . . . are

not actionable, receiving full constitutional protection."). A pure expression of opinion occurs when the parties to the communication know the facts or assume their existence and the statement is obviously based on those facts as justification for the opinion. *Chau*, 771 F.3d at 129. Such statements are "not actionable because . . . a proffered hypothesis that is offered after a full recitation of the facts on which it is based is readily understood by the audience as conjecture." *Gross v. New York Times*, 82 N.Y.2d at 154. Classic examples of such "pure" opinions are those issued where the underlying facts have already been reported in the press – in this case, on a world-wide basis. (Compl. ¶¶ 60-61)

Here, as a matter of constitutional law, the challenged statements are unquestionably expressions of "pure" opinion entitled to absolute immunity. The essential facts animating Charlamagne's opinions were "transmitted to various news outlets and appeared online and in media all over the world."[9] (Compl. ¶ 60) According to the Complaint's own allegations, they were unquestionably known to the public. "Thus, the statements of opinion are nonactionable on the additional basis that there was full disclosure of the facts supporting the opinions." *Silverman v. Daily News*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (citations omitted). Charlamagne's musings can therefore only plausibly be construed as presenting his personal point of view, "an exercise in fleshing out the implications of the facts previously disclosed" on the broadcast. *Ratajack v. Brewster Fire Dep't*, 178 F.Supp.3d at 166. The premise is explicit, and the listener is by no means required to accept the characterization of Plaintiff as a "racist," a "bigot," or a "cracker-ass cracker" who was "heavy handed with the mayonnaise" in teaching her social studies

---

[9]    Plaintiff's letter brief of April 10, 2019, opposing the City of New York Defendants' motion to transfer venue of this case to the Southern District of New York emphasized that the allegations in paragraph 53 of the Complaint recounting the classroom Middle Passage lesson were "picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world, *but particularly within the counties comprising the City of New York*." [Dkt. No. 10, p. 2; emphasis supplied]

class about the history of slavery. *Levin v. McPhee*, 917 F.Supp. at 240 ("The reader is able to draw his or her own conclusion from the facts and agree or disagree with [the] statement.") (footnote omitted).

As in the above cases, listeners to *The Breakfast Club* could interpret Charlamagne's remarks and decide for themselves whether his opinions regarding Plaintiff's conduct were justified, thereby contributing to public discussion on a matter of public concern.[10] This is the essence of pure opinion, which Plaintiff may not stifle through the instant litigation.

> Based upon the facts stated and public debate provoked by the statements, each reader may draw his own conclusion as to whether [the speaker's] views should be supported or challenged. In short, the matter is subject to public debate. ***Plaintiff may not delimit that debate by seeking to punish, through libel damages, those who would contribute to the debate through the circulation of strong, even harsh, contrasting opinions.***

*Rinaldi v. Holt, Rinehart & Winston*, 42 N.Y.2d at 381 (emphasis supplied).

## POINT IV

**IN THE ALTERNATIVE, PLAINTIFF HAS NOT PLEADED AND CANNOT PLAUSIBLY ALLEGE PUBLICATION OF THE CHALLENGED COMMENTARY WITH GROSS IRRESPONSIBILITY – A FLAW THAT LIKEWISE REQUIRES THE DISMISSAL OF THE COMPLAINT'S DEFAMATION CLAIM**

Any defamation plaintiff must demonstrate the requisite degree of fault as an essential element of a claim seeking to impose liability for published speech. *Gertz v. Robert Welch*, 418 U.S. at 346-47. Even assuming for purposes of this motion that Plaintiff is a private figure under

---

[10] The U.S. Supreme Court has repeatedly emphasized that, where discussion of public affairs is concerned, the protection of free speech is at its zenith. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 778 (1986) ("speech of public concern is at the core of the First Amendment's protections") (citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985)); *Garrison v. Louisiana*, 379 U.S. 64, 74-5 (1964) ("speech concerning public affairs is more than self-expression; it is the essence of self government"). Thus, the " 'breathing space' " which " 'freedoms of expression require in order to survive,' " *Hepps*, 475 U.S. at 772 (quoting *New York Times v. Sullivan*, 376 U.S. at 272), mandates protection for the imaginative expression intrinsic to "the free flow of ideas and opinions on matters of public interest and concern" that is at "the heart of the First Amendment." *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 (1988).

the First Amendment (*see* Compl. ¶¶ 121-126),[11] she must plead and prove that Charlamagne's comments addressing legitimate matters of public concern were made with "gross irresponsibility" – *i.e.*, "without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199 (1975). The Complaint does not and cannot meet this constitutional fault standard, and its defamation claim fails for this additional reason.

