UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - - -X
PATRICIA CUMMINGS,

               Plaintiff,                        Docket No.
                                                     19-cv-01664 (SJF) (SIL)

       -against-

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; CITY OF NEW YORK
OFFICE OF SPECIAL INVESTIGATIONS; NYC MAYOR
BILL de BLASIO; GIULIA COX; COURTNEY WARE; BEN
CHAPMAN; NEW YORK DAILY NEWS; DR. ANDRE PERRY;
THE HECHINGER REPORT a/k/a HECHINGER INSTITUTE ON
EDUCATION AND THE MEDIA; LENARD LARRY McKELVEY
a/k/a CHARLAMAGNE THA GOD; WWPR-FM (105.1 MHZ);
iHEARTMEDIA; CLEAR CHANNEL COMMUNICATIONS, INC.;
NEW YORK STATE SENATOR, KEVIN S. PARKER; COUNCILMAN,
JUMAANE D. WILLIAMS; COUNCILMAN, DANIEL DROMM;
COALITION OF EDUCATIONAL JUSTICE; ANGEL MARTINEZ;
NATASHA CAPERS, and "JOHN DOE AND JANE DOE # 1-100"
said names being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants, and/or
employees of the aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally, Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF LAW IN SUPPORT OF**
**DAILY NEWS, L.P. AND BEN CHAPMAN'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

                                        DAVIS WRIGHT TREMAINE LLP

                                        Laura R. Handman
                                        James Rosenfeld
                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY  10020-1104
                                        Phone:   (212) 489-8230
                                        Fax:      (212) 489-8340
                                        laurahandman@dwt.com
                                        jamesrosenfeld@dwt.com

                                        *Attorneys for Defendants Daily News L.P. &*
                                        *Ben Chapman*

*Of Counsel*:
Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

STATEMENT OF FACTS .............................................................................................. 2

      A.    The Parties ................................................................................................. 2

      B.    Plaintiff's "Teachable Moment" on Slavery and the Department of
            Education's Subsequent Investigation .................................................... 3

      C.    The *Daily News* Defendants Report On The Department of Education's
            Investigation................................................................................................ 5

      D.    Plaintiff Initiates A Lawsuit Against The *Daily News* Defendants And
            Others, And The *Daily News* Defendants Continue To Cover The Story ............. 6

I.     COURTS REGULARLY DISMISS DEFAMATION ACTIONS .................................... 7

II.    THE *DAILY NEWS* ARTICLES ARE ABSOLUTELY PRIVILEGED UNDER
       NEW YORK CIVIL RIGHTS LAW SECTION 74 ......................................... 9

      A.    The Department of Education's Investigation And Plaintiff's Filings
            In This Litigation Are "Proceedings" Covered By Section 74 ............................ 11

      B.    The *Daily News* Defendants Fairly and Accurately Reported On These
            Proceedings ............................................................................................... 14

III.   STATEMENTS DESCRIBING PLAINTIFF'S LESSON AS "RACIST" ARE
       NON-ACTIONABLE OPINIONS ................................................................. 17

IV.   PLAINTIFF'S CLAIMS FOR NEGLIGENCE, NEGLIGENT INFLICTION
       OF EMOTIONAL DISTRESS, AND INTENTIONAL INFLICTION OF
       EMOTIONAL DISTRESS SHOULD BE DISMISSED AS DUPLICATIVE ............... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Amar v. Hillcrest Jewish Ctr.*,
    2009 WL 891795 (E.D.N.Y. Mar. 31, 2009) .......................................................8, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................7, 8

*Baraliu v. Vinya Capital, L.P.*,
    2009 WL 959578 (S.D.N.Y. Mar. 31, 2009) ...........................................................23

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................7, 8

*Berrio v. City of N.Y.*,
    2017 WL 118024 (S.D.N.Y. Jan. 10, 2017) ...........................................................23

*Biro v. Condé Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012) .....................................................................15

*Bloom v. Fox News of L.A.*,
    528 F. Supp. 2d 69 (E.D.N.Y. 2007) ......................................................................21

*Carto v. Buckley*,
    649 F. Supp. 502 (S.D.N.Y. 1986) .........................................................................19

*Celle v. Filipino Reporter Enters. Inc.*,
    209 F.3d 163 (2d Cir.2000) .....................................................................................17

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ......................................................................................3

*Chao v. Mt. Sinai Hosp.*,
    2010 WL 5222118 (S.D.N.Y. Dec. 17, 2010),
    *aff'd*, 476 F. App'x 892 (2d Cir. 2012) ..................................................................24

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014) ....................................................................................12

*Church of Scientology Int'l v. Time Warner, Inc.*,
    903 F. Supp. 637 (S.D.N.Y. 1995), *aff'd sub nom. Church of Scientology Int'l
    v. Behar*, 238 F.3d 168 (2d Cir. 2001) .....................................................................8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1992) ........................................................................................3

*D'Annunzio v. Ayken, Inc.*,
    876 F. Supp. 2d 211 (E.D.N.Y. 2012) ...........................................................................9

*Davison v. Goodwill Indus. of Greater N.Y. & Northern N.J., Inc.*,
    2012 WL 1067955 (E.D.N.Y. Mar. 28, 2012) .......................................................23

*DiRuzza v. Lanza*,
    685 F. App'x 34 (2d Cir. 2017) ..............................................................................23

*Done v. HSBC Bank USA*,
    2010 WL 3824142 (E.D.N.Y. Sept. 23, 2010) .........................................................3

*Edelman v. Croonquist*,
    2010 WL 1816180 (D.N.J. May 4, 2010) ...............................................................18

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
    623 F. Supp. 1038 (E.D.N.Y. 1985), *aff'd*, 806 F.2d 392 (2d Cir. 1986).............11

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
    194 F. Supp. 3d 263 (S.D.N.Y. 2016)....................................................................20

*Fine v. ESPN, Inc.*,
    11 F. Supp. 3d 209 (N.D.N.Y. 2014) .....................................................................11

*Gonzalez v. Gray*,
    69 F. Supp. 2d 561 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) ...........10

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*,
    2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ........................................................13

*Idema v. Wagner*,
    120 F. Supp. 2d 361 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).........9

*In re Merrill Lynch & Co.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005) .............3

*LaFaro v. New York Cardiothoracic Grp.*,
    570 F.3d 471 (2d Cir. 2009)....................................................................................8

*Macineirghe v. Cty. of Suffolk*,
    2015 WL 4459456 (E.D.N.Y. July 21, 2015) ........................................................24

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..................................................................................................8

*Procter & Gamble Co. v. Quality King Distribs., Inc.*,
    974 F. Supp. 190 (E.D.N.Y. 1997) ......................................................................9, 10

*Riel v. Morgan Stanley,*
  2007 WL 541955 (S.D.N.Y. Feb. 16, 2007),
  *aff'd,* 299 F. App'x 91 (2d Cir. 2008) .................................................................13

*Rivers v. Towers, Perrin, Forster & Crosby Inc.,*
  2009 WL 817852 (E.D.N.Y. Mar. 27, 2009) .......................................................24

*Romero v. City of N.Y.,*
  839 F. Supp. 2d 588 (E.D.N.Y. 2012) .................................................................22

*Smith v. Sch. Dist. of Philadelphia,*
  112 F. Supp. 2d 417 (E.D. Pa. 2000) ...................................................................18

*Stevens v. Tillman,*
  855 F.2d 394 (7th Cir. 1988) ...............................................................................18

*Test Masters Educ. Servs. v. NYP Holdings. Inc.,*
  603 F. Supp. 2d 584 (S.D.N.Y. 2009) .................................................................20

