FILED
CLERK
2:52 pm, Aug 14, 2019
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
PATRICIA CUMMINGS,

                    Plaintiff,

          v.

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, CITY OF NEW
YORK OFFICE OF SPECIAL INVESTIGATIONS,
NYC MAYOR BILL DE BLASIO, GIULIA COX,
COURTNEY WARE, BEN CHAPMAN, NEW YORK
DAILY NEWS, DR. ANDRE PERRY, THE
HECHINGER REPORT a/k/a Hechinger Institute on
Education and the Media, LENARD LARRY
MCKELVEY a/k/a Charlamagne Tha God, WWPR-FM
(105.1 MHZ), iHEARTMEDIA, CLEAR CHANNEL
COMMUNICATIONS, INC., KEVIN S. PARKER,
New York State Senator, COUNCILMAN JUMAANE
D. WILLIAMS, COUNCILMAN DANIEL DROMM,
COALTION OF EDUCATIONAL JUSTICE, ANGEL
MARTINEZ, NATASHA CAPERS, and JOHN
and JANE DOE #1-100,

                    Defendants.
----------------------------------------------------------------------X

**ORDER**
19-CV-1664 (SJF)(SIL)

FEUERSTEIN, District Judge:

      Plaintiff Patricia Cummings ("Plaintiff") commenced this action against defendants asserting federal claims pursuant to, *inter alia,* 42 U.S.C. §1983 for violation of her civil rights, right to due process, and right to equal protection, and state law claims including fraud, breach of contract, negligence, defamation, libel, and slander.  Currently before the Court is a motion to change venue submitted by defendants City of New York, New York City Department of Education, City of New York Office of Special Investigations, New York City Mayor Bill de Blasio, Giulia Cox, Courtney Ware, Councilman Jumaane D. Williams, and Councilman Daniel Dromm (collectively, the "City Defendants").  Motion, Docket Entry ("DE") [8].  According to

the moving defendants, defendants the Daily News, Ben Chapman, the Hechinger Institute, Dr. Andre Perry, and Lenard Larry McKelvey, have consented to the venue change. Plaintiff does not consent to the transfer and has filed opposition to the motion. *See* Plaintiff's Opposition ("Pl. Opp."), DE [10]. For the reasons set forth below, the motion is granted and the case is transferred to the United States District Court for the Southern District of New York (the "Southern Distrct").

**I.  BACKGROUND**

**A.  Factual Allegations**

The facts are taken from the Complaint. Plaintiff, a resident of Suffolk County, was employed by the Department of Education as a New York City public school teacher at the William W. Niles Middle School located in Bronx County, New York (the "Niles School"). Compl. ¶16. On or about January 11, 2018, Plaintiff was the subject of a complaint lodged by a student ("Student A") and that student's parent regarding a lesson taught by Plaintiff in her social studies class on January 9, 2018. *Id.* ¶52. It was "erroneously" alleged that Plaintiff, in an effort to demonstrate how slaves were transported by boat, instructed Student A to get on the floor whereupon Plaintiff pressed her knee into Student A's back. *Id.* ¶53. Plaintiff asserts that to take advantage of a "teachable moment," she had four (4) student volunteers sit closely together to demonstrate cramped ship conditions, but denies that any student laid on the floor and denies making any physical contact with a student. *Id.* ¶54.

Plaintiff was informed that she was the subject of a disciplinary proceeding, Compl. ¶55, and she was temporarily removed from teaching that class. *Id.* ¶57. On or about February 1, 2018, Plaintiff was approached by defendant Ben Chapman, a reporter with defendant New York Daily News. *Id.* ¶58. Chapman wrote a front page story accusing Plaintiff of being a racist and

"making black students lie face down on the floor of her class and asking them 'See how it feels to be a slave?" *Id.* The Daily News story was picked up by the media worldwide, appeared online, in prominent newspapers, and on televised news programs. *Id.* ¶¶60-61. She has been publicly and falsely accused of child abuse and racism by defendants Chapman and Perry, referred to as a racist and bigot by defendant McKelvey, and has received "direct threats of violence, sexual assault, and death causing her to fear for her life and safety." *Id.* ¶¶62-64.

