# EXHIBIT "C"

AMERICAN ARBITRATION ASSOCIATION
CASE # 01-19-0000-3395
------------------------------------------------------------------X
In the Matter of the Arbitration between

UNITED FEDERATION OF TEACHERS,
Local 2, AFT, AFL-CIO,

        "Union,"                                           Opinion and
and                                                      Award

NEW YORK CITY DEPARTMENT OF EDUCATION,

        "Employer."

Re: UFT Case No. A-10-X67783

    Patricia Cummings
------------------------------------------------------------------X

BEFORE: Mary J. O'Connell, Esq., Arbitrator

Appearances:

For the Union: Mark Collins, UFT Special Representative
                  Carl Cambria, UFT Special Representative


For the Department:  Andrea Andrade, Esq., NYCDOE Agency Attorney
                          Barbara Namani, Esq. NYCDOE Agency Attorney


The undersigned was designated pursuant to the selection of the parties to serve as Arbitrator of the dispute described below. Hearings were held before me at the offices of the American Arbitration Association, 120 Broadway, New York, New York on February 7, 2019 and May 21, 2019. The instant proceeding was conducted pursuant to the grievance procedure set forth in Article Twenty-Two of the collective bargaining agreement.

Each party had full opportunity to present witnesses and to present exhibits and

1

arguments to the Arbitrator. Based on the evidence presented and arguments made, the Arbitrator renders this Opinion and Award.

## ISSUE

At the outset of the hearing, the parties submitted their respective statements of the issue for my consideration:

The Union proposed:

Did the Department violate Article 21(C)3 when it placed a letter dated September 12, 2018 in the file of the Grievant Patricia Cummings?
If so, what shall be the remedy?

The Department proposed:

Did the Department violate Article 21(C)(3) of the parties' Collective Bargaining Agreement by issuing a letter to file to the grievant dated September 12, 2018?
If so, what - consistent with the limitations on arbitral authority set forth in the CBA - is the appropriate remedy?

The parties authorized the arbitrator to frame the issue. Upon review of the statements and the entire record, the issue in this matter is:

Did the Department of Education violate Article 21(C)(3) of the Collective Bargaining Agreement by issuing a letter to file to the Grievant dated September 12, 2018? If so, what shall be the remedy?

## RELEVANT CONTRACT PROVISIONS

### ARTICLE TWENTY-ONE
### DISCHARGE REVIEW PROCEDURES

### A. Teacher Files

Official teacher files in a school shall be maintained under the following circumstances:
1. No material derogatory to a teacher's conduct, service, character or personality shall be placed in the files unless the teacher has had an opportunity to read the material. The teacher shall acknowledge that he/she had read such material by adding his/her signature on the actual copy to be filed, with the understanding that such signature merely signifies

2

that he/she has read the material to be filed and does not necessarily indicate agreement with its content. However, an incident which has not been reduced to writing within three months of its occurrence, exclusive of the summer vacation period, may not later be added to the file.

**C. Summons**

3. Incidents investigated by the Chancellor or by a governmental investigatory agency must be reduced to writing by the appropriate supervisor within 6 months and 12 months respectively from the date of the incident either occurred or should have been discovered by the appropriate school officials. Employees must receive a complete copy of any such writing and an opportunity to answer in writing and to have such response attached. The writing may not be incorporated into the employee's personnel file or record, unless this procedure is followed, and any such writing will be removed when an employee's claim that it is inaccurate or unfair is sustained.

BACKGROUND

The grievant, Patricia Cummings ("Grievant"), began work for the Department as a teacher in 2016. At the time of her discharge, she was working at Middle School 118 in the Bronx.

On September 12, 2018, the Grievant filed a Step I grievance alleging that the letter to file of the same date referred to events more than three months prior to the date of the letter. The Grievant sought removal of the letter from her file. In the Step I decision dated September 27, 2018, Principal Guilia Cox denied the grievance, writing that Article 21 (C)(3) provides for six months time in the event of an incident investigated by the Chancellor's office and that the letter was therefore timely. A Step II Grievance Request was submitted on September 25, 2018. A grievance conference was held on November 13, 2018, and the grievance was denied in a decision by the Chancellor's representative dated November 20, 2018. The Union filed a Demand for Arbitration on January 30, 2019. Joint Exhibit 1.[1]

---

[1] The Demand was amended without objection at the hearing to allege that the letter referenced incidents outside the six month time frame in violation of the Agreement.

