UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------------------X
PATRICIA CUMMINGS,

                                Plaintiff,                          Docket No.
                                                                   19-cv-07723 (CM) (OTW)

                -against-

THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT
OF EDUCATION; CITY OF NEW YORK OFFICE OF SPECIAL
INVESTIGATIONS; NYC MAYOR BILL de BLASIO; GIULIA COX;
COURTNEY WARE; BEN CHAPMAN; NEW YORK DAILY NEWS;
DR. ANDRE PERRY; THE HECHINGER REPORT a/k/a HECHINGER
INSTITUTE ON EDUCATION AND THE MEDIA; LENARD LARRY
McKELVEY a/k/a CHARLAMAGNE THA GOD; WWPR-FM
(105.1 MHZ); iHEARTMEDIA; CLEAR CHANNEL
COMMUNICATIONS, INC.; NEW YORK STATE SENATOR,
KEVIN S. PARKER; COUNCILMAN, JUMAANE D. WILLIAMS;
COUNCILMAN, DANIEL DROMM; COALITION OF
EDUCATIONAL JUSTICE; ANGELMARTINEZ;
NATASHA CAPERS, and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff
to designate any and all individuals, officers, members,
agents, servants, and/or employees of the
aforementioned agencies owing a duty of care to Plaintiff,
individually and jointly and severally,

                                Defendants.
----------------------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW
### IN OPPOSITION TO DEFENDANTS' DAILY NEWS, L.P. AND BEN CHAPMAN'S
### MOTION TO DISMISS PURSUANT TO FED. RULE OF CIV. PROCED. 12 (b) (6)

                        THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
                        By: Thomas F. Liotti, Esq. (TL 4471)
                        Attorneys for the Plaintiff
                        *PATRICIA CUMMINGS*
                        600 Old Country Road, Suite 530
                        Garden City, New York 11530
                        *Tom@TLiotti.com*
                        Phone:  (516) 794-4700
                        Fax:      (516) 794-2816

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... i

PRELIMINARY STATEMENT ...................................................................................1

    The News Defendants' Statements Concerning Plaintiff's
    "Teachable Moment" on Slavery and the Department of
    Education's Subsequent Investigation Contain Numerous Errors......................................6

    The News Defendants' Statements Concerning Their Reporting
    of the Department of Education's Investigation Are Untrue .............................................7

ARGUMENT...................................................................................................................9

THE NEWS DEFENDANTS' MOTION TO DISMISS
IS PROCEDURALLY DEFECTIVE ...........................................................................9

THE PLAINTIFF HAS SUFFICIENTLY DEMONSTRATED A BASIS FOR
A DEFAMATION ACTION AGAINST THE NEWS DEFENDANTS .......................9

    Courts Do Not Regularly Dismiss Defamation Actions.....................................................9

    The Daily News Articles Are Not Absolutely Privileged
    Under NY Civil Rights Law §74 ......................................................................................14

    The Department of Education's Investigation and Plaintiff's
    Filings Are NOT Proceedings Covered Under Section 74 ................................................18

    The Daily *News* Defendants DID NOT Fairly and Accurately
    Report on These Proceedings............................................................................................19

    The Statements Describing the Plaintiff's Lesson as
    "Racist" are NOT Opinions .............................................................................................19

    The Plaintiff's Claims for Negligence,
    Negligent Infliction of Emotional Distress, and
    Intentional Infliction of Emotional are NOT Duplicative .................................................23

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Federal Cases**

*Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys.*,
  988 F.2d 1157, 1160 (Fed. Cir. 1993)...............................................................................10

*Ashcroft v. Iqbal*,
  556 US 662, 678 (2009), ..................................................................................................10

*Bell Atlantic Corporation v. Twombly, 550 US 544, 570 (2007) and Ashcroft v. Iqbal*,
  556 US 662, 678 (2009)....................................................................................................10

*Bloom v. Fox News of LA*,
  528 F. Supp. 2d 69, (EDNY 2007). ..................................................................................23

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..............................................................................................14

*Christopher v. American News Co.*,
  171 F.2d 275 (7th Cir. 1948). ...........................................................................................20

*Conley v. Gibson*,
  355 U.S. 41 (1957).............................................................................................................13

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, F Supp 3d ,
  2016 WL 3773394, [SD NY 2016]....................................................................................20

*Egiazaryan v. Zalmayev*,
  880 F Supp 2d 494, 503 [SD NY 2012] ............................................................................19

*Gant v. Wallingford Bd. of Educ.*,
  69 F.3d 669, 673 (2d Cir.1995)..........................................................................................15

*Gertz v. Robert Welch, Inc.*,
  418 US 323, 339-340 (1974) ....................................................................................12, 19

*Harris v. City of New York*,
  186 F.3d 243 (2d Cir. 1999)..............................................................................................13

*Koulkina v. City of New York*,
  559 F. Supp. 2d 300 (S.D.N.Y. 2008)...............................................................................10

*New York Times Co. v. Sullivan,*
  376 U.S. 254 (1964)....................................................................................11, 12

*Phelps v. Kapnolas,*
  308 F.3d 180, 184-185 (2d Cir. 2002). ............................................................13

*Rosenblatt v. Baer,*
  383 U.S. 75 (1966)............................................................................................11

*Scheuer v. Rhodes,*
  416 U.S. 232 at 236, 94 S. Ct. at 1686 (1974)................................................15

*Stevens v. Tillman,*
  855 F.2d 394, 402 ............................................................................................22

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002)..........................................................................................14

*Wenz v. Becker,*
  948 F Supp 319, 323 [SD NY]..........................................................................15

**State Cases**

*Anderson v. City of New York,*
  NY Slip Op 30080(U) (Sup. Ct. NY County 2014)...............................................9

*Armstrong v. Simon & Schuster,*
  85 NY2d 373 (1995) at 380 ..............................................................................17

*Aronson v. Wiersma,*
  65 NY2d 592, (1985) at 594 .............................................................................17

*Ava v. NYP Holdings, Inc.,*
  64 AD3d 407 (2009) at 413. .............................................................................17

*Brian v Richardson,*
  87 NY2d 46, 51 [1995] .....................................................................................20

*Chapadeau v. Utica Observer-Dispatch,*
  38 NY2d 196, 199 (1975) ..................................................................................23

*Cholowsky v. Civiletti,*
  69 AD3d at 114-115..................................................................................15, 16

*Davis v. Boeheim,*
    24 NY3d 262 at 269 (2014) ..................................................................................19, 20

*Deluca v. New York News,*
    109 Misc. 2d 341 (1981) ............................................................................................25

*Farber v. Jefferys,*
    33 Misc 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011],
        affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858 .......................17

*Fischer v. Maloney,*
    43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978) .................23

*Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York,*
    101 AD3d 175, 182 ....................................................................................................18

*Gillings v. New York Post,*
    2018 NY Slip Op 07413 (App. Div. 2nd Dept. Nov. 7, 2018) .........................................15

*Gross v. New York Times Co.,*
    82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (1993) ...................17, 19, 20

*Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.,*
    49 NY2d 63, 67 ....................................................................................................... 15, 16

*Immuno AG v. J. Moor-Jankowski,*
    77 N.Y.2d at 248-49, 566 N.Y.S.2d at 913-14, 567
    N.E.2d at 1277-78 (1991) ...........................................................................................17

