19 Civ. 07723 (CM) (OTW)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIA CUMMINGS,

Plaintiff,

- against -

THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF
EDUCATION; GIULIA COX; COURTNEY WARE; BEN CHAPMAN; NEW
YORK DAILY NEWS; DR. ANDRE PERRY; THE HECHINGER REPORT
a/k/a HECHINGER INSTITUTE ON EDUCATION AND THE MEDIA;
LENARD LARRY McKELVEY a/k/a *CHARLAMAGNE THA GOD*; WWPR-
FM (105.1 MHZ); iHEARTMEDIA; CLEAR CHANNEL
COMMUNICATIONS, INC.; NEW YORK STATE SENATOR, KEVIN S.
PARKER; COALITION OF EDUCATIONAL JUSTICE; ANGEL
MARTINEZ; NATASHA CAPERS, PHILIP SCOTT; ADVISE MEDIA
NETWORK n/k/a AFRICA DISPORA NEWS CHNNEL, and "JOHN DOE
AND JANE DOE #1-100" said names being fictitious, it being the intent of
Plaintiff to designate any and all individuals, officers, members, agents,
servants, and/or employees of the aforementioned agencies owing a duty of care
to Plaintiff, individually and jointly and severally,

Defendants.

## DOE DEFENDANTS AND CITY'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

### *JAMES E. JOHNSON*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, New York City*
*Department of Education, Guilia Cox, and Courtney Ware*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Aliza J. Balog*
*Tel: (212)356-1104*
*Matter No. 2018-080725*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**PRELIMINARY STATEMENT** ................................................................................ 1

**FACTUAL BACKGROUND** ..................................................................................... 2

        **A.** **PLAINTIFF'S 7TH GRADE LESSON ON THE MIDDLE PASSAGE** .................................................... 2

        **B.** **THE DOE INVESTIGATION, DAILY NEWS ARTICLE, & PLAINTIFF'S REASSIGNMENT FROM X118** ...................................... 3

        **C.** **DOE'S TERMINATION OF PLAINTIFF'S EMPLOYMENT** ......................................................... 7

        **D.** **PLAINTIFF'S NOTICE OF CLAIM & PROCEDURAL HISTORY** ............................................. 9

**ARGUMENT** ............................................................................................................ 10

        **POINT I** .......................................................................................... 10

        **THE FAC VIOALTES THE COURT'S MAY 28 ORDER PERMITTING PLAINTIFF TO FIX A TYPO AND RE-FILE THE AMENDED COMPLAINT.** ........................................................... 10

        **POINT II** ......................................................................................... 11

        **PLAINTIFF'S CONSTITUTIONAL LAW CLAIMS FAIL.** ..................................................... 11

        **A.** **PLAINTIFF'S DUE PROCESS CLAIMS FAIL** .............................................................. 11

        **1.** **No Deprivation of a Property Interest** ........................................... 12

        **2.** **No Deprivation of a Liberty Interest** ............................................. 12

        **B.** **PLAINTIFF'S EQUAL PROTECTION AND TITLE VII CLAIMS SHOULD BE DISMISSED** ........................................................ 14

        **C.** **NO PRIVATE RIGHT OF ACTION UNDER §1981** ....................................................... 15

        **D.** **NO §1985 CLAIM** ........................................................ 16

**E.   NO *MONELL* CLAIM** ................................................................. 18

**POINT III** ......................................................................................... 19

**PLAINTIFF'S STATE LAW CLAIMS FAIL.** ................................... 19

**A.   FAILURE TO FILE A TIMELY NOTICE
OF CLAIM** ........................................................................ 19

**B.   NO TORT CLAIMS** ............................................................. 20

**1.   Plaintiff's Fraud Claim Should Be Dismissed** .............................. 20

**2.   Plaintiff's IIED and NIED Claims Fail** .................................... 20

**3.   Plaintiff's Negligence Claim Fails** ...................................... 23

**POINT IV** .......................................................................................... 23

**THE CITY OF NEW YORK IS NOT THE
PROPER PARTY.** .................................................................. 23

**CONCLUSION** ................................................................................... 24

# **TABLE OF AUTHORITIES**

**Cases**

*Adams v. New York State Educ. Dep't,*
732 F. Supp. 2d 420 (S.D.N.Y. 2010)........................................................................ 13

*Ahmed v. Gelfand,*
160 F. Supp. 2d 408 (E.D.N.Y. Mar. 15, 2011)........................................................ 22

*Alexander v. Westbury Union Free Sch. Dist.,*
829 F. Supp. 2d 89 (E.D.N.Y. 2011) ................................................................... 21, 22

*Anemone v. Metro. Trans. Auth.,*
629 F.3d 97 (2d Cir. 2011).......................................................................................... 13

*Batista v. DeGennaro,*
13 Civ. 1099 (DAB), 2015 U.S. Dist. LEXIS 44022 (S.D.N.Y. Mar. 31, 2015) .................... 14

*Bd. of Cnty Comm'rs v. Brown,*
520 U.S. 397 (1997)..................................................................................................... 18

*City of Los Angeles v. Heller,*
475 U.S. 796 (1986)..................................................................................................... 18

*Collins v. Stasiuk,*
56 F. Supp. 2d 344 (S.D.N.Y. 1999)........................................................................... 19

*Cummings v. City of New York,*
19 Civ. 7723 (CM) (OTW), 2020 U.S. Dist. LEXIS 31572
(S.D.N.Y. Feb. 24, 2020) ................................................................................... *passim*

*Daniel v. T&M Prot. Res., Inc.,*
992 F. Supp. 2d 302 (S.D.N.Y. 2014),
*vacated and remanded on other grounds* by 689 Fed. Appx. 1(2d Cir. 2017)........................ 22

*Dillon v. City of New York,*
261 A.D.2d 34 (1st Dep't 1999) ................................................................................. 21

*Dollman v. Mast Indus.,*
731 F. Supp. 2d 328 (S.D.N.Y. 2010)......................................................................... 22

*Duplan v. City of New York,*
888 F.3d 612 (2d Cir. 2018)........................................................................................ 16

*Fahmy v. Duane Reade, Inc.,*
04 Civ. 1798 (DLC) (GWG), 2005 U.S. Dist. LEXIS 20929 (S.D.N.Y. Sept. 26, 2005)........ 21

*Falchenberg v. N.Y.C. Dep't of Educ.*,
  375 F. Supp. 2d 344 (S.D.N.Y. 2005)...................................................................... 23

*Forde v. Empire State Coll.*,
  10 Civ. 9446 (CM) (THK), 2011 U.S. Dist. LEXIS 105767 (S.D.N.Y. Sep. 19, 2011) .......... 15

