UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------- x

PATRICIA CUMMINGS,

                 Plaintiff,

           - against -

THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT
OF EDUCATION; CITY OF NEW YORK OFFICE OF SPECIAL
INVESTIGATIONS; NYC MAYOR BILL de BLASIO; GIULIA
COX; COURTNEY WARE; BEN CHAPMAN; NEW YORK
DAILY NEWS; DR. ANDRE PERRY; THE HECHINGER REPORT
a/k/a HECHINGER INSTITUTE ON EDUCATION AND THE
MEDIA; LENARD LARRY McKELVEY a/k/a CHARLAMAGNE
THA GOD; WWPR-FM (105.1 MHZ); iHEARTMEDIA; CLEAR
CHANNEL COMMUNICATIONS, INC.; NEW YORK STATE
SENATOR, KEVIN S. PARKER; COUNCILMAN, JUMAANE D.
WILLIAMS; COUNCILMAN, DANIEL DROMM; COALITION
OF EDUCATIONAL JUSTICE; ANGEL MARTINEZ; NATASHA
CAPERS, and "JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff to designate any and all
individuals, officers, members, agents, servants, and/or employees of
the aforementioned agencies owing a duty of care to Plaintiff,
individually and jointly and severally, Defendants,

              Defendants.

------------------------------------------------------------------------------- x

Docket No.
19-cv-07723

## MEMORANDUM OF LAW IN SUPPORT OF DAILY NEWS, L.P. AND BEN CHAPMAN'S MOTION TO DISMISS THE AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
Laura R. Handman
James Rosenfeld
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone:  (212) 489-8230
Fax:     (212) 489-8340
laurahandman@dwt.com
jamesrosenfeld@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Daily News L.P. & Ben Chapman*

*Of Counsel:*

Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................ 1

FACTS ......................................................................................................... 4

ARGUMENT ................................................................................................ 7

    I.    NOTHING INCLUDED IN PLAINTIFF'S AMENDED COMPLAINT
        CHANGES THE COURT'S CONCLUSION THAT THE ARTICLES
        ARE ABSOLUTELY PRIVILEGED UNDER NEW YORK CIVIL
        RIGHTS LAW SECTION 74 ................................................................. 7

    II.    STATEMENTS DESCRIBING PLAINTIFF'S LESSON AS "RACIST"
        AND "INSENSITIVE" ARE NON-ACTIONABLE OPINIONS ....................... 15

    III.    THE REMAINING STATEMENTS THAT PLAINTIFF COMPLAINS
         OF ARE SUBSTANTIALLY TRUE ................................................... 18

CONCLUSION ........................................................................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013).................................................................13, 14

*Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*,
   252 A.D.2d 414 (1st Dep't 1998) .......................................................................18

*Borzellieri v. Daily News, LP*,
   39 Misc. 3d 1215(A) (Sup. Ct. Queens Cty. 2013)..............................................17

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976)................................................................................16

*Cabello-Rondón v. Dow Jones & Co.*,
   2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir.
   2018) ...............................................................................................................21, 22

*Celle v. Filipino Reporter Enterprises Inc.*,
   209 F.3d 163 (2d Cir. 2000)................................................................................2

*Cholowsky v. Civiletti*,
   16 Misc. 3d 1138(A), (Sup. Ct. Suffolk Cty. 2007), *aff'd*, 69 A.D.3d 110 (2d
   Dep't 2009) ........................................................................................................11

*Coretc Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1992)..................................................................................4

*Covino v. Hagemann*,
   165 Misc. 2d 465 (Sup. Ct. Richmond Cty. 1995) ..............................................16

*Davis v. Boeheim*,
   24 N.Y.3d 262 (2014) .........................................................................................15

*Desouza v. Office of Children & Family Servs.*,
   2019 WL 2477796 (E.D.N.Y. June 12, 2019) .....................................................1

*Done v. HSBC Bank USA*,
   2010 WL 3824142 (E.D.N.Y. Sept. 23, 2010) ....................................................4

*Fine v. ESPN, Inc.*,
   11 F. Supp. 3d 209 (N.D.N.Y. 2014)...................................................................7

*Fishof v. Abady*,
   280 A.D.2d 417 (1st Dep't 2001) .......................................................................8

*Forte v. Jones*,
  2013 WL 1164929 (E.D. Cal. Mar. 20, 2013) .......................................................................16

*Freeman v. Johnston*,
  192 A.D.2d 250 (1st Dep't 1993) ....................................................................................2, 23

*Goetz v. Kunstler*,
  164 Misc. 2d 557 (Sup. Ct. N.Y. Cty. 1995) ................................................................16, 20

*Gross v. N.Y. Times Co.*,
  82 N.Y.2d 146 (1993) ........................................................................................................15

*Hirsch v. Arthur Andersen & Co.*,
  72 F.3d 1085 (2d Cir. 1995).................................................................................................1

*Idema v. Wagner*,
  120 F. Supp. 2d 361 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)........................2

*Immuno AG. v. Moor-Jankowski*,
  77 N.Y.2d 235 (1991) ........................................................................................................17

*In re Merrill Lynch & Co.*,
  273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005) ............................4

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007).................................................................................................1

*Jewell v. NYP Holdings, Inc.*,
  23 F. Supp. 2d 348 (S.D.N.Y. 1998).................................................................................22

*Karaduman v. Newsday, Inc.*,
  51 N.Y.2d 531 (1980) .........................................................................................................7

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)..........................................................................................................18

*Miles v. City of New York*,
  2018 WL 3708657 (S.D.N.Y. Aug. 3, 2018).......................................................................1

*Mulder v. Donaldson, Lufkin & Jenrette*,
  161 Misc. 2d 698 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 208 A.D.2d 301 (1st Dep't
  1995) ................................................................................................................................14

*O'Brien v. Lerman*,
  117 A.D.2d 658 (2d Dep't 1986) .......................................................................................20

*Procter & Gamble v. Quality King Distrib., Inc.*,
  974 F. Supp. 190 (E.D.N.Y. 1997) .....................................................................................8

*Proskin v. Hearst Corp.*,
14 A.D.3d 782 (3d Dep't 2005) .......................................................................23

*Rickerson v. Porsch*,
2019 WL 1289734 (Sup. Ct. Seneca Cty. Feb. 5, 2019)........................................8

*SentosaCare LLC v. Lehman*,
2018 WL 692568 (Sup. Ct. Kings Cty. Jan. 25, 2018), *appeal docketed*, No.
2018-03473 (2d Dep't Nov. 20, 2018)..................................................................8

*Silverman v. Daily News, L.P.*,
129 A.D.3d 1054 (2d Dep't 2015) ......................................................................16

