# EXHIBIT E

```
----------------------------------------------------------------------X
```
In the Matter of the Claim of

                                                                   **NOTICE OF CLAIM**

PATRICIA CUMMINGS,

                                          Claimant,

                -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION; and
CITY OF NEW YORK OFFICE OF SPECIAL
INVESTIGATIONS,

                                      Respondents.
```
----------------------------------------------------------------------X
```

TO:     THE CITY OF NEW YORK
           c/o Comptroller of the City of New York
           Municipal Building - Room 1225
           One Centre Street
           New York, New York 10007

           NEW YORK CITY DEPARTMENT OF EDUCATION
           52 Chambers Street, Room 308
           New York, New York 10007

           CITY OF NEW YORK OFFICE OF SPECIAL INVESTIGATIONS
           80 Maiden Lane
           New York, New York 10038

     PLEASE TAKE NOTICE that the undersigned Claimant hereby makes claim and demand against

you all as follows:

     1. The name and post-office address of each Claimant and Claimant's attorney is:

           Patricia Cummings                     Law Offices of Thomas F. Liotti, LLC
           Claimant                           Attorneys for Claimant
           15 Kennedy Avenue              600 Old Country Road, Suite 530
           Farmingville, New York 11738       Garden City, New York 11530
                                             (516) 794-4700

     2. The nature of the claim: This claim seeks recovery for monetary damages for the harm

caused to the Claimant, **Patricia Cummings'**, reputation, livelihood, and career as a New York City

Public School Teacher at The William W. Niles School - Middle School 118, Community School District

1

10, in Bronx County, New York; additionally, for the defamation, discrimination, distress, suffering, mental, emotional, and physical anguish and humiliation and embarrassment inflicted upon the Claimant, **Patricia Cummings'**, due to the negligence, carelessness, recklessness, and, misfeasance, malfeasance, and negligent acts practices, and/or omissions of the Respondents, **The City Of New York, New York City Department of Education, and City of New York Office of Special Investigations, their agents, servants and/or employees,** particularly in deviating from the acceptable standards of review and investigation, in accordance with New York City Chancellor Regulations and the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT), and negligently, improperly, and unprofessionally failing to expeditiously investigate obviously false, frivolous, retaliatory, unsubstantiated, and delusive allegations erroneously made against the Claimant and inappropriately making her the subject of an extensive City of New York Office of Investigations (OSI) investigation and defamatory media coverage, and directing an automatic and protracted reassignment from her position as a New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York; and further in violating State and Federal Civil Rights, 42 U.S.C. §§ 1983 and 1988, including but not limited to State and Federal Constitutional violations for a denial of Due Process and the Equal Protection of the Laws, and in failing to diligently provide the Claimant with the records in support of such frivolous allegations made against her.

      3. The times when, the places where and the manner in which the claim arose: This matter arose as a result of what was erroneously reported to the Office of Special Investigations (OSI) by the principal of The William W. Niles School - Middle School 118, Giulia Cox, concerning a written complaint made by a parent of a student (Student A), concerning a lesson taught by the Claimant in her social studies class 408, on the Middle Passage, which took place on January 9, 2018, wherein it was erroneously alleged by the mother of Student A that "during [her] social studies class [her] teacher

wanted to demonstrate 'how the slaves were on the boat." The mother of Student A further alleged that the Claimant instructed Student A to get on the floor and the Claimant "put her knee into her back" and "pushed down" asking if [Student A] felt pain. The Claimant acknowledges showing a five (5) minute video clip from the movie entitled *Freedom* to reinforce her lesson and depicting the horrible conditions and atrocities slaves were subjected to on the Middle Passage. In this regard, as some students were mocking the contents of the video, specifically the deplorable conditions, a teachable moment arose, and the Claimant engaged four (4) student volunteers to sit very close together for a demonstration to exhibit the cramped conditions on the ship. The Claimant denies that any student laid on the floor at any time during the demonstration and denies making any physical contact with any student during the demonstration, which was no more than 20 seconds in length. Ralph Hudson, another teacher on his preparation period in the Claimant's classroom, observed the Claimant's lesson. A counter-statement of the facts has been presented to school and investigative officials by the Claimant.