The Complaint's allegations emphasize that the Middle Passage lesson was ubiquitously covered "in media all over the world." (Compl. ¶ 60) Charlamagne's comments were expressly predicated on the facts reported in a CBS News broadcast embedded in the "Donkey of the Day" segment. (Ex. 1, p. 7, ll. 10-23; p. 8, ll. 2-4) As a matter of law, Charlamagne cannot be found grossly irresponsible for relying on a reputable news source for the information providing the basis for his commentary. *Lerman v. Chickleberry Publ'g, Inc.*, 521 F.Supp. 228, 235 (S.D.N.Y. 1981) (publisher is privileged to publish information received from a dependable source of news unless it had, or should have had, substantial reasons to question the accuracy of the information or the bona fides of the source).

Because Plaintiff cannot plausibly allege any facts that would support a finding that Charlamagne had, or should have had, "substantial reasons to question the accuracy" of the contemporaneous CBS News report, a finding of gross irresponsibility cannot be sustained by the allegations in the Complaint. *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 550, *rearg. denied*, 52 N.Y.2d 899 (1980); *see also Bryks v. Canadian Broadcasting Corp.*, 928 F.Supp. 381, 384-86

---

[11] Charlamagne expressly reserves the right to contest Plaintiff's alleged private-figure status by establishing that she qualifies as a general, limited purpose, or involuntary public figure under the First Amendment, requiring her to plead facts plausibly demonstrating publication with "actual malice." *New York Times v. Sullivan*, 376 U.S. at 279-80. No such facts are evident in the Complaint, as confirmed *a fortiori* by its failure to plead with specificity any facts that would support a plausible inference of "gross irresponsibility."

(S.D.N.Y. 1996) (CNN not grossly irresponsible in republishing CBC's report that rabbi had been charged with sexual misconduct); *Chaiken v. VV Publ'g Corp.*, 907 F.Supp. 689, 696-97 (S.D.N.Y. 1995) (publisher not grossly irresponsible for relying on established writer for implication that West Bank Israeli settlers condoned terrorism), *aff'd*, 119 F.3d 1018 (2d Cir. 1997); *Duane Reade Inc. v. Local 338*, 6 Misc.3d 790, 795 (Sup. Ct. N.Y. Cnty. 2004) (allegation that defendants repeated false allegations contained in *New York Post* article failed to plead gross irresponsibility).

Plaintiff is required to present factual allegations plausibly establishing each element of his defamation claim – including the applicable fault standard – in order to "unlock the doors of discovery." *Iqbal*, 556 U.S. at 678. She has failed to do so.

## POINT V

### THE COMPLAINT'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST CHARLAMAGNE SHOULD BE DISMISSED

**A.    The Complaint's IIED Claim Should Be Dismissed As an Impermissible Attempt to Avoid Dispositive Constitutional Principles.**

The Complaint's cause of action sounding in intentional infliction of emotional distress ("IIED") cannot circumvent the constitutional privileges and defenses delineated above that apply to defeat its cause of action for defamation.  In *Hustler Magazine v. Falwell*, 485 U.S. at 56, the U.S. Supreme Court held that the same First Amendment defenses applicable to libel claims required the dismissal of an IIED claim arising out of published statements concerning a public-figure plaintiff.  This principle applies equally to private-figure plaintiffs (*see* Compl. ¶¶ 121-126) where, as here, the speech at issue addresses a subject of legitimate news interest.  *Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 1215-17 (2011); *Virelli v. Goodson-Todman Enters., Ltd.*, 142 A.D.2d 479, 486 (3d Dep't 1989) (held, private-figure plaintiffs could not maintain IIED claim against newspaper based on reporter's alleged breach of agreement not to disclose their identities

because "the heightened standard of media fault required under the constitutional guarantees of freedom of speech and of the press is not applicable only to defamation actions").