*Torain v. Liu,*
  2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007),
  *aff'd,* 279 F. App'x 46 (2d Cir. 2008) .................................................................19

*Washington Post Co. v. Keogh,*
  365 F.2d 965 (D.C. Cir. 1966) ...............................................................................8

*White v. Fraternal Order of Police,*
  707 F. Supp. 579 (D.D.C. 1989), *aff'd,* 909 F.2d 512 (D.C. Cir. 1990) ...........11, 12

*Zappin v. NYP Holdings, Inc.,*
  2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018), *aff'd,* --- F. App'x ---,
  2019 WL 1782635 (2d Cir. Apr. 24, 2019) .....................................................15, 16

**State Cases**

*Alf v. Buffalo News,*
  100 A.D.3d 1487 (4th Dep't 2012), *aff'd,* 21 N.Y.3d 988 (2013) .........................16

*Brian v. Richardson,*
  87 N.Y.2d 46 (1995) .............................................................................................17

*Butler v. Delaware Otsego Corp.,*
  203 A.D.2d 783 (3d Dep't 1994) ..........................................................................22

*Chanko v. Am. Broad. Cos.,*
  27 N.Y.3d 46 (2016) .............................................................................................23

*Chapadeau v. Utica Observer-Dispatch,*
    38 N.Y.2d 196 (1975) ...........................................................................................21

*Cholowsky v. Civiletti,*
    16 Misc. 3d 1138(A), (Sup. Ct. Suffolk Cty. 2007),
    *aff'd,* 69 A.D.3d 110 (2d Dep't 2009) .............................................................10, 16

*Colon v. City of Rochester,*
    307 A.D.2d 742 (4th Dep't 2003) ........................................................................22

*Como v. Riley,*
    287 A.D.2d 416 (1st Dep't 2001) .........................................................................24

*Covino v. Hagemann,*
    165 Misc. 2d 465 (Sup. Ct. Richmond Cty. 1995) .........................................17, 18

*Daniel Goldreyer, Ltd. v. Van de Wetering,*
    217 A.D.2d 434 (1st Dep't 1995) .........................................................................10

*Davis v. Boheim,*
    24 N.Y.3d 262 (2014) ...........................................................................................17

*Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of N.Y.,*
    101 A.D.2d 175 (1st Dep't 1984) ....................................................................11, 15

*Goetz v. Kunstler,*
    164 Misc. 2d 557 (Sup. Ct. N.Y. Cty. 1995) .......................................................19

*Gross v. N.Y. Times Co.,*
    82 N.Y.2d 146 (1993) ......................................................................................17, 18

*Gurda v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.,*
    56 N.Y.2d 705 (1982) ...........................................................................................16

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.,*
    49 N.Y.2d 63 (1979) .........................................................................................9, 10

*Howell v. N.Y. Post Co.,*
    81 N.Y.2d 115 (1993) ...........................................................................................23

*Iafallo v. Nationwide Mut. Fire Ins. Co.,*
    299 A.D.2d 925 (4th Dep't 2002) ........................................................................21

*Immuno A.G. v. Moor-Jankowski,*
    145 A.D.2d 114 (1st Dep't 1989), *aff'd,* 74 N.Y.2d 548 (1989),
    *vacated,* 497 U.S. 1021 (1990), *aff'd,* 77 N.Y.2d 235 (1991) ...................................8

*Karaduman v. Newsday, Inc.*,
   51 N.Y.2d 531 (1980) ............................................................................8

*Kaye v. Trump*,
   58 A.D.3d 579 (1st Dep't 2009) ........................................................23

*Lennon v. Cuyahoga Cty. Juvenile Ct.*,
   2006 WL 1428920 (Ohio Ct. App. May 25, 2006)..............................18

*Misek-Falkoff v. American Lawyer Media, Inc.*,
   300 A.D.2d 215 (1st Dep't 2002) ................................................15, 16

*Mondello v. Newsday, Inc.*,
   6 A.D.3d 586 (2d Dep't 2004) ..........................................................20

*Mulder v. Donaldson, Lufkin & Jenrette*,
   161 Misc. 2d 698 (Sup. Ct. N.Y. Cty. 1994),
   *aff'd*, 208 A.D.2d 301 (1st Dep't 1995)..................................10, 11, 15

*Pelayo v. Celle*,
   270 A.D.2d 469 (2d Dep't 2000) ........................................................9

*Posner v. N.Y. Law Publ'g Co.*,
   228 A.D.2d 318 (1st Dep't 1996) ......................................................10

*Rickerson v. Porsch*,
   2019 WL 1289734 (Sup. Ct. Seneca Cty. Feb. 5, 2019)....................13

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
   42 N.Y.2d 369 (1977) ......................................................................17

*Roth v. United Fed'n of Teachers*,
   5 Misc. 3d 888 (Sup. Ct. Kings Cty. 2004)......................................20

*Russell v. Davies*,
   97 A.D.3d 649 (2d Dep't 2012) ........................................................19

*Saleh v. N.Y. Post*,
   78 A.D.3d 1149 (2d Dep't 2010) ........................................................9

*SentosaCare LLC v. Lehman*,
   2018 WL 692568 (Sup. Ct. Kings Cty. Jan. 25, 2018), *appeal docketed*,
   No. 2018-03473 (N.Y. App. Div. 2d Dep't Nov. 20, 2018)................11

*Sheila C. v. Povich*,
   11 A.D.3d 120 (1st Dep't 2004) ......................................................23

*Silverman v. Daily News, L.P.*,
129 A.D.3d 1054 (2d Dep't 2015) ...................................................................................18, 19

*Weidlich v. Rung*,
2017 WL 4862068 (Tenn. Ct. App. Oct. 26, 2017) .............................................................18

*Wolkstein v. Morgenstern*,
275 A.D.2d 635 (1st Dep't 2000) .........................................................................................24

**State Statutes**

N.Y. Gen. Mun. Law § 50-e ..............................................................................................13

N.Y. Civil Rights Law § 74 ...................................................................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................................8

N.Y. Const.. .........................................................................................................................17

Defendants Daily News, L.P., incorrectly sued as New York Daily News (the "*Daily News*"), and Ben Chapman (together with the *Daily News*, the "*Daily News* Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Verified Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This defamation claim stems from a misguided history lesson given by Plaintiff Patricia Cummings ("Plaintiff"), then employed as a public school teacher at a Bronx middle school. After her students misbehaved during a movie about slavery, Plaintiff claims that a "teachable moment" presented itself; she "engaged" three or four of them – all African-American – to "sit very close together for a demonstration to exhibit the cramped conditions on [a slave] ship." Multiple students in the classroom reported that she physically pushed the "student volunteers" closer together, asking them "how it felt" to be a slave. Indeed, some of those present alleged (in a report incorporated into the complaint) that she pushed her knee or foot into the students' backs as she posed this question.

A student and parent, upset by Plaintiff's actions, immediately filed complaints with the school's principal who in turn elevated their concerns to the New York City Department of Education. The Department opened an investigation into Plaintiff shortly thereafter. Months later, after interviewing various students and staff members, the Department concluded that although Plaintiff's actions did not rise to the level of "corporal punishment," they reflected "poor judgment" and "significantly diverged from best practices." Plaintiff was fired. The *Daily News*, in a series of articles authored by Mr. Chapman and others, accurately reported on the allegations against Plaintiff and the Department's investigation into these allegations as the situation developed (the "*Daily News* Articles").