On February 1, 2018, Plaintiff was advised by e-mail that she had been reassigned to a location known as "teacher jail" and that she was the subject of an investigation by the Office of Special Investigations ("OSI"). Compl. ¶66. Plaintiff was ultimately exonerated following investigation by the OSI, and was advised by her union representative that she would be returning to work at the Niles School for the 2018-19 school year. *Id.* ¶73. Despite having been cleared of the allegations, Plaintiff was found to have exercised "poor judgment" and was eventually terminated. *Id.* ¶80.

**B.  Procedural History**

The action was commenced on January 10, 2019 in the Supreme Court of New York, County of Suffolk by filing a Summons with Notice. Compl. ¶8. On March 4, 2019, the City Defendants moved in state court to change venue to the Supreme Court of New York, New York County. Before any judicial action was taken on that motion, defendants New York Daily News and Ben Chapman on March 22, 2019, removed the case to this Court based on the allegations of federal civil rights claims under 42 U.S.C. §§1983 and 1988. The City Defendants timely moved pursuant to 28 U.S.C. §1404 to transfer venue to the Southern District. Motion, DE [8].

## II. LEGAL STANDARDS

Motions for change of venue are governed by 28 U.S.C. §1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a); *see also Pecorino v. Vutec Corp.,* 934 F. Supp. 2d 422, 429 (E.D.N.Y. 2012) ("[a] motion to transfer venue requires a two-part inquiry: first, whether the action might have been brought in the transferee court; and second, whether transfer is appropriate considering the convenience of both the parties and the witnesses, and in the interest of justice"). "[T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809, 11 L. Ed. 2d 945 (1964) (internal quotation marks and citation omitted).

Once it has been determined that the case could have been brought in the other forum, the focus of the inquiry becomes the convenience of the parties and witnesses, and the interests of justice. Courts have identified numerous factors for consideration in determining the second part of the inquiry such as: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties," *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (internal quotation marks and citation omitted). Considerations of calendar congestion and trial efficiency may also be addressed. *See Pecorino,* 934 F. Supp. 2d at 429. Other factors may be considered and "no single factor is determinative." *Sarracco v. Ocwen Loan Servicing,* 220 F. Supp. 3d 346, 356

4

(E.D.N.Y. 2016).   The moving party bears "the burden of establishing the propriety of a change of venue by clear and convincing evidence," *Alterseekers, Inc. v. Brandforce SF, LLC*, No. 12-CV-5392, 2013 WL 5236533, at *11 (E.D.N.Y. Sept. 16, 2013), and a court has "broad discretion in making determinations of convenience under Section 1404(a)." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

### III.  DISCUSSION

There is no question that this action could have been brought in the Southern District and that it is a proper forum.  Upon consideration of all the relevant factors, Defendants have carried their burden and established that a transfer of the case to the Southern District is warranted.

It is well-settled that a plaintiff's choice of forum is "given great weight," *D.H. Blair*, 462 F.3d at 107, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Iragorri v. United Techs. Corp.,* 274 F.3d 65, 70–71 (2d Cir. 2001) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S. Ct. 839, 91 L. Ed. 1055 (1947)).  The deference given this choice is minimized, however, where the operative facts have no connection to plaintiff's choice of venue.  *See, e.g., Armstrong v. Costco Wholesale Corp. & Nice-Pak Prod., Inc.,* 234 F. Supp. 3d 367, 371 (E.D.N.Y. 2017) ("where the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance" (internal quotation marks and citation omitted)); *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district.").  That is the case here where the lone connection to Suffolk County is the location of Plaintiff's place of residence.  She concedes that it is

"undisputed that the Plaintiff['s] claim arose in Bronx County," Pl. Opp. at 3, and all of the operative facts occurred in counties within the Southern District.  For example: plaintiff was a probationary New York City public school teacher; the incident occurred at her school in the Bronx; the decision to ultimately terminate her employment was made in the Bronx; the defendant administrators work in the Bronx; the news outlets that published the subject articles or produced the radio programs are located in New York; several of the defendant politicians who made comments have offices in New York.