FACTS

The facts as to the underlying occurrence and timeline of events in this case are derived from the Office of Special Investigation report dated July 24, 2018 (Department Exhibit 1), the testimony of Principal Cox, and Principal Cox's letter to the Grievant dated September 12, 2018. On January 10, 2018, the Grievant delivered a lesson in a seventh grade history class concerning the Middle Passage – the sea route taken by slave ships between West Africa and the West Indies during the Atlantic Slave trade. The lesson included the showing of a portion of the film "Freedom." The Grievant also asked for students to volunteer to go to the front of the class and sit close together to re-enact conditions on the slave ship.

The following day, January 11, 2018, AP Ware advised Principal Cox that Student A reported to her that the lesson made her feel uncomfortable. As a result, the principal asked AP Ware to collect statements from students in the class. The OSI report indicates that fourteen student statements were taken on January 11, 2018. The report does not indicate when the statements were given to the principal.[2] Department Exhibit One, Pages 6, 9.

The OSI report indicates that Principal Cox told the OSI investigator that she reported the incident to the Office of Equal Opportunity (OEO), which declined to investigate and referred

---

[2] According to the OSI report, Teaching Fellow Anthony Worrell, who was present during the same lesson given to a different class, reported the situation to Principal Cox after the class because what transpired in the classroom offended him. Department Exhibit One, Page 7.

4

the matter back to her. There is no indication in the report as to when the principal reported the incident to OEO.

According to the OSI report, on January 17, 2018, the mother of Student A filed a written complaint with the school. The next day, January 18, 2018, because Principal Cox understood the complaint to allege potential corporal punishment, she referred the case to OSI. At the hearing, Principal Cox testified that she became aware of a potential corporal punishment allegation when she had a conference with the Grievant on January 18, 2018 to discuss curriculum and pedagogical decisions. The Grievant was accompanied at the meeting by her union representative, Murphy Higgs, who told the OSI investigator that there was no discussion of corporal punishment. Department Exhibit One, Page 7.

OSI undertook an investigation, and in a report dated July 24, 2018 found the allegation of corporal punishment to be unsubstantiated. However, OSI found that the Grievant exercised poor judgment in conducting a lesson that inadequately incorporated the New York City DOE social studies curriculum and guidance for this topic. Department Exhibit One, Page 11.

Principal Cox testified that after she received the OSI report, she reached out to the Grievant in August, and she met with the Grievant and her union representative on September 6, 2018. On September 12, 2018 Principal Cox issued a letter to the Grievant finding that she displayed poor professional judgment in delivery of the lesson, and insubordination when she failed to adhere to the passport curriculum. The Grievant was advised that the misconduct could lead to a discontinuance of her probationary service and termination of her employment. Joint Exhibit 1g.

The Department called Karen Solimando who has held the position of Director of the Office of Collective Bargaining and Labor Relations since September, 2015. Ms. Solimando's

testimony concerned whether the time frames of six and twelve months in which incidents investigated by the Chancellor or a government agency, respectively, must be reduced to writing as set forth in Article 21C(3) are extended for the summer months as is the time frame under Article 21A. She averred that teachers are not required to report during the summer and cannot be compelled to report unless they teach summer school. Because principals cannot compel attendance during the summer months, disciplinary meetings are held during the school year and during school hours. Thus, historically, they have not been held in the summer months. In Ms. Solimando's experience, the Union has taken the position that the Department cannot hold a disciplinary meeting during the summer. Further, if a teacher sought to grieve a letter to file issued on the last day of school, the teacher would have thirty school days in which to file. This means that grievances would be filed in September, and not during the summer months. Moreover, while the UFT grievance department is open during the summer, it has limited staff.

Ms. Solimando testified that if Article 21(C)(3) were interpreted so as to include summer months, the Department would be required to have teachers participate in disciplinary meetings during summer months or else risk the Department issuing untimely disciplinary letters. This would be a sea change to what the Department does and would impact every report issued. There would be a great impact on operations and staffing. The repercussions of that interpretation would be felt far and wide.

On cross examination, Ms. Solimando admitted that, hypothetically, if the time in which a letter to file had to be issued fell during the winter recess, the principal would be required to deliver that letter to the teacher prior to the start of the winter recess, not after. The time is not extended by recess periods or weekends under Article 21A.

## POSITIONS OF THE PARTIES

The Union argues that this matter involves both factual and contract interpretation disputes. According to the Union, the Department must convince the arbitrator on two points. The first is that Article 21(C)(3) is exclusive of summer months – even though the provision does not so state. The second is that the appropriate school officials did not discover the incident until after January 12, 2018.