*James v. Gannett Co.,*
    40 NY2d 415 (1976) at 419-420 ..................................................................................17

*Mann v. Abel,*
    10 NY3d 271 at 276 (2008) ........................................................................................20

*Mondello v. Newsday, Inc.,*
    6 AD3d 586, 587 (2d Dept. 2004) ..............................................................................22

*Mulder v. Donaldson, Lufkin & Jenrette,*
    161Misc.2d 698, 705 (Sup. NY Cty. 1994) ..................................................................16

*Murphy v. Am. Home Products Corp.,*
    58 NY2d 293, 303 [1983] ...........................................................................................24

*Parks v. Steinbrenner*,
    131 AD2d 60, 62-63 [1st Dept. 1987] ...............................................20

*Passucci v. Home Depot, Inc.*,
    67 AD3d 1470, 1471 [4th Dept. 2009] .............................................23

*Penn Warranty Corp. v. DiGiovanni*,
    2005 NY Slip Op 25449 10 Misc3d 998 (2005)...............................21

*Posner v. NY Law Publ'g Co.*,
    228 AD2d 318, 318 (1st Dept. 1996)................................................15

*Saleh v. New York Post*,
    78 AD3d 1149, 1151 ........................................................................15

*Santana v. Leith*,
    117 AD3d 711, 712 [2d Dept. 2014] ................................................24

*Sheila C. v. Povich*,
    11 AD3d 120, 131 [1st Dept. 2004].................................................24

*Silsdorf v. Levine*,
    59 NY2d 8, 15-16 [1983], cert denied 464 US 831 .........................20

*Silverman v. Daily News, LP*,
    129 AD3d 1054 (2nd Dept. 2015)...............................................22, 23

*Steinhilber v. Alphonse*,
    68 NY2d 283 at 289 (1986) ...................................................17, 19, 20

*600 West 115th Street Corp. v. Von Gutfeld*,
    80 N.Y.2d at 136 & 138, 589 N.Y.S.2d at 827 & 829,
    603 N.E.2d at 932 & 934 (1992)......................................................17

**State Statutes**

New York Civil Rights Law § 74 ......................................4, 14, 15, 19

**Rules**

Federal Rule of Civil Procedure 12 (b)(6). ...........................1,9,10, 13, 14, 25

Fed. R. Civ. P. 8 (a)(2) ...................................................................13

**Constitutional Provisions**

First Amendment of US Constitution .......................................................................................10,11

**Secondary Sources**

Article 20 Contract between DOE & UFT ......................................................................................3

Chancellor Regulation A-420 .......................................................................................................3

Henshall, Peter and David Ingram, *The News Manual: A Professional
Resource for Journalists and the Media* (1991). ...........................................................................5

Russo, Alexander, *Ben Chapman Reflects on Eight Years Covering NYC Schools*,
New York School Talk, July 10, 2019.............................................................................................5

Thomas E. Willging, *Use of Rule 12 (B) (6) in Two Federal District Courts*
(Federal Judicial Center 1989)......................................................................................................9

White, Helen and Christina Evans*, Learning to Listen to Learn:
Using Multi-Sensory Teaching for Effective Listening* (2005). .....................................................2

Plaintiff, Patricia Cummings, (hereinafter "Plaintiff" or "Ms. Cummings"), a private individual, respectfully submits this Memorandum of Law in Opposition to Defendants' Daily News, L.P. and Ben Chapman's (hereinafter "News Defendants") Motion to Dismiss the Plaintiff's Verified Complaint pursuant to Federal Rule of Civil Procedure 12 (b)(6).

## PRELIMINARY STATEMENT

The News Defendants' Motion is a thinly-veiled attempt to reframe Plaintiff's case into something that it is not. In a confusing presentation of misguided and misstated facts, the Motion and supporting papers ignore the four corners of the Verified Complaint, submit facts outside of the Verified Complaint, and disregard that the detailed factual allegations in the Verified Complaint are to be accepted as true.

The Plaintiff was a probationary New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York. She seeks damages related *inter alia* to the infliction of defamation and defamation *per se*, reverse discrimination, denial of due process, severe emotional, psychological, and physical distress, loss of reputation, loss of income, expenses upon her, the erroneous termination of her employment as a New York City school teacher, and the "*badge of infamy*" with which she has forever been branded.

The Plaintiff's claim arose as a result of what was fallaciously reported concerning an alleged complaint made by **one (1)** parent of **one (1)** student regarding a lesson taught by the Plaintiff in her social studies class on the Middle Passage, wherein she subsequently and unwillingly became the subject of a front page pictorial and story in the New York Daily News, falsely accusing her of being a "*racist*" and "making black students lie face down on the floor of her class, and asking them: '*[H]ow does it feel to be a slave?*'" As a result of the News Defendants' actions, this fabricated and erroneous set of purported "facts" was picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world.

The Plaintiff was featured in several prominent newspapers and televised news programs, as well as on YouTube, where it was erroneously reported, among other things that she "*singled out black students and*

1

made them act like slaves;" she is falsely reported to have told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" She has been publically shamed and falsely accused of "*child abuse,*" labeled as a "*racist,*" referred to as an "*oppressor,*" by many, including politicians and activists, and specifically in various and extensive media outlets discussing this issue. She has received direct threats of violence and death causing her to fear for her life. The Plaintiff was ultimately exonerated of the original erroneous allegations following an investigation by the New York City Department of Education's Office of Special Investigations, yet has nonetheless been terminated from her employment as New York City Public School Teacher at The William W. Niles School - Middle School 118.

The News Defendants' arguments are comprised of imprudent and factually incorrect statements. What the News Defendants have disingenuously described as a "misguided history lesson" was, in actuality, an example of a multi-sensory[1] teacher demonstrating "spatial recognition" to her students. This part of her lesson was described by the Plaintiff as a "teachable moment," meant for the students to perceive the closeness of the conditions being discussed for clarification purposes; it was not, in any way, a reenactment. The News Defendants falsely state that "multiple students in the classroom reported that she *physically pushed* the 'student volunteers' closer together, asking them "*how it felt*" to be a slave. This fabricated account is contradicted by the reported findings of the of the New York City Department of Education's Office of Special Investigations (also referred to as OSI); to wit: "'*Student B' denied that Ms. Cummings used her feet or her knees to push the students closer together during the demonstration;*" "'*Student' I never observed Ms. Cummings' knee make contact with 'Student A'*" "'*Student J' denied that Ms. Cummings made any physical contact with the students to make contact with them.*" See, Redacted Copy of Office of Special Investigations Investigative Report (OSI) dated July 24, 2018, included as News Defendants' Exhibit C. Moreover, "Students

---

[1] Multi-sensory teaching is a didactic system that seeks to develop awareness of self in time and space in order to raise cognition and understanding of the world as is experienced. It takes into account that different children learn in different ways; conveys information through things like touch and movement-called tactile and kinesthetic elements, as well as sight and hearing. See, White, Helen and Christina Evans, Learning to Listen to Learn: Using Multi-Sensory Teaching for Effective Listening (2005).