*Horan v. BOCES*,
  14 Civ. 7345 (LDW) (GRB), 2015 U.S. Dist. LEXIS 144754 (E.D.N.Y. Oct. 26, 2015) ....... 23

*Jett v. Dallas Indep. School Dist.*,
  491 U.S. 701 (1989)...................................................................................................... 16

*Johnson v. County of Nassau*,
  10 Civ. 06061 (JFB)(GRB), 2014 U.S. Dist. LEXIS 133175
  (E.D.N.Y. Sept. 22, 2014).................................................................................... 16, 17

*Johnson v. N.Y.C. Bd. of Educ.*,
  249 A.D.2d 370 (2d Dep't 1998)................................................................................. 23

*Lauer v. City of New York*,
  240 A.D.2d 543 (2d Dep't 1997)................................................................................. 21

*Lore v. City of Syracuse*,
  670 F.3d 127 (2d Cir. 2012).......................................................................................... 15

*Malsh v. Austin*,
  901 F. Supp. 757 (S.D.N.Y. 1995) ............................................................................ 17

*Martinez v. City of Schenectady*,
  97 N.Y.2d 78 (2001) .................................................................................................... 11

*Martinez v. O'Leary*,
  11 Civ. 1405 (ENV)(JO), 2013 U.S. Dist. LEXIS 94050
  (E.D.N.Y. June 28, 2013) ........................................................................................... 22

*Monell v. Dept' of Sc. Servs.*,
  436 U.S. 658 (1978).................................................................................................... 18

*Morales v. Rooney*,
  509 F. App'x 9 (2d Cir. 2013). ................................................................................... 14

*Oneida Indian Nation of N.Y. v. Madison Cnty*,
  665 F.3d 408 (2d Cir. 2011)........................................................................................ 11

*Perez v. City of New York*,
  41 A.D.3d 378 (1st Dep't 2007), *app. den.*,
  10 N.Y.3d 708 (2008) ................................................................................................ 23

iv

*Quinn v. Nassau Cnty. Police Dep't*,
   53 F. Supp. 2d 347 (E.D.N.Y. 1999) ..................................................... 16

*Raymond v. City of N.Y.*,
   15 Civ. 6885 (LTS)(HBP), 2017 U.S. Dist. LEXIS 31742 (S.D.N.Y. Mar. 6, 2017) .............. 16

*Reynolds v. Barrett*,
   685 F.3d 193 (2d Cir. 2012)................................................................. 18

*Sadallah v. City of Utica*,
   383 F.3d 34 (2d Cir. 2004)................................................................. 12

*Segal v. City of New York*,
   459 F.3d 207 (2006);.............................................................. 12, 13, 18

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (E.D.N.Y. 2012), *aff'd,* 713 F.3d 163 (2d Cir. 2013)............................ 23

*Spano v. Cnty. of Onondaga*,
   170 A.D.2d 974, 565 N.Y.S.2d 665 (4th Dep't 1991) .............................................. 19

*Vega v. Lantz*,
   596 F.3d 77 (2d Cir. 2010); ................................................................. 12

*Velez v. Levy*,
   401 F.3d 75 (2d Cir. 2005)................................................................. 12

*Williams v. City of N.Y.*,
   12 Civ. 8518 (RJS), 2014 U.S. Dist. LEXIS 49837
   (S.D.N.Y. Mar. 26, 2014), *aff'd,* 602 Fed. Appx. 28 (2d Cir. 2015) ........................................ 23

*Wolfe v. City of Rochester*,
   14 Civ. 6581 (MAT) (MWP), 2016 U.S. Dist. LEXIS 139210
   (W.D.N.Y. Oct. 6, 2016).................................................................... 22

*Zahra v. Town of Southfield*, 48 F.3d 674 (2d Cir. 1995).......................................... 11

## Statutes

 42 U.S.C. §1981 .......................................................................... 14, 15, 18, 19

42 U.S.C. §1983........................................................................... 14, 18, 19

42 U.S.C. §1985........................................................................... 16, 17

N.Y. Ed. Law § 2590-g(2) ................................................................. 23

N.Y. Ed. Law § 3813(1)................................................................... 19

N.Y. Gen. Mun. Law § 50-e ........................................................................................................ 19

N.Y. Gen. Mun. Law § 50--i.......................................................................................................... 19

**Other Authorities**

N.Y. C.P.L.R. Art. 78 .................................................................................................................... 13

Stephanie Merry, *Gooding's Good, But That's Not Good Enough*,
   Washington Post, June 5, 201............................................................................................. 3

## PRELIMINARY STATEMENT

Plaintiff, Patricia Cummings, is a former probationary social studies teacher for defendant New York City Department of Education ("DOE") who taught at The William W. Niles School – Middle School 118 ("X118") in the Bronx.  In January 2018, she taught her 7th grade social studies classes a lesson on the Middle Passage, which included a non-approved clip from an R-rated movie and a demonstration of the conditions on the slave ship.  As part of the lesson, plaintiff had several of the students act as the slaves.  In February 2018, the *Daily News* published an article about plaintiff's lesson that included allegations by a student that plaintiff put her foot on another student's back during the slave ship demonstration and asked the student "How does it feel?"  The DOE's Office of Special Investigations ("OSI[1]") investigated the allegations.  OSI found that the corporal punishment allegations were unsubstantiated, but that plaintiff acted with "poor judgment."  The DOE terminated plaintiff's probationary employment in October 2018 based upon the outcome of the investigation as well as her overall poor performance as a teacher.

On July 22, 2019, the City and DOE Defendants filed a motion to dismiss plaintiff's rambling, prolix, 63-page and 209-paragraph Complaint.  On February 24, this Court granted the City and DOE Defendants' motion to dismiss in its entirety.  *See Cummings v. City of New York*, 19 Civ. 7723 (CM) (OTW), 2020 U.S. Dist. LEXIS 31572 at *8 n.2 (S.D.N.Y. Feb. 24, 2020). Dkt. No. 94.  On May 28, 2020, plaintiff filed another complaint hereafter referred to as the First Amended Complaint or "FAC."  Although the FAC drops four defendants of the DOE and City Defendants – OSI, Mayor de Blasio, Public Advocate Williams, and Councilmember Dromm, the claims asserted against them, and the breach of contract claim, the

---

[1] OSI is misnamed in this action.  OSI is the New York City Department of Education's Office of Special Investigations and is part of the DOE.

complaint has ballooned to a long-winded sprawling 96 pages and 239 paragraphs that entirely fail to take into account the Court's ruling on the motion.  Plaintiff continues to assert claims under the United States and New York State Constitutions for discrimination and violation of her right to due process, as well as state law claims for fraud, negligence, intentional infliction of emotional distress and negligent infliction of emotional distress.  Essentially, plaintiff continues to allege that the DOE, Giulia Cox, the Principal of X118, and Courtney Ware, an Assistant Principal of X118 ("DOE Defendants") and the City of New York ("City"), discriminated against her because she is Caucasian and denied her due process when the DOE terminated her probationary employment.  As set forth below, the claims against the City and DOE Defendants lack any basis, are frivolous and should be dismissed.