*Standing Committee on Discipline of U.S. Dist. Ct. for Cent. Dist. Ca. v. Yagman*,
55 F.3d 1430 (9th Cir. 1995) .............................................................................16

*Stevens v. Tillman*,
855 F.2d 394 (7th Cir. 1988) .............................................................................16

*Tannerite Sports LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)........................................................................18, 19

*Test Masters Edu. Servs, Inc. v. NYP Holdings, Inc.*,
603 F. Supp. 2d 584 (S.D.N.Y. 2009) ..................................................................9

*Torain v. Liu*,
2007 WL 2331073 (S.D.N.Y. Aug. 16, 2007), *aff'd*, 279 F. App'x 46 (2d Cir.
2008) ...............................................................................................................16

*Triano v. Gannett Satellite Info. Network, Inc.*,
2010 WL 3932334 (S.D.N.Y. Sept. 29, 2010).....................................................12

*Udell v. NYP Holdings, Inc.*,
169 A.D.3d 954 (2d Dep't 2019) ........................................................................18

*Weyrich v. New Republic, Inc.*,
235 F.3d 617 (D.C. Cir. 2001) ...........................................................................20

*White v. Berkshire-Hathaway, Inc.*,
10 Misc. 3d 254 (Sup. Ct. Erie Cty. 2005) .........................................................12

**Statutes**

N.Y. Civ. R. Law § 74 ............................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P.
    12(b)(6) ...................................................................................................................1
    12(f).........................................................................................................................1

Defendants Daily News, L.P., incorrectly sued as New York Daily News (the "*Daily News*"), and Ben Chapman (together with the *Daily News*, the "*Daily News* Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the re-filed Amended Verified Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

In the Amended Complaint, Plaintiff Patricia Cummings ("Plaintiff") once again asks this Court to find fault with the *Daily News* Defendants' reporting on her misguided middle school history lesson, in which she called black students to the front of the classroom and had them reenact

---

[1] Plaintiff initially submitted an Amended Complaint on March 16, 2020, which was rejected by the Court as deficient for improperly entering certain defendant parties. *See* ECF No. 95. The Court permitted Plaintiff to re-file the Complaint, but did not give Plaintiff permission to make additional revisions. Nevertheless, in Plaintiff's re-filed Amended Complaint, ECF No. 100, the operative complaint in this action, Plaintiff has added numerous new allegations that were not present in his initial Amended Complaint. *See, e.g.* Am. Compl. ¶ 60 (describing the school's investigation as a "rogue investigation, which did not constitute any type of State investigation"); ¶ 106 (stating that "OSI concluded that the allegation that the Plaintiff put her knee into the student's back was false"); ¶ 124 (stating that the *Daily News* Defendants failed to use language to "presuppose Plaintiff's innocence"). These new revisions, made without permission of the Court, would properly be subject of a Motion to Strike under Rule 12(f). *See Desouza v. Office of Children & Family Servs.*, 2019 WL 2477796, at *5 (E.D.N.Y. June 12, 2019) ("A district court may strike new factual allegations in an amended complaint when the allegations exceed the scope of the Court's permission to amend."); *Miles v. City of New York*, 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018) ("I find that Plaintiff's 167 newly-asserted causes of action fall outside the scope of the leave I granted, and they are struck from the TAC as immaterial and dismissed pursuant to Federal Rule of Civil Procedure 12(f)."). However, the *Daily News* Defendants have elected not to pursue that remedy since the new allegations do not save the Amended Complaint from dismissal. These new allegations, which are largely Plaintiff's own argumentative characterizations, are either not factual and are not entitled to any presumption of truth on this motion to dismiss, *see In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 85 (2d Cir. 2007) ("[W]e need not accord [l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness.") (quoting *United States v. Bonanno Organized Crime Fam. of La Cosa Nostra*, 879 F.2d 20, 27 (2d Cir. 1989)), or are contradicted by documents incorporated into the Amended Complaint, *see Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995) (affirming dismissal when facts were "contradicted both by more specific allegations in the Complaint and by facts of which [the court] may take judicial notice").

the inhumane conditions on slave ships.   Plaintiff initially filed this action over one year ago, submitting a "kitchen sink" complaint against nearly twenty different defendants, including claims of defamation, emotional distress, and negligence against the *Daily News* Defendants.   On February 24, 2020, this Court dismissed the initial complaint, correctly finding that the purportedly defamatory statements were either privileged under New York Civil Rights Law § 74 or were non-actionable opinions and that the other tort claims were duplicative of the defamation claim.   The Court granted Plaintiff leave to re-plead.

In her 96-page Amended Complaint, Plaintiff has now dropped her emotional distress and negligence claims against the *Daily News* Defendants and, instead, only brings a single count of defamation.[2]   In support of this cause of action, the Amended Complaint is laden with irrelevant new information about Special Education teaching certificates, *see* Am. Compl. ¶ 53, over-the-top rhetorical flourish about the media's role in society (including referring to the *Daily News* Defendants as "aggressive bullies wielding 'pitch-forks and torches,'" "modern day yellow journalism," and "fake news"), *id.*  ¶¶ 68, 106, 134, and baseless allegations of reverse racism, *id.* ¶ 132.   Noticeably lacking from the Amended Complaint, however, is any new information that can save it from suffering the same fate as the initial complaint.

---

[2] Plaintiff claims that she is bringing a claim for "defamation, defamation *per se*, libel, libel *per se*, slander, slander *per se*, and false light."   Am. Compl., page 31.   But New York does not recognize the common law claim of false light invasion of privacy.   *See Freeman v. Johnston*, 192 A.D.2d 250, 253 (1st Dep't 1993) (dismissing false light invasion of privacy claim "inasmuch as the motion court correctly concluded that New York law applies to such claim and this State does not recognize such a tort").   Claims for defamation, libel, and slander are all one and the same. *See Idema v. Wagner*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) ("Defamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander."), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).   And defamation *per se* is merely a certain type of defamation claim in which the writing "tends to disparage a person in the way of his office, profession, or trade" and special damages are, therefore, presumed.   *See Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000).

In general, none of Plaintiff's superficial changes alters the material facts alleged in the original complaint or compels a different result. Put simply, the Amended Complaint is deficient for the reasons already identified by this Court—the articles are privileged under Section 74 as fair and accurate reports of official and judicial proceedings and contain opinion statements supported by facts disclosed in the articles and admitted by Plaintiff.

Indeed, the Amended Complaint contains only three new allegations, which, although not directly addressed by the Court's opinion, still wholly lack merit under the Court's reasoning and well-established law. Specifically:

- Plaintiff focuses on a sub-headline of a single print article that states that Plaintiff "walked" on students. But, just as the allegation that Plaintiff "stepped" on students was deemed to be privileged under Section 74 as a substantially accurate formulation of the allegations leading to the Department of Education ("DOE")'s investigation into Plaintiff, so too is this statement. Further, this sub-headline must be read in context with the rest of the article, which accurately reports on the allegations leading to the investigation as well as the results of the investigation.