[a] On January 11, 2018, the Claimant learned from various students in her class that students' statements were being taken collectively by the Assistant Principal, Courtney Ware, in a classroom setting concerning the Claimant's January 9, 2018 lesson. This method for taking students' statements was a direct violation of the New York City Chancellor Regulations and the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT), such that, in accordance with New York City Chancellor Regulations, alleged victims and student/staff witnesses are to be interviewed separately and their written statements are to be obtained as quickly as possible, (see, Regulations of the Chancellor A-420 (VI)[B](1); the first set of statements were taken by the Assistant Principal, Courtney Ware, in a classroom setting. This is not the only instance of direct violation of the New York City Chancellor Regulations. There were other violations including, but not limited to the following:

3

☐    The accused employee must be provided with 48 hour written notice of the right to appear with union representation at an investigative interview to discuss the allegation of corporal punishment. <u>See</u>, Regulations of the Chancellor A-420 (VI)[B](2). The Claimant was given a letter directing a disciplinary meeting from the principal, of The William W. Niles School - Middle School 118, Giulia Cox, on January 16, 2018. No mention was made of any allegation of corporal punishment; no Chancellor Regulation was cited in the correspondence.

☐    Upon receipt of any complaint of corporal punishment, OSI will recommend whether the employee should be removed from his/her assignment pending completion of the investigation. <u>See</u>, Regulations of the Chancellor A-420 (V)[A]. According to the investigators, the principal, of The William W. Niles School - Middle School 118, Giulia Cox did not inform OSI until February 18, 2018, after the "disciplinary meeting";

☐    When determining whether to remove the employee, the following should be considered: the severity of the alleged behavior; the prior record of the accused employee; the likely disciplinary action if the allegations are substantiated; the nature and frequency of the contact between the subject students; and any other relevant factors. <u>See</u>, Regulations of the Chancellor A-420 (V)[B]. Giulia Cox, Principal of The William W. Niles School - Middle School 118, only removed the Claimant from teaching class 408, from January 23, 2018 to January 25, 2018, the Claimant nonetheless continued to teach her other classes at Middle School 118 during this time;

☐    If an employee has been removed from his/her assignment pending the outcome of a corporal punishment investigation, the principal shall inform the employee, in writing, of the nature of the investigation, no later than five (5) school days from the date of his/her removal. <u>See</u>, Regulations of the Chancellor A-420 (V)[C]. The Claimant was

4

never informed in writing of the nature of the investigation.

☐   At the time of the meeting with the accused employee, the employee must be provided with an explanation of the allegation of corporal punishment and the opportunity to make a statement. See, Regulations of the Chancellor A-420 (VI)[B][4]. There was no allegation of corporal punishment asserted at the first meeting with Giulia Cox, Principal of The William W. Niles School - Middle School 118, nor was the Claimant told she would be removed from teaching class 408, until January 22, 2018.

☐   If the accused employee requests an opportunity to review student witness statements, or adult witness statements that contain student-specific information, the employee must be provided with an opportunity to review and sign a privacy acknowledgment in the presence of union representation (where such representation is present) that he/she will not disclose the contents of the statements or retaliate against the author(s) of the statements. The UFT union representative also must also be provided the opportunity to review and sign the privacy acknowledgment. See, Regulations of the Chancellor A-420 (VI)[B][4](a). The Claimant asked that the statements be redacted, because it had already been reported to her by other students that certain students, who were failing, were trying to get her fired.

☐   The principal/designee must evaluate the evidence and credibility of all witnesses, including the alleged victim and the accused employee. See, Regulations of the Chancellor A-420 (VI)[B][4](a). Instead, Giulia Cox, Principal of The William W. Niles School - Middle School 118, created her own narrative of the alleged incident and despite the Claimant's pleas, refused to speak with several witnesses, including Ralph Hudson, another teacher, who is African American, and was present in the classroom on his preparation period, and observed the Claimant's lesson on the day in question.