**(1)      A Subjective "Outrageousness" Standard Is Prohibited Under the First Amendment.**

Observing that vehement, and even "outrageous," criticism of public figures is part of the robust debate encouraged by the First Amendment, the *Hustler Magazine* Court determined that allowing recovery for emotional distress would permit speech to be punished based on an unacceptably subjective standard:

> If it were possible by laying down a principled standard to separate the one from the other, public discourse would probably suffer little or no harm. But we doubt that there is any such standard, and we are quite sure that the pejorative description "outrageous" does not supply one. *"Outrageousness" in the area of political and social discourse has an inherent subjectiveness about it which would allow a jury to impose liability on the basis of the jurors' tastes or views, or perhaps on the basis of their dislike of a particular expression. An "outrageousness" standard thus runs afoul of our longstanding refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact on the audience.*

485 U.S. at 55 (emphasis supplied); *see also Snyder v. Phelps*, 562 U.S. 443, 131 S. Ct. at 1219.

As the Supreme Court emphasized, the fundamental problem with the "outrageousness" standard asserted by Plaintiff here is that it may readily become a means of censorship by allowing the majoritarian suppression of unpopular speech – a result anathema to the "free flow of ideas and opinions on matters of public interest and concern" protected "[a]t the heart of the First Amendment." *Id.* at 50.  In this regard, Plaintiff's theory of recovery has the cardinal constitutional point precisely backwards – the Supreme Court has frequently acknowledged that speech serves an important function when it is provocative or invites dispute or causes unrest.  *FCC v. Pacifica Foundation*, 438 U.S. 726, 745 (1978) ("Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection.").

22

Based on *Hustler Magazine v. Falwell, supra*, and *Snyder v. Phelps, supra*, the First Amendment requires dismissal of the Complaint's IIED claim as a matter of law.

       **(2)**     **The Complaint's IIED Claim Is Barred As Redundant of Its Defamation Claim.**

The Complaint's IIED claim is nothing more than an attempt to recover parasitic emotional distress damages based on the same radio broadcast giving rise to its defamation claim (*see* Compl. ¶¶ 160, 205), and is therefore barred by the First Amendment.  By the simple expedient of relabeling her cause of action, Plaintiff cannot avoid the constitutional impediments which defeat her attempt to impose liability based on the content of a topical radio show discussing public affairs where the protection afforded by the First Amendment is at its zenith. *Chaiken v. VV Publ'g Corp.*, 907 F.Supp. at 699 (noting that IIED claim "should not be used to circumvent the established and carefully balanced framework of constitutional and state libel law").  Courts have repeatedly dismissed as redundant claims for emotional distress attributable to allegedly defamatory statements. *Levin v. McPhee*, 917 F.Supp. at 242-43 (held, plaintiff should not be able to recover emotional distress damages arising from statements published in book, and claim dismissed as duplicative of libel claim); *Anyanwu v. Columbia Broad. Sys.*, 887 F.Supp. 690, 693 (S.D.N.Y. 1995) (citing New York cases that have long held that separate causes of action, including emotional distress claims, that are "essentially defamation claims should not be entertained"); *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F.Supp.3d 705, 730 (S.D.N.Y. 2014) (dismissing emotional distress claim where facts fell "entirely within the ambit of the defamation claim").

**B.**     <u>The Disputed Statements Are Not "Extreme and Outrageous" Within the Stringent Definition of the Emotional Distress Tort</u>.

Recognizing that "emotional distress" is easily asserted, courts have imposed strict, objective requirements which are difficult to satisfy.  Indeed, "[i]t is nearly impossible in New

York for a plaintiff to state a viable claim for intentional infliction of emotional distress." *Idema v. Wager*, 120 F.Supp.2d 361, 370 (S.D.N.Y. 2000), *aff'd*, 30 Med. L. Rptr. (BNA) 1439 (2d Cir. 2002). An IIED claim "predicates liability on the basis of extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society." *Freihofer v. Hearst Corp.*, 65 N.Y. 135, 143 (1984) (citations omitted).