Now, claiming that the Department of Education's report actually "exonerated" her and hinting that she is testing the waters for a larger "reverse racism" class action lawsuit, Plaintiff brings this suit against myriad defendants, including the City of New York, the Department of Education, local lawmakers, and media organizations and journalists like the *Daily News* and Mr. Chapman whose articles – according to Plaintiff – were "fake news."  Despite this posturing, Plaintiff's claims against the *Daily News* and Mr. Chapman fail for three reasons:

*First*, the *Daily News* Articles are fair and true reports of official and judicial proceedings – the investigation into Plaintiff and her subsequent documents initiating this lawsuit – and are therefore absolutely privileged under New York Civil Rights Law § 74.

*Second*, references to Plaintiff's actions as "racist" in the *Daily News* Articles are non-actionable opinions based on disclosed facts.

*Third*, Plaintiff's additional tort claims for negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress fail as a matter of law.  The law expressly prohibits plaintiffs from reframing their defamation claims as negligence claims, as Plaintiff does here.  And the conduct that Plaintiff claims is "extreme and outrageous" does not meet the rigorous standard formulated by New York courts for emotional distress claims.

As a result, this Court should dismiss Plaintiff's claims against the *Daily News* and Mr. Chapman in their entirety and with prejudice.

## STATEMENT OF FACTS

### A.    The Parties

Plaintiff is a former public school teacher who was employed by the New York City Department of Education during the events giving rise to this lawsuit.  Compl. ¶ 16.  She worked at the William W. Niles School – Middle School 118, Community School District 10 – in Bronx County, New York.  *Id.*  She was terminated from her employment at that school in October 2018

following an investigation by the New York City Department of Education. *Id.* ¶ 80. Defendant the *Daily News* publishes a New York daily newspaper in print and online. *Id.* ¶¶ 25-27. Defendant Chapman was, at the relevant time, employed as a reporter for the *Daily News*. *Id.* ¶ 23.

**B.    Plaintiff's "Teachable Moment" on Slavery and the Department of Education's Subsequent Investigation**

On January 9, 2018, Plaintiff's middle school social studies class was scheduled to learn about slavery. *See* Compl. ¶ 53. As part of this lesson – and without first seeking permission to deviate from the class's pre-approved curriculum – Plaintiff showed her students a clip from the movie, *Freedom. See id.*; Declaration of James Rosenfeld ("Rosenfeld Decl.") Ex. C (Office of Special Investigations Report) at 10.[1] The movie depicted slaves traveling in ships along the Middle Passage, the infamous trade route along which kidnapped Africans were sent to the Americas. *See* Rosenfeld Decl. Ex. C at 10. When certain of the students misbehaved during the movie, Plaintiff decided, in her own words, to take advantage of a "teachable moment." Compl. ¶ 53. Looking to replicate the conditions on the boats along the Middle Passage, Plaintiff selected various black students, called them to the front of the classroom, and mandated that they sit close together on the floor with their knees against their chests. *See id.*; Rosenfeld Decl. Ex. C at 10. Multiple students reported that Plaintiff then used her feet or hands to push these students even closer together, mimicking the cramped quarters on the boats. *See* Rosenfeld Decl. Ex. C at 2, 3, 4.

---

[1] "In reviewing a motion to dismiss, a court may consider, *inter alia*, (1) documents that are incorporated by reference into the complaint, and (2) documents that, even if not incorporated by reference, the defendant has notice of and that are 'integral' to the complaint" without converting the motion to dismiss into a motion for summary judgment. *Done v. HSBC Bank USA*, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1992); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005). Plaintiff annexes the *Daily News* Articles to the Complaint, the Complaint references the Notice of Claim, *see* ¶ 6, and the Complaint extensively quotes from and refers to the Office of Special Investigations Report, *see, e.g.*, ¶ 53, bringing them within proper consideration for this motion.

Immediately thereafter, one of the students involved in the demonstration and her parent filed written complaints with the principal of the school, Defendant Giulia Cox. *Id.* at 8-9. The parent stated that Plaintiff instructed her child to "get on the floor" and to "assume a position of a slave." *Id.* at 8. According to this parent, Plaintiff then "put her knee into [the student's] back" and asked whether the student felt pain. *Id.* She said that her child felt "ashamed and embarrassed." *Id.* The student similarly reported that Plaintiff said, "I can show you how it is to be squashed on a boat," lined the students "in front of each other with [their] knees up," and "pushed [the students'] back[s] with her knees." *Id.* at 8-9. Believing that these actions may constitute corporal punishment, Principal Cox forwarded the complaints to the Department of Education's Office of Special Investigations ("OSI"), which promptly began an investigation into Plaintiff's conduct. *Id.* at 6, 12.

Over the course of the next few months, OSI interviewed various students and staff members who were familiar with the events of January 9. During the pendency of this investigation, Plaintiff was removed from her teaching position at the William W. Niles School and reassigned to a different school. Compl. ¶ 66. The investigation concluded with a report dated July 24, 2018. The OSI Report contained various eyewitness accounts confirming that Plaintiff had placed her feet or knees on the students. Rosenfeld Decl. Ex. C at 2, 3, 4. While OSI found that Plaintiff's actions did not constitute corporal punishment, it determined that Plaintiff acted with "poor judgment" and her actions "significantly diverged from best-practices." *Id.* at 11. OSI explained that the Department of Education "does not ever include or encourage reenactments of historical events where students take on roles of victimized people." *Id.* OSI referred its report back to Principal Cox to take "appropriate disciplinary action." *Id.* at 12. At the beginning of the

2018-2019 school year, Plaintiff was fired from her position at the William W. Niles School. Compl. ¶ 80.

### C.     The *Daily News* Defendants Report On The Department of Education's Investigation

On February 2, 2018, the *Daily News* published its first in a series of articles written by Mr. Chapman and others that reported on OSI's investigation into Plaintiff's conduct.  The front page of the paper previewed the article and expressly referenced the ongoing investigation, featuring the caption: "Bronx middle school teacher Patricia Cummings (above) has been removed from classroom while officials look into shocking slave lesson."  Rosenfeld Decl. Ex A.  The article explained that, according to students in Plaintiff's class and a staff member at the school, Plaintiff told her history students to "lie on the floor" and then "stepped on their backs to show them what slavery felt like."  Rosenfeld Decl. Ex. B at 2.  It cited one student, who stated that Plaintiff "picked three of the black kids," instructed them to get on the floor, and said "[y]ou see how it was to be a slave?"  *Id.* at 1, 3.  When one student made a joke, the source reported that Plaintiff "put her foot on [the student's] back and said 'How does it feel?'"  *Id.* at 3.  The article then quoted another student who stated that Plaintiff "had students lie on the floor" and that she "was measuring the length and width to show how little space slaves had in the ship."  *Id.* at 4.  The article explained that OSI was investigating the allegations against Plaintiff and included a quote from a Department of Education spokesperson: "While the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or in society."  *Id.*[2]

---

[2] The *Daily News* Defendants annex the cover and article mentioned above to the Rosenfeld Declaration in order to provide clearer copies of those exhibits.  Rosenfeld Decl. Exs. A and B correspond to Complaint Exs. A and B.  For the remainder of the articles at issue, we cite the Complaint directly.

As the investigation progressed, so too did the *Daily News'* coverage.  For example, on July 9, 2018, the *Daily News* published another article titled, "Bronx educators accused of racism still under investigation, still on payroll."  Compl. Ex. E at 1.  This article explained that OSI had not yet concluded its investigation into Plaintiff and cited to Department of Education officials who stated that the investigation could take months to complete.  *Id.* at 2.  On August 11, 2018, the *Daily News* reported that the investigation had been completed but the results had not yet been released.  Compl. Ex. F at 1.  And on October 4, 2018, October 28, 2018, and March 9, 2019, the *Daily News* published reports of the completed investigation, noting that OSI found that Plaintiff had used "poor judgment" but that OSI "did not substantiate the allegations that she engaged in corporal punishment."  Compl. Exs. H, I, J.