Plaintiff generally suggests that the factors of the convenience of the parties and material witnesses, availability of process to compel witnesses, relative ease of access to sources of proof, calendar congestion, and "where the events at issue took place" are "relatively neutral" given the proximity of this District to the Southern District.  Pl. Opp. at 5.  Plaintiff fails to acknowledge, however, that the case is being heard in the Central Islip courthouse, thus diluting her "neutrality" argument.  Even crediting that argument, however, the balance still favors transferring the matter to the Southern District given the lack of any operative facts to be discovered in the Eastern District.[1]

Plaintiff's opposition is largely based on her belief that she will be prejudiced should the matter be transferred, citing the "inability for the Plaintiff's causes of action to receive an unbiased consideration by a panel of jurors."  Pl. Opp. at 3.   Her argument is premised on the scope of the media attention given the underlying incident and the purported effect on her ability to get a fair trial.  She contends that the ends of justice require that her case be heard outside of New York City.  The Court disagrees.

---

[1] This Court has considered whether a transfer to the Brooklyn courthouse would resolve the issues presented here, but concludes that the location of the operative facts, parties, witnesses, and documents in the Southern District still favor granting the motion.

Plaintiff has not cited any authority for the proposition that publicity concerning a civil matter is cause for avoiding the more appropriate forum. She cites cases regarding protection from "a possible appearance of impropriety," *see* Pl. Opp. at 7, but those cases are inapposite as are state court matters concerning changes in venue where one of the parties was a sitting judge, or law secretary to a judge, in the transferor court. *See Saxe v. OB/GYN Assoc.,* 86 N.Y.2d 820, 657 N.E.2d 492, 633 N.Y.S.2d 471 (1995); *Kavelman v. Taylor*, 245 A.D.2d 9, 665 N.Y.S.2d 642 (1st Dep't 1997); *Milazzo v. Long Island Lighting Co.,* 106 A.D.2d 495, 483 N.Y.S.2d 33 (2d Dep't 1984). In the more serious circumstance of a criminal case where an individual's liberty is at stake, "[s]ubstantial publicity alone is not enough to require a change of venue." *United States v. Stevens,* 83 F.3d 60, 66 (2d Cir. 1996). Rather, in order to secure a venue change in a criminal proceeding, "the defendant must show 'a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial.'" *United States v. Maldonado–Rivera*, 922 F.2d 934, 966–67 (2d Cir. 1990) (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)). Plaintiff in the instant case merely seeks to recover monetary damages, not to avoid incarceration, and thus she cannot credibly argue that her case should be subjected to a more rigorous examination of the effects of publicity on potential jurors. Her speculative fears of prejudice she *might* suffer are too remote to overcome the myriad factors favoring a venue change.

Finally, given the size of the potential jury pool in the Southern District, it is difficult to believe that a panel of qualified, objective jurors could not be impaneled. *See generally United States v. Gotti*, 399 F. Supp. 2d 214, 222 (S.D.N.Y. 2005) (denying change of venue and noting that with a population of nearly five million people in the Southern District, "a searching voir dire and emphatic jury instructions can adequately ensure that an impartial jury is selected").

7

Indeed, this Court is quite confident that the transferee judge in the Southern District will be more than capable of qualifying a jury pool that can remain fair and impartial.[2]

The only factor weighing in favor of retaining the case in this district is Plaintiff's election to commence the action here. As consideration of the remaining factors weighs heavily in favor of transfer, Defendants' motion is granted.

## IV. CONCLUSION

The motion to change venue, DE [8], is granted. The Clerk of the Court is directed to transfer the case to the United States District Court for the Southern District of New York.

**SO ORDERED**.

/s/
Sandra J. Feuerstein
United States District Judge

Dated: Central Islip, New York
August 14, 2019

---

[2] Of course, should any of Plaintiff's speculative fears be realized, she could, after the completion of discovery, request that the trial be held in a different venue.