Article 21(C)(3) establishes that the six or twelve month time limitation starts on one of two possible moments. One is the date of the incident. The other is the day the incident should have been discovered. The Union argues that there is evidence – specifically, the OSI report – which demonstrates that the lesson that is the subject of the letter occurred on January 10, 2018. This is indicated in the investigator's interview with Principal Cox. As to discovery of the incident, the Union asserts that, according to the OSI report, Principal Cox stated that the incident was reported to OEO and that they declined to investigate on January 11, 2018. Assistant Principal Ware advised her that Student A was uncomfortable. As a result, Principal Cox had AP Ware obtain student statements and provide them to her. According to the OSI report, AP Ware collected at least fourteen student witness statements from the class. Therefore, the incident occurred on January 10, 2018 and was discovered a day later, on January 11, 2018, at which point the principal directed her subordinate to speak to the students.

The Union points to Arbitrator Viani's award in the Rauscher matter. The issue in that case was when the incident was deemed discovered, and thus at what point the clock should start running under Article 21. While the Department argued that incident occurred when the conclusion of the investigation was reached, Arbitrator Viani found that the inclusion of the Article in the "Due Process and Review Procedures" meant that the disposition of allegations

7

would take place within a reasonable period of time to allow the employee a reasonable amount of time to prepare a defense. In the instant matter, Principal Cox discovered incident, reported the incident to OEO, directed AP Ware to commence an investigation and AP Ware spoke with students- all prior to January 12, 2018.

As to the testimony of Principal Cox in support of the Department's position that the incident was "discovered" on January 18, Principal Cox testified that it was not until January 18, 2018 that she knew about the allegations and referred them to OSI. While the Department saw this evidence as unrefuted, it is refuted extensively by the OSI report. The Union asks that Principal Cox's testimony be given no weight as the Department prevented her from being cross-examined by the Union. Her testimony has no probative value. If it is given any weight, it is not enough to rebut the detailed contemporaneous information in the OSI report.

Thus, in light of the documentary evidence, there should be a factual finding that discovery was, at the latest, January 11, 2018.

As to the exclusion of summer months in Article 21 (C)(3), the Union again turns to the Rauscher case. Arbitrator Viani wrote that time limits are to preserve due process rights, and the procedural safeguards noted in Article 21(C)(3) have nothing to do with investigations or conferences, only reduction of an incident to writing. Further, the decision provides incite as to the Department's position on the exclusion of summer months. In Rauscher, the incident occurred January 14, however, the word "summer" only appears twice in the decision. The parties did not disagree that it is only within the six or twelve month window period that an incident may be reduced to writing.

The Union also relies on the parties' bargaining history as set forth in the decision of Arbitrator Bucheit in the Friedman decision. The decision notes that in the 2000-2003 round of

bargaining, the Department made a proposal specifically excluding the months of July and August when an incident was being investigated by the Chancellor or a governmental agency. The Union points out that the current language of Article 21(C)(3) has no reference to the exclusion of July and August. As to the significance of this, the Union cites Elkouri, *How Arbitration Works,* which notes that if a proposed clause is rejected or withdrawn, an arbitrator will not read it into the contract. This is consistent with the fundamental tenet that a party cannot get in arbitration what it could not get in negotiation. Elkouri also notes the principle that when parties change language, the arbitrator will presume that the change was intended. Here, there has been a consistent use of exclusion of summer months in Article 21(A)(1) and no exclusion for six and twelve months in Article 21(C)(3).

The Union submits that having looked at the Rauscher case and bargaining history set forth in the Friedman case, it would be implausible to exclude summer months when calculating the time period in which an incident must be reduced to a letter to file. The Department's position essentially changes the language from twelve months to fourteen months. This is a non-sensical interpretation. To interpret the contract in the way the Department has proposed is not contract interpretation, but contract making.

The Union maintains that Ms. Solimando's testimony, explaining that if three months after an incident fell during a winter recess, the letter to file would have to be issued prior to the recess, proves the Union's contention that in this case. Six months from January 18 is July 18. It is the Union's position is that the incident should have been reduced to writing on the last day of school.

As to the Department's defenses, the Union argues that Department's argument that interpreting the contract language to include the summer months would be a sea change, the

9

repercussions of which would be far and wide, is unsupported by any proof in the record. Further, the Department's argument as to past practice is irrelevant because the contract language is clear and unambiguous. Moreover, there are no gaps in the contract language which would necessitate an examination of the parties' practice.

Thus, the Union requests that the grievance be sustained, a finding made that the Department violated the collective bargaining agreement, and an order that the September 12, 2018 letter be removed from the Grievant's file.