B, D, E, F, I, J and K" noted that the participating student volunteers did not appear to be in any distress. <u>See</u>, News Defendants' Exhibit C. Most remarkably, "Student J" admitted that "'*Student A*'[2] *was lying and was attempting to get Ms. Cummings fired or in trouble because 'Student A' did not like Ms. Cummings*." <u>See</u>, News Defendants' Exhibit C, at page 5. Moreover, the Plaintiff controverts this fallacious allegation in her rebuttal correspondence addressed to Community Superintendent Maribel Torres-Hulla dated October 5, 2018, annexed hereto as **Exhibit A** at page 8.

The News Defendants further disingenuously state that "[A] student and parent, upset by the Plaintiff's alleged actions, <u>immediately</u> filed complaints with the school's principal." In fact, "Student A" is alleged to have complained on or about January 11, 2018, and as noted in the OSI Report, "Student A's" mother is noted to have complained 6 days later (9 days after the lesson). Further, it is evident that a complaint was not immediately filed according to the OSI Report. <u>See</u>, News Defendants' Exhibit C. Furthermore, the Plaintiff was not removed for investigation by the New York City Department of Education's Office of Special Investigations until February 2, 2018; the day the Daily News exclusive front page story was published. Principal Cox did a school based investigation, but failed to adhere to Chancellor Regulation A-420 and breached Article 20 of the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT). A copy of the Plaintiff's Verified Complaint dated May 15, 2019, annexed hereto as **Exhibit B**, at pages 46-48.

It is erroneously stated that "*the Daily News, in a series of articles authored by Mr. Chapman and others, <u>accurately</u> reported on the allegations as the situation developed*." **This is completely false**, as the original reports were grossly incorrect and completely distinct from the allegation that was actually being investigated by OSI. The original allegation involved a false report that the Plaintiff physically pushed student volunteers closer together, using her feet or her knees to push the students closer together during a lesson

---

[2] "Student A" was one of four students who voluntarily participated in the classroom demonstration on the Middle Passage. It was erroneously alleged that Ms. Cummings pushed "Student A's" back with her knee and asked if it hurt or caused her discomfort.

demonstration; it was <u>never</u> the complaint that she "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like,*" as falsely and repeatedly reported by the News Defendants. <u>See</u>, Plaintiff's Exhibit B at pages 24-25. Notably, the Office of Special Investigations Investigative Report (OSI Report) dated July 24, 2018, indicates that "*[T]he written statements made by 'Students B, C, D, E, H, I, J, Q, R, S, T, U, and V' fail to corroborate that Ms. Cummings pressed her knee into 'Student A's' back or any students' back.*" <u>See</u>, News Defendants' Exhibit C. "Therefore, the allegation that Ms. Cummings used corporal punishment against "Student A" by pushing her knee into her ["Student A's"] back during a classroom demonstration was never corroborated and is **unsubstantiated**." <u>See</u>, News Defendants' Exhibit C. Parenthetically, the finding that Ms. Cummings acted with poor judgment in conducting a lesson that inadequately incorporated the New York City DOE social studies curriculum and guidance for this topic is a violation of her due process, as this is an improper finding, as it is not the function of the Office of Special Investigations to examine and evaluate teacher pedagogy (method or practice of teaching).

The News Defendants erroneously argue that the Plaintiff's claims against them fail for three (3) reasons; yet each of the reasons cited are without merit. The claim that the *Daily News* articles are <u>fair</u> and <u>true</u> reports of judicial proceedings, is <u>completely false</u>. There were <u>no</u> proceedings taking place at that time which alleged that the Plaintiff "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like,*" as was reported as "fact" by the News Defendants each and every time they reported on this matter. The Plaintiff was being investigated for a completely different allegation. Thus, New York Civil Rights Law § 74 affords no privilege to protect the News Defendants from liability.

Likewise, the News Defendants' claim that references to the Plaintiff's actions as "racist" in the *Daily News* articles are non-actionable opinions based on disclosed facts is <u>untrue</u>. There were no substantiated, accurate facts reported by the News Defendants. Moreover, the disingenuous attempt to characterize the reference to the Plaintiff's actions as <u>opinion</u> by the News Defendants is derisory. Credible journalists must be

able to distinguish between facts and opinions. A journalist needs to know how reliable statements are <u>before</u> <u>reporting them as facts</u>. <u>See</u>, Henshall, Peter and David Ingram, <u>The News Manual: A Professional Resource</u> <u>for Journalists and the Media</u> (1991). In order to formulate his purported "opinion," that the Plaintiff "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like,*" Defendant, Ben Chapman trespassed onto school property and solicited information from minor students without any adult permission or consent. No other investigation of the "facts" occurred, as evidenced by the fact that the reported accounts by the News Defendants differed dramatically from the actual allegation that was made by just one student and ultimately unsubstantiated by OSI. What was being erroneously reported by the News Defendants amounted to child abuse and/or endangerment, yet there was no indication of a substantiated investigation by the Defendant, Ben Chapman. Furthermore, the Defendant, Ben Chapman is an award-winning reporter who covers education for the New York Daily News. A graduate of Columbia University's Graduate School of Journalism whose work has also been published in the Washington Post and the New York Times, the Defendant, Chapman has written more than 2,200 articles about New York City schools for the Daily News since joining the paper in 2009. He does <u>not</u> write an opinion column; he is regarded as an investigative reporter writing a factual column[3]. Therefore, the News Defendants cannot disingenuously cloak their otherwise actionable behavior as "opinion" while publically and repeatedly describing and referring to the Plaintiff as a "racist" while promoting a false fact pattern and expect to escape any liability.

Furthermore, the News Defendants erroneously argue that the Plaintiffs' additional tort claims for negligence, negligent infliction of emotional distress, intentional infliction of emotional distress fail as a matter of law. The conduct described by the Plaintiff more than meets the rigorous standard formulated by the New

---

[3] It should be noted that it was reported recently that after more than eight (8) years covering the New York City schools for the New York Daily News, in June, 2019, (curiously, one month after the filing of the Verified Complaint in this action), Ben Chapman left his employment with the New York Daily News, and is now writing about crime for the Wall Street Journal. <u>See</u>, Russo, Alexander, <u>Ben Chapman Reflects on</u> <u>Eight Years Covering NYC Schools</u>, New York School Talk, July 10, 2019.

York courts for emotional distress claims. The News Defendants failed to exhibit any iota of journalistic integrity when they published entirely false articles about the Plaintiff; this makes them unquestionably negligent. Notably, even when the News Defendants obtained the conclusion page of the Office of Special Investigations Investigative Report, (see, New Defendant's Exhibit C), which confirmed that every item previously reported had been blatantly false, the News Defendants never issued a retraction or made any attempt to correct the record. In fact, they became more resolute in their determination to defame the Plaintiff. See, Plaintiff's Exhibit B, Ben Chapman and Stephen Rex Brown, Daily News, EXCLUSIVE: "City Fires Bronx 'Slave' Teacher." October 20, 2018, at page 25.