## FACTUAL BACKGROUND[2]

Plaintiff, Patricia Cummings, a Caucasian female, was a probationary social studies teacher employed by the DOE at X118, which is "a school that has a significant minority population."  FAC ¶¶ 13, 53, 180, 207, 213.  The DOE terminated plaintiff's probationary employment on October 18, 2018.  FAC ¶ 93.

## A.  PLAINTIFF'S 7TH GRADE LESSON ON THE MIDDLE PASSAGE

On or about January 9, 2018, plaintiff taught her 7th grade social studies class 408 a lesson on the Middle Passage.  FAC ¶ 54.  As part of her lesson, plaintiff showed a clip from an R-rated movie entitled *Freedom*.  FAC ¶ 55; *see also* Stephanie Merry, *Gooding's Good, But*

---

[2] Plaintiff's allegations are assumed to be true for purposes of this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) only.  All exhibits referred to herein are attached to the Declaration of Aliza J. Balog ("Balog Decl.").  The Court may consider all of these documents on a motion to dismiss.  All documents attached to defendants' motion are "integral" to the Complaint, were in plaintiff's possession and relied upon in framing the Complaint, and/or are public documents subject to judicial notice.  *See Cummings v. City of New York*, 19 Civ. 7723 (CM) (OTW), 2020 U.S. Dist. LEXIS 31572 at *8 n.2 (S.D.N.Y. Feb. 24, 2020).

*That's Not Good Enough*, Washington Post, June 5, 2015, at T27.  As described in the *Washington Post*, *Freedom* is a "melodramatic religious drama," which in part depicts a slave ship where the ship's captain "sees countless awful sights, from nearly naked people chained together in the tightest quarters to a woman being branded with a hot iron." *Id*.; *see also id*. (noting that it "[c]ontains violence and disturbing images.").  According to plaintiff, some students "began mocking the contents of the video," so she had four students "sit very close together" in what she now describes as "an exercise to exhibit special recognition."  FAC ¶ 56. Plaintiff did not seek approval to show the video prior to teaching the lesson.  *See* Balog Decl. Ex. A, Redacted OSI Investigative Report, dated July 24, 2018 ("OSI Report"), at 10.  Plaintiff taught the same lesson to her social studies 407 students as well.  *Id*. at 7.

## B.   THE DOE INVESTIGATION, DAILY NEWS ARTICLE, & PLAINTIFF'S REASSIGNMENT FROM X118

On January 11, 2018, plaintiff learned that defendant Ware was taking students' statements about her Middle Passage lesson.  FAC ¶ 178.  On January 16, 2018, plaintiff received a letter from defendant Cox stating that she was the subject of a disciplinary meeting to take place on January 18, 2018.  FAC ¶¶ 58, 178.  The letter made no mention of an allegation of corporal punishment.  FAC ¶ 178.  There is no allegation in the FAC or the OSI Report of defendant Ware having had knowledge of the corporal punishment allegations before January 16. The day before the meeting, on January 17, 2018, a parent of one of the students in plaintiff's class 408 filed a written complaint about the lesson.  *See* FAC ¶ 55; Balog Decl. Ex. A, OSI Report at 6.   According to plaintiff, the parent claimed that during the social studies class, "the Plaintiff instructed said student to get on the floor and Plaintiff 'put her knee into her back' and 'pushed down' asking if [the student] felt pain."  FAC ¶ 55.

On January 18, 2018, plaintiff met with defendant Cox.  FAC ¶ 59.  According to plaintiff, Cox did not raise the issue of corporal punishment at that meeting.  FAC ¶ 178. Plaintiff asked Cox to speak with another teacher, Ralph Hudson, who is African-American, who was on his prep period in room 408 while plaintiff taught the lesson.  FAC ¶ 59.  Defendant Cox refused to speak with Hudson.  FAC ¶¶ 59, 178, 182.  That same day, defendant Cox reported the parent complaint to OSI.  Balog Decl. Ex. A, OSI Report at 1.[3]  Plaintiff was removed from teaching class 408 for three days – from January 23 through January 25, 2018.  FAC ¶¶ 60, 178.

On February 1, 2018, two students reported to plaintiff that on January 31, a "white man" had been walking around the school campus asking questions about plaintiff, including whether plaintiff had ever walked on their backs.  FAC ¶ 64.  There are no allegations in the FAC that plaintiff ever told any of the DOE Defendants about this conversation.  At the end of the school day on February 1, Ben Chapman, a reporter for the *Daily News*, approached the plaintiff on school property.  FAC ¶ 72.  After being approached by Chapman, plaintiff then went to speak with another AP at X118, Leah Dyer.  FAC ¶ 73.  Dyer called defendant Cox, who came to Dyer's office and personally informed the plaintiff that she had called the Chancellor's division that handles media issues and had been informed that the *Daily News* would be running an article the following day.  FAC ¶ 73.

Later that day, on February 1, 2018, defendant Cox left plaintiff a voicemail advising her to check her email.  FAC ¶ 74.  Plaintiff subsequently checked her email and learned that the DOE's Division of Human Resources had reassigned her to 100 Gold Street in Manhattan and that she was the subject of an Office of Special Investigations ("OSI")

---

[3] The FAC curiously continues to claim that this did not happen until *February* 18.  *See* FAC ¶ 178.  This appears to be a typo as the OSI Report indicates that it occurred a month earlier.

investigation. At some point, plaintiff was reassigned to the Queens South Reassignment Center, which plaintiff alleges is informally referred to as "teacher jail."  FAC ¶ 212.

On February 2, 2018, the *Daily News* published an article about plaintiff and a student's allegations that plaintiff put her foot on another student's back during the slavery demonstration and asked the student "How does it feel?"  Compl. Ex. B.  That morning, defendant Cox sent an e-mail to the entire school staff informing them that the Superintendent had advised the school to expect a large media presence.  FAC ¶ 76.  She also sent a letter to parents "expressing the school's concern over the reported accusation; informing them that it is being investigated; and reassuring the parents that [the plaintiff had] . . . 'been assigned away from students.'"  FAC ¶ 78.  Defendant Cox also advised the parents that she was "working with staff to review the Department's Non-Discrimination Policy to further diversity and sensitivity awareness in the workplace.'"  FAC ¶ 78.   Former Chancellor Carmen Fariña also stated on ABC News that she did not "want to make any suppositions" as the allegations in the news article were "under investigation," and she stated that the DOE had to "wait for the investigation to be complete."  FAC ¶ 136.  A DOE spokesperson[4] also provided a quote to the media that made clear that these were allegations and an investigation into what occurred in plaintiff's classroom had not been completed, specifically, the spokesperson said: "[W]hile the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or in society."  FAC ¶ 179; *see also* FAC Ex. B.