- Plaintiff claims that it was defamatory to refer to her lesson as "insensitive." But like the statements referring to her lesson as "racist," calling the lesson insensitive is an opinion based on undisputed disclosed facts. It is therefore non-actionable.

- Plaintiff alleges that various statements, including that she "shocked and traumatized" students and adults, that she was "removed from her post" after the lesson, and even that her lesson was "about slavery and the Triangle Trade," are defamatory. But each of the statements that she references is substantially true based on her own admissions

and DOE's investigative findings.  Thus, they cannot form the basis of a defamation action.

In short, because the Amended Complaint still fails to state a cognizable defamation cause of action against the *Daily News* Defendants, the Court should dismiss it with prejudice.

## **FACTS**[3]

On January 9, 2018, Plaintiff, then a Bronx middle school teacher, was scheduled to teach her students about slavery and the Middle Passage.  When students laughed at a video clip that she played during the lesson, Plaintiff determined that a "teachable moment" had arisen—from her class of twenty-three children (many of whom were "special education students") she called four black students to the front of her classroom and mandated that they sit close together, mimicking the conditions on a slave ship.  *See* Am. Compl. ¶¶ 54, 56.  Multiple students reported that Plaintiff then used her feet or hands to push the students closer together.  *See* Declaration of James Rosenfeld in Support of the *Daily News* Defendants' Motion to Dismiss the Amended Complaint ("Rosenfeld Decl.") Ex. D at 2-4.[4]

On January 11, 2018, a student who participated in this demonstration and her parent

---

[3] For a more detailed retelling of the facts (which have not been materially changed by any of the allegations in the Amended Complaint), the *Daily News* Defendants refer the Court back to the fact section in their Motion to Dismiss Plaintiff's Verified Complaint.  *See* ECF No. 31.

[4] "In reviewing a motion to dismiss, a court may consider, *inter alia*, (1) documents that are incorporated by reference into the complaint, and (2) documents that, even if not incorporated by reference, the defendant has notice of and that are 'integral' to the complaint" without converting a motion to dismiss into a motion for summary judgment.  *Done v. HSBC Bank USA*, 2010 WL 3824142, at *2 (E.D.N.Y. Sept. 23, 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir. 2002)); *Coretc Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1992); *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005).  Plaintiff annexes most of the relevant *Daily News* articles to the Amended Complaint, the Amended Complaint references the Notice of Claim, *see* Am. Compl. ¶ 41, and extensively quotes from and references the Office of Special investigations investigative report, *see, e.g.*, *id.* ¶ 82, bringing them within proper consideration for this Motion.

reported Plaintiff's behavior to the school's principal.  The principal initially referred the complaint to the Office of Equal Opportunity and Diversity Management, which, in turn, referred the complaint back to the school to conduct an investigation.  *See* Rosenfeld Decl. Ex. D at 6.  On January 17, 2018, the student and parent submitted written statements to the school.  *Id.*  The parent stated that Plaintiff "put her knee into [the student's] back" and asked whether the student felt pain. *Id.* at 8.  She said that her child felt "ashamed and embarrassed" by Plaintiff's actions.  *Id.*  The student similarly reported that Plaintiff said, "I can show you how it is to be squashed on a boat," lined the students "in front of each other with [their] knees up," and "push[ed] [the students'] back[s] with her knees."  *Id.* at 8-9.  On January 18, 2018, the school forwarded these complaints to DOE's Office of Special Investigations ("OSI"), which opened its own investigation into Plaintiff's conduct.  *Id.* at 1, 6.

On February 2, 2018, the *Daily News* published its first article reporting on the allegations against Plaintiff and OSI's investigation into these allegations.  The front page of the print newspaper contained a photograph of Plaintiff and noted, "Bronx middle school teacher Patricia Cummings [] has been removed from classroom while officials look into shocking slave lesson." Rosenfeld Decl. Ex. A.  The story recounted the allegations against Plaintiff and explained that OSI was investigating the allegations.  Rosenfeld Decl. Ex. B; Pl. Ex. B.  It even included a quote from a DOE spokesperson, who referred to the allegations as "disturbing" and confirmed that "the investigation has not been completed."  Rosenfeld Decl. Ex. B at 4.

In the following weeks and months, the *Daily News* continued to report on the story as the investigation proceeded.  On July 24, 2018, OSI issued a report containing the findings of its investigation.  *See generally* Rosenfeld Decl. Ex. D.  While it held that Plaintiff's actions did not constitute "corporal punishment," it found that Plaintiff "acted with poor judgment" because "the

DOE does not ever include or encourage reenactments of historical events where students take on roles of victimized people." *Id.* at 11.  OSI referred the report to the school's principal "for her review and for her to take appropriate disciplinary action against [Plaintiff]." *Id.* at 12.  Following the school's assessment, Plaintiff was fired from her job.  The *Daily News* reported on these events.

On September 25, 2018, Plaintiff's counsel served a Notice of Claim on Defendants the City of New York, New York City Department of Education, and City of New York Office of Special Investigations.  *See* Rosenfeld Decl. Ex. E.  The *Daily News* reported on this Notice of Claim.  On January 10, 2019, Plaintiff served the *Daily News* Defendants (and 17 other parties), seeking damages for "defamation, reverse discrimination, denial of due process, severe emotional, psychological, and physical distress, loss of reputation, loss of income, and expenses" of $120 million.[5]  *See* ECF No. 1, Ex. 1 at 5.  On July 22, 2019, the *Daily News* Defendants filed a motion to dismiss Plaintiff's Complaint.  After months of delay, including asking this Court for three extensions of time to oppose the motion, Plaintiff filed an opposition on October 7, 2019.  *See* ECF No. 58.  The motion was fully briefed on November 4, 2019, *see* ECF No. 75, and on February 24, 2020, this Court dismissed this case without prejudice, *see* ECF No. 94 ("Mem. Op.").

In its opinion, the Court found that the *Daily News* articles were not actionable.  First, the Court held that the articles were privileged under New York Civil Rights Law § 74 because they fairly and accurately reported on the allegations leading to OSI's investigation, the findings of the investigation, and the documents Plaintiff used to initiate this litigation.  *See* Mem. Op. at 29-37.  Second, the Court held that statements in the articles referring to Plaintiff as "racist" were non-

---

[5] The *Daily News* Defendants reported on the summons in an article dated March 9, 2019.  While Plaintiff's initial complaint attached this article and alleged that it was defamatory, Plaintiff no longer appears to be suing over it because it is not attached to or referenced in the Amended Complaint.

actionable opinions. *Id.* at 37-41. And to the extent headlines referred to Plaintiff as "racist" and a "slave teacher," those headlines were fair indexes of the contents of the article. *Id.* at 41. Finally, the Court held that Plaintiff's other tort claims for emotional distress and negligence were based on the same conduct as the defamation claim and, therefore, must be dismissed. *Id.* at 52-53.