[b] On or about January 16, 2018, the Claimant received a hand-delivered correspondence by and from Giulia Cox, Principal of The William W. Niles School - Middle School 118, inexplicably informing her that she was the subject of a disciplinary meeting to take place on January 18, 2018. Shortly thereafter, from January 23, 2018 to January 25, 2018, the Claimant was removed from teaching class 408; however, she continued to teach her other classes during this time. Following her return to class 408, on or about February 1, 2018, the Claimant was advised by students that there was an individual, (an unidentified male), on campus asking the students questions about the Claimant. Later that day, at dismissal, the Claimant was confronted on school property by this same individual, who was later identified as Ben Chapman, a reporter from the New York Daily News. The Respondents did nothing to prevent Mr. Chapman from being present on school property, questioning students, or from directly approaching the Claimant and taking her photograph (against her will), which would later become the subject of a front page story in the New York Daily News, falsely accusing her of being a "racist" and *"making black students lie face down on the floor of her class, and asking them '[H]ow does it feel to be a slave?'"* As a result, this fabricated and erroneous set of "facts" was picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world. The Claimant was featured in several prominent newspapers and televised news programs, as well as on YouTube, where it is erroneously reported, among other things that she "singled out black students and made them act like slaves;" she is reported to have told them to "lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like." She has been publically accused of "child abuse," labeled as a "racist," referred to as an "oppressor," by many, including politicians and activists, and specifically by Ben Chapman, a reporter from the New York Daily News and Dr. Andre Perry in the <u>Hechinger Report</u>, a nonprofit, independent news organization focused on inequality and innovation in education. The Claimant has been called, among other things, a "cave animal," a "cracker," and a "white supremacist," by Power 105.1 radio personality, Lenard Larry

McKelvey, known professionally as "*Charlamagne tha God*," and other members of the general public in various and extensive online media posts discussing this issue.

The Claimant has been presumed to be guilty without a hearing or a trial. This rush to judgment is a denial of due process and the equal protection of the laws. It is unfortunately, a classic example of "reverse discrimination" at its worst. Politicians, parents, students, investigators, the Department of Education and school officials responsible for this injustice will be held accountable for it; so too, will be irresponsible media, for promulgating and promoting "fake news" stories concerning the Claimant.

[c] Since February 1, 2018, the Claimant has found herself having to publically defend her reputation and integrity, as a direct result of the actions of the Respondents, particularly, the principal, of The William W. Niles School - Middle School 118, Giulia Cox, whose negligent actions commenced a course of conduct designed to conceal Principal Cox's failure to adhere to the New York City Chancellor Regulations and the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT). The principal, Giulia Cox, recklessly disclosed false and unsubstantiated information to the NYCDOE Investigators, prior to and during the investigation and tampered with witnesses, to wit: in the disciplinary meeting on January 18, 2018, the Claimant advised Principal Cox that Ralph Hudson, another teacher, was present in the classroom on his preparation period and observed the Claimant's lesson, yet Principal Cox refused to speak with Mr. Hudson, flatly stating to the Claimant, "*I don't have to*." Further, Principal Cox told the OSI investigators that the Claimant's lesson was taught on a different date than it actually was, so that it would corroborate Principal Cox's false narrative that Mr. Hudson was not in the room when the lesson was taught. These actions by the Respondents directly resulted in an erroneous news article being written and subjecting the Claimant to defamation by numerous individuals, including, but not limited to, New York State Senator Kevin S. Parker of Brooklyn, New York City Council Member, Jumaane D. Williams,

7

New York City Finance Committee Chair, Daniel Dromm, New York City Mayor Bill de Blasio[1], and the Coalition of Educational Justice by the Coalition's Parent Leader, Angel Martinez, and its coordinator, Natasha Capers, as well as Lenard Larry McKelvey, known professionally as "*Charlamagne tha God*," a popular radio (Power 105.1), and television personality. Mr. McKelvey (*Charlemagne tha God*), publically presented the unsubstantiated allegations against the Claimant as fact on his radio show and engaged in racial and ethic slurs against the Claimant live on his radio program on Power 105.1; he also referred to her as the "Donkey of the Day." As a result of the Respondents' actions, the Claimant has been erroneously and permanently labeled and identified as a "racist," publically humiliated and subjected to public scrutiny, causing a degradation of her professional status and reputation, death threats, and numerous threats of physical harm.

[d] On February 1, 2018, at approximately 6:00 pm, the Claimant received a letter from the New York City Department of Education and correspondence from the principal, of The William W. Niles School - Middle School 118, Giulia Cox, advising of the Claimant's reassignment from her position as a New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York, to Reassigned Staffing Team at 100 Gold Street, New York, New York 10038. As a result, the Claimant was prohibited from returning to the Department of Education Middle School 118 without prior written permission. The Claimant was subsequently further reassigned to the Queens South Reassignment Center, at 82-01 Rockaway Boulevard, Queens County, a small, uncomfortable room with bars on the windows and 15+ teachers crammed together, where she continues to remain. On or about February 2, 2018, the principal, of The William W. Niles

---

[1] This fabricated incident sparked protests around the city and led New York City Mayor Bill de Blasio to earmark $23 million ($23,000,000.00) for anti-bias training for New York City educators. De Blasio slammed the alleged actions of the Claimant at an unrelated press conference, stating, "It's not acceptable. It's not even close," de Blasio said when asked about the allegations. "I don't know any teacher in their right mind who would do something like that."