Plaintiff must plead and prove four elements in order to recover on the Complaint's IIED cause of action: (1) the conduct must be extreme and outrageous; (2) it must result in emotional distress; (3) the emotional distress must be severe; and (4) the infliction must be intentional, made with conscious disregard of a high degree of probability that severe emotional distress will result. *See Restatement (Second) of Torts*, § 46(1) (1977); *see also Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). The caselaw applying these elements makes clear that an IIED claim cannot be sustained where, as here:

- Defendant's speech was not "***utterly intolerable***" by objective societal standards, however objectionable it may have been from Plaintiff's personal point of view;

- The challenged statements were part of Defendant's regular business of broadcasting on station WWPR-FM, thus making it impossible to show, as Plaintiff must, that the allegedly tortious speech was ***unrelated to any business purpose***. Indeed, here the activity being challenged is constitutionally protected speech concerning a topical matter of public interest, and the Complaint itself avers that the commentary at issue was "broadcast on the Defendant's nationally syndicated radio show, The Breakfast Club" (Compl. ¶ 106); and

- The program was aired to the general public, precluding Plaintiff from satisfying the requirement that the conduct complained of be purposefully directed at her through a ***"campaign" of repeated harassment***.

Failure to satisfy any one of these requirements would defeat Plaintiff's ability to maintain a cause of action. She fails to satisfy any of them, and the Complaint's IIED claim should therefore be dismissed.

The governing standard of outrageousness, a question of law for the court, is so "rigorous, and difficult to satisfy," *Howell*, 81 N.Y.2d at 122 (citations omitted), that of all the intentional infliction claims considered by the New York Court of Appeals, "every one has failed because the alleged conduct was not sufficiently outrageous." *Id.*   Charlamagne's exercise of his constitutionally protected rights of free expression in this instance is clearly not the type of intentionally outrageous activity required under New York law to award damages for emotional distress.[12]   *Bement v. N.Y.P. Holdings, Inc.*, 307 A.D.2d 86, 92 (1st Dep't 2003) ("[I]t is long-settled that publication of a single, purportedly false or defamatory article regarding a person does not constitute extreme and outrageous conduct as a matter of law."); *Van Buskirk v. New York Times Co.*, 28 Med. L. Rptr. (BNA) 2525, 2528 (S.D.N.Y. 2000) ("authorship" of article attempting to "disprove statements attributed to [plaintiff] suggesting that he had committed 'war crimes' . . . cannot reasonably be described as outrageous behavior").

The Complaint's IIED claim simply cannot be salvaged under the law.  This is especially true in light of the universal rule that the "outrageousness" of the behavior must be measured in light of the context of its occurrence.  The "Donkey of the Day" segment at issue is replete with mocking and derisive treatment of a controversial subject that polarized the community.  (*See* Ex. 1)  As pleaded, the Complaint's claim that Plaintiff was emotionally traumatized by the single radio broadcast at issue fails to state a cause of action.

---

[12]   *See, e.g., Freihofer*, 65 N.Y.2d at 137-38 (held, defendants' publication of articles containing information obtained from confidential court records relating to divorce action "[c]learly . . . do[es] not meet this standard" even though articles reported "charges and countercharges of mental and physical cruelty and adultery which formed the legal basis" for the divorce action); *Idema*, 120 F.Supp.2d at 370 ("[a] possible error of word choice on the part of defendants" in using word "militant" to describe plaintiff "neither constitutes behavior that 'goes beyond all possible bounds of decency' nor should be regarded as 'atrocious and utterly intolerable in a civilized community'") (citations omitted).

**C.**     **Charlamagne's Commentary On a Morning Radio Program Broadcast to the General Public Was Not a Campaign of Harassment Directed at Plaintiff.**

It is apparent from the allegations in the Complaint itself that the February 7, 2018, broadcast at issue was not a targeted effort to hurt Plaintiff.  Instead – as *The Breakfast Club* is every weekday – it was directed to the general public.  This undeniable fact supports dismissal of the Complaint's IIED claim for three independent legal reasons.

First, because they were part of WWPR's regular business of radio broadcasting, the challenged statements cannot be actionable.  " 'If a defendant's primary purpose was to advance its own business interests, and any conduct that harmed plaintiff was incidental, defendant has not committed the New York tort of intentional infliction of emotional distress.' " *Barnum v. Millbrook Care L.P.*, 850 F.Supp. 1227, 1238-39 (S.D.N.Y) (citations omitted) (dismissing claim where it was clear from complaint that defendant, "at worst, was selfishly pursuing its own business interests at plaintiff's expense") (collecting cases), *aff'd*, 43 F.3d 1458 (2d Cir. 1994).