### D.   Plaintiff Initiates A Lawsuit Against The *Daily News* Defendants And Others, And The *Daily News* Defendants Continue To Cover The Story

On September 25, 2018, Plaintiff's counsel served a Notice of Claim on Defendants The City of New York, New York City Department of Education, and City of New York Office of Special Investigations.  Rosenfeld Decl. Ex. D.  In the Notice, Plaintiff alleged that the City and its Departments engaged in "'reverse discrimination' at its worst" because – according to Plaintiff's colleague – "a black teacher could have taught the very same lesson, and there would not have been a single complaint from any student's parent."  *Id.* at 7, 11.  The Notice also threatened that the "irresponsible media" would be held accountable for "promulgating and promoting 'fake news' stories" about Plaintiff.  *Id.* at 7.  Plaintiff claimed that, as a result of this purported "reverse discrimination," she was damaged "in the amount of $120 Million and 00/100 Dollars ($120,000,000.00)."  *Id.* at 13.  She further claimed that "in the event that this matter becomes a class-action . . . the *ad damnum* clause part of this Notice of Claim will be necessarily increased to be in excess of One Billion ($1,000,000,000.00) Dollars."  *Id.* The *Daily News*

Defendants reported on this Notice of Claim in a September 28, 2018 article titled "White social studies teacher ousted over slavery lesson plans to sue over reverse racism."  Compl. Ex. G at 1.

On January 10, 2019, Plaintiff served the *Daily News* Defendants (along with 17 other parties, including New York City, the Department of Education, the Mayor of New York and other elected officials, various media organizations, and journalists) with a Summons with Notice seeking damages for "defamation, reverse discrimination, denial of due process, severe emotional, psychological, and physical distress, loss of reputation, loss of income, and expenses" totaling $120 million.  *See* ECF No. 1, Ex. 1 at 5.  The *Daily News* Defendants reported on this lawsuit in a March 9, 2019 article, explaining that Cummings "is suing the Education Department and various individuals and entities including The News in a suit that her attorney said could become a class action worth as much as $1 billion."  Compl. Ex. J.  The *Daily News* Defendants timely removed the action to this Court on March 22, 2019.  *See* ECF No. 1.[3]

## ARGUMENT

## I.   COURTS REGULARLY DISMISS DEFAMATION ACTIONS[4]

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  In applying this standard, the Court need not credit conclusory legal allegations or "'naked

---

[3] On April 4, 2019, Defendants City of New York Office of Special Investigations, Giulia Cox, Daniel Dromm, New York City Department of Education, The City of New York, Courtney Ware, Jumaane D. Williams, and Bill de Blasio filed a letter motion to change venue to the Southern District of New York.  *See* ECF No. 8.  This letter motion remains pending.

[4] While Plaintiff styles her claims as ones for "defamation," "defamation *per se*," "libel," and "slander," these are all similar for purposes of this motion, and equally subject to the legal arguments included herein.

assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557);
*see also LaFaro v. New York Cardiothoracic Grp.*, 570 F.3d 471, 475-76 (2d Cir. 2009) ("We are
not bound to accept as true legal conclusions couched as factual allegations.").

In addition, claims – like this one – that implicate the First Amendment must be considered
"against the background of a profound national commitment to the principle that debate on public
issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic,
and sometimes unpleasantly sharp attacks."  *Church of Scientology Int'l v. Time Warner, Inc.*, 903
F. Supp. 637, 640-41 (S.D.N.Y. 1995) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270
(1964), *aff'd sub nom. Church of Scientology Int'l v. Behar*, 238 F.3d 168 (2d Cir. 2001).  As the
New York Court of Appeals recognized, "[t]he threat of being put to the defense of a lawsuit . . .
may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the
lawsuit itself."  *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 545 (1980) (quoting *Washington
Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)).  "To unnecessarily delay the disposition
of a libel action is not only to countenance waste and inefficiency but to enhance the value of such
actions as instruments of harassment and coercion inimical to the exercise of First Amendment
rights."  *Immuno A.G. v. Moor-Jankowski*, 145 A.D.2d 114, 128 (1st Dep't 1989), *aff'd*, 74 N.Y.2d
548 (1989), *vacated*, 497 U.S. 1021 (1990), *aff'd*, 77 N.Y.2d 235 (1991).  For that reason, courts
routinely dispose of libel cases at the earliest appropriate stage, often on a motion to dismiss where
the threshold issues can be resolved as a matter of law.[5]

---

[5] While defamation plaintiffs in federal court are not required to enumerate the specific defamatory words about which
they complain, they are still required to "adequately identif[y] the purported communication, and an indication of who
made the statement, when it was made, and to whom it was communicated."  *Amar v. Hillcrest Jewish Ctr.*, 2009 WL
891795, at *7 (E.D.N.Y. Mar. 31, 2009) (citation omitted).  "The central concern is that the complaint afford defendant
sufficient notice of the communications complained of to enable him to defend himself."  *Id.* (citation omitted).  Here,
although Plaintiff provides a list of various *Daily News* Articles that she alleges are defamatory, she provides only a
few examples of allegedly defamatory quotations.  *See* Compl. ¶¶ 58-59.  Notably, neither these statements nor other
similar statements appear in at least one of the articles included in Plaintiff's list.  *See* Compl. Ex. H.  For this reason,
Plaintiff's claims with respect to that article and any other statements in other articles not quoted or otherwise

## II.   THE *DAILY NEWS* ARTICLES ARE ABSOLUTELY PRIVILEGED UNDER NEW YORK CIVIL RIGHTS LAW SECTION 74

Plaintiff's claims based on the *Daily News* Articles[6] are barred by New York Civil Rights Law § 74, which provides, in relevant part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." *Id.* The New York legislature enacted this statute in order to avoid stifling "an active, thriving and untrammeled press" and to ensure that the press receive "broad protection." *Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (citation omitted), *aff'd*, 29 F. App'x 676 (2d Cir. 2002). As a result, the privilege created by Section 74 is "absolute," *see Pelayo v. Celle*, 270 A.D.2d 469, 469 (2d Dep't 2000), and its applicability is a question of law for this Court to decide, *see, e.g.*, *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67-68 (1979). Courts regularly dismiss defamation claims based on Section 74. *See, e.g.*, *D'Annunzio v. Ayken, Inc.*, 876 F. Supp. 2d 211, 221 (E.D.N.Y. 2012); *Procter & Gamble Co. v. Quality King Distribs., Inc.*, 974 F. Supp. 190, 195-97 (E.D.N.Y. 1997); *Saleh v. N.Y. Post*, 78 A.D.3d 1149, 1152 (2d Dep't 2010). In doing so, New York courts have articulated a number of fundamental principles:

*First*, the privilege does not require exacting precision in reporting on official proceedings and instead only requires that the "substance of the article be *substantially* accurate." *Holy Spirit Ass'n*, 49 N.Y.2d at 67 (emphasis added). In other words, the language used in an article "should

---

identified should additionally be dismissed for failure to afford the *Daily News* Defendants adequate notice of the defamatory statements.