The Department contends that this case rests on two dates – January 18, 2018 and September 12, 2018. According to the Department, both parties agree that the Grievant received a disciplinary letter on September 12, 2018, based upon a disciplinary investigation by the Chancellor. That letter is within the six month time frame set forth in the collective bargaining agreement. The parties agree that OSI investigated an allegation of corporal punishment against the Grievant. The Department contends that it introduced unrefuted testimony by Principal Cox that January 18, 2018 was the first day she discovered the Grievant may have engaged in corporal punishment which became the basis for the investigation. The Grievant was called to the principal on January 18, 2018 to discuss poor pedagogy concerning a class in which the Grievant made students pretend to be slaves as punishment for laughing in class. It was only then that the principal discovered that the Grievant's actions were disciplinary in nature and therefore called OSI. While the Grievant was called in initially to discuss poor pedagogy, it was the corporal punishment that was being investigated by OSI and resulted in the letter to file.

The Department further highlights Principal Cox's testimony that on August 21, 2018, she reached out to the Grievant to provide her with the OSI report and schedule a disciplinary conference. She gave the Grievant the option of meeting prior to September 4, 2018, but she did

not mandate the Grievant to appear during the summer months because she knew that she could not compel a teacher to come to the school during the summer. On September 4, 2018, the Grievant was issued a 48 notice to appear at a disciplinary conference on September 6, 2018. On September 7, 2018, Principal Cox gave the matter due consideration, and issued a disciplinary letter on September 12, 2018 because school was closed on September 10 and September 11.

According to the Department, the only date at issue is January 18, 2018. There is no evidence that anything took place before January 18, 2018. The principal learned of the corporal punishment on January 18, 2018, and there is no witness to refute her testimony to that effect.

As to the issue of whether the summer months must be included in the calculation of the six months and twelve months set forth in Article 21C(3), if the Union's theory that they must be counted is correct, the Department could have required the Grievant to come in on any day between June 27 and July 18. However, the Department maintains that it presented unrefuted witness testimony that it has never been the practice of the parties to hold a disciplinary conference during the summer months.

The Department points to the credible testimony of Karen Solimando that it has always been the union's position that disciplinary conferences are held during school hours and during the school year. She further testified that if the summer months were included, it would impact teachers by requiring them to attend disciplinary conferences during the summer. It is the parties' unrefuted past practice not to hold disciplinary conferences during the summer.

The Department cites case law and arbitral tenets to support its position. For example, in the Steelworkers trilogy, the United States Supreme Court endorsed the notion that labor arbitration is not confined to the express provisions of the contract, but the practice of the shop is equally part of the collective bargaining agreement. Additionally, in Elkouri, the authors note

that while the contract language may cover a topic generally, if there are gaps as to a specific situation, established practice can fill in those gaps.

The Department argues that this is a classic example of a past practice which must be enforced. Ms. Solimando testified credibly that disciplinary conferences do not take place over the summer and the clock stops ticking. Like a past practice, not holding disciplinary conferences in the summer months is a long-standing practice which is accepted and known. It is unequivocal, acted upon and ascertainable over an extended period of time.

The Department also contends that arbitrators have often ruled an established custom to be binding where it involves a benefit of particular value. In the instant case, not scheduling a disciplinary conference is a personal benefit to teachers. The Department's testimony demonstrated that if a teacher were to receive a letter on the last day of classes, the teacher would not have to file during summer vacation. This is a personal benefit to teachers and constitutes additional evidence as to why the Article 21(C)(3) should not be read as to count the summer months.

Finally, the Department asserts that when the contract is read as a whole, as it must, the provision at issue cannot include the summer months.

Thus, the Department asserts that Principal Cox discovered the incident investigated by the Chancellor on January 18, 2018. Six months from that date, excluding summer vacation, is September 18, 2018. The letter was issued on September 12, 2018 and therefore is within the six month time frame articulated in Article 21(C)(3). The grievance must therefore be denied.

DISCUSSION

The language in Article 21(C)(3) of the agreement is clear that the time in which the supervisor must reduce an incident to writing starts to run when the supervisor knew or should have known that the incident occurred. Thus, the very first question which must be answered is: for what incident is the Grievant receiving the disciplinary letter?

The disciplinary letter memorialized a September 6, 2018 meeting which the principal had with the Grievant and her union representative to discuss the findings of the OSI report. The letter noted:

> "(s)pecifically, it was determined that you engaged in poor judgment in conducting a lesson that inadequately incorporated and significantly deviated from the New York City DOE social studies curriculum."