**The News Defendants' Statements Concerning Plaintiff's "Teachable Moment" on Slavery and the Department of Education's Subsequent Investigation Contain Numerous Errors**

In an attempt to diminish the Plaintiff's claims, the News Defendants erroneously state that by showing the clip from the movie *Freedom*, the Plaintiff deviated from the class's preapproved curriculum and failed to seek permission. Nonetheless, the Plaintiff maintains that she did not deviate from the curriculum. See, Plaintiff's Exhibit A, at page 3-4. The Plaintiff was not looking to replicate the conditions on the boats along the Middle Passage; she sought to replicate the space, or lack thereof, as a demonstration of spatial recognition. Moreover, the Plaintiff did not specifically select black students as volunteers for the demonstration. It was acknowledged that she sought random volunteers from the class to participate in the demonstration; no student was forced to participate. Notably, the class was comprised entirely of minority students. Again, the claim that multiple students reported that Plaintiff used her feet or hands to push these students even closer together is false. As stated previously herein, "Student B" specifically denied that Ms. Cummings used her feet or her knees to push students closer together. The News Defendants' fabricated account is clearly contradicted by the reported findings of the Office of Special Investigations; to wit: "'*Student B' denied that Ms. Cummings used her feet or her knees to push the students closer together during the demonstration;*'" "'*Student I' never observed Ms. Cummings' knee make contact with Student 'A;*'" "'*Student J' denied that Ms. Cummings made*

*any physical contact with the students to make contact with them*." <u>See</u>, News Defendants' Exhibit C; <u>see also</u>, Plaintiff's Exhibit A at page 8.

The News Defendants present an inaccurate account of the complaint filed with the principal, (Defendant Giulia Cox), by the student and her parent. Believing that these actions may constitute corporal punishment, for any of that account to be plausible, Principal Cox would have had to report the alleged incident on January 17, 2018, prior to the Plaintiff's initial meeting with her on January 18, 2018; she (Principal Cox) had not. The Plaintiff was <u>never</u> removed to a different school; she was reassigned to an administration building. The OSI report did <u>not</u> contain "various eyewitness accounts confirming that Plaintiff had placed her feet or knees on the students." <u>See</u>, News Defendant's Exhibit C; <u>see also</u>, Plaintiff's Exhibit A at page 8. The <u>one</u> student's complaint was <u>not corroborated</u>. While it was reported that the Department of Education "does not ever include or encourage reenactments of historical events where students take on roles of victimized people," no such policy is known to exist. <u>See</u>, Plaintiff's Exhibit A at pages 7-8. Nonsensically, OSI, in its report, referred the matter back to Principal Cox to "take appropriate disciplinary action." <u>See</u>, News Defendants' Exhibit C. Yet, the Plaintiff had already been disciplined by Principal Giulia Cox when she was removed from her classroom in January, 2018. Furthermore, the report recommended training, <u>not</u> termination; however, the events that followed made it very clear that there was no intention for the Plaintiff to return to the school. Though she was assured that she would be returning following the requisite filing of the disciplinary letter, the school apparently created a false schedule for the Plaintiff in order to conceal their true and premeditated intention to terminate her from her position. She was not terminated at the beginning of the 2018-2019 school year; she was actually terminated on October 18, 2018.

**The News Defendants' Statements Concerning Their Reporting of the Department of Education's Investigation Are Untrue**

The News Defendants' statement that "<u>in its first in a series of articles written by the Defendant, Ben Chapman and others, they reported on OSI's investigation of the Plaintiff's conduct</u>" is false. OSI did not get involved until the Department of Education discovered that the *Daily News* by Ben Chapman were

investigating a story about the Plaintiff. There was not an investigation being conducted by OSI when the Defendant, Ben Chapman trespassed on onto school property seeking a salacious story. The News Defendants attempt to disingenuously argue herein that "students and a staff member at the school accused the Plaintiff of having her history students "*lie on the floor*" and then "*stepped on their backs to show them what slavery feels like*." None of these accusations were verified by the Defendants, Ben Chapman and *Daily News*. The article also erroneously quoted another student who discussed the Plaintiff "*measuring the length and width to show how little space slaved had in the ship*;" yet, that never happened in the Plaintiff's class 408. Curiously, the News Defendants argue that the article included a quote from a Department of Education spokesperson, Tonya Holness stating, "*[W]hile the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or society*." This comment obviously was related to the false allegations perpetuated by the News Defendants, (that the Plaintiff "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*"), not the actual allegations that were ultimately unsubstantiated by OSI (*a false report that the Plaintiff physically pushed student volunteers closer together, using her feet or her knees to push the students closer together during a lesson demonstration*).

The News Defendants attempt to justify their defamatory behavior as legitimate investigation coverage. In this motion, they only discuss a hand-picked selection of articles, while clearly ignoring the other articles published between February and July, 2018, which affirmatively stated that the Plaintiff "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*." The News Defendants admit publishing an article on July 9, 2018, entitled, "*Bronx educators accused of racism still under investigation, still on payroll*," which was blatantly false, as the Plaintiff was never accused of racism, she was accused of utilizing corporal punishment. See, Plaintiff's Exhibit B, at page 25; see also, News Defendants' Exhibit C. These facts make it clear that the Department of Education utilized the News Defendants negligence to their advantage by

posturing for $23 million dollars in funding ear-marked for cultural competency and anti-bias training, bolstered by numerous radical civil rights activists provoked by the News Defendants' false reporting.

## ARGUMENT

### THE NEWS DEFENDANTS' MOTION TO DISMISS IS
### PROCEDURALLY DEFECTIVE

Primarily, this Court must consider the glaring procedural defect of the News Defendants' Rule 12 (b)(6) Motion to Dismiss, which fails to include a copy of the Plaintiff's Verified Complaint as an Exhibit. Despite the volume of papers submitted on the motion, including a 24-page legal Memorandum and the Plaintiff's 14 page Notice of Claim, the News Defendants have not seen fit to include a copy of the key document - the Verified Complaint. Arguably, the Court would have great difficulty determining either the legal sufficiency or the timeliness of a complaint that it has not been provided. A decision from the Supreme Court, New York County provides that when making a motion to dismiss based on an alleged pleading, a copy of the challenged pleading needs to be included. In *Anderson v. City of New York*, NY Slip Op 30080(U) (Sup. Ct. NY County 2014), the plaintiff alleged race and gender discrimination under the New York State and City Human Rights Laws, and the Court denied defendants' motion to dismiss with leave to renew on proper papers, for failure to attach a copy of the complaint." Id. Thus, the News Defendants' motion is likewise procedurally defective and should be denied.

Nonetheless, should this Court elect to overlook the Defendants' procedurally defective motion, the News Defendants' motion should otherwise be denied as it is lacking in any legal basis and is devoid of any merit sufficient to withstand this Court's review.

### THE PLAINTIFF HAS SUFFICIENTLY DEMONSTRATED A BASIS FOR A DEFAMATION
### ACTION AGAINST THE NEWS DEFENDANTS

#### Courts Do Not Regularly Dismiss Defamation Actions

The News Defendants disingenuously argue that the Courts regularly dismiss defamation actions. In fact, it has been said that a Rule 12 (b)(6) motion is **rarely** granted. See, Thomas E. Willging, Use of Rule 12 (B) (6) in Two Federal District Courts (Federal Judicial Center 1989). Rule 12 (b)(6) provides that a motion

to dismiss a complaint may be filed for "failure to state a claim upon which relief can be granted." Id. "The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus spare the litigants the burdens of unnecessary pretrial and trial activity." See, *Advanced Cardiovascular Sys. Inc. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

The Supreme Court's landmark decisions in *Bell Atlantic Corporation v. Twombly*, 550 US 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), shifted pleading standards from "simple notice pleading" to a "more heightened form of pleading." To survive motion to dismiss under *Twombly*, supra and *Iqbal*, supra, a plaintiff's allegations must meet a standard of "plausibility." A claim satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." While plausibility "is not akin to a probability requirement," plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." Pleading facts that are "merely consistent with a defendant's liability" is insufficient to "nudge [a plaintiff's] claims across the line from the conceivable to plausible." In deciding a motion to dismiss, the court must "accept as true all of the factual allegations contained in the complaint" and "draw all reasonable inferences in the plaintiff's favor." Id.