On March 9, 2018, plaintiff received a 48-hour notice advising her that OSI was conducting an investigation into an allegation of employee misconduct that had been filed

---

[4] In the FAC, plaintiff attributes this quote to Doug Cohen.  FAC ¶ 179.  But, the article attached to the FAC as Exhibit B, attributes this to a different DOE spokesperson, Toya Holness.

against her.  FAC ¶ 79.  Plaintiff subsequently met with the OSI investigator on March 15, 2018.

FAC ¶ 79.  Plaintiff claims that the OSI investigator showed her a different set of statements than

the ones taken by AP Ware on January 11, 2018, although they bore the same date.  FAC ¶ 80.

"It is Plaintiff's conjecture," based on no actual facts, that defendant Cox had another AP take a

second set of written statements and falsified the date. FAC ¶ 80.  She believes that the OSI

Investigator did not receive the original set of student's statements until he later confronted AP

Ware for them.  FAC ¶ 80.  No matter, plaintiff claims that four days after she met with the OSI

investigator, he informed her that she would be returning to X118.  FAC ¶ 81.  She further

alleges that on April 9, 2018, someone reported to her union that OSI had completed its

investigation on April 2, 2018.  FAC ¶ 214.  Some unknown person at some unknown point also

advised plaintiff that she should have been returned to X118 on April 23, 2018.  FAC ¶ 214.

OSI issued its report on July 24, 2018.  FAC ¶ 82; Balog Decl. Ex. A, OSI Report.

In her original Complaint, plaintiff admitted that her union notified her of the report on July 26,

2018.  Compl. ¶ 73.  Now, plaintiff only alleges that on that date a union representative informed

her that she would be returning to X118 for the upcoming school hear.  FAC ¶ 85.  Plaintiff

alleges that she was not provided with the OSI Report until September 6, 2018.  FAC ¶ 214.  The

OSI Report stated that the "allegation that [plaintiff] used corporal punishment against Student A

by pushing her knee into her back during a classroom demonstration has not been corroborated

and is unsubstantiated."  Balog Decl. Ex. A, OSI Report at 11 (emphasis omitted).  The report

also concluded that "Ms. Cummings acted with poor judgment in conducting a lesson that

inadequately incorporated the New York City DOE social studies curriculum and guidance for

this topic."  *Id*.  It also stated that plaintiff's "lessons on the Middle Passage . . . significantly

diverged from best-practices.  Specifically, the DOE does not ever include or encourage re-

enactments of historical events where students take on roles of victimized people." *Id*. Plaintiff alleges that this finding is in error because in her opinion, her lesson was in accordance with New York State standards. FAC ¶ 206. Plaintiff also alleges that this finding was in error because "Administrators are the only ones who can evaluate a teacher's performance . . . " and OSI did not observe the lesson. FAC ¶181; *see also* FAC ¶¶ 82-85, 92. OSI recommended that the report be "referred to Principal Cox for her review and for her to take appropriate disciplinary action against Patricia Cummings, teacher." Balog Decl. Ex. A, OSI Report at 11.

## C.   DOE'S TERMINATION OF PLAINTIFF'S EMPLOYMENT

On August 22, 2018, defendant Cox e-mailed plaintiff and informed her that she was scheduled to teach 6th Grade Social Studies at X118 in September. FAC ¶ 86. Plaintiff believes Cox's correspondence was not genuine because the position Cox would have filled had been vacated by another teacher in June and after she was removed, no substitute teacher filled in for her and the schedule she was later handed in September overlapped with other general education teachers. FAC ¶¶ 183-84. The FAC, of course, contains no allegation that on August 22, 2018, the DOE had decided to reassign her. On August 29, 2018, plaintiff contacted the DOE's manager of reassigned staff, who advised plaintiff that the formal notice to plaintiff authorizing her return to X118 had been mailed to X118. FAC ¶ 88. Plaintiff believes that had she received this notice over the summer, she would have been able apply for a transfer to a different school within the DOE, would have been hired by another school, and somehow the DOE would not have been able to terminate her employment. FAC ¶ 88.

Plaintiff returned to X118 on September 4, 2018. FAC ¶ 89. Early in the day, she met with Cox and received her program schedule and a 48- hour notice to review the OSI Report. FAC ¶ 89. She then went to a meeting. FAC ¶ 90. At the meeting, Cox's secretary approached

plaintiff and informed her that Cox needed plaintiff to sign a reassignment notice pending employee discipline.  FAC ¶ 90.  Plaintiff notified her union representative and called the DOE's manager of reassigned staffing, who purportedly said to her "I'm sorry.  Your Principal did this to you."  FAC ¶ 90.  Plaintiff signed the reassignment notice and left the building.  FAC ¶ 91.

By letter dated September 17, 2018, plaintiff was informed that on October 18, 2018, the District 10 Superintendent would be reviewing and considering whether plaintiff's probationary services would continue.  FAC ¶ 180.  On September 28, 2018, the *Daily News* reported that a DOE spokesperson told it that the DOE had "begun the process of firing Ms. Cummings based upon an investigation of this unacceptable behavior and her performance as an educator."  FAC ¶ 180.  Plaintiff confusingly claims that this violated her "due process and civil rights" because the notice she received on the September 17th said that the Superintendent would be reviewing and considering whether to discontinue plaintiff's probationary services on October 18th, although the referral to the Superintendent is the process by which the DOE determines to discontinue probationary employment.  FAC ¶ 180. On October 18, 2018, the DOE terminated plaintiff's probationary employment.  FAC ¶ 93.  That same day, a Long Island school district offered her a position, which she accepted.  FAC ¶ 94.  The following day the *Daily News* published another article that apparently stated that she was fired because she "walked on kids."  FAC ¶ 95.  On October 22, 2018, the Long Island school district rescinded their offer and plaintiff has been unable to find a teaching position since then.  FAC ¶ 96.

Plaintiff was told by an African-American colleague at some point in time that what occurred "was the result of 'having a white teacher, teach events of black history to black students.'"  FAC ¶ 213 (emphasis omitted).  It was further stated to her by some unknown person that "only black teachers should be allowed to teach about events of black history to black

students."  FAC ¶ 214 (emphasis omitted).   And, Ralph Hudson, who is an African-American colleague stated to her that "[a] black teacher could have taught the very same lesson, and there would not have been a single complaint from any student's parent."   FAC ¶ 213 (emphasis omitted).