## ARGUMENT

Because "[t]he threat of being put to the defense of a lawsuit . . . may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself," *Karaduman v. Newsday, Inc.*, 51 N.Y.2d 531, 541 (1980) (quoting *Wash. Post Co. v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)), meritless defamation claims—like this one—must be dismissed at the earliest possible stage. Heeding this essential constitutional principle, this Court correctly dismissed Plaintiff's original complaint for failure to state a claim. Although the Court permitted Plaintiff to re-plead, nothing added to the Amended Complaint remedies its deficiencies, and the amendment should not change the Court's conclusion. Because the allegedly defamatory statements are either absolutely privileged under New York Civil Rights Law § 74, are pure statements of opinion, or are substantially true, the Amended Complaint, like the initial complaint before it, should be dismissed—this time with prejudice.

## I.   NOTHING INCLUDED IN PLAINTIFF'S AMENDED COMPLAINT CHANGES THE COURT'S CONCLUSION THAT THE ARTICLES ARE ABSOLUTELY PRIVILEGED UNDER NEW YORK CIVIL RIGHTS LAW SECTION 74

As this Court already correctly concluded, the *Daily News* Defendants' articles are privileged under New York Civil Rights Law § 74 ("Section 74") as "substantially accurate" reports of official and judicial proceedings. *See* Mem. Op. at 29-37. As the Court further explained, the term "proceedings" under Section 74 is broadly construed to include, as is the case in this litigation, investigations, *see Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 215 (N.D.N.Y. 2014) (noting that "investigations of various types have found to be official proceedings under § 74" and

compiling cases), reports on allegations that lead to investigations, *see SentosaCare LLC v. Lehman*, 2018 WL 692568, at *7 (Sup. Ct. Kings Cty. Jan. 25, 2018), *appeal docketed*, No. 2018-03473 (2d Dep't Nov. 20, 2018); *Fishof v. Abady*, 280 A.D.2d 417, 417-18 (1st Dep't 2001) ("The absolute privilege under [Section 74] also extends to the release of background material with regard to the case."), and papers used to initiate judicial proceedings, *see Rickerson v. Porsch*, 2019 WL 1289734, at *4 (Sup. Ct. Seneca Cty. Feb. 5, 2019) ("[A]ny reporting about the notice of claims . . . is not actionable under Civil Rights Law § 74."); *see also* Mem. Op. at 30-34.  In order for a report of a proceeding to be "substantially accurate," it must not "have a different effect on the reader's mind than the actual truth, if published."  *Procter & Gamble v. Quality King Distrib., Inc.*, 974 F. Supp. 190, 196 (E.D.N.Y. 1997) (quoting *Daniel Goldreyer, Ltd. v. Van de Wetering*, 217 A.D.2d 434, 436 (1st Dep't 1996)); *see* Mem. Op. at 29-30.

Here, this Court already recognized that "[a]ny reasonable reader would know that the *Daily News* Articles were reports on DOE's investigation into allegations made against Plaintiff," and the articles clearly "quote from or cite to Plaintiff's Notice of Claim and summons."  Mem. Op. at 32-33.  As a result, the articles are reports of official and judicial proceedings within the ambit of Section 74.  *Id.* at 33.  Further, while Plaintiff may "rightfully take issue with the substance of the allegations . . . made to the DOE," because "[t]he [a]rticles contain variations of these allegations," they are privileged.  *Id.* at 37.

In the Amended Complaint, Plaintiff weaves in three reasons why Section 74 should purportedly not apply, none of which is persuasive:

***First***, although Plaintiff recognizes that she was the subject of an OSI investigation, she now argues that the *Daily News* Defendants' articles were not reporting on this proceeding. Instead, she claims that the investigation began only ***after*** the *Daily News* published its first article.

*See* Am. Compl. ¶¶ 60-61.  But the OSI report and Plaintiff's own Amended Complaint belie this

manufactured timeline.  The OSI report begins by noting in a section titled "Origin of Complaint"

that "[o]n ***January 18, 2018***, the Office of Special Investigations . . . received a complaint

concerning the conduct of Patricia Cummings, teacher."  Rosenfeld Decl. Ex. D at 1 (emphasis

added).  Thus, OSI's investigation—which was initiated by the complaint from Principal Cox—

began a full two weeks prior to the *Daily News'* first article on the topic.  Even more, the first

article in this series, which was published by the *Daily News* in its February 2, 2018 edition (and

was published online on the evening of February 1, 2018), quotes a DOE spokesperson who

indicates that an investigation has already been opened, stating, "while the investigation has not

been completed, these are deeply disturbing allegations, and the alleged behavior has no place in

our schools or in society."  Rosenfeld Decl. Ex. B at 4.  And Plaintiff herself admits (at times) that

she was the subject of an OSI investigation prior to the first article's publication, pleading that she

was notified by email on February 1, 2018 that she was the subject of an investigation.  *See* Am.

Compl. ¶ 74; *see also id.* ¶ 76 ("[T]here was no allegation being investigated of [sic] a proceeding

until the ***afternoon*** of February 1, 2018.") (emphasis added).[6]  Because the OSI investigation had

---

[6] Even if Plaintiff's contention is correct, and the OSI investigation was actually "ignited" by the "outrage caused by the publicity set forth by the Daily News," Am. Compl. ¶ 61, Plaintiff cannot deny that there was an active school investigation beginning on January 11, 2018, *id.* ¶ 60.  In her re-filed Amended Complaint, Plaintiff, for the first time, characterizes this as a "rogue investigation" and notes that if this were a "true proceeding, an OSI number would have been generated."  *Id.*  This attempt to characterize the school's investigation as "rogue" or unofficial falls flat.  "New York courts have broadly construed the meaning of an official proceeding as used in Section 74."  *Test Masters Edu. Servs, Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009).  "The test is whether the report concerns actions taken by a person officially empowered to do so."  *Id.* (citation and internal quotation marks omitted).  As indicated in the OSI report, Principal Cox initially referred Student A's complaint to the Office of Equal Opportunity and Diversity Management, which referred the investigation back to Principal Cox to complete.  *See* Rosenfeld Decl. Ex. D at 6.  Therefore, an OSI number would never have been generated for this investigation.  Nevertheless, the school investigation was authorized by a state agency empowered to conduct such investigations, and, therefore, it and the allegations leading to it

already begun as of the publication of the *Daily News* Defendants' first article, and because that article (and each of the others) reports on the investigation, they are privileged under Section 74.