School - Middle School 118, Giulia Cox sent a letter to the families of the Middle School 118 students advising of the Claimant's reassignment. This was purportedly to "calm the masses," who had allegedly threatened an uproar if the Claimant was not adequately "punished."

The Claimant eventually learned that the front page story in the New York Daily News, falsely accusing her of "*making black students lie face down on the floor of her class, and asking them '[H]ow does it feel to be a slave?'*" [and subsequently disseminated in other media outlets all over the world,] was based on one (1) unsubstantiated allegation from a problem student, who apparently made a false claims to the reporter that the Claimant "stood on the back of a black student" and then the Claimant allegedly exclaimed, "*This is what slavery feels like.*" This claim was notably different than the complaint made by Student A's mother, yet was also blatantly false and erroneous. Notably, it was later learned that the student who made the false statement to the New York Daily News reporter was absent from school on the day the lesson on the Middle Passage was taught.

[e] The Claimant was advised that on or about April 19, 2018, that the OSI investigation had exonerated her from the false allegations, and that she would be reassigned back to a classroom; to date this return has not occurred[2]. In order to mask Respondents' own inadequacies and to cover up the fact that the Respondents erroneously accused the Claimant of an act which never occurred and that they grossly overreacted and exaggerated their diversity and sensitivity awareness in order to appease their constituents, the Respondents have erroneously found in the OSI Investigative Report

---

[2] In fact, the Claimant was advised that she was being removed from the reassignment at Queens South Reassignment Center, and was able to return to her position at The William W. Niles School - Middle School 118 for the start of the 2018/2019 school year; however, after reporting to The William W. Niles School - Middle School 118 on September 4, 2018, she was notified at 8:38 am that she was again been inexplicably reassigned to 100 Gold Street, New York, New York by the principal, of The William W. Niles School - Middle School 118, Giulia Cox. Principal Cox further exacerbated the Claimant's humiliation and embarrassment, by publically notifying the Claimant of her reassignment back to 100 Gold Street, in front of the entire faculty and staff and having the Claimant escorted out of the building by NYPD School Safety Agents. The Claimant has been subsequently placed back in the Queens South Reassignment Center, where she remains to date.

that the Claimant generally "acted with poor judgment in allegedly conducting a lesson that inadequately incorporated the New York City Department of Education social studies curriculum and guidance for the topic, and that the lesson significantly diverged from best-practices." In actuality, the Claimant's lesson on the Middle Passage was in accordance with the New York State approved standards. It should be noted that Student A's parents (who made the initial complaint to the school), curiously refused to permit Student A to be interviewed during the course of the OSI Investigation, likely because they knew that the complaint contained fabricated accusations in the first instance. This is a form of blatant discrimination and racism condoned by these Respondents. The Respondents may have offered the Claimant, parents, and students a lie detector examination; which they failed to do.

[f] Further, as a result of these erroneous acts of the Respondents, the Claimant has now been advised that she will be subject to a further review to consider whether her services as a probationer will be discontinued and for possible termination of her employment.

[g] Based on the events leading up to and following the Claimant's removal as a New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York, the Respondents knew or should have known that the accusations made against the Claimant were erroneous, and the Claimant should have never been initially removed from her position in class 408, and subsequently reassigned to Queens South Reassignment Center, at 82-01 Rockaway Boulevard, Queens County, which is informally referred to as "teacher jail." The reassignment to "teacher jail" is a policy improperly utilized by the Respondents as a form of "punishment" for teachers, where the teacher's civil rights are continuously and repeatedly violated. Due to the regulations of the Respondents, the Claimant and others likewise situated are deprived of their constitutional right to due process. The Claimant and other teachers are subject to the unsubstantiated narrative as reported by the principals of their respective schools and referred to "teacher jail" reassignment at the whim of their superiors. 42 U.S.C. §§ 1983 and 1988, provides that

every "person" who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or "causes to be subjected," any person to the deprivation of any federally protected rights, privileges, or immunities shall be civilly liable to the injured party. Under *Monell v. Department of Social Serv.*, 436 U.S. 658 (1978), a municipal government can be held liable under Section 1983 if a plaintiff can demonstrate that a deprivation of a federal right occurred as a result of a "policy" of the local government's legislative body or of those local officials whose acts may fairly be said to be those of the municipality. An employee must be acting pursuant to a municipal "policy." To establish a municipal "policy," a plaintiff must prove that the municipal action was (I) taken with the requisite degree of culpability and (ii) causally linked to the deprivation of a federal right. See, also, Amendment 14 of the United States Constitution. The actions and statements of these respondents are indicative of a pattern of discrimination against Caucasian teachers.