Charlamagne's "proper business" is hosting a morning radio show known for humorously calling out hypocrisy, dubious conduct, and social contretemps on its "Donkey of the Day" segment.  *Waldron v. Ball Corp.*, 210 A.D.2d 611, 613 (3d Dep't 1994) ("To sustain a cause of action for intentional infliction of emotional distress, plaintiff is required to demonstrate that defendants committed an outrageous act and that the desire to cause plaintiff emotional distress was more than incidental to defendants' proper business motives.") (citation omitted).  Nothing in the Complaint indicates that the "Donkey of the Day" segment departed from its ordinary practices in this instance.

Second, because the Complaint acknowledges that the broadcast was directed to Power 105.1's general listening audience, dismissal is required by the well-established rule that an IIED cause of action must be predicated on conduct that literally is directed at the plaintiff.  *Levin*, 917

F.Supp. at 243 ("There is no evidence that the defendants directly targeted plaintiff. Indeed, they only quoted others' comments about plaintiff's involvement in a historical event.").

Third, as a matter of law, a single radio broadcast relating to a current news event (Compl. ¶¶ 58-61, 106-107) – Plaintiff's reported choice to instruct her pupils by a crude physical demonstration of "the horrible conditions and atrocities slaves were subjected to on the Middle Passage" (*id.* ¶ 53) – cannot constitute the sort of "'deliberate and malicious campaign of harassment or intimidation'" that is required to state a claim. *Doe v. American Broadcasting Cos.*, 152 A.D.2d 482, 483 (1st Dep't 1989) (quoting *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 569 (1970)). *See also Lopez v. City of New York*, 901 F.Supp. 684, 690-91 (S.D.N.Y. 1995) (dismissing IIED claim because "plaintiffs must [but could not] show, among other things, that they were subjected to a campaign of harassment by defendants").

Here, Charlamagne's remarks on the February 7, 2018, "Donkey of the Day" segment were, as the Complaint concedes, driven by events reported globally by the press depicting the racially insensitive and demeaning history lesson on the slave trade imparted by Plaintiff to those she was entrusted with teaching in her social studies class. The Complaint does not allege that the speech was repeated at any other time. Such topical commentary falls far short of the requisite "deliberate and malicious campaign" required for the Complaint's IIED claim to withstand dismissal.

## POINT VI

### THE COMPLAINT'S NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS CLAIM FAILS TO STATE A CAUSE OF ACTION AGAINST CHARLAMAGNE

The Complaint's cause of action for negligent infliction of emotional distress against Charlamagne ("NIED") is also deficient. The reason is straightforward: "[w]here, as here, recovery is sought against news media defendants for injuries to reputation and for emotional distress arising out of publication on a matter of public concern, ordinary negligence is a

constitutionally insufficient basis upon which to impose liability." *Virelli v. Goodson-Todman Enters.*, 142 A.D.2d at 485-86. In other words, the alleged infliction of emotional distress must arise out of intentional conduct in order to meet "the heightened standard of media fault required under the constitutional guarantees of freedom of speech and of the press." *Id.* at 486. By definition, an NIED claim arising from newsworthy radio commentary is insufficient.

Here, the Complaint's NIED claim sets forth an undifferentiated and wholly conclusory allegation of "Defendants'" general negligence with respect to the publication of statements regarding Plaintiff. (Compl. ¶¶ 196-197) The claim should be dismissed because such a conclusory allegation – which Charlamagne wholeheartedly denies – is insufficient to state an NIED claim, let alone to meet the heightened constitutional fault standard that applies when the claim is asserted against a media defendant and arises out of a topical radio broadcast concerning a matter of legitimate public interest. *Virelli*, 142 A.D.2d at 485-86; *Rubinstein v. New York Post Co.*, 128 Misc.2d 1, 3 (Sup. Ct. N.Y. Cnty. 1985) (dismissing emotional distress claim based on allegation that newspaper "negligently and carelessly published false information").