[6] In her listing of purportedly defamatory articles, Plaintiff also includes a single, out-of-context quote that Mr. Chapman allegedly gave on the "All Things Considered" radio show. *See* Compl. ¶ 100. Not only does Plaintiff not include a transcript for this interview, but she fails to even list the date of the interview, making it impossible for the *Daily News* Defendants to locate it and assess the merits of Plaintiff's claims. Because Plaintiff fails to plead this statement with adequate specificity, claims arising from it must be dismissed. *See Amar*, 2009 WL 891795, at *7 (defamation plaintiff must list "when [the statement] was made." In any event, the claim based on this alleged statement is subject to dismissal for the same reasons as the statements based on the *Daily News* Articles.

not be dissected and analyzed with a lexicographer's precision." *Id.* at 68.  Rather, the "test is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published." *Procter & Gamble*, 974 F. Supp. at 196 (quoting *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dep't 1995).  "Minor inaccuracies" will not remove a report from Section 74's privilege.  *Posner v. N.Y. Law Publ'g Co.*, 228 A.D.2d 318, 318 (1st Dep't 1996).  So long as the "statements accurately portray[] the gist of what transpired in the subject proceedings," they are privileged.  *Cholowsky v. Civiletti*, 16 Misc. 3d 1138(A), at *5 (Sup. Ct. Suffolk Cty. 2007), *aff'd*, 69 A.D.3d 110 (2d Dep't 2009).

*Second*, Section 74 protects reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are in fact true or false.  *See Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705 (Sup. Ct. N.Y. Cty. 1994) ("The question is not whether or not the statement is 'true.'  The question is whether it is a substantially accurate description of the claims made in the . . . proceeding."), *aff'd*, 208 A.D.2d 301 (1st Dep't 1995).

*Third*, courts must pay particular attention to the ***context*** of the statements in order to determine whether a reasonable observer would find that they constitute reports of a proceeding. *See Gonzalez v. Gray*, 69 F. Supp. 2d 561, 570 (S.D.N.Y. 1999) (finding that "reasonable viewer would understand the Statements to be reports of a judicial proceeding" where "*the essence* of the segment . . . is a report of Gray's lawsuit") (emphasis added), *aff'd*, 216 F.3d 1072 (2d Cir. 2000).

Applying those principles here, there is no room for doubt that (1) the *Daily News* Articles reported on "judicial proceeding[s]" and/or "other official proceeding[s]," and (2) the Articles were "fair and true report[s]" of those proceedings.  Section 74 therefore squarely bars Plaintiff's claims against the *Daily News* and Mr. Chapman.

A.    **The Department of Education's Investigation And Plaintiff's Filings In This Litigation Are "Proceedings" Covered By Section 74**

The fair report statute applies to reports of "any judicial proceeding, legislative proceeding or other official proceeding," which New York courts have construed broadly.  *See Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 214 & n.3 (N.D.N.Y. 2014); *SentosaCare LLC v. Lehman*, 2018 WL 692568, at *7 (Sup. Ct. Kings Cty. Jan. 25, 2018), *appeal docketed*, No. 2018-03473 (N.Y. App. Div. 2d Dep't Nov. 20, 2018).   Indeed, even reports bearing an "attenuated relationship to a proceeding have been deemed sufficiently connected" to the proceeding so as to receive the absolute privilege of Section 74.  *Fine*, 11 F. Supp. 3d at 217.  Here, both (1) The Department of Education's investigation into Plaintiff; and (2) Plaintiff's own Notice of Claim and Summons, which initiated this judicial action, are "proceedings" for purposes of Section 74.

*First*, the Department of Education investigation into Plaintiff, including the allegations leading thereto, comprised a "proceeding."  New York courts have consistently held that "even the announcement of an investigation by a public agency, made before the formal investigation has begun, is protected as a report of an official proceeding within the contemplation of the statute, as is a report of an ongoing investigation, as long as it is accurate." *Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of N.Y.*, 101 A.D.2d 175, 182 (1st Dep't 1984) (internal citations omitted).   Similarly, "reports on allegations that lead to a government investigation are fully protected." *SentosaCare*, 2018 WL 692568, at *7; *cf. El Greco Leather Prods. Co. v. Shoe World, Inc.*, 623 F. Supp. 1038, 1043 (E.D.N.Y. 1985) (holding that allegations included in an article but not contained in court papers "constitute[] background information . . . and thus do not remove the article from the protection of Section 74"), *aff'd*, 806 F.2d 392 (2d Cir. 1986); *Mulder*, 161 Misc. 2d at 705 (applying Section 74 to "claims" made in an arbitration proceeding).  In *White v. Fraternal Order of Police*, 707 F. Supp. 579, 597 (D.D.C. 1989), *aff'd*, 909 F.2d 512 (D.C. Cir.

1990), the U.S. Court of Appeals for the D.C. Circuit justified this uniform treatment of reports on investigations and reports concerning the background allegations that lead to the investigations, aptly explaining that "it would be untenable to make a distinction between a report about an official proceeding and that which, for all purposes, is the subject matter of that proceeding."[7]

Here, each of the *Daily News* Articles report on OSI's investigation into Plaintiff, including the allegations from parents and students that triggered the investigation.  For example:

· On February 2, 2018, the day the first article appeared in the *Daily News*, the front page of the paper states: "Bronx middle school teacher Patricia Cummings (above) has been removed from classroom while officials look into shocking slave lesson."  Rosenfeld Decl. Ex. A.  The article proceeds to report on the allegations that led to the investigation, contains quotations from students and staff members from the school, and includes a quotation from a Department of Education employee, that "[w]hile the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or in society."  Rosenfeld Decl. Ex. B at 4.[8]

· In a July 9, 2018 article, the *Daily News* reports that "City Department of Education officials have failed to conclude investigations of two Bronx educators accused of racist acts roughly five months after launching their probes."  Compl. Ex. E at 1. It then recounts the allegations against Plaintiff being investigated by OSI.  *See id.*

· In an August 11, 2018 article titled "City completes probe of teacher in 'slavery' controversy," the *Daily News* states, "City Education Department officials have finished their probe of a teacher who grabbed headlines and sparked protests after she was accused of stepping on a student during a lesson on slavery in January."  Compl. Ex. F at 1.  The article explains that the report had not yet been released and cites to a Department of Education spokesperson who stated that the Department would provide an update when the matter was resolved.  *Id.*

· In articles written on October 4, 2018, October 20, 2018, and March 9, 2019, the *Daily News* reports on – and even quotes – the results of OSI's investigation.  For example, the

---

[7] *White* involves the common law privilege to publish fair and accurate reports of official proceedings rather than New York's statutory fair report privilege.  Because both tests involve reports about "official proceedings," the distinctions between the two are irrelevant for purposes of this analysis.

[8] Both the cover and article are attached to and incorporated into the Complaint.  The article must be considered in the context of the cover, for fair report and opinion purposes.  *See Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) ("When deciding how to construe allegedly defamatory words – which when written or in print constitute libel – courts must do so in the context of the publication as a whole, not just the paragraph or chapter containing them, and do so 'in the same way that the reading public, acquainted with the parties and the subject would take [them].'").

October 4 article quotes portions of the investigatory report stating that Plaintiff's actions "significantly diverged from best practices" and "the DOE does not ever include or encourage re-enactments of historical events where students take on roles of victimized people." Compl. Ex. H. The October 20 article states that the investigation found that Plaintiff used "poor judgment – but did not substantiate the allegations that she engaged in corporal punishment." Compl. Ex. I at 2. And the March 9 article similarly reports on the allegations that started the investigation and then explains that the Department of Education "did not substantiate allegations by one student that [Plaintiff] pushed her knee into students' backs." Compl. Ex. J.

From this context, any reasonable reader would understand that the *Daily News* Articles were reports of the Department of Education's investigation into allegations made against Plaintiff.