Principal Cox concurred with the report's finding that the Grievant engaged in poor judgment on January 10, 2018 when conducting the lesson about the Middle Passage. Principal Cox went on to write:

> "This conduct seriously diverged from best practices as DOE academic policy and school curriculum does not endorse, encourage or include reenactments of historical events where students take on roles of victimized individuals. Your actions caused some of the students and staff members present in the classroom to feel uncomfortable with the content of the lesson and with the manner in which you conducted this lesson. Furthermore, you disregarded the potential this behavior had to offend or create discomfort for students and staff." Joint Exhibit 1g.

The letter is unequivocal that the reasons for which the Grievant received the September 12, 2018 letter were her poor judgment in conducting the lesson, and her failure to follow curriculum guides. There is no reference the principal's letter to corporal punishment. This is logical since OSI did not substantiate the corporal punishment allegation. The date of significance in this case is when the incident (i.e., the lesson) occurred or it should have been discovered by the appropriate school official.

13

The OSI report - Department Exhibit One - is clear that Principal Cox became aware that there was a potential problem with the January 10, 2018 lesson no later than January 11, 2018. First, there is a reference in the report that Teacher Worrell reported to the principal, after he witnessed the Middle Passage lesson delivered by the Grievant to a different class, that he was offended by the Grievant's teaching of the lesson. The report notes that the principal referred the matter initially to the Office of Equal Opportunity, which referred it back to her. There is no specific date in the report as to when Worrell spoke to Principal Cox or when the principal referred the matter to OEO, although the report's narrative suggests that both events occurred prior to Assistant Principal Ware speaking to Principal Cox.

The OSI report goes on to state that Principal Cox told the investigator that AP Ware advised her on January 11, 2018 that Student A felt uncomfortable during the lesson. On that same day, Principal Cox asked AP Ware to collect statements from the students in class. AP Ware's statement to the OSI investigator corroborates that "Principal Cox instructed her to obtain written statements from students regarding the incident in question." The statements from fourteen students are referred in the report as dated January 11, 2018. The OSI report clearly shows that the Principal was aware no later than January 11, 2018 that there was a situation concerning the lesson delivered by the Grievant about the Middle Passage which needed to be investigated and addressed.

Principal Cox testified at the hearing that she became aware of the corporal punishment allegation concerning Student A after she spoke with the Grievant at a conference called on January 18, 2018 to discuss curriculum and pedagogical problems. This is further indication that Principal Cox was aware of the problematic lesson prior to January 18, 2018, insofar as she noticed the Grievant for the conference on January 16, 2018. The principal's testimony differed

from the OSI report which indicated that Principal Cox told investigators that she learned of the alleged corporal punishment after Student A's mother filed a written complaint. It is difficult to reconcile this conflict, but at the end of the day, the date upon which Principal Cox learned of the corporal punishment allegation is not dispositive of the issue in the case. I note that the principal did not testify at the hearing as to when she learned of the lesson. She testified only as to when she claimed to have learned about the potential corporal punishment allegation. It is telling that at no time did the principal refute the statement in the OSI report that she was advised by AP Ware that students were uncomfortable with lesson, which in turn prompted her to direct AP Ware to secure student statements, on January 11, 2018. I thus credit the date set forth in the OSI report – that the appropriate supervisor knew or should have known about the incident as of January 11, 2018 - as accurate. Although the corporal punishment allegation triggered the OSI investigation, OSI did not substantiate the corporal punishment allegation. The principal's September 12, 2018 letter speaks to poor professional judgment and insubordination – not corporal punishment. The principal was aware of this incident on January 11, 2018.

Given the finding that the appropriate supervisor knew or should have known about the pedagogical issues with the lesson on January 11, 2018, it is not necessary to determine in this case whether the time in which an incident must be reduced to writing may be extended by the summer months. Both parties provided well-reasoned arguments in support of their respective positions. However, I need not make that determination because even if I were to accept the Department's argument, the letter is untimely.

In sustaining this grievance, the undersigned wishes to note that this decision has no bearing on the propriety of any disciplinary action taken against the Grievant, nor the admissibility of the principal's September 12, 2018 letter in any other forum.

## AWARD

The grievance is sustained.

The Department violated the collective bargaining agreement when it placed the September 12, 2018 letter in the Grievant's file.

The disciplinary letter dated September 12, 2018 shall be removed immediately from the Grievant's personnel file.

Dated: Queens, New York
       June 19, 2019

*Mary J. O'Connell*
Mary J. O'Connell, Esq.

## **AFFIRMATION**

STATE OF NEW YORK)
                    ) ss.:
COUNTY OF QUEENS )

I, Mary J. O'Connell, do hereby affirm upon my oath as Arbitrator that I am the individual described herein and who executed this instrument, which is my Award.

June 19, 2019

*Mary J. O'Connell*
Mary J. O'Connell, Esq.