Clearly, the News Defendants have not met this Circuit's standard on a Rule 12 (b)(6) motion. The Supreme Court in *Bell Atlantic Corp v. Twombly*, (550 US 544, 570, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), held that, "in order to survive a motion to dismiss pursuant to Rule 12 (b)(6), a plaintiff need not provide detailed factual allegations, but the factual allegations asserted must be "enough to raise a right to relief above the speculative level…." See, *Koulkina v. City of New York*, 559 F. Supp. 2d 300 (S.D.N.Y. 2008).

The News Defendants misleadingly assert that claims such as this implicate the First Amendment and must be considered "*against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks*." Yet, it is well held that the First Amendment cannot be used as protection against blatantly false statements. This Court cannot ignore that the News Defendants' reporting was not merely "*unpleasantly sharp attacks*," it was factually incorrect.

The hallmark of a defamation claim is reputational harm. Former United States Supreme Court Justice Potter Stewart wrote in *Rosenblatt v. Baer*, 383 U.S. 75 (1966), that the essence of a defamation claim is the right to protect one's good name. According to Justice Stewart, this tort "reflects no more than our basic concept of the essential dignity and worth of every human being — a concept at the root of any decent system of ordered liberty." Id.

The News Defendants mistakenly rely upon *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), where the landscape of libel law dramatically changed involving a case where two paragraphs in an advertisement contained factual errors. For the first time, the Supreme Court ruled that "libel can claim no talismanic immunity from constitutional limitations," but must "be measured by standards that satisfy the First Amendment." The high court established a rule for defamation cases that dominates modern-day American libel law. The Court wrote:

> "The constitutional guarantees require, we think, a federal rule that prohibits a *public* official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (Emphasis added).

The Court required a public official defamation plaintiff to show evidence of actual malice or reckless disregard for the truth by "convincing clarity" or clear and convincing evidence. Notably, as an individual, probationary grade school teacher, with no involvement in administration or policy, the Plaintiff is not a public official. Nonetheless, even if, assuming *arguendo*, the Plaintiff was considered a public official, she has no problem demonstrating that the blatantly false statement was made with actual malice - knowledge that it was false or with reckless disregard of whether it was false or not. Even after seeing the OSI conclusion, the News Defendants continued to promote the Plaintiff as a "racist," never once retracting the false account that she "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*"

Nonetheless, the Supreme Court clarified the limits of the "actual malice" standard and the difference between public and private figures in defamation cases in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 471 F.2d 801 (1974). The court had to determine what standard to apply for private persons and so-called limited purpose public figures. Then, the Court had to determine whether Gertz was a private person or some sort of public figure. The news-media defendant argued that the *Times v. Sullivan* standard should apply to any defamation plaintiff as long as the published statements related to a matter of public importance. The high court disagreed, finding a distinction between public figures and private persons. The Court noted two differences: (1) public officials and public figures have greater access to the media in order to counter defamatory statements; and (2) public officials and public figures, to a certain extent, seek out public acclaim and assume the risk of greater public scrutiny.

For these reasons, the *Gertz* Court set up a different standard for private persons:

> "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

This standard means that <u>a private person does not have to show that a defendant acted with actual malice in order to prevail in a defamation suit</u>. The private plaintiff usually must show simply that the defendant was negligent, or at fault. However, the Supreme Court also ruled that private defamation plaintiffs could not recover punitive damages unless they showed evidence of actual malice.

A defamation plaintiff must usually establish the following elements to recover: (1) Identification: The plaintiff must show that the publication was "of and concerning" himself or herself; (2) Publication: The plaintiff must show that the defamatory statements were disseminated to a third party; (3) Defamatory meaning: The plaintiff must establish that the statements in question were defamatory. For example, the language must do more than simply annoy a person or hurt a person's feelings; (4) Falsity: The statements must be false; truth is a defense to a defamation claim. Generally, the plaintiff bears the burden of proof of establishing falsity; (5) Statements of fact: The statements in question must be objectively verifiable as <u>false</u>

statements of fact. In other words, the statements must be provable as false; and (7) Damages: The false and defamatory statements must cause actual injury or special damages. Clearly, the Plaintiff has successfully demonstrated each of the elements. Further, in *Harris v. City of New York*, 186 F.3d 243 (2d Cir. 1999), the Court discussed the high burden of proof necessary on a motion to dismiss under Fed. R. Civ. P. 12 (b)(6) and held:

> "Any Rule 12 (b)(6) motion for a dismissal faces a difficult (though not insurmountable) hurdle. (citations and internal quotation marks omitted): On a motion to dismiss under 12 (b)(6), the Court must accept as true the factual allegations in the complaint, and draw all favorable inferences in favor of the plaintiff. The District Court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

It is well settled that courts in this Circuit follow the Supreme Court determination in *Conley v. Gibson*, 355 U.S. 41 (1957). In *Conley*, Court laid down the criteria to be applied when evaluating motions to dismiss prior to the defendants serving an answer and discovery being conducted. The Court held that a dismissal should only be granted when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.

The Court then referenced Fed. R. Civ. P. 8 (a)(2) to illustrate the liberal system of pleading in a federal action and cited the oft advanced rule that the appropriate inquiry on a motion to dismiss is not whether the plaintiff will ultimately prevail on the merits, but whether the plaintiff is entitled to offer evidence in support of his claims at the time of trial. "A claimant need only give a statement that gives the defendant 'fair notice of what the…claim is and the grounds upon which it rests." See, *Conley,* 355 U.S. 41 (1957), supra. The issue at the motion to dismiss stage of an action is not whether a plaintiff will ultimately prevail on the merits, but whether or not the plaintiff is entitled to offer evidence to support the complaint. "Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." See, *Phelps v. Kapnolas*, 308 F.3d 180, 184-185 (2d Cir. 2002).

The test, as relied upon by this Circuit and the standard on a Rule 12 (b)(6) motion, is for the Court to merely determine the legal feasibility of the complaint and not to weigh the evidence which might ultimately be offered in support of the complaint. Moreover, it is well settled that on a motion to dismiss pursuant to Rule 12 (b)(6), the Court must accept all factual allegations in the complaint and draw all reasonable inferences in plaintiff's favor. See, *Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002). In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), the Supreme Court set forth:

> Given the federal rule of simplified standard for pleading, [a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations … Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

In the instant case, the News Defendant's motion to dismiss under Rule 12 (b)(6) is based upon the alleged lack of merit in the Plaintiff's case; however, that is not the test in this Circuit when determining the validity of a 12 (b)(6) motion. The News Defendants have not met this Circuit's test on motions of this type, and should; therefore, be denied in all respects.