## D.      PLAINTIFF'S NOTICE OF CLAIM & PROCEDURAL HISTORY

On October 3, 2018, the New York City Comptroller's Office received a Notice of Claim as to the City of New York, DOE and OSI.  *See* Balog Decl. Ex. B, Notice of Claim; *see also* FAC ¶ 41 (claiming to have served the notice on September 26, 2018).  On January 10, 2019, plaintiff filed a Summons with Notice in New York State Supreme Court.  On March 22, 2019, defendant *Daily News* removed this case to the Eastern District of New York and the DOE Defendants and City consented.   On April 4, 2019, the DOE Defendants and City moved, pursuant to 28 U.S.C. 1404, to transfer venue to this Court.  On May 17, 2019, plaintiff filed her original Complaint. On July 22, 2019, the DOE Defendants and City filed a motion to dismiss the Complaint.  On August 14, 2019, the Eastern District granted the motion to change venue. On February 24, 2020, this Court granted the DOE Defendants and City Defendants's motion to dismiss in its entirety.  *See Cummings v. City of New York*, 19 Civ. 07723 (CM) (OTW), 2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. Feb. 24, 2020).   On March 16, 2020, plaintiff filed an Amended Complaint.  The Amended Complaint was rejected by the Court as the parties had not been properly entered and plaintiff was instructed to seek leave of the Court to re-file and correct this error.  On May 23, 2020, plaintiff filed a letter motion seeking leave to re-file the Amended Complaint correcting a party's name.  On May 26, 2020, the Court granted plaintiff's request. On May 28, 2020, plaintiff filed an "Amended Complaint," which not only changed a party's name, but also made numerous additional changes to the complaint that were not mentioned in

plaintiff's motion for leave to amend.[5]  The FAC, also dropped the defamation claims against the City Defendants and all claims against OSI, Mayor de Blasio, Public Advocate Williams and Councilmember Dromm.  The City and DOE Defendants now move to dismiss the FAC on the grounds set forth below.

## ARGUMENT

### POINT I

### THE FAC VIOALTES THE COURT'S MAY 28 ORDER PERMITTING PLAINTIFF TO FIX A TYPO AND RE-FILE THE AMENDED COMPLAINT.

The FAC does not comply with the Court's May 26, 2020 order.  On March 16, 2020, plaintiff filed an Amended Complaint.  *See* Dkt. No. 95.  That filing was rejected on March 17 and plaintiff was instructed to seek leave of the Court to re-file to correct the defect. On May 23, 2020, plaintiff filed a motion for leave to re-file the Amended Complaint in order to fix a "typographical error" with regard to one of the defendants.  *See* Dkt. No. 98.  On May 26, 2020, the Court granted plaintiff's request and instructed him to "File it Now." *See* Dkt. No. 99. Two days later, on May 28, 2020, plaintiff filed another amended complaint.  *See* Dkt. No. 100. This complaint, which, to avoid confusion will be referred to as the First Amended Complaint or FAC, is not simply a re-filing of the March 16 Amended Complaint with a typographical error. Instead, plaintiff made numerous changes to paragraphs, which he did not seek leave of the Court to do.  *Compare, e.g.*, Am. Compl. ¶¶ 60, 61, 63, 67, 69, 80, 86, 96, 181, 183, 185, 195, 205, 208, *with* FAC ¶¶ 60, 61, 63, 67, 69, 80, 86, 96, 182, 184, 186, 196, 206, 209.  This is evident by the fact that the FAC is three pages longer than the Amended Complaint.  Moreover,

---

[5] To avoid confusion, the May 28, 2020 complaint is referred to as the First Amended Complaint or FAC.

while both purport to have 239 paragraphs, the FAC does not have a paragraph 224. Regardless, as set forth below, the FAC should be dismissed in its entirety.

## POINT II

### PLAINTIFF'S CONSTITUTIONAL LAW CLAIMS FAIL.

Plaintiff claims that the actions of the defendants violated her rights under the Fourteenth and Fifth Amendments to the Constitution. *See* FAC ¶¶ 1, 172-221. As discussed below, these claims should be dismissed.[6]

### A.    PLAINTIFF'S DUE PROCESS CLAIMS FAIL

When analyzing procedural due process claims, the threshold issue is whether the plaintiff possessed a valid property or liberty interest. *Oneida Indian Nation of N.Y. v. Madison Cnty*, 665 F.3d 408, 427-28 (2d Cir. 2011); *Zahra v. Town of Southfield*, 48 F.3d 674, 689 (2d Cir. 1995). In ruling on the City and DOE Defendants' original motion to dismiss, the Court held that to "the extent that Plaintiff claims that she was deprived of a property interest by the Municipal Defendants when they ended her probationary employment, that claim fails because as a probationary teacher, she did not posses a property interest in her position . . . ." *Cumming*, 2020 U.S. Dist. LEXIS 31572 at *27. This Court also held that "[t]o the extent that Plaintiff claims that she was deprived of a liberty interest, that claim fails because she has not pleaded facts that would suggest a stigma-plus claim." *Id*. at *28. In her FAC, plaintiff has not pleaded any additional facts that alter this conclusion.

---

[6] The claims brought pursuant to the New York State Constitution should be dismissed for the additional reason that there is no private right of action where an alternative avenue of redress, namely federal constitutional claims, could be available to plaintiffs. *See Martinez v. City of Schenectady*, 97 N.Y.2d 78, 83 (2001).

### 1.     No Deprivation of a Property Interest

In ruling on the City and DOE Defendants' original motion to dismiss, this Court held that plaintiff had no property interest in (1) her continued employment as she was a probationary teacher, (2) in remaining at X118 rather than being transferred, with full salary, to a reassignment center, or (3) a specific procedure for the investigation into the allegations against her investigated in any particular way or the DOE using any other specific procedures.   *See Cummings*, 2020 U.S. Dist. LEXIS 31572 at *28-29.   The FAC does not include any new allegations that would alter this analysis.   Accordingly, the Court should dismiss her claim that she was deprived of a property interest without due process.