**Second**, Plaintiff claims that the articles are not "substantially accurate" reports of the official and judicial proceedings. *See* Am. Compl. ¶ 113. But as this Court already recognized, a student and her parent complained to OSI that Plaintiff "put her knee into [the student's] back and pushed down asking if [the student] felt pain," and "numerous other students stated that Plaintiff used her feet or hands to push students together." *See* Mem. Op. at 36-37. And the Court correctly held that variations on this statement that appear in the articles—including that Plaintiff "stepped" on, "pressed," and "put her foot on" students' backs—are all substantially accurate formulations of these allegations for purposes of Section 74. *Id.* at 37. Thus, this Court has already addressed and rejected Plaintiff's allegation in her Amended Complaint that she "'NEVER' stepped on a student's back, nor was she ever accused of doing so." Am. Compl. ¶¶ 106, 119. There is no reason now for the Court to diverge from its sound reasoning.

Looking to circumvent the Court's decision, Plaintiff also cites to a single sub-headline on a single article that appeared only in the print version of the *Daily News*, and which was not directly addressed in the Court's opinion. The article, titled "Teacher Axed," contains the sub-heading "she walked on students for slave lesson." *See* Am. Compl. ¶ 137; Rosenfeld Decl. Ex. C.[7] Plaintiff claims that stating that Plaintiff "walked" on a student is "distinctively different" than stating that Plaintiff "pushed her knee" into a student's back. Am. Compl. ¶ 137. However, that

---

constitute a "proceeding" under Section 74, and the *Daily News* Defendants' reporting on it was privileged.

[7] Notably, Plaintiff fails to attach a full version of this article. A complete version of the online and print editions is, therefore, attached as Rosenfeld Declaration Exhibit C.

sub-heading, read in context, is substantially accurate, and the Court's reasoning should apply equally to it.

As explained in the *Daily News* Defendants' initial motion to dismiss, the "substantially accurate" requirement of Section 74 provides defendants with great leniency in reporting. So long as the "statements accurately portray[] the gist of what transpired in the subject proceedings," they are privileged. *Cholowsky v. Civiletti*, 16 Misc. 3d 1138(A), at *5 (Sup. Ct. Suffolk Cty. 2007), *aff'd*, 69 A.D.3d 110 (2d Dep't 2009). This is true even when the challenged statement is an "overstatement" of the truth. *Cholowsky*, 69 A.D.3d at 113. Thus, for example, in *Cholowsky*, an article reporting on a federal investigation stated that "evidence gathered by federal investigators established that [an accomplice of plaintiff's] was using the plaintiff's hauling permit to dump hazardous waste" in a landfill. *Id.* at 112 (internal quotation marks omitted). In reality, the findings by federal officials only indicated that the accomplice ***planned*** to dump hazardous waste, but had not actually done so. *Id.* at 113. The court found that, despite this "mistake," the statement was "substantially accurate" under Section 74, since the "'fair and true' standard has been held to apply to articles containing partial inaccuracies, even if misleading." 16 Misc. 2d 1138(A), at *5.

The logic of *Cholowsky* applies equally here—the "gist" of the allegation made by the parent and reported to OSI is that Plaintiff called numerous black students to the front of the classroom, put them into the position of a victimized group of people, and physically touched them to demonstrate conditions on a slave ship. During the investigation, Students A, B, D, E, H, I, and R as well as one teacher present during the demonstration reported that Plaintiff used her hands or feet to push students closer together. *See* Rosenfeld Decl. Ex. D at 2-4. Particularly in light of the leeway afforded by the "substantially accurate" standard, stating that Plaintiff "walked" on

students is no different than stating that she "put her knee," "pushed," or "pressed" into their backs with her hands or feet.

Further, this sub-headline must be read in the context of the remainder of the article.  *See Triano v. Gannett Satellite Info. Network, Inc.*, 2010 WL 3932334, at *5 (S.D.N.Y. Sept. 29, 2010) ("[E]ven if the headline was literally false, the full context of the article contradicted the headline and was substantially true such that the reasonable reader likely would conclude that the headline was inaccurate."); *White v. Berkshire-Hathaway, Inc.*, 10 Misc. 3d 254, 256 (Sup. Ct. Erie Cty. 2005) ("When reviewing a constitutional challenge to a headline, both the headline and the news article are considered together.").  Indeed, this Court recognized as much when it determined that a sub-headline in the *Hechinger Report*, which read "A teacher literally stepped on children to 'teach them about slavery'" was not defamatory because a "subheadline can only be construed in conjunction with the article."  Mem. Op. at 45-46.

Here, the article puts the headline in context and accurately reports on OSI's investigation into Plaintiff.  First, it notes that "several students and one staffer claimed that [Plaintiff] singled out black students and told them to lie on the floor for a lesson on U.S. slavery – and then stepped on their backs to show them what it felt like."  *See* Rosenfeld Decl. Ex. C.  It then explains that OSI investigated these reports and found that "Cummings used poor judgment – but did not substantiate the allegations that she engaged in corporal punishment."  *Id.*  It also reports Plaintiff's side of the story, writing that "Cummings has denied assertions from students – made to both [] the Daily News and schools investigators – that she pressed on a student's back during the demonstration or made any of the kids physically uncomfortable."  *Id.*  Because the article and headline, when read in conjunction, accurately report on OSI's investigation, the sub-headline, on its own, is not actionable.

*Third*, in a last ditch effort to plead defamation, Plaintiff re-alleges nearly verbatim many of the deficient claims from her initial complaint. But these allegations are no more successful when pled another time. For example, Plaintiff claims that the purportedly defamatory statements are not reporting on proceedings but instead are "assertions presented and described as 'facts'." Am. Compl. ¶ 124. She claims that "Defendants used no language to presuppose Plaintiff's innocence, such as 'accused' or 'alleged.'" *Id.* But, as the *Daily News* Defendants explained in their initial Motion, and as this Court recognized, the entire series of articles was reporting on an investigation. Indeed, the front page of the print newspaper that contained the first article stated that Plaintiff was removed from her classroom "while officials look into shocking slave lesson." Rosenfeld Decl. Ex. A. With this context, there was no need for the *Daily News* Defendants to couch each and every statement about Plaintiff with an "accused" or "alleged," especially when the articles made clear that they were reporting on what "students and a staffer said." *See* Rosenfeld Decl. Ex. B; Mem. Op. at 32 ("Any reasonable reader would know that the *Daily News* Articles were reports on the investigation into allegations made against Plaintiff."); Mem. Op. at 35 ("The articles do not posit the allegations as fact. To the contrary, the Articles repeatedly use[] phrases like 'students said' to report on allegations that were at the heart of a public agency investigation."). Similarly, Plaintiff again cites to a WYNC radio show interview with Defendant Chapman and claims that Defendant Chapman "states as a fact" that Plaintiff "asked black students to lie face down on the floor in the classroom and then stepped on at least one of them." Am. Compl. ¶ 119. But, citing to *Adelson v. Harris*, 973 F. Supp. 2d 467, 482-86 (S.D.N.Y. 2013), this Court already held that Chapman's statement is a "privileged fair report of the allegations at the heart of the OSI investigation," because the radio program "both mentions the *Daily News*'s reporting and, in a written excerpt on the same web page as the program, hyperlinks to the February

13

2, 2018 article." Mem. Op. at 37.  Plaintiff does not attempt to grapple with *Adelson* or this Court's reasoning.