[h] The Claimant was actually told by a colleague that what occurred was the result of "*having a white teacher, teach events of black history to black students.*" It was further stated to her that "*only black teachers should be allowed to teach about events of black history to black students.*" "*A black teacher could have taught the very same lesson, and there would not have been a single complaint from any student's parent.*" Statements such as these evidence the reverse discrimination employed by the Respondents in the way that the Claimant was treated, as a Caucasian teacher, teaching in a school that has a significant minority population.

[i] Notably, on or about April 9, 2018, it was reported to the UFT that the OSI investigation was completed, and the report was finalized and sent to the Respondent, Department of Education on April 2, 2018. However, the final report, curiously dated July 24, 2018, was not released and provided to the Claimant until September 6, 2018 [almost five (5) months] following when it was reported to have been completed and three (3) months after it is dated. The Claimant was advised that she should have been returned to Middle School 118 on April 23, 2018, but that never occurred, yet there was never

11

any substantiation of the claims made against the Claimant.

[j] The Claimant has been involuntarily removed from her school and compelled to report to an undesirable location under undesirable conditions without any rational or reasonable basis for her removal and reassignment. She has lost and continues to lose a considerable amount of time from students and has been defamed substantially in the media around the world. She is humiliated and embarrassed by the actions taken against her by the Respondents in removing her from her position without sufficient justification, when the Respondents knew or should have known that the claim against her was fabricated and uncorroborated.

4.   The items of damage or injuries claimed are: Due to the negligence and intentional actions of the Respondents, the Claimant, **Patricia Cummings**, sustained, among other things, loss of reputation and status; defamation, violation of her civil rights, discrimination, and suffered mental and physical distress, emotional and psychological distress, physical discomfort, loss of sleep, anxiety, and has sustained injuries and damages of a permanent, lasting nature, and has been, and will be compelled to expend great amounts of time and money to pursue this claim and all related matters. The Respondents, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Claimant, **Patricia Cummings**; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Claimant, **Patricia Cummings**, from her position as a New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in permitting the media on school property and to question students; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every

12

rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the New York City Chancellor Regulations and the contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT). Based on the foregoing, the Claimant has been damaged in the amount of $120 Million and 00/100 Dollars ($120,000,000.00), together with interest and the costs and disbursements of this action. The Respondents are also hereby notified that in the event that this matter becomes a class-action, that the *ad damnum* clause part of this Notice of Claim will be necessarily increased to be in excess of One Billion ($1,000,000,000.00) Dollars.

Due to the negligence of the Respondents, the Claimant, **Patricia Cummings** has been damaged and will be compelled to expend great amounts of time and money for to pursue this claim and all related matters on her behalf, which amount will be determined at the conclusion of this matter. The Claimant's reputation as a respected educator has been damaged, the extent of which cannot be measured at this time. Her professional career has been substantially compromised and she has been unwillingly exposed to negative notoriety, which has publically humiliated and embarrassed her and subjected her to threats of violence, assault, and death. Moreover, she is now in danger of losing her employment.

The undersigned Claimant therefore presents this claim for adjustment and payment. You are hereby notified that unless it is adjusted and paid within the time provided by law from the date of presentation to you, the Claimant intends to commence an action on this claim.

Dated:    September 24, 2018

PATRICIA CUMMINGS

LAW OFFICES OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for Claimant
600 Old Country Road, Suite 530
Garden City, New York  11530
(516) 794-4700

14

<u>INDIVIDUAL VERIFICATION</u>

STATE OF NEW YORK  )

                                   ss.:

COUNTY OF NASSAU  )

       **Patricia Cummings,** being duly sworn, deposes and says: that the deponent is the Claimant in the within action; that she has read the foregoing Notice of Claim and knows the contents thereof; that the same is true to her own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

PATRICIA CUMMINGS

Sworn to before me this

25th day of September, 2018

Notary Public

LUCIA M. CIARAVINO
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01CI6061004   Nassau
QUALIFIED IN QUEENS COUNTY
COMMISSION EXPIRES JULY 8, 20.19

7