## POINT VII

### THE COMPLAINT'S CLAIM SOUNDING IN NEGLIGENCE FAILS TO STATE A CAUSE OF ACTION AGAINST CHARLAMAGNE

To state a negligence claim under New York law, a plaintiff must allege: (1) a duty owed; (2) a breach of that duty; (3) causation; and (4) damages. *See Trachtenberg v. FailedMessiah.com*, 43 F.Supp.3d 198, 205 (E.D.N.Y. 2014). Here, notwithstanding the Complaint's conclusory allegation that "[a]ll Defendants" had a duty not to depart from "standards of good and accepted practice" (Compl. ¶ 189) with respect to Plaintiff, Charlamagne owed no duty to Plaintiff. It is well-settled that the media owes "no duty to any individual to transmit the proper information." *Rubinstein v. New York Post Co.*, 128 Misc.2d at 5 ("As a newspaper of general circulation, its

obligation, if any, was to inform its readers of the news, and no special relationship existed towards any particular reader." *See also Albright v. Morton*, 321 F.Supp.2d. 130, 141 (D. Mass. 2004) ("Plaintiffs fail to articulate the duty defendants owed to them").  For this reason, Plaintiff's negligence claim is defective as a matter of law.[13]

Even if Charlamagne owed some duty to Plaintiff – which he does not – the Complaint's negligence cause of action would still warrant dismissal because it impermissibly duplicates, and is subsumed by, its defamation claim.  As this Court explained in dismissing a negligent publication claim:

> plaintiff's failure to plead that defendant owed a duty to plaintiff and that defendant breached that duty strongly suggests that plaintiff's negligence claim is duplicative of her defamation claim. . . . [T]he conduct plaintiff alleges – that defendant published a false article about her – falls well within the tort of defamation.

*Trachtenberg*, 43 F.Supp.3d at 205 (citation omitted).  In short, "a defamation cause of action is not transformed into one for negligence merely by casting it as [such]." *Colon v. City of Rochester*, 307 A.D.2d 742, 744 (4th Dep't 2003) (internal quotation marks omitted), *lv. denied*, 100 N.Y.2d 628, (2003).

In preventing attempts to evade the exacting constitutional requirements imposed on defamation claims, courts must keep "a watchful eye for claims sounding in defamation that have been disguised as other causes of action." *Pusey v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 91083, at *9 (E.D.N.Y. July 14, 2015) (*quoting Lesesne v. Brimecome*, 918 F.Supp.2d 221, 224 (S.D.N.Y. 2013)).  This admonition carries particular force where, as alleged here, the basis of the negligence claim against Charlamagne is that he "fail[ed] to conduct a reasonable investigation" (Compl. ¶ 136)

---

[13]   The lack of a duty also supports dismissal of plaintiff's negligent infliction of emotional distress claim, discussed at POINT VI, *supra*.  *See Glendora v. Marshall*, 947 F.Supp. 707, 713 (S.D.N.Y. 1996) (dismissing negligent emotional distress claim based on failure to allege that cable television operators owed duty to plaintiffs), *aff'd*, 129 F.3d 113 (2d Cir. 1997).

of the accusations that had been reported against Plaintiff prior to offering his commentary on the broadcast – the very same allegation at the heart of the Complaint's defamation claim.  (*Id.* ¶ 96) The Complaint's cause of action for negligence should therefore be dismissed.

## CONCLUSION

Based on the foregoing reasons and authority, Plaintiff's allegations do not come even remotely close to "nudg[ing]" her claims "across the line from conceivable to plausible," as required by Fed. R. Civ. P. 12.  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.  The Complaint should therefore be dismissed against Defendant Charlamagne, in it its entirety and with prejudice, for failure to state a cause of action, together with such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:   July 1, 2019

GREENBERG TRAURIG, LLP

By:   */s/ Cynthia E. Neidl*
  Cynthia E. Neidl
  Michael J. Grygiel (Application for
   admission *pro hac vice* forthcoming)
  54 State Street, 6th Floor
  Albany, New York 12207
  Tel: (518) 689-1400
  neidlc@gtlaw.com
  grygielm@gtlaw.com

  *Attorneys for Defendant Lenard Larry*
  *McKelvey a/k/a Charlamagne tha God*