*Second*, the notice of claim, summons, and other papers served or filed in this litigation constitute "judicial proceedings." And reports of judicial proceedings – including the documents that initiate them – lay at the heart of the Section 74 privilege. *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation*, 2009 WL 4547792, at *16 (E.D.N.Y. Dec. 1, 2009) ("Allegedly libelous statements fall within the privilege conferred by § 74 where it appears that all of the statements published by the defendants are of and concerning the complaint in the underlying federal litigation, and constitute substantially accurate descriptions or characterizations of such complaint.") (citations and internal quotation marks omitted); *Riel v. Morgan Stanley*, 2007 WL 541955, at *10 (S.D.N.Y. Feb. 16, 2007) ("The protections of section 74 extend to pleadings, transcripts, live proceedings and the release by the parties of background material regarding their positions in the case."), *aff'd*, 299 F. App'x 91 (2d Cir. 2008). The same is true of reports on notices of claims, which, pursuant to New York statute, must be filed 90 days prior to suing a municipal entity. *See* N.Y. Gen. Mun. Law § 50-e. In *Rickerson v. Porsch*, 2019 WL 1289734, at *4 (Sup. Ct. Seneca Cty. Feb. 5, 2019), the court explained that a notice of claim constitutes both a "judicial proceeding" under Section 74 because it is "a jurisdictional pre-requisite to the filing of a plenary action against a municipal corporation" and an "official proceeding" because it

is "prescribed by law with its own procedures."  As a result, the court held, "any reporting about the notice of claims . . . is not actionable under Civil Rights Law § 74."  *Id.*

Here, certain of the *Daily News* Articles directly quote from and cite Plaintiff's Notice of Claim and Summons.  For example, the September 27, 2018 article begins by noting that Plaintiff "says she is the victim of reverse-racism" and explains that Plaintiff filed a "Notice of Claim filed in anticipation of a lawsuit against 'the city, parents, students, and the media.'"  Compl. Ex. G at 2.  The article recounts the allegations that the *Daily News* reported – which Plaintiff claimed were false and which formed the basis of her proposed lawsuit – and also explains that Plaintiff "denied that any child laid on the floor at any time during the demonstration and denied making any physical contact with any student."  *Id.*; *see also* Compl. Ex. H (reporting that Plaintiff "filed a $120 million discrimination suit); Compl. Ex. I at 2 (reporting that Plaintiff "announced she planned to sue the city" because "accounts of the [slavery] lesson were all wrong"); Compl. Ex. J (reporting that Plaintiff "is suing the Education Department and various individuals and entities including The News in a suit that her attorney said could become a class action worth as much as $1 billion").

In sum, the *Daily News* Articles are clearly reports of official and judicial proceedings within the contemplation of Section 74.

### B.    The *Daily News* Defendants Fairly and Accurately Reported On These Proceedings

Plaintiff does not allege that the articles present inaccurate summaries of the ***allegations*** against her.  Indeed, she concedes that at least one parent complained that "Plaintiff instructed [the student] to get on the floor" and Plaintiff "put her knee into her back and pushed down."  Compl. ¶ 53.  But she calls these complaints "erroneous[]."  *Id.* ¶¶ 53-54.  She likewise discredits the various similar allegations in the OSI Report.  *Id.* ¶ 174.   However, Section 74's privilege is

purposefully designed to immunize reporting on the charges made in proceedings regardless of whether those underlying allegations are in fact true or false. *Mulder*, 161 Misc. 2d 698 at 705 (holding that in applying Section 74 privilege, "[t]he question is not whether or not the statement is 'true.' The question is whether it is a substantially accurate description of the . . . proceeding"); *Freeze Right*, 101 A.D.2d at 183 ("Section 74 . . . was designed precisely to protect the publisher of a fair and true report from liability for just such an error [in the underlying document] and to relieve it of any duty to expose the error through its own investigation."); *Zappin v. NYP Holdings, Inc.*, 2018 WL 1474414, at *7 (S.D.N.Y. Mar. 26, 2018) ("To invoke the § 74 privilege properly, Defendants need not prove that the statements made at the . . . proceeding were, themselves, accurate; rather, all that matters for the application of § 74 is that the Article is a substantially accurate rendering of what was said, even if the testimony given was not true."), *aff'd*, --- F. App'x ---, 2019 WL 1782635 (2d Cir. Apr. 24, 2019); *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 479 (S.D.N.Y. 2012) ("In some cases [plaintiff] does not allege that . . . the Article reports [earlier lawsuits] inaccurately—he argues that the plaintiffs in the original suits were incorrect in their allegations. This is not sufficient to defeat the fair and true report privilege."). Simply put, the truth or falsity of the underlying allegations against Plaintiff is immaterial for purposes of a Section 74 analysis; the question is whether the articles truly and fairly report those allegations.

Further, the reports of the allegations need not be verbatim reproductions of the actual allegations. Specifically, while the allegations against Plaintiff state that she instructed students to "get" on the floor and put her "foot" or "knee" into their backs, the *Daily News* reported that she instructed students to "lay" on the floor and "stepped" on their backs. But to the extent the reports differ from the allegations, these variations are just the sort of "minor inaccuracies" that courts have held do *not* disqualify a report from the protections of Section 74. In *Misek-Falkoff v.*

*American Lawyer Media, Inc.*, 300 A.D.2d 215, 216 (1st Dep't 2002), for example, the court held that an article reporting that the plaintiff sued her employer for discrimination based on a "mental disability" was deemed substantially accurate and protected under Section 74, even though plaintiff actually sued for discrimination based on a "neurological disorder."  And in *Alf v. Buffalo News*, 100 A.D.3d 1487, 1488-89 (4th Dep't 2012), *aff'd*, 21 N.Y.3d 988 (2013), articles were deemed "substantially accurate" when they reported that the plaintiff admitted to "repeatedly and fraudulently" overcharging the government even though it was a company owned by plaintiff – not plaintiff himself – that pled guilty to a single count of falsifying a document.  *See also Gurda v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 56 N.Y.2d 705, 706 (1982) (article reporting on civil insurance fraud case deemed substantially accurate even though it used words connoting criminal liability); *Cholowosky*, 69 A.D.3d at 115 (article deemed substantially accurate when it reported that story subject used a permit held by appellant to dump hazardous materials where the subject only planned to do so without following through); *Zappin*, 2019 WL 1782635, at *3 (article reporting that plaintiff was fired from law firm Quinn Emanuel deemed substantially accurate although plaintiff only left that firm and was fired by a completely different law firm, Mintz Levin).

Here, the allegations against Plaintiff submitted to OSI as part of its investigation and the *Daily News'* reporting on those allegations produce the same effect on the minds of readers – after her black students misbehaved, Plaintiff called them to the front of the classroom, had them get down on the floor close together, and pressed on their backs using them to demonstrate how kidnapped Africans were treated on slave ships.  Just as in *Misek-Falkoff* and *Alf*, because the *Daily News* Articles are substantially accurate reports of official and judicial proceedings they are absolutely protected under Section 74.

16

## III.   STATEMENTS DESCRIBING PLAINTIFF'S LESSON AS "RACIST" ARE NON-ACTIONABLE OPINIONS

Statements describing Plaintiff's lesson as "racist" should be dismissed for the additional reason that they are non-actionable statements of opinion.  "Since falsity is a *sine qua non* of a libel claim and since only assertions of fact are capable of being proven false . . . a libel action cannot be maintained unless it is premised on published assertions of *fact*."  *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995).  Thus, a defendant cannot be liable "for simply expressing their opinion . . . no matter how unreasonable, extreme or erroneous these opinions might be."  *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 381 (1977); *see also Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 178 (2d Cir.2000) ("[T]he New York Constitution provides for absolute protection of opinions.").