**The Daily News Articles Are Not Absolutely Privileged Under NY Civil Rights Law §74**

The News Defendants have erroneously argued that the claims based upon the *Daily News* Articles[4] are barred by New York Civil Rights Law § 74.

New York Civil Rights Law § 74 states:

> "A civil action cannot be maintained against any person, firm or corporation, for the publication of a <u>fair and true report of any judicial proceeding</u>, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

---

[4] Contrary to the News Defendants' footnote number 6, the Plaintiff is in possession of an audio recording of "All Things Considered" – radio show on WNYC with Jamie Floyd dated February 7, 2018. The recording is available on line for pubic on https://www.wnyc.org/story/use-empathy-when-teaching-history-slavery-nyc-city-schools-parent-activist-says/ Forty seconds into this audio, the voice of Daily News Reporter Ben Chapman is heard and identified.

This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof." (Emphasis added).

In *Gillings v. New York Post*, 2018 NY Slip Op 07413 (App. Div. 2nd Dept. Nov. 7, 2018), the court affirmed the dismissal of a defamation action against the New York Post and Julia Marsh, on the basis of New York Civil Rights Law § 74; however, the Court summarized the law as follows:

"This absolute privilege applies **only** where the publication is a comment on a judicial, legislative, or other official proceeding...and is a fair and true' report of that proceeding." See, *Saleh v. New York Post*, 78 AD3d 1149, 1151, quoting, *Holy Spirit Assn. for Unification of World Christianity v. New York Times Co.*, 49 NY2d 63, 67).

As to the threshold requirement that the publication purport to comment on a judicial, legislative, or other official proceeding, if the context in which the statements are made makes it impossible for the ordinary viewer, listener, or reader to determine whether the defendant was reporting on a judicial or other official proceeding, the absolute privilege does not apply. See, *Saleh v. New York Post*, 78 AD3d at 1151-1152; *Cholowsky v. Civiletti*, 69 AD3d at 114-115; *Wenz v. Becker*, 948 F Supp 319, 323 [SD NY].

First, the News Defendants argue that privilege applies, because (1) publication is a comment on a judicial, legislative, or other official proceeding, and (2) the substance of the article be substantially accurate. Neither of these elements are true in this instance. The News Defendants continued to falsely promote the Plaintiff as a "racist," never once retracting the FALSE account that she "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*." The substance of the articles were NEVER substantially accurate, and NEVER commented appropriately on any investigation of the Plaintiff, as she was being investigated for allegations of corporal punishment NOT allegations of racism. There were no "minor inaccuracies" reported (see, *Posner v. NY Law Publ'g Co.*, 228 AD2d 318, 318 (1st Dept. 1996)); the News Defendants' reports were completely wrong. Moreover, the Court held in *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995), citing, *Scheuer v. Rhodes,* 416 U.S. 232 at 236, 94 S. Ct. at 1686 (1974)), that "[I]f the published

account, along with the rest of the article, <u>suggests more serious conduct than that actually suggested in the</u> <u>official proceeding, then the privilege does not attach, as a matter of law</u>." Such was the case in this instance, where the published account of the Plaintiff's alleged conduct was substantially more serious than suggested in the official proceedings that followed. The statements did not accurately portray the gist of what transpired in the subject proceedings. <u>See</u>, *Cholowsky*, <u>supra</u>.

The false facts that were published by the News Defendants were untrue and disparaged, libeled, and misrepresented the Plaintiff. Plaintiff is not "dissecting and analyzing with a lexicographer's precision every article," (<u>see</u>, *Holy Spirit Ass'n*, <u>supra,</u> at 67), instead she is identifying the outrageous falsities that caused her, a private person, the loss of her career, and worldwide disdain.

Second, the News Defendants argue that whether the underlying allegations are true or false, privilege applies when there is a **substantially accurate** description of the claims made. <u>See</u>, *Mulder v. Donaldson, Lufkin & Jenrette*, 161Misc.2d 698, 705 (Sup. NY Cty. 1994). There was no substantially accurate description of the claims made in this matter. The claims made were **completely inaccurate**. The News Defendants reported that the Plaintiff had "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*;" that is substantially different than her being investigated for an false accusation of "*using her feet or her knees to push the students closer together during a classroom demonstration*." The "substantially accurate" argument is inapplicable in this instance, because the News Defendants' description of the events, reported as facts, is not even close to the reality. Thus, this specious argument must also fail.

Third, the News Defendants argue that if a reasonable observer would find that the statements **constitute reports of a proceeding**, then the Plaintiff would be barred from claims against them. We must remain mindful of the rule that the defamatory effect of the article is to be ascertained not from the viewpoint of a critic or language expert, but rather from that of a reader of reasonable intelligence who takes ordinary interest in the articles of a periodical, but does not commonly subject them to careful scrutiny and analysis. In applying New York law, words that are challenged as defamatory "must be construed in the context of the

entire statement or publication as a whole, tested against the understanding of the average reader . . . ." See, *Aronson v. Wiersma*, 65 NY2d 592, (1985) at 594; see also, *Armstrong v. Simon & Schuster*, 85 NY2d 373 (1995) at 380; *James v. Gannett Co.*, 40 NY2d 415 (1976) at 419-420; *Ava v. NYP Holdings, Inc.*, 64 AD3d 407 (2009) at 413. All relevant factors may be considered in determining whether a word or statement is defamatory. See, *Farber v. Jefferys*, 33 Misc 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011], affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858, citing, *Steinhilber v. Alphonse*, 68 NY2d 283, 291-292 [1986], and courts have considerable discretion in deciding whether a statement is defamatory, guided only by "the words themselves and their purpose, the circumstances surrounding their use, and the manner, tone and style with which they are used . . . ." See, *Steinhilber*, supra, 68 NY2d at 291-292.

While notably, the New York Court of Appeals has repeatedly held that the New York Constitution provides greater protection than the United States Constitution and, accordingly that the inquiry under the two constitutional regimes is different, (see, *600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d at 136 & 138, 589 N.Y.S.2d at 827 & 829, 603 N.E.2d at 932 & 934 (1992); *Immuno AG v. J. Moor-Jankowski*, 77 N.Y.2d at 248-49, 566 N.Y.S.2d at 913-14, 567 N.E.2d at 1277-78 (1991)), the thrust of the dispositive inquiry under both New York and constitutional law is "whether a reasonable [reader] could have concluded that [the publications were] conveying facts about the plaintiff." See, *Gross v. New York Times Co.*, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (1993); *600 West 115th Street*, supra, at 829, 603 N.E.2d at 934 ("Under either Federal or State law, the dispositive question is whether a reasonable listener....could have concluded that [defendant] was conveying facts about the plaintiff"). Clearly a reasonable viewer in this instance would believe that the statements were conveying facts about the Plaintiff [this is evidenced by the vicious attacks and public outcry for social justice that followed], and would believe that the statements constituted reports of a proceeding, which they did not.