### 2.     No Deprivation of a Liberty Interest

Where the liberty interest allegedly subjected to deprivation without due process is reputational in nature, as plaintiff asserts here, a plaintiff must establish the elements of what is referred to as a "stigma-plus" claim.   To prevail on a "stigma-plus" claim, plaintiff must show that (1) defendants made false and stigmatizing statements about her – statements that call into question her good name, reputation, honor or integrity; (2) a tangible and material state-imposed burden in addition to the stigmatizing statement, and (3) the false and stigmatizing statements were made public, concurrently with, or in close proximity to the tangible and material state-imposed burden.   *Segal v. City of New York*, 459 F.3d 207, 212 (2006); *see also Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010); *Velez v. Levy*, 401 F.3d 75, 89 (2d Cir. 2005); *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).   Finally, "a stigma-plus claim [only] enforces a limited but important right:  the right to be heard . . . [at a] name-clearing hearing."   *Segal*, 459 F.3d at 213. Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation such a fashion to effectively put a significant roadblock in

that employee's continued ability to practice his or her profession" satisfies the stigma requirement. *Segal*, 459 F.3d at 212 (citation omitted). "Statement[s] that an employee poorly performed her duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes." *Adams v. New York State Educ. Dep't,* 732 F. Supp. 2d 420, 449 (S.D.N.Y. 2010) (quotations and citations omitted).

Here, in ruling on the City and DOE Defendants' original motion to dismiss, this Court held that plaintiff did not "plead any facts alleging the publication by the [City or DOE Defendants] of an arguably false statement injurious to her reputation made in close temporal proximity of her termination." *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *30-31. Significantly, the Court also held that "[e]ven if Plaintiff were to establish those elements, dismissal of Plaintiff's stigma-plus due process claim is also warranted because an adequate state remedy was available to her in the form of an Article 78 proceeding." *Id*. at *31-32.

Plaintiff's FAC does not alter either of these conclusions. Significantly, none of the allegations in the FAC alter the conclusion that plaintiff's stigma-plus claim should be dismissed because she had an adequate remedy available in the form of a proceeding under Article 78 of the CPLR. The Second Circuit has held repeatedly that a proceeding under Article 78 of the CPLR provides such a remedy. *Segal*, 549 F.3d. at 214.; *Anemone v. Metro. Trans. Auth.*, 629 F.3d 97, 121 (2d Cir. 2011). "That plaintiff chose not to pursue an Article 78 proceeding does not render that remedy inadequate." *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *32. The availability of an Article 78 proceeding alone ends plaintiff's ability to bring a claim that she was deprived of a liberty interest without due process.

Moreover, the only statement that plaintiff alleges was made by the DOE to the public even close in time to the termination of her employment is that on September 28, 2018, when a DOE spokesperson stated to the *Daily News* that the DOE had "begun the process of firing Ms. Cummings based upon an investigation of this unacceptable behavior and her performance as an educator." FAC¶ 180.  This is the same exact statement allegation included in the original complaint, and which this Court held to be inadequate because the statement "is not false." *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *31.  Accordingly, the Court should dismiss her claim that she was deprived of liberty interest without due process.

## B.   PLAINTIFF'S EQUAL PROTECTION AND TITLE VII CLAIMS SHOULD BE DISMISSED

The heading for paragraphs 172 through 221 indicates that plaintiff is bringing a claim for "violation of Civil Rights and Discrimination," against the DOE Defendants and the City.  In paragraph 1 of the FAC, plaintiff also mentions Title VII of the Civil Rights Act of 1964 ("Title VII").  Presumably, plaintiff is attempting to assert claims under the Equal Protection Clause and Title VII.  The Equal Protection Clause prohibits, among other things, purposeful employment discrimination on the basis of race." *Batista v. DeGennaro*, 13 Civ. 1099 (DAB), 2015 U.S. Dist. LEXIS 44022, at *8 (S.D.N.Y. Mar. 31, 2015).  As explained by this Court, "[t]o state a claim under the clause, 'a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.'" *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *32 (quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)).  "The substantive standards for [intentional] employment discrimination claims under §§1981 and 1983 mirror those for claims under Title VII . . . . ." *See Morales v. Rooney*, 509 F. App'x 9, 10 (2d Cir. 2013).  Plaintiff's original equal protection claim failed because she "plead[] nothing more than conclusory allegations that d[id] not give rise to a plausible inference

that she was treated differently than a black teacher who did the same thing." *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *33.  Moreover, "[e]qually fatal to her claim [was] that nowhere in her Complaint ha[d] Plaintiff set forth any allegations, as she must, from which one could adduce that there were non-Caucasian employees who were treated better than her, let alone that they were 'similarly situated.'" *Id*. at *34.

In the FAC, plaintiff still does not allege that she was treated differently than a similarly-situated Black teacher who engaged in the same conduct.  While plaintiff has now identified two of the African-American teachers who opined that what occurred was a result of plaintiff's whiteness, which she believes "evidence the discrimination employed by the Defendants in the way that the Plaintiff was treated, as a Caucasian teacher, teaching in a school that has a significant minority population," that does not save her claim.  FAC ¶ 213. Nor do plaintiff's claims that Student A's parent, who is African-American, and the DOE "with a minority Chancellor" received a "benefit" from the actions taken against her, rescue her discrimination claim.  None of these are examples of similarly situated non-white teachers being treated better, let alone give rise to a plausible claim that defendants intentionally or purposefully discriminated against her because of her race.  *See Forde v. Empire State Coll.*, 10 Civ. 9446 (CM) (THK), 2011 U.S. Dist. LEXIS 105767 at *9 (S.D.N.Y. Sep. 19, 2011).  It need only be added that the Title VII claims asserted against defendants Cox and Ware fail for the additional reason that it is well established that Title VII does not provide for individual liability.  *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (collecting cases).

## C.     NO PRIVATE RIGHT OF ACTION UNDER §1981

In ¶1 of the FAC, plaintiff alleges that jurisdiction is proper in this case pursuant to 42 U.S.C. §1981.  To the extent that plaintiff asserts a race discrimination claim under §1981,

that claim should be dismissed because §1981 does not provide a separate private right of action against state actors (and in this case, all of the City Defendants and DOE Defendants are state actors).  *Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018); *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 735 (1989).

## D.    NO §1985 CLAIM

In her FAC, plaintiff mentions 42 U.S.C. § 1985 twice.  *See* FAC ¶¶ 1, 192. Presumably, plaintiff is attempting to bring a claim that the City and DOE Defendants conspired for the purposes of depriving plaintiff of equal protection under the law in violation of § 1985.[7] But, under "the intracorporate conspiracy doctrine . . .  the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other."  *Raymond v. City of N.Y.*, No. 15 Civ. 6885 (LTS)(HBP), 2017 U.S. Dist. LEXIS 31742, at *20 (S.D.N.Y. Mar. 6, 2017) (internal citation and quotations omitted); *see also Johnson v. County of Nassau*, 10 Civ. 06061 (JFB)(GRB), 2014 U.S. Dist. LEXIS 133175, *59-60 (E.D.N.Y. Sept. 22, 2014) (collecting cases). "Intracorporate immunity has also been extended to the context of conspiracies between a public entity and its employees."  *Quinn v. Nassau Cnty. Police Dep't*, 53 F. Supp. 2d 347, 359-60 (E.D.N.Y. 1999).