Plaintiff also argues that OSI and Principal Cox concluded that she "did nothing wrong, but disciplined her just to appease the parent," and that OSI found "that the allegation that the Plaintiff put her knee into the student's back was false."  Am. Compl. ¶ 106.  But, as the *Daily News* Defendants previously explained, and as the Court held, OSI's ultimate conclusions about the allegations are immaterial since Section 74 protects reporting on charges and allegations made in proceedings regardless of whether the underlying allegations are true or false or whether the school's decision to discipline her was justified.  *See* Mem. Op. at 35-36; *Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705 (Sup. Ct. N.Y. Cty. 1994) ("The question is not whether or not the statement is 'true.'  The question is whether it is a substantially accurate description of the claims made in the . . . proceeding."), *aff'd*, 208 A.D.2d 301 (1st Dep't 1995).  Moreover, Plaintiff's claim that OSI determined that she did "nothing wrong" is contradicted by the text of the OSI report, which concludes that Plaintiff exercised "poor judgment in conducting a lesson that inadequately incorporated the New York City DOE social studies curriculum and guidance," that her lesson "significantly diverged from best-practices," and that "DOE does not ever include or encourage re-enactments of historical events where students taken on roles of victimized people."  Rosenfeld Decl. Ex. D at 11.  And her claim that OSI concluded "that the allegation that the Plaintiff put her knee into the student's back was false" is also wrong.  The report merely concludes, based on the available information, that this allegation was "unsubstantiated."  *Id.*

At bottom, because the *Daily News* Defendants' articles are privileged reports of official and judicial proceedings, the Amended Complaint should be dismissed.

## II.   STATEMENTS DESCRIBING PLAINTIFF'S LESSON AS "RACIST" AND "INSENSITIVE" ARE NON-ACTIONABLE OPINIONS

In her initial complaint, Plaintiff took issue with statements referring to her and her lesson as "racist."  The Court correctly dismissed these statements, holding that they are "nonactionable statements of opinion" because they "do not have the precise meaning capable of sustaining a defamation action" and because "the *Daily News* Defendants disclosed the facts on which the opinions are based."  Mem. Op. at 39-40.  In the Amended Complaint, Plaintiff—ignoring the Court's ruling—reiterates that statements branding her as a "racist" are defamatory because she is "not a racist and did not exhibit any such conduct."  *See* Am. Compl. ¶ 131.  Even more, she now also claims that the *Daily News* Defendants' reference to her lesson as an "insensitive" stunt was also defamatory because she "did not pull any sort of insensitive stunt in any seventh grade class."  *See* Am. Compl. ¶ 106.  But adding this new allegation does nothing to alter the Court's logic, since both statements are non-actionable opinions.

As the Court already noted, when determining whether a statement is an allegation of fact or opinion, courts consider:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion.

Mem. Op. at 38 (quoting *Brian v. Richardson*, 87 N.Y.2d 46, 50 (N.Y. 1995) (internal alterations omitted)).  In applying these factors, courts have adopted a "holistic approach," *Davis v. Boeheim*, 24 N.Y.3d 262, 270 (2014), asking whether a "reasonable [reader] could have concluded that [the articles were] conveying facts about the plaintiff."  *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 152 (1993) (citation omitted); *see also* Mem. Op. at 38.  Where the facts supporting the opinion are fully set forth, the characterization accompanying those facts is a non-actionable opinion.  *Gross,*

82 N.Y.2d at 153-54; *see also* Mem. Op. 38-39.

The Court's holding—that statements describing Plaintiff as "racist" were non-actionable opinions—conformed with the standards set forth above and a litany of precedent cases that reached the same conclusion, based on the language, provability, and context of the statements at issue.  *See, e.g.*, *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (referring to materials that plaintiff authored as "racist writings" deemed non-actionable opinion); *Torain v. Liu*, 2007 WL 2331073, at *1-3 (S.D.N.Y. Aug. 16, 2007) (accusation that plaintiff was a "racist pedophile" deemed non-actionable opinion), *aff'd*, 279 F. App'x 46 (2d Cir. 2008); *Goetz v. Kunstler*, 164 Misc. 2d 557, 563-64 (Sup. Ct. N.Y. Cty. 1995) (statements by reporters and local politicians interpreting electoral candidate's essay as racist and anti-Semitic deemed non-actionable opinions based on disclosed fact).  Indeed, one such case, cited by this Court, forecloses not only Plaintiff's claim about the use of the term "racist" but also her claim regarding the use of the term "insensitive."[8]  In *Covino v. Hagemann*, 165 Misc. 2d 465 (Sup. Ct. Richmond Cty. 1995), the defendant, an official in the Office of Staten Island Borough President, sent a note to the plaintiff requesting that plaintiff apologize for "exhibiting unprofessional, racially insensitive attitudes" to a non-party.  *Id.* at 466.  The plaintiff claimed that referring to his action as "[r]acially insensitive" was defamatory.  The court disagreed, finding that the phrases "'racially insensitive' and 'disrespectful racial insensitivity' have no meaning which is readily understood."  *Id.* at 470.  This is because "a certain set of facts might be viewed as racially insensitive by one group of

---

[8] *See also Standing Committee on Discipline of U.S. Dist. Ct. for Cent. Dist. Ca. v. Yagman*, 55 F.3d 1430, 1440 (9th Cir. 1995) (allegation that judge was "anti-Semitic" not actionable); *Stevens v. Tillman*, 855 F.2d 394, 402 (7th Cir. 1988) (allegation that plaintiff was a "racist" not actionable); *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976) (allegation that plaintiff was a "facist" not actionable); *Forte v. Jones*, 2013 WL 1164929, at *6 (E.D. Cal. Mar. 20, 2013) (allegation that plaintiff is "racist" not actionable because "'racist' has no factually-verifiable meaning").

people who share the same political or social views, but another group might view it as noncontroversial and socially acceptable." *Id.* Further, the statements "are not capable of being proven true or false." *Id.*