"The question of whether or not a particular statement constitutes fact or opinion is clearly a question of law, not fact."  *Covino v. Hagemann*, 165 Misc. 2d 465, 474 (Sup. Ct. Richmond Cty. 1995).  To make this determination, New York courts consider three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion.

*Brian*, 87 N.Y.2d at 51 (internal alterations omitted).  In applying these factors, courts have adopted a "holistic approach."  *Davis v. Boheim*, 24 N.Y.3d 262, 270 (2014).  "Rather than sifting through a communication for the purpose of isolating and identifying assertions of fact, the court should look to the over-all context in which the assertions were made and determine on that basis whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff."  *Brian*, 87 N.Y.2d at 51 (internal citations and quotation marks omitted); *see also Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993) ("The dispositive inquiry

. . . is whether a reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff.") (citation and internal quotation marks omitted).  Further, where the facts supporting the opinion are fully set forth, the characterization accompanying those facts is a non-actionable opinion.  *Gross*, 82 N.Y.2d at 153-54.

Courts in New York have routinely held that terms like "racist" constitute non-actionable opinion because they do not have "defined meanings" and cannot be proven true or false.[9]  In *Covino*, for example, plaintiff sued for defamation based on a letter calling his actions "racially insensitive."  The court held that this was not defamatory because:

> "[r]acially insensitive" and "disrespectful racial insensitivity" have no meaning which is readily understood. . . . [A] certain set of facts might be viewed as racially insensitive by one group of people who share the same political or social views, but another group might view it as non-controversial and socially acceptable. The court is not in a position to give its imprimatur to one view or the other; thus the phraseology used is one of opinion.

165 Misc. 2d at 470.  Similarly, in *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054 (2d Dep't 2015), the plaintiff was fired from his position as the principal of a school after defendant published articles referring to materials authored by the plaintiff as "racist writings."  The court held that "the context of the complained-of statements was such that a reasonable reader would have concluded that he or she was reading opinions, not facts, about the plaintiff." *Id.* at 1055.  Further, "defendants made the statements with express references to the written materials authored by the

---

[9] Courts across the country agree that terms connoting racism or bigotry are non-actionable opinions. *See Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) ("In daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face."); *Edelman v. Croonquist*, 2010 WL 1816180, at *5-6 (D.N.J. May 4, 2010) ("The defendant's characterization of her in-laws as racists is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation."); *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 429 (E.D. Pa. 2000) (accusation that plaintiff was "racist and anti-semitic" "would be unflattering, annoying and embarrassing," but "does not rise to the level of defamation as a matter of law because it is merely non-fact based rhetoric") *Weidlich v. Rung*, 2017 WL 4862068, at *6 (Tenn. Ct. App. Oct. 26, 2017) (statement that plaintiff was "white supremacist" was opinion); *Lennon v. Cuyahoga Cty. Juvenile Ct.*, 2006 WL 1428920, at * 6 (Ohio Ct. App. May 25, 2006) ("[W]e find that appellant's being called a racist was a matter of one employee's opinion and thus is constitutionally protected speech, not subject to a defamation claim.").

plaintiff." *Id.* The court therefore concluded that the statements were non-actionable because "there was full disclosure of the facts supporting the opinions." *Id.*; *see also Russell v. Davies*, 97 A.D.3d 649, 650-51 (2d Dep't 2012) (statements by reporters and local politicians interpreting an essay by electoral candidate as racist and anti-Semitic were opinion based on disclosed facts). *Goetz v. Kunstler*, 164 Misc. 2d 557, 563-64 (Sup. Ct. N.Y. Cty. 1995) (statement that plaintiff has "venomous feelings against black people" and "developed hatred towards all blacks" was protected opinion); *Torain v. Liu*, 2007 WL 2331073, at *1-3 (S.D.N.Y. Aug. 16, 2007) (accusation that plaintiff was a "racist pedophile" was opinion), *aff'd*, 279 F. App'x 46 (2d Cir. 2008); *Carto v. Buckley*, 649 F. Supp. 502, 510 (S.D.N.Y. 1986) (accusation that publication was anti-Semitic was protected opinion).

Here too, the terms "racist" and "racism" in the *Daily News* Defendants' articles are pure statements of opinion based on disclosed facts. As a preliminary matter, in many instances just looking at the sentences in which these terms appear makes evident to any reasonable reader that they express opinions. For example, in the *Daily News* Defendants' February 2, 2018 article, the opening line states that "kids and parents say this Bronx teacher needs a lesson – in racism." Rosenfeld Decl. Ex. B at 1. Clearly, this line expresses the opinion of Plaintiff's students and their parents, whose interview quotes are included later in the articles. Similarly, in the *Daily News* Defendants' July 9, 2018 article, the *Daily News* Defendants note that City Department of Education officials had not yet concluded investigations of "educators accused of racist acts." Compl. Ex. E at 1. This too indicates that Plaintiff's accusers viewed her actions as racist – a clear opinion about her conduct rather than a factual assertion.

In addition, like in *Silverman*, the *Daily News* Defendants disclosed the facts on which the opinions are based – *i.e.*, the allegations from parents, students, and staff about the details of

Plaintiff's slavery lesson.  While Plaintiff denies that she ever had students lie on the floor and denies any physical contact with students, Compl. ¶ 54, she expressly admits that she had misbehaving students sit in the front of the room to demonstrate the conditions on slave ships, and that a parent reported that she "pushed her knee" into students' backs and asked if the students felt pain.  *Id.* ¶ 53.  Thus, because the facts reported by the *Daily News* Defendants underlying the opinions were based on substantially true disclosed facts, the opinions cannot be actionable.  *See Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 281 (S.D.N.Y. 2016) (holding that opinion based on disclosed facts is only actionable when the "the disparity between the stated facts and the truth would cause a reader to question the opinion's validity"). The fact that Plaintiff may disagree with the opinions expressed or wish that the articles gave her "side" of the story does not change this conclusion.  *Roth v. United Fed'n of Teachers*, 5 Misc. 3d 888, 897-98 (Sup. Ct. Kings Cty. 2004).

Further, to the extent Plaintiff's claims arise from the inclusion of "racism" and "racist" in the article headlines, they also must be dismissed.  *See* Compl. Ex C ("Thousands sign parents' petition demanding action from de Blasio on racist school incidents"); Ex. E ("Bronx educator accused of racism still under investigation, still on payroll").  A headline is not actionable so long as it is a "fair index of the article with which it appears."  *Mondello v. Newsday, Inc.*, 6 A.D.3d 586, 587 (2d Dep't 2004).  "A newspaper need not choose the most delicate word available in constructing its headline; it is permitted some drama in grabbing its reader's attention."  *Test Masters Educ. Servs. v. NYP Holdings. Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009).  Here, the headlines fairly depict the content of the articles – that students and parents alleged that Plaintiff's lesson on slavery was racist and that OSI was investigating these allegations.  As a result, these headlines cannot form the basis of Plaintiff's Complaint.

IV.   **PLAINTIFF'S CLAIMS FOR NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SHOULD BE DISMISSED AS DUPLICATIVE**

Finally, Plaintiff's additional tort claims against the *Daily News* Defendants must also be dismissed, for multiple reasons.