**The Department of Education's Investigation and Plaintiff's Filings Are NOT Proceedings Covered Under Section 74**

Contrary to the News Defendants' argument, neither the Department of Education's investigation into the Plaintiff nor the Plaintiff's own Notice of Claim and Complaint can be considered "proceedings" for the purposes of Section 74, because there never was a reporting of any truth, to wit: there was NEVER any proceedings investigating the Plaintiff for "singling out black students and making them act like slaves;" or telling them to "lie on the floor for a lesson on slavery and then stepping on their backs to show them what slavery felt like." THIS ERRONEOUS ACCUSATION WAS NEVER THE SUBJECT OF ANY INQUIRY BY THE DEPARTMENT OF EDUCATION OR OTHERWISE. It was entirely INACCURATE. See, *Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York*, 101 AD2d 175, 182. Even the Defendants' reporting related to the Plaintiff's Notice of Claim and pleadings was inaccurate, as they continued to refer to her as a racist "slave teacher." See, Plaintiff's Exhibit B, at page 25. The News Defendant's disingenuous attempt to reconfigure the facts in order to hide behind Section 74 is transparent.

The News Defendants disingenuously argue that <u>each</u> of the *Daily News* Articles report on OSI's investigation, include the allegations from parents and students that triggered the investigation, and then give as examples three (3) articles that do not support this position, yet ignore the numerous other articles, which also contain inaccurate and false information. See, Plaintiff's Exhibit B, at page 25. As to the February 2, 2018 article, the News Defendants ignore the false commentary that appeared on the front cover, under the Plaintiff's photograph, which clearly states: "***Made Black Students Lie Facedown on the Floor" and "Asked Them: 'See How It Feels to Be a Slave'***" See, News Defendants' Exhibit A. This was not ever something being investigated by OSI. As to the July 9, 2018 article, the News Defendants ignore that the Plaintiff was <u>never</u> being accused or investigated of "racist acts." She was being investigated by the DOE for allegations of corporal punishment. As to the August 11, 2018 article, the News Defendants never bothered to correct the record and continued to have readers believe their initial false narrative of a "slavery controversy" that they themselves created. It remained consistent that the allegations they claimed were being investigated by OSI

were not the allegations which were actually associated with the Plaintiff. Thus, the Daily News articles were **not** reports of official and judicial proceedings and therefore, not within the contemplations of Section 74.

### The Daily *News* Defendants DID NOT Fairly and Accurately Report on These Proceedings

Contrary to the News Defendants' argument, the Plaintiff <u>does</u> allege that the articles present inaccurate summaries of the allegations against her. She does **not** concede that <u>at least</u> one parent complained that "Plaintiff instructed [the student] to get on the floor" and "put her knee into her back and pushed down;" <u>ONLY</u> one parent accused Plaintiff of using her feet or her knees to push the students closer together during a classroom demonstration which was ultimately discredited by the OSI investigation. The News Defendants attempt to distract this Court with an analysis of truth or falsity of the underlying allegations; however, they concede that the ultimate question is whether the articles truly and fairly report the allegations, and it this case, they clearly did not. Disingenuously arguing that the variations in the allegations were merely "*minor inaccuracies*" is laughable. The glaring distinctions in the allegations are clear and disqualify these reports from the protections of Section 74.

It is important to also note that the student that was interviewed by the Defendant, Ben Chapman, and who allegedly reported that the Plaintiff "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" was **absent** on the day of the lesson in question and could not have possibly witnessed the lesson. Absolutely no fact checking was done in presenting these erroneous facts to the public. Thus, the News Defendants' third argument must also fail. The News Defendants cannot hide behind the protection otherwise afforded by New York Civil Rights Section 74.

### The Statements Describing the Plaintiff's Lesson as "Racist" are NOT Opinions

The privilege protecting the expression of an opinion is rooted in the preference that ideas be fully aired. <u>See</u>, *Davis v. Boeheim*, 24 NY3d 262 at 269 (2014), <u>citing</u>, *Steinhilber v. Alphonse*, 68 NY2d 283 at 289 (1986), and *Gertz v. Robert Welch, Inc.*, <u>supra</u>, 418 US 323, 339-340 (1974). Nonetheless, privileged statements of opinion are either accompanied by the facts on which they are based, or do not imply that they

are based on undisclosed facts. See, *Gross v. New York Times Co.*, 82 NY2d 146 at 53-154 (1993). "When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable 'mixed opinion.'" See, *Egiazaryan v. Zalmayev*, 880 F Supp 2d 494, 503 [SD NY 2012], quoting, *Steinhilber*, supra, 68 NY2d at 289, "because a reasonable listener or reader would infer that 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" See, *Gross*, supra, 82 NY2d at 153-154, quoting, *Steinhilber*, 68 NY2d at 290, and "if the predicate facts are disclosed, but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity," the statement may be actionable as a "defamatory opinion" See, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, F Supp 3d , 2016 WL 3773394, [SD NY 2016], citing *Silsdorf v. Levine*, 59 NY2d 8, 15-16 [1983], cert denied 464 US 831; see also, *Parks v. Steinbrenner*, 131 AD2d 60, 62-63 [1st Dept. 1987].

An asserted fact may be distinguished from a nonactionable opinion if the statement: (1) has a precise, readily understood meaning, that is (2) capable of being proven true or false, and (3) where the full context in which it is asserted or its broader social context and surrounding circumstances indicate to readers or listeners that it is likely fact, not opinion. See, *Davis*, supra, 24 NY3d at 271, citing, Mann v. Abel, 10 NY3d 271 at 276 (2008), and *Brian v Richardson*, 87 NY2d 46, 51 [1995]; *Gross*, supra, 82 NY2d at 153; *Steinhilber*, supra, 68 NY2d at 292.

"Where readers would understand a defamatory meaning, liability cannot be avoided merely because the publication is alleged to be cast in the form of an opinion, belief, insinuation or even question. A statement about one's attitude is defamatory if it tends to lower him in the esteem of the community." See, *Christopher v. American News Co.*, 171 F.2d 275 (7th Cir. 1948).

"[T]he following factors should be considered in distinguishing fact from opinion: (1) whether the language used has a precise meaning or whether it is indefinite or ambiguous, (2) whether the statement is capable of objectively being true or false, and (3) the full context of the entire communication or the broader social context surrounding the communication. Moreover, the Court of Appeals makes a distinction between

a statement of opinion that implies a factual basis that is not disclosed to the reader and an opinion that is accompanied by a recitation of facts on which it is based. The former is actionable, the latter is not." See, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). The News Defendants never used words such as "alleged" or "accused of" when reporting; they lead the readers to believe the recitation of the facts presented to be accurate.

It bears mentioning that Under New York law, some written statements are considered defamation (libel) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity. See, *Penn Warranty Corp. v. DiGiovanni*, supra, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, the facts as presented by the News Defendants accuse the Plaintiff of having committed a serious crime; walking on the backs of students is akin to child abuse and endangerment and the false labeling of the Plaintiff as a racist who committed such an atrocity has irreparably injured the Plaintiff in her profession as a school teacher and otherwise.

The News Defendants assert factually incorrect statements, to wit:

- "For example, in the Daily News Defendants' February 2, 2018 article, the opening line states that "kids" and parents say this Bronx teacher needs a lesson – in racism." "Clearly this line expresses the opinion of Plaintiff's students and their parents, whose interview quotes are included in later articles."
None of the Plaintiff's students or their parents were ever quoted in any article. In this regard, any quotes from the OSI Report would have related to the corporal punishment allegation, **not** what had been falsely reported in the Daily News - that she "singled out black students and made them act like slaves;" told them to "lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like."