Here, Plaintiff's allegations of a conspiracy are brought against DOE employees, and thus plaintiff can sustain his claim only if each alleged co-conspirator was acting outside of the scope of her employment.   "To show that defendants acted outside the scope of their

---

[7] In paragraph 1, plaintiff also references subsections (1), (2) and (3) of §1985.  Subsection 1 and 2 are plainly not applicable.  Subsection 1 concerns instances where an individual has been prevented from holding public office and subsection 2 concerns instances of witness and juror tampering.

employment, such that the intracorporate conspiracy doctrine does not apply, a plaintiff must show that the defendants were 'pursuing personal interests wholly separate and apart from the entity.'" *See Johnson*, 2014 U.S. Dist. LEXIS 133175, at *60 (collecting cases). Plaintiff has not done so here, and indeed has pled the exact opposite – that each individual defendant was acting pursuant to their authority as employees. Thus, Plaintiff's claim under § 1985 fails as to all City and DOE Defendants. *See Johnson*, 2014 U.S. Dist. LEXIS 133175, at *61 (dismissing § 1985 claim where "[a]ll individual defendants were employees of the County during the relevant time period" and "plaintiff ha[d] failed to submit any evidence suggesting that any of these defendants acted outside the scope of their official duties and in their own personal interests in discriminating or retaliating against him").[8]

To the extent that plaintiff claims that she alleges that the City and DOE Defendants conspired with the other defendant, that claim also fails as plaintiffs have not pleaded an agreement or meeting of the minds to violate plaintiff's rights. "To sustain a conspiracy claim . . . a plaintiff must demonstrate that a defendant acted in a willful manner, culminating in an agreement, understanding or meeting of the minds, that violated plaintiff's rights . . . secured by the Constitution or the federal courts." *Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (internal citations and quotations omitted). "Conclusory, vague and general allegations of conspiracy such as those in this case are insufficient." *Id.* Moreover, as set forth above, plaintiff has failed to plead that defendants actually violated her civil rights. Accordingly, her 1985 claim should be dismissed.

---

[8] Importantly, the Court in *Johnson* noted that even if Plaintiff could point to proof of discriminatory and retaliatory conduct, his claim still failed under the intracorporate conspiracy doctrine. *See id.*

**E.      NO *MONELL* CLAIM**

In the FAC, plaintiff now mentions *Monell* in paragraph 197 and summarily concludes that "Defendants" had a "policy" that "the actions and statements of these Defendants are indicative of a pattern of such behavior against non-tenured teachers."  To the extent plaintiff intended to assert this as a separate claim, it should be dismissed.  *Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).  As to the individual defendants, the Second Circuit has declined to hold individual defendants liable under §1983 under a pattern and practice theory.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012).  Moreover, a municipality may not be held liable under § 1983 where no constitutional violation has occurred.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

No matter, plaintiff's §1981 and §1983 claims against the DOE and the City should be dismissed because she fails to plead facts supporting her conclusory *Monell* allegations.  *See Monell v. Dept' of Sc. Servs.*, 436 U.S. 658, 694 (1978).  A policy, practice or custom is an essential element of such claims.  *Id*.  "The plaintiff must . . . demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."  *Bd. of Cnty Comm'rs v. Brown*, 520 U.S. 397, 404 (1997) (quote in original).  Plaintiff has alleged neither a policy nor a practice.  To wit, in ¶ 199, plaintiff makes clear that she is the only non-tenured teacher to whom this "pattern" is derived from as she describes the policy one of being "careless and negligent" and not following Chancellors Regulations or the UFT contract in investigating the claims made "against the Plaintiff . . . ."

And, plaintiff cannot establish that any discrete employment decision made as to her supports in any way a finding of municipal liability:

> The decision to fire one man, for whatever reason, is neither a course or method of action to help guide and determine present and future decisions nor a high-level overall plan.   It is a singular act, applicable to one individual, in the unique circumstances of his case.   It is, in short, a personnel decision and nothing more.  It is hard to imagine any decision that falls farther outside the common understanding of the word "policy."

*Collins v. Stasiuk*, 56 F. Supp. 2d 344, 345 (S.D.N.Y. 1999) .  Accordingly, her §1981 and §1983 claims against the DOE and the City should be dismissed.

## POINT III

### PLAINTIFF'S STATE LAW CLAIMS FAIL.

**A.      FAILURE TO FILE A TIMELY NOTICE OF CLAIM**

All of plaintiff's state law claims asserted against the DOE Defendants and all of the tort claims asserted against the City that accrued before July 3, 2018, 90 days before the Comptroller's office received her notice of claim on October 3, 2018, are barred.[9]  *See* N.Y. Ed. Law § 3813(1); N.Y. Gen. Mun. Law §§ 50-e, 50-i.   In addition, as plaintiff's employment was not terminated until *after* she filed her notice of claim and plaintiff did not file another or amended notice of claim within 90 days after her termination, claims concerning her termination are also time-barred.  *Spano v. Cnty. of Onondaga*, 170 A.D.2d 974, 565 N.Y.S.2d 665, 666 (4th Dep't 1991).  Even if plaintiff had filed a timely notice of claim, it would still not be sufficient to

---

[9] Plaintiff claims that she served the notice of claim on September 26, 2018. Compl. ¶ 6.  This date appears to be erroneous as even the self-addressed, stamped envelope enclosed with the notice of claim contains the date of September 27, 2018.  *See* Balog Decl. Ex. B, Notice of Claim.  Regardless, the analysis as to what claims are barred would not change if the Court were to use one of these dates.

support her fraud claim against the City or DOE Defendants as there is no mention of a fraud claim against the City or DOE Defendants in the notice of claim.

**B.  NO TORT CLAIMS**

Even if plaintiff had filed a timely notice of claim, all of her tort claims should still be dismissed as she has failed to plead any plausible tort claims.

**1.  <u>Plaintiff's Fraud Claim Should Be Dismissed</u>**

In ruling on the City and DOE Defendants' motion to dismiss the original complaint, this Court dismissed plaintiff's fraud claim because "[t]he Complaint does not plead the elements of a fraud claim and comes nowhere close to the level of particularity demanded by Rule 9(b)." *Cummings*, 2020 U.S. Dist. LEXIS 31572 at *38.  Significantly, the Court found that "[p]laintiff has not identified a single false statement that was made to her on which she relied.  Instead she complains that defendant Cox made a false statement to OSI investigators. That allegation does not give rise to a fraud against Plaintiff."  *Id*.  Plaintiff's FAC does not cure any of the defects.  *See* FAC ¶¶ 173-177.  To be sure, plaintiff includes more conclusory sentences that use the word fraud, *see id*., but she still fails to plead any of the elements of a fraud claim, let alone with the particularity required by Rule 9(b).  Importantly, plaintiff still fails to plead with particularity any false statement that was made to her by any of the City or DOE Defendants upon which she actually relied.  Accordingly, plaintiff's fraud claim should be dismissed.