In response, Plaintiff claims that the articles were "NOT opinion" because, "[i]f they were opinion, [they] would be labeled as an 'Op-Ed' story or just an 'opinion' piece." *See* Am. Compl. ¶ 128. But it is the specific wording, substance, and context of an utterance as seen by a reasonable reader, not a defendant's own labeling of its article, that determine whether a statement is fact or opinion. *See Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 243 (1991) ("The key inquiry is whether challenged expression, ***however labeled by defendant***, would reasonably appear to state or imply assertions of objective fact.") (emphasis added). To the contrary, courts have found statements referring to individuals as "racist" to be opinions even though the statements were contained in news stories. For example, in *Borzellieri v. Daily News, LP*, 39 Misc. 3d 1215(A) (Sup. Ct. Queens Cty. 2013), the *Daily News* published a series of articles about a principal who allegedly had ties to a white supremacist group. The articles referred to the principal as a "principal of hate" and "firebrand." *Id.* at *1. The court held that, even though these statements appeared in a "series of articles written by a reporter," they were non-actionable "subjective characterizations of the plaintiff's behavior," and any "reasonable reader would have been mindful that the reporter's writings were unavoidably influenced by her own political and moral views." *Id.* at *3. The same is true here.

Plaintiff also claims that "there [were] no actual facts being reported about Plaintiff" and "[l]ies disguised as facts cannot be considered disclosed facts and thus opinions based on these false facts cannot be protected." Am. Compl. ¶ 124. But even if Plaintiff denies ever having students lie face down on the classroom floor and denies making physical conduct with any

17

students, she admits that she had four students sit "very close together" for a "spatial recognition" exercise to demonstrate the conditions on slave ships, *see* Am. Compl. ¶ 56, admits that she asked students, "You see how it was to be a slave?" and "how does it feel?" (although she insists that she did so merely to "spark discussion"), *see id.* ¶ 106, and admits that at least one student stated that Plaintiff "pushed her knee" into students' backs, *see id.* ¶ 137. These facts alone are enough to support the *Daily News* Defendants' description of the lesson as "racist" and "insensitive." *See* Mem. Op. at 40.

## III.   THE REMAINING STATEMENTS THAT PLAINTIFF COMPLAINS OF ARE SUBSTANTIALLY TRUE

Finally, this Court should dismiss Plaintiff's Amended Complaint because she fails to adequately plead that any of the remaining complained-of statements (which she did not specifically identify in her initial complaint) are materially false. *See* Am. Compl. ¶ 106; *Tannerite Sports LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017) ("[F]alsity is an element of a defamation claim under New York law."); *Am. Preferred Prescription, Inc. v. Health Mgmt., Inc.*, 252 A.D.2d 414, 421 (1st Dep't 1998) ("Since plaintiff did not establish, or even plead, that the alleged statements were false, such claim should have been dismissed.").

The United States Supreme Court has explained that a statement is not "materially false" so long as "the substance, the gist, the sting, of the libelous charge [is] justified." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (citation omitted). This standard reflects the "realities and purposes of defamation law," including the recognition that defamation law is intended to be a system of "reasonable regulation[s]," which would be "damaged by an overly technical or exacting conception of truth in publication." *Tannerite Sports*, 864 F.3d at 243. As a result, a plaintiff in a defamation action must "plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Id.* at 247. "[T]he test to determine whether

a statement is substantially true 'is whether [the statement] as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced.'"  *Udell v. NYP Holdings, Inc.*, 169 A.D.3d 954, 956 (2d Dep't 2019) (quoting *Greenberg v. Spitzer*, 155 A.D.3d 27, 41 (2d Dep't 2017)).  When assessing falsity, "[t]he entire publication, as well as the circumstances of its issuance, must be considered."  *Tannerite Sports*, 864 F.3d at 243 (quoting *Silsdorf v. Levine*, 59 N.Y.2d 8, 13 (1983)).

Here, Plaintiff complains of various statements that—as a matter of law—are "substantially true," and claims arising from them should be dismissed:

***First***, Plaintiff claims that it was false and defamatory to state that she "shocked and traumatized children in her social studies class" and that "kids and adults . . . were horrified by the offensive lessons."  Am. Compl. ¶ 106.  She alleges "there is no basis in fact to conclude that Plaintiff traumatized students, because that can only be determined by a medical professional" and states in a conclusory manner that "[n]o students or adults were horrified by any lesson taught by Plaintiff, as proven in the OSI report."  *Id.*  As a preliminary matter, Plaintiff urges a more clinical, technical approach than defamation law requires, improperly choosing an ill-fitting meaning of "traumatized" over another more applicable one in order to bolster her claim.  According to Merriam Webster's Dictionary, the word "traumatized" is defined as "affected by physical or emotional trauma," *see* https://www.merriam-webster.com/dictionary/traumatized, and the word "trauma" has three definitions: (1) "an injury to living tissue caused by an extrinsic agent"; (2) "a disordered psychic or behavioral state resulting from severe mental or emotional stress or physical injury"; or (3) "an emotional upset," *see* https://www.merriam-webster.com/dictionary/trauma.[9]

---

[9] Courts can take into account credible dictionary definitions when determining if a statement is substantially true.  *Tannerite*, 864 F.3d at 248.

The subject here is an offensive history lesson, not a medical or psychiatric evaluation; it is clear based on the context of the remainder of the article that the *Daily News* Defendants were not using the word "traumatized" in the medical sense but, instead, as a synonym for "emotional upset." *See Goetz*, 164 Misc. 2d at 563 (holding that defendants' description of plaintiff as "paranoid" "cannot reasonably be understood by the mind of the ordinary intelligent reader as imputing to [the plaintiff] an actual physiological or mental affliction"); *O'Brien v. Lerman*, 117 A.D.2d 658, 659 (2d Dep't 1986) (stating that plaintiff "went crazy" "cannot be understood by the mind of the ordinary intelligent reader as imputing to plaintiff insanity or mental instability"); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001) (referring to plaintiff as "suffer[ing] . . . paranoia" does not attribute to him a "debilitating psychological condition" because the term "paranoia" is used in its "popular, not clinical, sense").

Using this more applicable definition of "traumatized," the *Daily News* Defendants' statements that Plaintiff "shocked and traumatized" students and that kids and adults were "horrified" by Plaintiff's lesson are substantially true.  Soon after the lesson occurred, Student A and her parent were upset enough to file oral and written complaints with the school, which prompted the school to contact DOE in order to open an investigation.  Parent A's written complaint stated that she felt "disgust" with the lesson and that her child, who participated in the demonstration, felt "ashamed and embarrassed."  Rosenfeld Decl. Ex. D at 8.  Similarly, when interviewed by OSI investigators, Student H stated that she was also "uncomfortable" during the demonstration.  *Id.* at 4.  And a teacher who was present in another class in which Plaintiff performed a similar demonstration stated that he was "offended" by her actions.  *Id.* at 7.  The DOE spokesperson interviewed by the *Daily News* also stated that the allegations were "deeply disturbing" and that "the alleged behavior has no place in [the] schools or in society."  Pl. Ex. B at

4.  These statements on their own (let alone the statements of individuals interviewed by the *Daily News* Defendants but not quoted in the article) show that it was substantially true to characterize those who witnessed or heard about Plaintiff's lesson as "shocked," "traumatized," and "horrified."