*First*, with respect to Plaintiff's negligence-based claims (negligence and negligent infliction), "a defamation cause of action is not transformed into one for negligence merely by casting it as a negligence cause of action." *Iafallo v. Nationwide Mut. Fire Ins. Co.*, 299 A.D.2d 925, 927 (4th Dep't 2002). This is because defamation claims that involve matters of public concern – like this one – cannot be sustained upon a showing of the *Daily News* Defendants' mere negligence. Instead, Plaintiff will be required to show that, at a minimum, not only the statements were false statements of fact, but that the *Daily News* Defendants acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975); *see also Bloom v. Fox News of L.A.*, 528 F. Supp. 2d 69, (E.D.N.Y. 2007) ("[W]here, as here, an article concerns a private individual on a matter of public concern, the plaintiff must establish that the defendants acted in a grossly irresponsible manner.") (citation omitted). Allowing Plaintiff to bring a negligence-based claim would impermissibly allow her to skirt the rigors of a defamation claim, including the requirement that Plaintiff prove that the *Daily News* Defendants acted in a "grossly irresponsible" manner. *See Chapadeau*, 38 N.Y.2d at 199.[10] As a result, it is well-established that when a "plaintiff alleges an injury to his reputation as a result of statements made or contributed to by defendants, plaintiff is relegated to whatever remedy he might have under the law of defamation and cannot recover under principles of negligence."

---

[10] Plaintiff's failure to plead gross irresponsibility dooms her defamation claim as well.

*Colon v. City of Rochester*, 307 A.D.2d 742, 744 (4th Dep't 2003); *Butler v. Delaware Otsego Corp.*, 203 A.D.2d 783, 785 (3d Dep't 1994) ("The facts alleged by plaintiff are, in essence, inseparable from the tort of defamation and, as such, plaintiff is relegated to any remedy that would have been available on that basis.").

Here, the allegations underlying Plaintiff's defamation and negligence-based claims are identical. *Compare* Compl. ¶ 137 ("Defendants negligently and recklessly published and distributed its false and defamatory accusations by failing to conduct a reasonable investigation by not having a credible and reliable source for its publications."), *with* Compl. ¶ 191 ("Defendants . . . were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff."). Plaintiff is therefore limited to bringing a defamation cause of action, and this court should dismiss her claims for negligence and negligent infliction of emotional distress ("NIED").

**Second**, Plaintiff cannot – as a matter of law – plead NIED or intentional infliction of emotional distress ("IIED") in any case. Pleading NIED "requires a showing of (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Romero v. City of N.Y.*, 839 F. Supp. 2d 588, 631 (E.D.N.Y. 2012). A plaintiff bringing an NIED claim under a "direct duty theory" – as Plaintiff does here[11] – must also plead "breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Id.* (citation omitted). A plaintiff bringing a claim for IIED must likewise show extreme and outrageous conduct, a causal

---

[11] The other theory of NIED, "bystander liability" applies only when a plaintiff "is threatened with physical harm as a result of defendant's negligence; and (2) consequently she suffers emotional injury from witnessing the death or serious bodily injury of a member of her immediate family." *Romero*, 839 F. Supp. 2d at 631 n.27 (citation omitted). Because this case does not involve the death or serious bodily injury of anyone in Plaintiff's immediate family, it is clearly inapplicable here.

connection between the conduct and the injury, and severe emotional distress and also must plead "intent to cause, or disregard of a substantial probability of causing severe emotional distress." *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 50 (2016). These requirements are notoriously "rigorous, and difficult to satisfy." *Id.* at 57; *Berrio v. City of N.Y.*, 2017 WL 118024, at *6 (S.D.N.Y. Jan. 10, 2017) ("The Court of Appeals has observed that the standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy. The same is true of NIED claims.") (internal citation and quotation marks omitted).

The first element of both torts – extreme and outrageous conduct – is "susceptible to a determination as a matter of law." *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121 (1993). "Actions likely to be considered reprehensible by most people are not sufficient" to satisfy the "extreme and outrageous" prong. *DiRuzza v. Lanza*, 685 F. App'x 34, 37 (2d Cir. 2017). Rather, in order to qualify as "extreme and outrageous," the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sheila C. v. Povich*, 11 A.D.3d 120, 130-31 (1st Dep't 2004). Accordingly, courts have dismissed claims in which defendants videotaped and aired an individual's death without his family's permission, *Chanko*, 27 N.Y.3d at 57-58, claims in which defendants filed baseless lawsuits and attempted to instigate plaintiff's arrest, *see Kaye v. Trump*, 58 A.D.3d 579, 579 (1st Dep't 2009), and claims in which defendants spread rumors about plaintiff's inappropriate sexual acts with a client in the office, *Davison v. Goodwill Indus. of Greater N.Y. & Northern N.J., Inc.*, 2012 WL 1067955, at *4 (E.D.N.Y. Mar. 28, 2012), finding that even they do not meet the high standard for "extreme and outrageous" conduct. Courts have also held that "false statements or misrepresentations – even if intentionally made – do not rise to the level of [] extreme and outrageous conduct." *Baraliu v. Vinya Capital,*

23

*L.P.*, 2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009); *see also Como v. Riley*, 287 A.D.2d 416, 416-17 (1st Dep't 2001) (dismissing IIED claim when defendant circulated an email falsely stating that plaintiff had a figurine of a black man in a noose in his office); *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 2009 WL 817852, at *10 (E.D.N.Y. Mar. 27, 2009) (dismissing NIED claim when defendant falsely stated that plaintiff stole property).

Here, the *Daily News* Defendants' only conduct – publishing articles about Plaintiff's conduct based on firsthand accounts of students, reports from the Department of Education, and Plaintiff's own judicial filings – cannot, as a matter of law, rise to the level of "extreme and outrageous" necessary to sustain a cause of action. Further, Plaintiff does not – and cannot – plead that the *Daily News* or Mr. Chapman owed her a special duty different than that owed to any other member of the public at large as is required to state an NIED claim.

As a result, Plaintiff's IIED, NIED, and negligence claims cannot stand.[12]

## CONCLUSION

For the foregoing reasons, Defendants Daily News, L.P. and Mr. Chapman respectfully request that this Court enter an order dismissing the Complaint against them with prejudice and for such other further relief as the Court deems just and proper.

Dated: July 1, 2019

---

[12] If this Court dismisses Plaintiff's defamation claims, the additional tort claims must be dismissed as well. *See Chao v. Mt. Sinai Hosp.*, 2010 WL 5222118, at *11 (S.D.N.Y. Dec. 17, 2010) ("Where tort claims essentially restate a defamation claim that has been dismissed on a motion to dismiss, the tort claims must also be dismissed."), *aff'd*, 476 F. App'x 892 (2d Cir. 2012). But even if the court does not dismiss Plaintiff's defamation claims, it should still dismiss Plaintiff's IIED, NIED, and negligence claims for the additional reason that they are duplicative of the defamation claims. *See Wolkstein v. Morgenstern*, 275 A.D.2d 635, 637 (1st Dep't 2000) ("Generally, a cause of action for infliction of emotional distress is not allowed if essentially duplicative of tort or contract causes of action."); *Macineirghe v. Cty. of Suffolk*, 2015 WL 4459456, at *15 (E.D.N.Y. July 21, 2015) (dismissing negligence causes of action when "Plaintiffs' negligence claim is duplicative of and subsumed within their defamation claim."). And, for the reasons stated, they must also be dismissed for failing to state a claim.

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ James Rosenfeld*

Laura R. Handman
James Rosenfeld
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax:    (212) 489-8340
laurahandman@dwt.com
jamesrosenfeld@dwt.com


*Attorneys for Defendants Daily News L.P. &
Ben Chapman*

*Of Counsel*:
Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144