- "Similarly, in the Daily News Defendants' July 9, 2018 article, the Daily News Defendants note that the City Department of Education officials had not yet concluded investigations of 'educators accused of racist acts.'"

This is <u>not</u> an indication that the Plaintiff's accusers viewed her actions as racist; it is an indication that the News Defendants inappropriately grouped the Plaintiff with other educators who had been accused of racist acts. The Plaintiff was <u>never</u> accused or investigated on an allegation of a racist act by the City Department of Education. She was being investigated on allegations of corporal punishment.

Contrary to *Silverman v. Daily News, LP*, 129 AD3d 1054 (2nd Dept. 2015), the News Defendants disclosed erroneous facts. There were no allegations from parents, students, or staff that the Plaintiff "singled out black students and made them act like slaves;" told them to "lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like." Likewise, the Plaintiff contests that she ever admitted "having misbehaving students sit in the front of the room to demonstrate the conditions on slave ships, or that a parent reported that she 'pushed her knee' into *students'* (plural) backs and asked if students (plural) felt pain." See, Plaintiff's Exhibit B at paragraph 53.

The News Defendants attempt to support their position by siting various cases where the term "racist" was used; however, these are clearly distinguishable from this case, as it should be noted that these cases involve slander, not libel, and some of them involved public figures. For example, in *Stevens v. Tillman*, 855 F.2d 394, 402, the Court opines that "[I]n daily life 'racist' is hurled about so indiscriminately that it is no more than a verbal slap in the face; the target can slap back (as Stevens did). It is not actionable <u>unless it implies the existence of undisclosed, defamatory facts</u>." Here, the Plaintiff was not a public figure, who easily could "slap back" and the implication of the existence undisclosed defamatory facts was clear.

The News Defendants disingenuously argue that a headline is not actionable so long as it is a "*fair index of the article with which it appears*." <u>See</u>, *Mondello v. Newsday, Inc.*, 6 AD3d 586, 587 (2d Dept. 2004). Remarkably, it was not a fair index of the articles with which it appears, as the articles falsely permitted its readers to believe that the Plaintiff was being accused of "singling out black students and making them act like slaves;" telling them to "lie on the floor for a lesson on slavery and then stepping on their backs to show them what slavery felt like."

Moreover, in distinguishing *Silverman v. Daily News, LP*, 129 AD3d 1054 (2nd Dept. 2015), it is clear that the Court in this matter could <u>not</u> find that the context of the complained-of statements was such that a reasonable reader would have concluded that he or she was reading opinions, not facts about the Plaintiff. Thus, the statements describing the Plaintiff's lesson as "racist" are actionable.

**The Plaintiff's Claims for Negligence, Negligent Infliction of Emotional Distress, and Intentional Infliction of Emotional are NOT Duplicative**

Based on what has been demonstrated in this matter, the News Defendants' argument that "defamation claims (that involve matters of public concern) cannot be sustained upon a showing of negligence" must fail. The Plaintiff has more than established not only that the statements were false statements of fact, but that the News Defendants acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." <u>See</u>, *Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975); <u>see also</u>, *Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007).

In addition, as the Fourth Department has held that a cause of action for negligent infliction of emotional distress must be "premised on conduct that unreasonably endangers the plaintiff's physical safety or causes the plaintiff to fear for his or her physical safety." <u>See</u>, *Passucci v. Home Depot, Inc.*, 67 AD3d 1470, 1471 [4th Dept. 2009]. The Plaintiff's complaint contains allegations that the News Defendants engaged in conduct that unreasonably endangered the Plaintiff's physical safety or caused her to fear for her safety. <u>See</u>, Plaintiff's Exhibit B, at pages 15 and 45.

With respect to the argument that a separate tort for infliction of emotional distress could not be sustained where the underlying conduct overlapped with other torts, it has been noted in certain dicta from the New York Court of Appeals that "questioning whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability." <u>See</u>, *Fischer* v. *Maloney*, 43 N.Y.2d 553, 558, 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978). It has been concluded that, even if New York law does not permit entirely

overlapping torts, the negligence and intentional infliction of emotional distress claims in this case contained elements that did not entirely overlap the claims of defamation. In particular it is noted that, if a jury believes that the News Defendants acted with reckless intent a jury could believe that there were additional elements of negligence and intentional infliction of emotional distress which do not necessarily inhere in a charge of defamation.

The News Defendants erroneously plead that Plaintiff cannot, as a matter of law, plead negligent infliction of emotional distress (NIED) or intentional infliction of emotional distress. In order to support a claim for negligent infliction of emotional distress, Plaintiff is also required to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Murphy v. Am. Home Products Corp.*, 58 NY2d 293, 303 [1983]. The extreme and outrageous conduct "must be clearly alleged in order for the complaint to survive a motion to dismiss." See, *Sheila C. v. Povich*, 11 AD3d 120, 131 [1st Dept. 2004].

As a claim for negligent infliction of emotional distress arises out of negligence, Plaintiff must allege that the News Defendants owed Plaintiff a duty and the breach of that duty owed to the Plaintiff "either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety." See, *Santana v. Leith*, 117 AD3d 711, 712 [2d Dept. 2014]. Plaintiff has clearly identified the duty owed to her by the News Defendants. In order to qualify as "extreme and outrageous," the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Sheila C. v. Povich*, 11 AD3d 120, 130-31 (1st Dept. 20014). To falsely accuse the Plaintiff of "singling out black students and making them act like slaves;" telling them to "lie on the floor for a lesson on slavery and then stepping on their backs to show them what slavery felt like," without checking the facts and continuing to characterize her under that narrative, even after confronted with the falsity, subjecting her to public admonishment, ridicule, and harassment is extreme and outrageous. The News Defendants did not merely "publish articles about Plaintiff's

24

conduct based on firsthand account of students, reports from the Department of Education, and Plaintiff's own judicial findings." They furthered a false narrative, purporting it to be undisputed fact.

Defendants failed to ever demonstrate that their articles were true, and it is a well-known fact that truth and only truth is an absolute defense in any defamation claim. Further, in *Deluca v. New York News*, 109 Misc. 2d 341 (1981), it is stated that newspapers and reporters, have the right to be wrong, so long as they are not guilty of not checking their facts at all, making gross distortions of the record, or jumping to totally unwarranted conclusions. The Defendant, Ben Chapman never interviewed or contacted any school officials, nor did he verify what he was allegedly told by the student, or even realize that the student he allegedly spoke to was absent the day the lesson was taught. Had he done this, he would have known the actual allegation made against the Plaintiff. Further, plausibility was completely ignored, to wit: if the Plaintiff had in fact walked on student's backs, would they not have sustained physical injuries? Would she not have been arrested or charged with child abuse? It should have been obvious that this allegation was preposterous; however this gross distortion helped them sell papers and assisted the Department of Education in securing the funding that it so desperately desired. As a result, the Plaintiff's negligence claims must stand.

## CONCLUSION

Based on the foregoing, it has been demonstrated that the Defendants have failed to meet the standard in this Circuit that is necessary on a motion to dismiss under Rule 12 (b)(6). Accordingly, the Defendants' motion to dismiss should be denied in all respects and Plaintiff should have such other and further relief that this Court may deem just and proper.

Dated: Garden City, New York
September 27, 2019

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL 4471)
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*