**2.  <u>Plaintiff's IIED and NIED Claims Fail</u>**

Plaintiff asserts both intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") claims against all defendants.  FAC ¶¶ 222-239.  New York State courts have held that "claims of intentional infliction of emotional distress

against government bodies are barred as a matter of public policy." *Dillon v. City of New York*, 261 A.D.2d 34, 41 (1st Dep't 1999); *Lauer v. City of New York*, 240 A.D.2d 543, 544 (2d Dep't 1997). Even if plaintiff's IIED and NIED claims are not otherwise barred for failure to file a timely notice of claim, they should still be dismissed as plaintiff fails to plead allegations of extreme and outrageous conduct, a causal connection between the conduct and plaintiff's alleged injury, severe emotional distress, intent to cause that distress, or that the City and DOE Defendants owed the plaintiff a "special duty."

"A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Dillon*, 261 A.D.2d at 41 (citation omitted). "Such extreme and outrageous conduct must be clearly alleged for the pleadings to survive dismissal." *Id.* "Adverse employment actions are simply not a sufficient basis for an intentional infliction of emotional distress claim, even when coupled by verbal harassment." *Fahmy v. Duane Reade, Inc.*, 04 Civ. 1798 (DLC) (GWG), 2005 U.S. Dist. LEXIS 20929 at *22-23 (S.D.N.Y. Sept. 26, 2005). In fact, "[c]ourts have 'rarely recognized' a claim for intentional infliction of emotional distress in an employment context, and when they have, the claim also included a claim of sexual battery." *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 111 (E.D.N.Y. 2011) (citation omitted). "Additionally, it is well settled that the 'circumstances under which recovery may be had for purely emotional harm are extremely limited and, thus, a cause of action seeking such recovery must generally be premised upon a breach of a duty owed directly to the plaintiff which either endangered the plaintiff's physical

safety or caused the plaintiff fear for his or her own physical safety.'" *Id*. at 135 (citation omitted).

Plaintiff has not pleaded that the DOE Defendants or City engaged in any extreme and outrageous conduct, a causal connection between the conduct, and injury or severe emotional distress. Rather, "[p]laintiff's allegations are in substance, a reiteration of Plaintiff's belief that [s]he was unfairly terminated. New York law does not recognize tort claims for wrongful discharge, accordingly, a plaintiff's attempt to disguise such a claim as one for intentional infliction of emotional distress will not succeed." *See Ahmed v. Gelfand*, 160 F. Supp. 2d 408, 416 (E.D.N.Y. Mar. 15, 2011); *see also Martinez v. O'Leary*, 11 Civ. 1405 (ENV)(JO),  2013 U.S. Dist. LEXIS 94050 at *15 (E.D.N.Y. June 28, 2013). Moreover, it is well established that "allegations of employment discrimination cannot be transmuted into tort claims sounding in negligence." *Daniel v. T&M Prot. Res., Inc.,* 992 F. Supp. 2d 302, 315 (S.D.N.Y. 2014), *vacated and remanded on other grounds* by 689 Fed. Appx. 1(2d Cir. 2017). Plaintiff has also not alleged that either the City or DOE Defendants owe her a "special duty." Courts have consistently held that an employer does not owe a special duty to an employee. *See, e.g.*, *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011); *Dollman v. Mast Indus.*, 731 F. Supp. 2d 328, 341 (S.D.N.Y. 2010). Thus, the IIED and NIED claims should be dismissed.[10]

---

[10] Plaintiff's NIED and negligence claims fail for the additional reasons that plaintiff cannot assert both an IIED and NIED claim for the same set of events. Dismissal is appropriate where plaintiff attempts to claim that the same set of events were both intentional and negligent. *See Wolfe v. City of Rochester*, 14 Civ. 6581 (MAT) (MWP), 2016 U.S. Dist. LEXIS 139210 at *16 (W.D.N.Y. Oct. 6, 2016).

3.      **Plaintiff's Negligence Claim Fails**

Plaintiff also asserts a claim for "negligence" against all of the defendants.  FAC ¶¶ 172-221.  That claim fails as to the City and DOE Defendants for the same reasons that the NIED claim fails.  First, plaintiff has failed to file a timely notice of claim.  *See infra.*  Second, an employee cannot maintain an action for negligence against its government employer absent a special duty.  *See, e.g.*, *Johnson v. N.Y.C. Bd. of Educ.*, 249 A.D.2d 370, 370 (2d Dep't 1998); *Horan v. BOCES*, 14 Civ. 7345 (LDW) (GRB), 2015 U.S. Dist. LEXIS 144754, at *7-9 (E.D.N.Y. Oct. 26, 2015).  Finally, plaintiff cannot convert her employment claims into a claim for negligence.  *See infra.*

## POINT IV

## THE CITY OF NEW YORK IS NOT THE PROPER PARTY.

All of plaintiff's claims concern her employment by the DOE.  Thus, these claims asserted against the City of New York should be dismissed because the City and DOE are separate legal entities and the City is not liable for the actions of the DOE or its employees.  *See* N.Y. Ed. Law § 2590-g(2).  "[T]he City is not liable for the actions of the NYCDOE or its employees absent some action by the City itself."  *Williams v. City of N.Y.*, 12 Civ. 8518 (RJS), 2014 U.S. Dist. LEXIS 49837 at *23 (S.D.N.Y. Mar. 26, 2014), *aff'd,* 602 Fed. Appx. 28 (2d Cir. 2015).  "Courts have consistently rejected the argument that teachers may sue the City on the basis of their employment by the NYCDOE."  *Id.*; *see also Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248 (E.D.N.Y. 2012), *aff'd,* 713 F.3d 163 (2d Cir. 2013); *Falchenberg v. N.Y.C. Dep't of Educ.*, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005).  Changes in the structure of DOE have not altered this conclusion.  *See Perez v. City of New York*, 41 A.D.3d 378, 379 (1st Dep't 2007), *app. den.*, 10 N.Y.3d 708 (2008).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the FAC as against the City and DOE Defendants, and grant such other and further relief as the Court may deem just and proper.

Dated:      New York, New York
              June 25, 2020

**JAMES E. JOHNSON**
Corporation Counsel of the
  City of New York
Attorney for DOE Defendants & City
100 Church Street, 2nd Floor
New York, New York 10007
(212) 356-1104
abalog@law.nyc.gov

By:    /s/ Aliza J. Balog
        Aliza J. Balog
        Assistant Corporation Counsel