**Second**, Plaintiff claims that it was false and defamatory to state that she "pulled the insensitive stunt in multiple seventh-grade classes" because she "asked for four (4) student volunteers to sit very close together for an exercise to exhibit spatial recognition in class 408, **ONLY**."  Am. Compl. ¶ 106.  But the OSI report notes that Plaintiff gave two offensive lessons on the Middle Passage, in classes 408 **and** 407.  *See* Rosenfeld Decl. Ex. D at 7.  A teacher in Plaintiff's class 407 (who was not present in her class 408) noted that Plaintiff "asked volunteers to participate in a demonstration."  She then had "Student O" lay on the floor, while she "used a ruler to provide measurements to show how close the quarters were for slaves during transportation."  *Id.* The teacher also noted that "a second demonstration was held during the lesson and a group of students were called to the front of the classroom and asked to lineup in close proximity to one another."  *Id.*  The teacher explained that he "felt like the lesson had little connection to the Middle Passage" and reported the lesson to Principal Cox because "what transpired in the classroom offended him."  *Id.*  One of the students present in this class provided an interview with the *Daily News*, noting that Plaintiff "had students lie on the floor" and she then "measure[ed] the length and width to show how little space slaves had in the ship."  Pl. Ex. B at 4.

Further, even if Plaintiff did not perform the "insensitive stunt" in multiple classrooms, the allegation is still "substantially true" because Plaintiff cannot deny the "gist" or "sting" of the allegation—that she had students reenact conditions on slave ships.  In that way, this claim is similar to the claim dismissed in *Cabello-Rondón v. Dow Jones & Co.*, 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018).  There, a Venezuelan public

official brought a defamation claim based on a *Dow Jones* article, which alleged that he was a "leading target" of a U.S. investigation into drug trafficking. The court held that plaintiff had not adequately alleged falsity because he did not challenge "the gist or substance" of those statements—that he "[wa]s in fact under investigation." *Id.* at *5. The court held that "without challenging the accuracy of the statement that he is under investigation, Cabello cannot sufficiently plead falsity by alleging that he is not the 'biggest' target of the investigation." *Id.* at *7; *see also Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 357, 369 (S.D.N.Y. 1998) (plaintiff failed to adequately plead falsity with respect to a *New York Post* article stating that he was the "main" subject of an FBI investigation when he admitted that he was "a" subject of the investigation). Here, like in *Cabello*, Plaintiff cannot deny that she conducted a reenactment of conditions on a slave ship using her students, and it does not produce a different meaning in the mind of the reader if Plaintiff performed this lesson in one class or two. Thus, Plaintiff cannot allege material falsity.

*Third*, Plaintiff claims that it was false and defamatory to state that Plaintiff's lesson "was about slavery and the Triangle Trade." Am. Compl. ¶ 106.[10] But Plaintiff does not explain why this is false (or defamatory) and instead merely claims that she "taught about the Triangle Trade as part of the curriculum she must teach as a seventh grade social studies teacher." *Id.* Because Plaintiff admits that she taught about the Triangle Trade, this statement is not only substantially true but entirely true.

*Fourth*, Plaintiff claims that it was false and defamatory to state that she picked "three of the black kids" from the class to participate. Am. Compl. ¶ 106. But Plaintiff does not deny that

---

[10] The "Triangle Trade" refers to the trading system between West Africa, Europe and American and Caribbean colonies from the late 16th to the early 19th centuries, which involved the shipment of African slaves to the colonies—the so-called "Middle Passage." *See* https://en.wikipedia.org/wiki/Triangular_trade.

the students who she selected to participate in the demonstration were black. Instead, she merely claims that "there was no white student enrolled in her class" and the *Daily News* Defendants' phrasing "misleads the public and puts [her] in a false light." *Id.* But New York courts have rejected similar arguments. In *Proskin v. Hearst Corp.*, 14 A.D.3d 782 (3d Dep't 2005), for example, the defendant published an article stating that the plaintiff "altered a client's will to leave $49,000 of [an] elderly woman's money to his own children," *id.* at 783. The plaintiff admitted that he changed the will but claimed that he did so "upon [his client's] request and at her insistence." *Id.* He argued that the article "implied that he modified the will illegally, surreptitiously, or without authority from his client." *Id.* at 784. The court disagreed, holding that the statement was true and, therefore, non-actionable. *Id.* Here, too, while Plaintiff may not like the image painted by the article's phrasing, she cannot deny that it reports the truth. And, as previously noted, to the extent that this allegation is an attempt to plead a cause of action for false light, that tort does not exist under New York law. *See Freeman,* 192 A.D.2d at 253 (dismissing false light invasion of privacy claim "inasmuch as the motion court correctly concluded that New York law applies to such claim and this State does not recognize such a tort").

*Fifth*, Plaintiff claims that it was false and defamatory to state that she was "removed from her post for a couple of days following the incident but then returned to class and was in school Thursday." Am. Compl. ¶ 106. In support, she says that she was never removed as a *teacher* and "was in attendance at the William W. Niles School . . . until her removal/reassignment on February 2, 2018." *Id.* Elsewhere in the Amended Complaint, however, Plaintiff admits that she was "removed . . . from teaching class 408 from January 23, 2018 – January 25, 2018." *Id.* ¶¶ 60, 116. Thus, even with nothing more, it is substantially true to state that Plaintiff was "removed from her post." But the *Daily News* goes a step further—on the front page of the February 2, 2018 print

edition, the *Daily News* notes that Plaintiff was "removed from **classroom**" while officials investigated her actions.  Rosenfeld Decl. Ex. A.  The allegation that she was "removed from her post" is, therefore, non-actionable.

## **CONCLUSION**

For the foregoing reasons, Defendants Daily News L.P. and Ben Chapman respectfully request that this Court enter an order dismissing the Amended Complaint against them with prejudice and for such other further relief as the Court deems just and proper.

Dated:  New York, New York
       June 25, 2020

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ James Rosenfeld*
    Laura R. Handman
    James Rosenfeld
    Amanda B. Levine

DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas 21st Floor
New York, New York 10020
Phone: (212) 489-8230
Fax:    (212) 489-8340
laurahandman@dwt.com
jamesrosenfeld@dwt.com
amandalevine@dwt.com

*Attorneys for Defendants*
*Daily News L.P. & Ben Chapman*

*Of Counsel:*

Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144