UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PATRICIA CUMMINGS,

                                        Plaintiff,

                                                                                Docket No. 19-cv-07723 (CM)

                        -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
GIULIA COX; COURTNEY WARE; BEN CHAPMAN;
NEW YORK DAILY NEWS; DR. ANDRE PERRY;
THE HECHINGER REPORT a/k/a HECHINGER
INSTITUTE ON EDUCATION AND THE MEDIA;
LENARD LARRY McKELVEY a/k/a
CHARLAMAGNE THA GOD;
WWPR-FM (105.1 MHZ); iHEARTMEDIA;
CLEAR CHANNEL COMMUNICATIONS, INC.;
NEW YORK STATE SENATOR, KEVIN S. PARKER;
COALITION OF EDUCATIONAL JUSTICE;
ANGEL MARTINEZ2; NATASHA CAPERS;
PHILIP SCOTT; ADVISE MEDIA NETWORK
n/k/a AFRICAN DIASPORA NEWS CHANNEL, and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants,
and/or employees of the aforementioned agencies owing a
duty of care to Plaintiff, individually and jointly and
severally,

                                        Defendants.
------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT NEW YORK STATE SENATOR, KEVIN S. PARKER'S MOTION TO
DISMISS THE AMENDED COMPLAINT**

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax: (516) 794-2816
E-mail: Tom@TLiotti.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... i

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 7

ARGUMENT ................................................................................................................. 11

POINT I .......................................................................................................................... 11

       THE AMENDED COMPLAINT HAS SUSTANTIATED
       ALLEGATIONS SUFFICIENT TO JUSTIFY A DEFAMATION CLAIM
       AGAINST SENATOR PARKER ........................................................................ 11

POINT II ......................................................................................................................... 24

       SENATOR PARKER'S ALLEGED STATEMENT WAS NOT
       CONSTITUTIONALLY PROTECTED ........................................................... 24

              The Defendant DID NOT Fairly and Accurately
              Comment on the Actual Proceedings ...................................................... 28

CONCLUSION ............................................................................................................... 30

# **TABLE OF AUTHORITIES**

**Cases**

*Amadei v. Nielsen,*
    348 F. Supp. 3d 145, 2018 U.S. Dist. LEXIS 210479,
    2018 WL 6575487 ...................................................................................12, 13

*Aronson v. Wiersma,*
    65 NY2d 592, (1985) at 594 ..............................................................14, 17, 27

*Armstrong v. Simon & Schuster,*
    85 NY2d 373 (1995) at 380 ......................................................................14, 27

*Ashcroft v. Iqbal,*
    556 U.S. 662, 678 (2009) .........................................................................12, 13

*Ava v. NYP Holdings, Inc.,*
    64 AD3d 407 (2009) at 413 ............................................................................27

*Bell Atl. Corp. v. Twombly,* 550 U.S.544, at 555, 127 S. Ct. 1955,
    167 L. Ed. 2d 929, 2007 U.S .LEXIS 5901, 75 U.S .L.W.
    4337, 2007-1 Trade Cas. (CCH) P75, 709, 68 Fed. R. Serv. 3d (Callaghan)
    661, 20 Fla. L. Weekly Fed. S 267, 41 Comm. Reg. (P & F) 567 ..............13, 14

*Brian v Richardson,*
    87 NY2d 46, 51 [1995]; ...................................................................................19

*Buckley v. Littell,*
    539 F.2d 882, at 883, 1976 U.S. App. LEXIS 8226, 1 Media L. Rep. 1762 ....................16

*Cantrell v. Forest City Publishing Co.,*
    419 U.S. 245, 248, 42 L. Ed. 2d 419, 95 S. Ct. 465 (1974), ...........................22

*Celle v. Filipino Reporter Enters.,*
    209 F.3d 163, 2000 U.S. App. LEXIS 6785 .....................................................17

*Christopher v. American News Co.,*
    171 F.2d 275 (7th Cir. 1948) ...........................................................................19

*Conley v. Gibson,*
    355 U.S. 41 (1957). ...................................................................................13, 26

*Davis v. Ross,*
    754 F.2d 80, 1985 U.S. App. LEXIS 28944at 82 .............................................17

*David v. Boeheim,*
    24 NY3d 262, 268 [2014] ...............................................................................14, 18, 19

*Doe v. Doe,* No.
    16 Civ. 0332 (NSR), 2017 WL 3025885, (SDNY July 14, 2017)....................................20

*Egiazaryan v. Zalmayev,*
    880 F Supp 2d 494, 503 [SD NY 2012] ........................................................................18

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,*
    F Supp 3d , 2016 WL 3773394, [SD NY 2016] ............................................................19

*Famous Horse Inc. v. 5th Ave. Photo Inc.,*
    624 F.3d 106, 108 (2d Cir. 2010).................................................................................12

*Farber v. Jefferys,*
    33 Misc 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011],
    affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858.......................................27

*Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York,*
    101 AD2d 175, 182 ......................................................................................................28

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323, 347, 41 L. Ed. 2d 789,
    94 S. Ct. 2997 (1974)...............................................................14, 15, 16, 18, 22, 24, 25

*Golub v. Enquirer/Star Group,*
    89 N.Y.2d 1074, at 1076, 681 N.E.2d 1282,
    659 N.Y.S.2d 836, 1997 N.Y. LEXIS 761, 25 Media L. Rep. 1863 ...............................14

*Gross v. New York Times Co.,*
    82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (1993)...................18, 19, 28

*Howell v. New York Post,*
    81 N.Y.2d 115, 596 N.Y.S.2d 350, 354, 612 N.E.2d 699 (N.Y. 1993)...........................21

*Immuno AG v. J. Moor-Jankowski,*
    77 N.Y.2d at 248-49, 566 N.Y.S.2d at 913-14,
    567 N.E.2d at 1277-78 (1991) ................................................................................27, 28

*James v. Gannett Co.,*
    40 NY2d 415 (1976) at 419-420.......................................................................14, 15, 27

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
    341 U.S. 123 (1951). ...................................................................................................15

*Leonard F. v. Isr. Disc. Bank of N.Y.*,
    199 F.3d 99, 107 (2d Cir. 1999) ....................................................26

*Liberman v. Gelstein*,
    80 NY2d 429, 435 (1992).............................................................20

*Lopez v. Univision Commc'ns, Inc.*,
    45 F. Supp. 2d 348, 362 (S.D.N.Y. 1999) .................................29

*Mattice v. Mem'l Hosp. of S. Bend, Ind.*,
    249 F. Supp. 2d 682, 686 (7th Cir. 2001). ................................13

*Matthews v. Malkus*,
    377 F. Supp. 2d 350, 2005 U.S. Dist. LEXIS 14401 ..............22, 23

*Mann v. Abel*,
    10 NY3d 271 at 276 (2008), .......................................................19

*Mencher v. Chelsey*,
    297NY 94, 100 [1947]..............................................................14, 15

*Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*,
    22 F. Supp. 3d 240, 255 (S.D.N.Y. 2014) ................................29

*Mott v. Anheuser-Busch, Inc.*,
    910 F. Supp. 868, 875 (N.D.N.Y. 1994), aff'd, 112 F.3d 504 (2d Cir. 1996)..................29

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
    759 F.2d 219, 224, (2d. Cir. 1985) U.S. App. LEXIS 30321,
    11 Media L. Rep. 1713 ..............................................................17

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)...................................................................24

*Palin v. New York Times Co.*,
    940 F.3d 804, 2019 U.S. App. LEXIS 30640, 2019 WL 515244...............................12, 13

*Patel v. Searles*,
    305 F.3d 130, 135 (2d Cir. 2002......................................................26

*Parks v. Steinbrenner*,
    131 AD2d 60, 62-63 [1st Dept. 1987]. ......................................19

*Penn Warranty Corp. v. DiGiovanni*,
    2005 NY Slip Op 25449 10 Misc3d 998 (2005)......................19, 20

*Philadelphia Newspapers, Inc. v. Hepps*,
    475 U.S. 767, 54 U.S.L.W. 4373, 89 L. Ed. 2d 783, 106 S. Ct. 1558 (1986) ..................23

*Pollnow v. Poughkeepsie Newspapers, Inc.*,
    107 A.D.2d 10, 18, 486 N.Y.S.2d 11 (2d Dep't 1985).....................................29

*Qureshi v. St. Barnabas Hosp. Ctr.*,
    430 F.Supp.2d 279, 287 (SDNY 2006) ...............................................18

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705, 2014 U.S. Dist. LEXIS 139402 .......................................17

*Rosenblatt v. Baer*,
    383 U.S. 75, 92 (1966) .................................................................15

*Silverman v. Daily News, LP*,
    129 AD3d 1054 (2nd Dept. 2015).....................................................20

*Silsdorf v. Levine*,
    59 NY2d 8, 15-16 [1983], cert denied 464 US 831 ...................................14, 19

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124, 1127 (2d Cir. 1994)....................................................18

*Smith v. City of New York*, No.
    13-CV-2395, 2014 U.S. Dist. LEXIS 139267, 2014 WL 4904557,
    (E.D.N.Y. Sept. 30, 2014) ...........................................................27

*Steinhilber v. Alphonse*,
    68 NY2d 283, 291-292 [1986].................................................18, 19, 27

*Walker v. Armco Steel Corp.*,
    446 U.S. 740, 751(1980)..............................................................13

*Walker v. Schult*,
    717 F.3d 119,124 (2d Cir. 2013)......................................................12

*Wenz v. Becker*,
    948 F Supp. 319, 323 [SDNY]........................................................16

*Wieman v. Updegraff*,
    344 U.S. 183  .......................................................................16

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971)..................................................................15

*600 West 115th Street Corp. v. Von Gutfeld,*
    80 N.Y.2d at 136 & 138, 589 N.Y.S.2d at 827 & 829,
    603 N.E.2d at 932 & 934 (1992)...................................................................16, 27, 28

**Constitution**

First Amendment ...................................................................................................16

**Rules**

Article 20 ..............................................................................................................10

Chancellor Regulation A-420 ...............................................................................10

Federal Rule of Civil Procedure 12 (b) (6)...........................................1, 11, 12, 13, 30

Fed. R. Civ. P. 8 (a) (2) ........................................................................................26

Fed. R. Civ. P. 12 (c) ............................................................................................26

Fed. R. Evid. 404(b), ............................................................................................23

N.Y. Civ. Rights Law § 51 ...................................................................................21

Prosser, Torts [4th ed], p 813................................................................................21

Restatement, Torts 2d, § 652E, Comment c. .......................................................21

Restatement, Torts, § 867, Comment d, ...............................................................21

Restatement, Torts 2d, § 652E, Comment d, particularly p 399..........................21

652E of the Restatement (2d) .........................................................................21, 22

28 U.S.C.S. § 1367(c)(4) ......................................................................................11

28 U.S.C.S. § 1367(c) ...........................................................................................11

**Secondary Sources**

"After Arrest, a State Senator Loses His Leadership Posts."
    The New York Times..........................................................................................3

"Convicted NY State Senator Loses 1 Leader Post."
    CBSLocal.com. January 11, 2011.......................................................................3

Dem. State Senator Slammed For 'Kill Yourself!' Tweet To GOP Aide."
    WLNY-TV CBS. 18 December 2018 .................................................................4

Fink, Zack, "Nasty Fight Erupts Between State Senate Democrats
    During Closed Door Meeting." www.ny1.com (April 12, 2019) .......................4

Gorta, William J. (March 21, 2011). "State Sen. Parker sentenced
    to probation for attacking Post photographer." New York Post .........................3

Katz, Celeste; Lovett, Kenneth (April 28, 2010). "State Sen.
    Kevin Parker erupts again with raced-based rant,
    and even allies are concerned" Daily News ...................................................4

'Kill Yourself!': New York State Senator Kevin Parker Apologized
    for Tweet Over Parking Spot." Newsweek. Retrieved 19 December 2018.........................4

Lovett, Kenneth (February 11, 2010). "Another Senate brawl in Albany:
    Sen. Kevin Parker charges towards then curses out female colleague." Daily News ........4

NY state senator tweets 'Kill yourself' at user who called him
    out over parking placard." The Hill. Retrieved January 18, 2018 ......................4

"NY Senator: 'You Racist People In Here.'" wcbstv.com .......................................3, 4

"Sampson sees no Monserrate-Parker parallels." TimesUnion.com. December 7, 2010...............4

"State Senator Kevin Parker busted over tussle with photographer." New York:
    Nydailynews.com. Retrieved April 29, 2010.........................................................3

"State Sen. Kevin Parker erupts again with raced-based rant,
    and even allies are concerned" Daily News. New York. .......................................4

Wade, Defamation and the Right of Privacy, 15 Vand L Rev 1093, 1121) .................................21

Williams, Akhee Jamiel, Divided We Fall. Ignorant We Fail (2013) ............................................3

White, Helen and Christina Evans, Learning to Listen to Learn:
    Using Multi-Sensory Teaching for Effective Listening (2005).........................................8

Plaintiff, Patricia Cummings, (hereinafter "Plaintiff" or "Ms. Cummings"), a private individual, respectfully submits this Memorandum of Law in Opposition to Defendant, New York State Senator Kevin S. Parker's (referred to as, "Senator Parker," "Defendant, Senator Parker," or "Defendant") Motion to Dismiss the Plaintiff's Amended Verified Complaint pursuant to Federal Rule of Civil Procedure 12 (b) (6).

## PRELIMINARY STATEMENT

The Senator Parker's Motion disingenuously argues that his quoted statements were mere expressions of opinion, and accompanied by the facts on which those opinions were based, are protected by both the United States and New York Constitutions. He erroneously contends that Plaintiff's amended pleading contains no allegations that would justify a reconsideration of the prior holding of this Court that the statements in question were non-actionable opinions. He further argues that even if there were some doubt as to that holding, however, the statements were made on a matter of political, social, or other concern to the community that was of general interest and of value and concern to the public, and since the Amended Complaint contains no plausible allegations that Senator Parker knew the facts on which he was commenting were false or had reckless disregard as to whether they were true, or displayed gross irresponsibility in making his statements, the defamation claims should be dismissed. These arguments are without merit and thus, the Amended Verified Complaint should not be dismissed as to Senator Parker.

Of the three core ideas expressed by Senator Parker in the article, he argues that in its prior Decision this Court focused on only one, as follows:

> The only statement arguably capable of defamatory construction is the statement that culturally sensitive training would not be effective for Ms. Cummings. However, that is plainly not something provable and so qualifies as opinion. Moreover, the facts about Plaintiff on which Senator Parker based this statement are set out in the article, and there is no suggestion therein, or anywhere else in the Complaint, that Defendant Parker was referring to any undisclosed facts about Plaintiff. To the contrary, Parker explained in the preceding sentence that the

1

basis of this statement was his personal experience as an African studies professor. Those receiving the statement would be free to credit or discount the bearing that experience had on the debate at hand. Indeed, the full context in which the statement appears would signal to a reader that they were reading or hearing impassioned rhetoric typical of debates on public issues. Senator Parker's quoted comment is "protected as a statement of opinion and thus not a false statement of fact."

This Court seemingly overlooked that Senator Parker singled out the Plaintiff and called for her removal as a New York City teacher and revocation of her New York State teaching license and credentials on the basis of the false narrative that he promoted, which undoubtedly played a part in Plaintiff being terminated. Senator Parker argues that his quoted statements were mere expressions of opinion and an academic rumination on the best practices for sensitivity in the classroom. Nonetheless, it is important to note that there were no substantiated, accurate facts reported anywhere. Moreover, the disingenuous attempt to characterize the reference to the Plaintiff's actions as opinion by Senator Parker is derisory. Senator Parker is self-described as committed to restoring the overall quality of life for his constituents. His asserted commitment to his community is reflected in his leadership in civic organizations. He has expressed his commitment to education, as a professor of both African-American Studies and Political Science at several colleges, including: CUNYs: Baruch College, John Jay College, Medgar Evers College, City College; SUNY, Old Westbury; and Long Island University. Brooklyn College is where Senator Parker teaches a majority of his classes and is a faculty advisor to student organizations and activities. The Senator is currently an adjunct professor at Brooklyn College's Center for Worker Education. At Penn State (where he received his Bachelor of Science Degree in Public Service), Senator Parker organized students for racial justice and encouraged diversity at the University. As such he is inarguably considered a thought-leader in the field of racial justice and diversity in education. As such elected officials have a responsibility and must be able to distinguish between "facts and fiction, opinion from proven data, and statistical analysis from baseless hypothesis." They need to know how reliable statements are before reporting them as facts. See,

Williams, Akhee Jamiel, <u>Divided We Fall. Ignorant We Fail</u> (2013). In order to formulate his purported "opinion," that the Plaintiff "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*" the Defendant performed no independent investigation of the "facts" despite the fact that the reported account referred to by Senator Parker differed dramatically from the actual allegation that was made by just **one student and ultimately unsubstantiated by New York City Department of Education's Office of Special Investigations (OSI)**. What was erroneously the subject of his quoted statement amounted to child abuse and/or endangerment, yet there was no indication of a substantiated investigation or was there ever one, before he called for the Plaintiff's removal as a New York City teacher and revocation of her New York State teaching license and credentials. He is a self-designated thought-leader for his constituents and an elected official, referencing unsubstantiated and false events in the media. He presents himself in his statement as an authority, affirming that his expertise as an African Studies professor for over 20 years, makes him qualified to determine the Plaintiff's character.[1]

---

[1] Senator Parker's statements on the Plaintiff's character and on her alleged "deplorable acts" are quite ironic given his own personal controversies, to wit: In January 2005, he was arrested after punching a traffic agent in the face during a dispute over a traffic citation that he had been issued. He was subsequently charged with third degree assault, a misdemeanor. The charges were dropped after he agreed to take anger management classes. <u>See</u>, "<u>NY Senator: 'You Racist People In Here.</u>'" wcbstv.com; archived from the original on April 30, 2010. Retrieved April 29, 2010. In 2008, an aide filed charges against him, claiming he pushed her during an argument and smashed her glasses. <u>Id</u>. On May 8, 2009, he was charged with felony criminal mischief for attacking a New York Post photographer and damaging the photographer's camera and car door. According to prosecutors, the photographer's finger was broken in the alleged attack. <u>See</u>, "<u>Convicted NY State Senator Loses 1 Leader Post</u>." CBSLocal.com. January 11, 2011. Retrieved January 25, 2018. He was charged with a felony due to the value of damage to the camera and car door. <u>See</u>, Gendar, Alison; Lovett, Ken; Standora, Leo (May 8, 2009). "<u>State Senator Kevin Parker busted over tussle with photographer</u>." New York: Nydailynews.com. Retrieved April 29, 2010. As a result, he was stripped of his leadership position as majority whip and chair of the Energy Committee. <u>See</u>, Baker, Al (May 10, 2009). "<u>After Arrest, a State Senator Loses His Leadership Posts</u>." The New York Times. He was convicted of a misdemeanor charge, criminal mischief, and on March 21, 2011 was sentenced to three years probation and a $1,000 fine. <u>See</u>, Gorta, William J. (March 21, 2011). "<u>State Sen. Parker sentenced to probation for attacking Post photographer</u>." New York Post. Had he been convicted of the felonies, he would have automatically lost his seat in the Senate, and the Senate had already expelled Hiram Monserrate for misdemeanor charges earlier in the year. The

Thus, Senator Parker must be held to a higher standard. Those statements as quoted by Senator Parker in his statement were **not** opinion.

There were no substantiated or accurate facts reported by Senator Parker. This Court must remain mindful of the rule that the defamatory effect of the segment is to be ascertained not from the viewpoint of a critic or language expert, but rather from that of a reader of reasonable intelligence who takes ordinary interest in the articles of a periodical or statements made by an elected official, but does

---

Senate Democrats expressed an unwillingness to expel Parker as they had Monserrate. See, "Sampson sees no Monserrate-Parker parallels." TimesUnion.com. December 7, 2010. Retrieved January 25, 2018. In February 2010, Parker was restrained by his colleagues during a profane tirade against Senator Diane Savino in which Parker referred to Savino as a "bitch." See, Lovett, Kenneth (February 11, 2010). "Another Senate brawl in Albany: Sen. Kevin Parker charges towards then curses out female colleague." Daily News. New York. In April 2010, he launched into an outburst while colleague John DeFrancisco (R) of Syracuse was questioning a black nominee for the New York State Power Authority. Senator Parker objected to DeFrancisco's questions and asserted that he had never seen a white nominee treated in similar fashion. See, Katz, Celeste; Lovett, Kenneth (April 28, 2010). "State Sen. Kevin Parker erupts again with raced-based rant, and even allies are concerned" Daily News. New York. "Amid the nearly two-minute tirade, committee chairman Carl Kruger told Senator Parker he would be removed from the hearing room if he didn't settle down." Id. He has accused his colleagues of racism, and followed up in a radio interview by accusing his Republican "enemies" of being white supremacists. See, "NY Senator: 'You Racist People In Here.'" wcbstv.com; archived from the original on April 30, 2010. Retrieved April 29, 2010. Following the tirade, Sen. Rubén Díaz Sr. (D-Bronx) was quoted as saying that Parker "needed help." See, Katz, Celeste; Lovett, Kenneth (April 28, 2010). "State Sen. Kevin Parker erupts again with raced-based rant, and even allies are concerned" Daily News. New York. In December 2018, Senator Parker allegedly blocked a bike lane with a car using his official parking placard, but a different license plate. When questioned about the incident on Twitter, he replied, "Kill yourself!" See, Mills Rodrigo, Chris (January 18, 2018). "NY state senator tweets 'Kill yourself' at user who called him out over parking placard." The Hill. Retrieved January 18, 2018; see also, Fearnow, Benjamin, (18 December 2018). "'Kill Yourself!': New York State Senator Kevin Parker Apologized for Tweet Over Parking Spot." Newsweek. Retrieved 19 December 2018. "Parker responded with an irrational demand that she kill herself before he offered a weak Twitter apology using his verified account. But less than an hour after the apology, Parker continued his criticism of Giove." Incoming Senate President Andrea Stewart-Cousins expressed her "disappointment" at Parker's action. See, "Dem. State Senator Slammed For 'Kill Yourself!' Tweet To GOP Aide." WLNY-TV CBS. 18 December 2018. Retrieved 19 December 2018. In an April, 2019 closed-door meeting of Senate Democrats, an argument between Parker and Sen. Alessandra Biaggi (D) occurred, and Senator Parker reportedly "ripped off his tie and threw it down in a rage." See, Fink, Zack, "Nasty Fight Erupts Between State Senate Democrats During Closed Door Meeting." www.ny1.com (April 12, 2019).

4

not commonly subject them to careful scrutiny and analysis. <u>Clearly a reasonable reader, in this instance would believe that Senator Parker's statements were conveying facts about the Plaintiff</u> [this is evidenced by the vicious attacks and public outcry for social justice that continued], and would believe that the statements constituted reports of a proceeding, which they most certainly did not. He presented the narrative as being proven and true, thus facilitating and further disseminating a fallacious narrative and inciting unrest and protests directed toward the Plaintiff. Notably, in the challenged statements, the Defendant Senator Parker disingenuously offered that "*Although some are calling for a second chance for Ms. Cummings via culturally competent training and the like, as an African American Studies professor at the City University of New York for over 20 years now, I know there is no level of training that can make a person more sensitive to the struggles of another.*" He further stated that "*[T]hose feelings cannot be prepared in one's mind, but rather must be intrinsic to one's character. This is not the case for Ms. Cummings…..*"

Nonetheless, Senator Parker maintains the specious argument that the comments complained of are expressions of pure opinion on facts extensively reported by the media, and not assertions of fact, and thus are protected. This is problematic and misguided. There were no substantiated, let alone, accurate facts reported. While, Senator Parker may argue that he is not a "journalist" or "reporter*," per se*; he is a self-proclaimed <u>thought leader</u>, and <u>public leader, working to improve education</u> and an <u>activist</u>, with a following of constituents, who are guided by what he has to say, and blindly accept his statements as truth. No other investigation of the purported "facts" occurred, as evidenced by the fact that the reported accounts differed dramatically from the actual allegation that was made by just one student and ultimately unsubstantiated by OSI. What was being erroneously and fallaciously reported amounted to child abuse and/or endangerment, yet there was no indication of a concluded or substantiated investigation. Therefore, the Defendant cannot disingenuously cloak his otherwise actionable behavior as "opinion" while publically attacking the character of Plaintiff by describing her as incapable of being sympathetic and empathetic towards the struggles of another, while

simultaneously promoting a false fact pattern and expect to escape any liability. Plaintiff's quarrel is not with what she believes to be unfair assessments and remonstrations concerning her lesson. She has no doubts regarding her lesson, and her colleague, (an African-American teacher), who was present in the classroom, testified as to its appropriateness[2]. Contrary to the contentions, there was no "dubious" decision, nor was there even a "reenactment." As the Plaintiff has argued herein, there was never any reenactment, this part of her lesson, which was a teachable moment[3] was for "spatial recognition," meant for the students' clarification. In addition to being an elected official, Defendant is a professor and a thought-leader in the field of education, Senator Parker should be familiar with this teaching methodology and should have known better. The Amended Verified Complaint contains numerous factual allegations to demonstrate that Senator Parker's comments were made in a grossly irresponsible manner. In this regard, Senator Parker disingenuously argues a failure to demonstrate that he knew or should have known that the reporting was inaccurate. It has been held in the Courts that when readers [or listeners] understand a defamatory meaning, liability cannot be avoided simply because the publication is alleged to be cast in the form of an opinion, belief, insinuation, or even question. Thus, Defendant's arguments fail and his motion should be denied in all respects.

---

[2] Ralph Hudson is African-American teacher who witnessed the Plaintiff's lesson. He acknowledged to the Plaintiff after the lesson that he was impressed with how she handled the situation and subject matter with such grace and dignity. It is important to note that he told investigators from the Department of Education's Office of Special Investigations (OSI) that he found the lesson to be "*appropriate* and was within the scope of *effectively educating students* about the harsh conditions endured by slaves during transport." (Emphasis added). He did not corroborate the events that the student alleged to have happened. Furthermore, he indicated that it was his belief that if the Plaintiff were African-American, the incident would have been a non-issue. See, Plaintiff's Exhibit A at pages 7 and 8.

[3] A teachable moment is not something that you can plan for; rather, it is a fleeting opportunity that must be sensed and seized by the teacher. Often it will require a brief digression that temporary sidetracks the original lesson plan so that the teacher can explain a concept. See, Footnote number 41 of Plaintiff's Exhibit B, at page 7.

## STATEMENT OF FACTS

Defendant Parker is attributed to have made statements in an article is entitled "Parents storm City Hall in slavery incident protest," wherein he recites the purported "facts" of Plaintiff's January 9, 2018 history lesson. He presented the false narrative as being proven and true, thus facilitating and further inciting the protest and unrest directed toward the Plaintiff. Notably, in the challenged statement, the Defendant Senator Parker disingenuously offered inter alia, that "*Although some are calling for a second chance for Ms. Cummings via culturally competent training and the like, as an African American Studies professor at the City University of New York for over 20 years now, I know there is no level of training that can make a person more sensitive to the struggles of another.*" He further stated that "*[T]hose feelings cannot be prepared in one's mind, but rather must be intrinsic to one's character. This is not the case for Ms. Cummings…..*"

Defendant Parker disingenuously argues that Plaintiff lacks the ability to impose any liability, as the <u>personal viewpoints</u> expressed by him concerning the performance of her classroom educational responsibilities (1) is speech involving an essential matter of public concern and (2) is extinguished by the First Amendment. This argument fails on all counts.

Plaintiff was a probationary New York City Public School Teacher at The William W. Niles School - Middle School 118, Community School District 10, in Bronx County, New York. She seeks damages related *inter alia* to defamation, defamation *per se*, slander, slander *per se*, libel, libel *per se*, and false light against Defendant, Parker, and the "*badge of infamy,*" with which she has forever been branded.

Plaintiff's claims arose as a result of what was fallaciously reported concerning an alleged complaint made by **one (1)** parent of **one (1)** student regarding a lesson taught by Plaintiff in her social studies class on the Middle Passage, wherein she subsequently and unwillingly became the subject of a front page pictorial and story in the New York Daily News, falsely accusing her of being a "*racist*"

and "making black students lie face down on the floor of her class, and asking them: *'[H]ow does it feel to be a slave?'*" Thereafter, this fabricated and erroneous set of purported "facts" was picked up by the media worldwide and transmitted to various news outlets and appeared online and in media all over the world.

Plaintiff was featured in several prominent newspapers and televised news programs, as well as on YouTube, where it was erroneously and fallaciously reported, among other things that she "*singled out black students and made them act like slaves;*" she is falsely reported to have told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" She has been publically shamed and falsely accused of "*child abuse,*" labeled as a "*racist,*" referred to as an "*oppressor,*" by many, including politicians and activists, and specifically in various and extensive media outlets discussing this issue. She has received direct threats of violence and death causing her to fear for her life. Plaintiff was ultimately exonerated of the erroneous allegation that she "pushed Student A's back with her knee and asked if it hurt," (see, Plaintiff's Exhibit A), following an investigation by the New York City Department of Education's Office of Special Investigations, yet has nonetheless been terminated from her employment as New York City Public School Teacher at The William W. Niles School - Middle School 118.

Defendant Parker's arguments are comprised of offensive, imprudent and factually incorrect statements. What was falsely, disparagingly, and libelously described by Defendant Parker was, in actuality, an example of a multi-sensory teacher demonstrating "spatial recognition" to her students. Multi-sensory teaching is a didactic system that seeks to develop awareness of self in time and space in order to raise cognition and understanding of the world as is experienced. It takes into account that different children learn in different ways; conveys information through things like touch and movement-called tactile and kinesthetic elements, as well as sight and hearing. See, White, Helen and Christina Evans, Learning to Listen to Learn: Using Multi-Sensory Teaching for Effective Listening (2005).

This part of her lesson was described by Plaintiff as a "teachable moment," meant for the students to perceive the closeness of the conditions being discussed for clarification purposes; it was not, in any way, a reenactment. Defendant Charlamagne was describing as "fact," a false scenario, wherein it was erroneously stated that Plaintiff had *singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*." This fabricated account is contradicted not only by Ralph Hudson, the Plaintiff's colleague and adult witness to her lesson, but by the reported findings of the of the New York City Department of Education's Office of Special Investigations (also referred to as OSI); wherein Plaintiff was actually being investigated for a false accusation of "pushed Student A's back with her knee and asked if it hurt," which was ultimately unsubstantiated, to wit: "'*Student B' denied that Ms. Cummings used her feet or her knees to push the students closer together during the demonstration;*" "'*Student' I never observed Ms. Cummings' knee make contact with 'Student A'*'" "'*Student J' denied that Ms. Cummings made any physical contact with the students to make contact with them.*" <u>See,</u> Redacted Copy of Office of Special Investigations Investigative Report (OSI) dated July 24, 2018, included Plaintiff's **Exhibit A**. Moreover, "Students B, D, E, F, I, J and K" and Ralph Hudson noted that the participating student volunteers did not appear to be in any distress. <u>See,</u> Plaintiff's Exhibits A and B. Most remarkably, "Student J" admitted that "'*Student A'[4] was lying and was attempting to get Ms. Cummings fired or in trouble because 'Student A' did not like Ms. Cummings.*" <u>See,</u> Plaintiff's Exhibit A, at page 5. Moreover, Plaintiff controverts this fallacious allegation in her rebuttal correspondence addressed to Community Superintendent Maribel Torres-Hulla dated October 5, 2018, annexed hereto as **Exhibit B**, at page 8.

---

[4] "Student A" was one of four students who voluntarily participated in the classroom demonstration on the Middle Passage. It was erroneously alleged that Ms. Cummings pushed "Student A's" back with her knee and asked if it hurt or caused her discomfort.

"Student A" is alleged to have complained on or about January 11, 2018, and as noted in the OSI Report, "Student A's" mother is noted to have complained 6 days later (9 days after the lesson). Further, it is evident that a complaint was not immediately filed according to the OSI Report. See, Plaintiff's Exhibit A. Furthermore, Plaintiff was not removed for investigation by the New York City Department of Education's Office of Special Investigations until February 2, 2018. Principal Cox did an independent investigation, and by doing so, failed to adhere to NYCDOE policies in particular, Chancellor Regulation A-420 and breached Article 20 of the Contract existing between the New York City Department of Education (NYCDOE) and the United Federation of Teachers (UFT). A copy of the Plaintiff's Amended Verified Complaint dated May 27, 2020, annexed hereto as **Exhibit C**.

The segment broadcast by Defendant Parker asserted as fact, grossly false information, which was completely different from the allegation that was actually being investigated by OSI. The actual allegation involved a false report that the Plaintiff "pushed Student A's back with her knee and asked if it hurt," during her lesson; that the allegation was **NEVER** that she *singled out black students and made them act like slaves;"* told them to *"lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like,"* as falsely and repeatedly reported. See, Plaintiff's Exhibit A at pages 24-25. Notably, the Office of Special Investigations Investigative Report (OSI Report) dated July 24, 2018, indicates that *"[T]he written statements made by 'Students B, C, D, E, H, I, J, Q, R, S, T, U, and V' fail to corroborate that Ms. Cummings pressed her knee into 'Student A's' back or any students' back".* See, Plaintiff's Exhibit A. "Therefore, notably, the allegation that Ms. Cummings used corporal punishment against "Student A" by pushing her knee into her ["Student A's"] back during a classroom demonstration was never corroborated and is **unsubstantiated**." See, Plaintiff's Exhibit A. Nonetheless, the pertinent fact, with respect to this Defendant is that he described as "fact," a blatantly **false** scenario, wherein it was erroneously based upon the narrative that Plaintiff had *singled out black students and made them act like slaves;"* told them to *"lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like."* **THIS NEVER**

**HAPPENED, NOR WAS THE PLAINTIFF EVER BEING INVESTIAGTED FOR THIS ACTON AND/OR BEHAVIOR.**

## ARGUMENT

### POINT I

**THE AMENDED COMPLAINT HAS SUSTANTIATED ALLEGATIONS SUFFICIENT TO JUSTIFY A DEFAMATION CLAIM AGAINST SENATOR PARKER**

Senator Parker opens his argument by stating that if the Court has no jurisdiction over the Plaintiff's Federal claims, it may decline to assert jurisdiction over Plaintiff's state law claims, as well. Nonetheless, the discretion implicit in the word "may" in 28 U.S.C.S. § 1367(c) permits the District Court to weigh and balance several factors, including considerations of judicial economy, convenience, and fairness to litigants. Once a court identifies one of the factual predicates which corresponds to one of 28 U.S.C.S. § 1367(c) categories, the exercise of discretion is informed by whether remanding the pendent State claims comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity. In addition, the catchall created by 28 U.S.C.S. § 1367(c)(4) shall be employed when circumstances are quite unusual. This requires a District Court to articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the 28 U.S.C.S. § 1367(c) values provide compelling reasons for declining jurisdiction in such circumstances.

28 U.S.C.S. § 1367(c) plainly allows the District Court to reject jurisdiction over supplemental claims only in the four instances described therein. The breadth of discretion afforded Federal Courts in supplemental jurisdiction cases is codified by § 1367(c). While supplemental jurisdiction must be exercised in the absence of any of the four factors of § 1367(c), when one or more of these factors is present, additional considerations may, by their presence or absence, influence the court in its decision concerning the exercise of such discretion.

11

Nonetheless, Plaintiff has set forth a plausible claim. Thus, to survive a motion to dismiss under Fed. R. Civ. P. 12(b) (6), a complaint (or Amended Verified Complaint, in this case), must plead enough facts to state a claim to relief that is plausible on its face. In reviewing the Amended Verified Complaint, the Court must accepts all well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. However, as in this case, where Plaintiff's Amended Verified Compliant has nudged her claims across the line from conceivable to plausible, her Amended Verified Complaint cannot be dismissed.

When ruling on the motion to dismiss pursuant to Rule 12(b) (6), the Court must "construe the complaint liberally, excepting all factual allegations in the complaint as true, and drawing all reasonable inference is in the plaintiff's favor." See, *Palin v. New York Times Co.*, 940 F.3d 804, 2019 U.S. App. LEXIS 30640, 2019 WL 5152444 (quotations and alteration omitted); see also, *Walker v. Schult*, 717 F.3d 119,124 (2d Cir. 2013); see also, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010); *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 2018 U.S. Dist. LEXIS 210479, 2018 WL 6575487 ("When reviewing a complaint on a motion to dismiss for failure to state a claim, the court must except as true all allegations of fact in the complaint and draw all reasonable inference is in favor of Plaintiff's"). Once the facts are construed in the light most favorable to the plaintiff, to avoid dismissal, there must be sufficient facts that allege a possible claim. See, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("to survive a motion to dismiss [pursuant to Rule 12(b) (6)], A complaint must contain sufficient factual matter, excepted as true, to state a claim to relieve that is plausible on its face." (quotations omitted). To survive a motion to dismiss, a Plaintiff's facts must give rise to a plausible narrative supporting his claim. See, *Ashcroft v. Iqbal, 556 US 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868, 2009 US LEXIS 3472, 77 U .S .L.W. 4387, 2009-2 Trade Cas. (CCH) P76, 785, 73 Fed. R. Serv. 3d (Callaghan) 837, 21 Fla. L. Weekly Fed. S 853*. Accordingly, "a Plaintiff is required to support its

claim with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." Id. Moreover, the Supreme Court's decisions in *Twombly*, supra, and *Iqbal*, supra, have well established that a "civil action is commenced by filing a complaint" (FED. R. CIV. P. 3; see also, *Walker v. Armco Steel Corp.*, 446 U.S. 740, 751(1980), and, until recently, Federal Courts would routinely permit claims to proceed beyond the pleading stage "unless it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See, *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); see also, *Mattice v. Mem'l Hosp. of S. Bend, Ind.*, 249 F.3d 682, 686 (7th Cir. 2001).

"The purpose of a motion to dismiss for failure to state a claim under Rule 12(b) (6) is to test the legal sufficiency of a plaintiff's claim for relief." See, *Amadei v. Nielsen*, 348 F. Supp.3d 145,155 (EDNY 2018) (citing, *Patane v. Clark*, 508F.3d 106, 112 (2d Cir. 2007)). For a 12(b) (6) motion, the court must "construe the complaint liberally, excepting all factual allegations in the complaint as true, and drawing all reasonable inference is in the plaintiff's favor." See, *Palin v. N.Y. Times Co.*, 933 F.3d 160, 2019 U.S. App. LEXIS 23439, 104 Fed. R. Serv. 3d (Callaghan) 723) (quotations and alteration omitted); see, also, *Amadei*, 348 F. Supp. 3d, supra, at 155("[W]hen reviewing a complaint on a motion to dismiss for failure to state a claim, the court must accept all true allegations of fact in the complaint and draw all reasonable inference is in favor of plaintiffs."). A complaint's "factual allegations must be enough to raise a right of relief to above the speculative level... On the assumption that all the allegations in the complaint are true (even if doubtful in fact") (quoting, *Bell Atl. Corp. v. Twombly*, 550 U.S.544, at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929, 2007 U.S .LEXIS 5901, 75 U.S .L.W. 4337, 2007-1 Trade Cas. (CCH) P75, 709, 68 Fed. R. Serv. 3d (Callaghan) 661, 20 Fla. L. Weekly Fed. S 267, 41 Comm. Reg. (P & F) 567. Once the facts are construed in the light most favorable to the plaintiff, on order to avoid dismissal, there must be sufficient facts that allege a plausible claim. See, *Ashcroft v. Iqbal*, 556 U.S. 662, 678(2009) ("to survive a motion to dismiss [pursuant to Rule 12 (b) (6)], a complaint must contain sufficient factual matter, excepted as true, to state a claim to relieve that

is plausible on its face." (Quotations omitted)). Moreover, to survive a motion to dismiss, a plaintiff's facts must give rise to a plausible narrative supporting his/her claim. See, *Twombly*, supra, 550 U.S. at 570 (Here, in contrast, we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relieve that is plausible on its face.") While this "plausibility standard is not akin to a 'probability requirement' at the pleading stage, the standard calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the claim." Id. (quoting, *Twombly*, supra, 550 U.S. at 556).

The law of defamation serves to protect an individual's right to one's reputation. See, *Gertz v. Welch*, 418 U.S. 313-45 (1974). It has long been recognized that "a person has a legal right to enjoy his reputation free from false or derogatory characterization by others." Id. Therefore, a statement that casts an individual unfavorably in society will constitute an infringement upon that person's reputational right and give rise to a cause of action for civil defamation, as it has done here. The legal question to be resolved by this Court is whether a reasonable basis exists for defamatory interpretation of the words and statements spoken by Defendant. If the words are "not reasonably susceptible of a defamatory meaning, they are not actionable, and cannot be made so by a strained and artificial construction." See, *Golub v. Enquirer/Star Group*, 89 N.Y.2d 1074, at 1076, 681 N.E.2d 1282, 659 N.Y.S.2d 836, 1997 N.Y. LEXIS 761, 25 Media L. Rep. 1863; *Aronson v. Wiersma*, 65 N.Y.2d 592, at 593-594, 483 N.E.2d 1138, 493 N.Y.S.2d 1006, 1985 N.Y. LEXIS 15929, 12 Media L. Rep. 1150). Thus, the Court must determine "whether the contested statements are reasonably susceptible of a defamatory connotation,….[and] [i]f, upon **any** reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to sufficiently state a cause of action." See, *David v. Boeheim*, 24 NY3d 262, 268 [2014] [citations omitted]; See, *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, at 380, 649 N.E.2d 825, 625 N.Y.S.2d 477, 1995 N.Y. LEXIS 699; *Silsdorf v. Levine*, 59 NY2d 8, 12 [1983], cert denied, 464 US 831; *Mencher v. Chelsey*, 297NY 94, 100 [1947]; [court may **not** determine sole meaning of words, only whether reasonable basis exists for defamatory

14

interpretation]) (Emphasis added). It is then for a jury to determine "whether that was the sense in which the words were likely to be understood by the ordinary and average reader." See, *James v. Gannett Co.*, 40 N.Y.2d 415, at 418, 353 N.E.2d 834, 386 N.Y.S.2d 871, 1976 N.Y. LEXIS 2900, quoting, *Mencher v. Chesley*, supra, 297 N.Y. 94, at 100, 75 N.E.2d 257, 1947 N.Y. LEXIS 904.

The law of defamation serves to protect an individual's right to one's reputation. See, *Gertz v. Welch*, 418 U.S. 313-45 (1974). It has been long recognized that "a person has a legal right to enjoy his reputation free from false or derogatory characterization by others." Id. "The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." See, *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring) Justice Stewart's observation indicates the right to petition the government for a redress of grievances and the individual's right to the protection of his reputation from defamatory false hoods are fundamental liberties. A statement that casts an individual unfavorably in society will constitute an infringement upon that person's reputational right and fundamental liberty, thus giving rise to a cause of action for civil defamation, as it has done here.

Plaintiff is a private figure that was defamed publicly and as such has irrevocably impugned her reputation. Given the weight attributed by society to the word of a public official, Plaintiff is unable to effectively come back such defamatory assertions of fact and characterizations. Thus she had been branded with a "badge of infamy" that will forever stay with the community, the community's thoughts and impressions about her. Once the public official branded the Plaintiff with a "badge of infamy,' society's impression about her is forever changed and they will never revert back. Given the weight attributed by society to the word of public officials, and a high degree of trust society places in their offices, a Plaintiff will be unable to effectively combat the effects of defamatory characterization unless within the Federal Court. "A public forum and the award of damages after the fact cannot undo either the deep and unforgettable harm suffered by an innocent victim, or removed the impression etched

upon the minds of those around him." See, *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); see also, *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951). The Supreme Court held that defamatory attacks… upon a citizen's reputation may constitute a deprivation of "liberty." See, *Wieman v. Updegraff*, 344 U.S. 183 Moreover, the Court has viewed liberty as encompassing the right to contract and to engage in a particular livelihood. This constitutional interest in reputation was conceived during the days of the "Red Scare" following World War II and it was originally adopted to limit the ability to label someone as a "communist." See, *Wenz v. Becker*, 948 F Supp. 319, 323 [SDNY].

A key word in this case is "context," which is defined in Merriam Webster's dictionary as "*the part of a discourse that surround a word or passage and can throw light on its meeting.*" Simply put, it's the circumstances that form the background of an event, idea, or statement in such a way as to enable readers to understand the narrative, i.e. what is being told. See, **Exhibit D**. The circumstances that formed the background in Defendant's narrative is the assertion of facts by the New York Daily News about and concerning Plaintiff in their "exclusive" story published on February 1, 2018. The article stated and asserts as fact that Plaintiff "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" An assertion of this magnitude, in the racially divided social climate we see today, it is no surprise that this was reported by Defendant Parker. Nonetheless, Defendant Parker's erroneous theory of liability is incorrect. While Defendant would argue that an assertion that cannot be proved false cannot be held libelous, (see, *Gertz v. Robert Welch, Inc.*, supra, 418 US at 339–40, 94S. CT. 2997; *Buckley v. Littell*, 539 F.2d 882, at 883, 1976 U.S. App. LEXIS 8226, 1 Media L. Rep. 1762), Defendant's assertions (statements) herein **can** be proven false.

Under both Federal and New York Constitutions, only statements that are demonstratively false are actionable, especially in regards to a matter of public concern. "Because falsity is a necessary element in a defamation claim involving statements of public concern, it follows that only statements

16

alleging fact can properly be the subject of a defamation action." See, *600 W. 15th St. Corp. v. VonGutfeld*, 80 NY2d 130,139 (1992). There is no First Amendment privilege; Defendant Parker attempts now to disguise his defamation. By making the claimed statements, Defendant Parker is stating **and asserting as a fact** that Plaintiff *laid students on the floor on their stomachs and stepped on their backs*, thus constituting a criminal act under New York State Penal Law. What Defendant discussed never happened, nor was Plaintiff ever charged with any crime, which he could have easily been verified. Moreover it could easily be interpreted as stating facts about Plaintiff, a private person, with reasonable intelligence. His statement is not only demonstratively false, making it actionable, it is also "reasonably susceptible of a defamatory meaning when it tends to expose a person" to those things, e.g., "hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number in the community." See, *Restis v. Am. Coalition Against Nuclear Iran, Inc*., 53 F. Supp. 3d 705, 2014 U.S. Dist. LEXIS 139402 (quotations and alterations omitted).

In a defamation action, in particular slander, a plaintiff must identify "a plausible defamatory meaning of the challenged statement or publication. If the statement is susceptible of only one meaning, the court "must determine, as a matter of law, whether that one meaning is defamatory." See, *Celle v. Filipino Reporter Enters*., 209 F.3d 163, 2000 U.S. App. LEXIS 6785, quoting, *Davis v. Ross*, 754 F.2d 80, 1985 U.S. App. LEXIS 28944at 82; see also, *Aronson*, supra, 483 N.E.2d at 1139. Plaintiff provided the meaning for the Court within the charts listed in the Amended Verified Complaint, and "[T]he inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an ordinary reader [listener] of the statement." See, *Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 224, (2d. Cir. 1985) U.S. App. LEXIS 30321, 11 Media L. Rep. 1713 [alteration added]. Defendant, in an attempt to cloak his actionable defamatory behavior and attempts to camouflage his libelous words as protected speech, even though such words, most certainly, do have specific meanings, and when in context of his reporting, they are personal in their invective and designed to expose Plaintiff, a highly educated white teacher, teaching in a

17

predominantly minority populated school, to public contempt and ridicule and impugn her character and professional integrity and have her terminated and her license revoked.

"Generally, it has been held that a dismissal of a claim will be upheld, only if it appears that the plaintiff can prove no set of facts upon which relief may be granted." See, *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir. 1994). Such is not the case herein. Defendant Parker disingenuously argues that multiple statements alleged to be actionable in the Amended Verified Complaint are non-defamatory on their face. A statement is defamatory "if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of [him] in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." See, *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F.Supp.2d 279, 287 (SDNY 2006). Clearly, Plaintiff's has demonstrated the defamatory nature of Defendant's statements. These statements undoubtedly exposed the Plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of her in the minds of right-thinking persons, and to deprive her of her friendly intercourse in society. This is evident in the demonstrations of hate, ridicule, harassment, and threats of violence which followed, as well as her termination from her position as a NYC teacher. The Amended Verified Complaint alleges in detail precisely how Defendant directly defamed Plaintiff. Defendant has failed to offer any specific argument, instead he is simply assuming that this Court will accept at face value, his assertion that the defamatory slander was merely his opinion.

The privilege protecting the expression of an opinion is rooted in the preference that ideas be fully aired. See, *Davis v. Boeheim*, 24 NY3d 262 at 269 (2014), citing, *Steinhilber v. Alphonse*, 68 NY2d 283 at 289 (1986), and *Gertz v. Robert Welch, Inc.*, supra, 418 US 323, 339-340 (1974). Nonetheless, privileged statements of opinion are either accompanied by the **facts** on which they are based, or do not imply that they are based on undisclosed facts. See, *Gross v. New York Times Co.*, 82 NY2d 146 at 53-154 (1993). "When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable 'mixed opinion.'" See, *Egiazaryan v.*

*Zalmayev*, 880 F Supp 2d 494, 503 [SD NY 2012], quoting, *Steinhilber*, supra, 68 NY2d at 289, "because a reasonable listener or reader would infer that 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" See, *Gross*, supra, 82 NY2d at 153-154, quoting, *Steinhilber*, 68 NY2d at 290, and "if the predicate facts are disclosed, but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity," the statement may be actionable as a "defamatory opinion" See, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, F Supp 3d , 2016 WL 3773394, [SD NY 2016], citing *Silsdorf v. Levine*, 59 NY2d 8, 15-16 [1983], cert denied 464 US 831; see also, *Parks v. Steinbrenner*, 131 AD2d 60, 62-63 [1st Dept. 1987].

An asserted fact may be distinguished from a nonactionable opinion if the statement: (1) has a precise, readily understood meaning, that is (2) capable of being proven true or false, and (3) where the full context in which it is asserted or its broader social context and surrounding circumstances indicate to readers or listeners that it is likely fact, not opinion. See, *Davis*, supra, 24 NY3d at 271, citing, *Mann v. Abel*, 10 NY3d 271 at 276 (2008), and *Brian v Richardson*, 87 NY2d 46, 51 [1995]; *Gross*, supra, 82 NY2d at 153; *Steinhilber*, supra, 68 NY2d at 292. "Where readers/listeners would understand a defamatory meaning, liability cannot be avoided merely because the publication is alleged to be cast in the form of an opinion, belief, insinuation or even question. A statement about one's attitude is defamatory if it tends to lower him in the esteem of the community." See, *Christopher v. American News Co.*, 171 F.2d 275 (7th Cir. 1948).

"[T]he following factors should be considered in distinguishing fact from opinion: (1) whether the language used has a precise meaning or whether it is indefinite or ambiguous, (2) whether the statement is capable of objectively being true or false, and (3) the full context of the entire communication or the broader social context surrounding the communication. Moreover, the Court of Appeals makes a distinction between a statement of opinion that implies a factual basis that is not

disclosed to the reader and an opinion that is accompanied by a recitation of facts on which it is based. The former is actionable, the latter is not." <u>See</u>, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Though words such as "alleged" or "accused of" were present in the article; Defendant Parker lead his readers and his constituents to believe the recitation of the facts presented to be accurate.

Defendant Parker argues that his statements are opinion, but they're not. They are admittedly a *reaction*. A reaction is an action or statement in response to a stimulus; the way someone responds to a situation at the time that it is taking place. Contrarily, an opinion is a belief that a person has formed about a topic or issue; someone's state of mind towards something, as in if they like or don't like it or if they agree or disagree about it.

It bears mentioning that Under New York law, some statements are considered defamation (slander) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity. <u>See</u>, *Doe v. Doe*, No. 16 Civ. 0332 (NSR), 2017 WL 3025885, (SDNY July 14, 2017) (a statement is *per se* defamatory when it tends to injure another in his or her trade, business, or profession) (<u>citing</u> *Liberman v. Gelstein*, 80 NY2d 429, 435 (1992)). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, the facts as presented by Defendant Parker infers Plaintiff committed a serious crime; alluding to the NY Daily News' scandalous and fallacious "exclusive" about Plaintiff, to wit: walking on the backs of students is akin to child abuse and endangerment and the false labeling of the Plaintiff as a racist who committed such an atrocity has irreparably injured the Plaintiff in her profession as a school teacher and otherwise. **Most notably, Plaintiff was <u>never</u> accused or investigated on an allegation of a racist act by the City Department of Education**. She was investigated on an allegation of corporal punishment that did not involve any of the facts presented by the media, in particular, the New York Daily News.

Contrary to the defendant in *Silverman v. Daily News, LP*, 129 AD3d 1054 (2nd Dept. 2015), Defendant Parker commented on an erroneous and fallacious fact. There were no allegations from parents, students, or staff that the Plaintiff ever "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" Likewise, Plaintiff contests that she ever admitted to "having misbehaving students sit in the front of the room to demonstrate the conditions on slave ships, or that a parent reported that she 'pushed her knee' into *students'* (plural) backs and asked if students (plural) felt pain." See, Plaintiff's Exhibit B, at paragraph 53. How can Defendant argue that there was <u>nothing</u> in the statements, which disparage the Plaintiff's professional skills or competence or attributes wrongdoing to her? The entirety of Defendant Parker's comments was a <u>criticism of Plaintiff's skills, competence, and professional integrity</u>, along with falsely accusing her of the equivalent of child abuse and/or child endangerment.

Further, there has been serious concern that, by sidestepping the safeguards which restrain the reach of traditional public defamation litigation, a "false light" approach could compromise the Constitutional guarantee of Freedom of the Press. See, Prosser, Torts [4th ed], p 813; <u>Restatement, Torts 2d</u>, § 652E, Comment d, particularly p 399; Wade, <u>Defamation and the Right of Privacy</u>, 15 Vand L Rev 1093, 1121). Responsively, the Restatement, which in 1933 suggested that to impose liability under the false light rubric a publication need but be "offensive to persons of ordinary sensibilities" (<u>see</u>, Restatement, Torts, § 867, Comment d), by 1976 had raised the threshold to a "highly" offensive level (<u>see</u>, Restatement, Torts 2d, § 652E, Comment c). Even assuming, that such an action is not cognizable in this State, by all means, this case measures up to this kind of criterion.

While New York does not have a common law tort protecting privacy against publicity that unreasonably places a person in a "false light," (<u>see</u>, *Howell v. New York Post*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 354, 612 N.E.2d 699 (N.Y. 1993), New York Courts construe the language of N.Y. Civ. Rights Law § 51 broadly enough to encompass false light claims. Claims under N.Y. Civ. Rights Law

21

§ 51 based on a fictitious or falsified report, which would otherwise be privileged, are actionable, with proof of knowledge of falsity or reckless disregard of the truth. Where falsity is the gravamen of a §51 claim, U.S. Const. Amend. guarantees permit imposition of liability where actual malice is shown. In examining the false light tort, it is notable to consider section 652E of the Restatement (2d) of Torts that provides:

> "One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>
> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>
> (a) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."

Hence, if a false light claim under the Restatement rubric is recognized in New York, Plaintiff has more than stated a claim under it.

In *Cantrell v. Forest City Publishing Co.*, 419 U.S. 245, 248, 42 L. Ed. 2d 419, 95 S. Ct. 465 (1974), the Court addressed a false light claim in which it was conceded that an offending newspaper article contained a number of false statements and inaccuracies. It stated that the subject article contained "'calculated falsehoods,' and the jury was plainly justified in finding that [a news reporter] had portrayed the Cantrells in a false light through **knowing or reckless untruth**." Id. at 253 (emphasis added). *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974), raised without deciding, whether in subsequent cases an actual malice or a negligence standard should be applied in a false light action commenced by a private individual against a media defendant. As in *Cantrell*, supra, the jury here found that the more stringent actual malice standard had been satisfied. As demonstrated herein, there is evidence on which a reasonable jury could find that the broadcast contained knowingly false and reckless statements, portraying the Plaintiff in a false light.

22

Notably, the cases cited by Defendant in support of his argument are distinguishable from the instant matter. In *Matthews v. Malkus*, 377 F. Supp. 2d 350, 2005 U.S. Dist. LEXIS 14401, the plaintiff filed suit against defendants, a nurse and a medical center, claiming medical malpractice and/or professional negligence and/or professional recklessness; negligent misrepresentation; defamation/slander; false imprisonment; false light; invasion of privacy/trespass; violations to civil rights and to constitutional guarantees; and intentional and/or negligent infliction of emotional distress. Defendants moved for *summary judgment*. Plaintiff called the nurse, who was working at a crisis hotline, and said something about killing herself or wanting to die. The nurse believed plaintiff was expressing "suicidal ideations," so she phoned authorities in Florida (where plaintiff lived) to alert them to a potentially suicidal person. The local police in Florida arrived and took plaintiff to a hospital. There were no genuine issues of material fact, as all material facts were undisputed. The only dispute was whether the nurse did anything that subjected her or the medical center, her employer, to liability on any theory. The answer was no. All of the allegations in the complaint stemmed from the nurse's decision to call Florida authorities after plaintiff said something about wanting to die or kill herself. Unlike in this matter, nothing the nurse did in *Matthews*, <u>supra</u>, was wrongful, and plaintiff provided no evidence to support her conclusory allegations that the nurse acted negligently or improperly, that she made any false statements, that she invaded plaintiff's privacy or caused her to be falsely imprisoned, that she did anything to violate her civil or constitutional rights, or that she intentionally or negligently caused her any emotional distress.

Regardless of the particular fault standard to be applied, it is clear that when commenting on a newsworthy matter of public interest, a defendant may be held liable for the tort of false light invasion of a person's privacy with proof of falsity and some level of fault. Cf. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 54 U.S.L.W. 4373, 89 L. Ed. 2d 783, 106 S. Ct. 1558 (1986). Accordingly, Plaintiff's false light claim should be considered by this Court under these extreme circumstances.

Moreover, Defendant Parker argues regarding his involvement in what he describes as "personal controversies." Under Fed. R. Evid. 404(b), wrongful acts evidence may not be admitted at trial merely to show the defendant's propensity to commit the act in question. However, such evidence may be admitted for any other relevant purpose under the "inclusionary" approach. A trial court has broad discretion in decisions relating to extrinsic acts. Such decisions will only be reversed for abuse of discretion. Nonetheless, this argument has no place in a motion to dismiss.

**POINT II**

**SENATOR PARKER'S ALLEGED STATEMENT WAS NOT
CONSTITUTIONALLY PROTECTED**

Senator Parker mistakenly relies upon *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), where the landscape of libel law dramatically changed involving a case where two paragraphs in an advertisement contained factual errors. For the first time, the Supreme Court ruled that "libel can claim no talismanic immunity from constitutional limitations," but must "be measured by standards that satisfy the First Amendment." The high court established a rule for defamation cases that dominates modern-day American libel law. The Court wrote:

> "The constitutional guarantees require, we think, a federal rule that prohibits a *public* official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (Emphasis added).

The Court required a public official defamation plaintiff to show evidence of actual malice or reckless disregard for the truth by "convincing clarity" or clear and convincing evidence. Notably, as an individual, probationary middle school teacher, with no involvement in administration or policy, the Plaintiff is not a public official. Her having been unwillingly drawn into fabricated public controversy in 2018, is not sufficient to characterize her as a "public figure." In this regard, the Defendant's reliance on *Gertz v. Robert Welch, Inc.*, 418 US 323, 339-40 (1974), for this premise is misguided. "Hypothetically, it may be possible for someone to become a public figure through no

24

purposeful action of his own, but the instances of truly involuntary public figures must be exceedingly rare." Id. "For the most part those who attain this status have assumed roles of special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment." See, *Gertz*, supra. This is **not** the case herein. In this context it is plainly obvious that the Plaintiff was not a public figure. She plainly did **not** thrust herself into the vortex of this public issue, nor did she engage the public's attention in an attempt to influence its outcome. Id. Nonetheless, even if, assuming *arguendo*, the Plaintiff was considered a public figure, she has no problem demonstrating that the blatantly false statement was made with actual malice - knowledge that it was false or with reckless disregard of whether it was false or not. Even after seeing the OSI conclusion, the Defendant never once retracted the false account that she *"singled out black students and made them act like slaves;"* told them to *"lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like"* or his demand that she be removed as a teacher from the New York City Department of Education and revocation of her New York State teaching license and credentials.

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 471 F.2d 801 (1974) does present the Court's clarification of the limits of the "actual malice" standard and the difference between public and private figures in defamation cases. The court had to determine what standard to apply for private persons and so-called limited purpose public figures. Then, the Court had to determine whether *Gertz* was a private person or some sort of public figure. In *Gertz*, supra, the news-media defendant argued that the *Times v. Sullivan* standard should apply to any defamation plaintiff as long as the published statements related to a matter of public importance. The high court disagreed, finding a distinction between public figures and private persons. The Court noted two differences: (1) public officials and public figures have greater access to the media in order to counter defamatory statements; and (2) public officials and

25

public figures, to a certain extent, seek out public acclaim and assume the risk of greater public scrutiny. For these reasons, the *Gertz* Court set up a different standard for private persons:

> "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual."

This standard means that <u>a private person does not have to show that a defendant acted with actual malice in order to prevail in a defamation suit</u>. The private plaintiff usually must show simply that the defendant was negligent, or at fault. However, the Supreme Court also ruled that private defamation plaintiffs could not recover punitive damages unless they showed evidence of actual malice.

A defamation plaintiff must usually establish the following elements to recover: (1) Identification: The plaintiff must show that the publication was "of and concerning" himself or herself; (2) Publication: The plaintiff must show that the defamatory statements were disseminated to a third party; (3) Defamatory meaning: The plaintiff must establish that the statements in question were defamatory. For example, the language must do more than simply annoy a person or hurt a person's feelings; (4) Falsity: The statements must be false; truth is a defense to a defamation claim. Generally, the plaintiff bears the burden of proof of establishing falsity; (5) Statements of fact: The statements in question must be objectively verifiable as <u>false</u> statements of fact. In other words, the statements must be provable as false; and (6) Damages: The false and defamatory statements must cause actual injury or special damages. Clearly, the Plaintiff has successfully demonstrated each of the elements. Further, in *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002), the Court discussed the high burden of proof necessary on a motion to dismiss under Fed. R. Civ. P. 12 (c) and held:

> "A complaint will only be dismissed under Rule 12(c) if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." <u>See</u>, *Patel*, <u>supra</u>. (internal quotations omitted).

Further, the Court has referenced Fed. R. Civ. P. 8 (a) (2) to illustrate the liberal system of pleading in a federal action. See, *Conley v. Gibson*, 355 U.S. 41 (1957). "A District Court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." See, *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); see also, *Smith v. City of New York*, No. 13-CV-2395, 2014 U.S. Dist. LEXIS 139267, 2014 WL 4904557, (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court must confine its consideration to the pleadings and their attachments, to documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken") (internal quotation marks omitted).Thus, Senator Parker's motion has not met this Circuit's test on motions of this type, and should; therefore, be denied in all respects.

Further, Senator Parker argues that his alleged statements were expressions of opinion and not actionable as defamation. We must remain mindful of the rule that the defamatory effect of the statements are to be ascertained from that of a person of reasonable intelligence who takes ordinary interest in the statements made by an elected official, and does not commonly subject them to careful scrutiny and analysis. In applying New York law, words that are challenged as defamatory "must be construed in the context of the entire statement or publication as a whole," tested against the understanding of the average person. See, *Aronson v. Wiersma*, 65 NY2d 592, (1985) at 594; see also, *Armstrong v. Simon & Schuster*, 85 NY2d 373 (1995) at 380; *James v. Gannett Co.*, 40 NY2d 415 (1976) at 419-420; *Ava v. NYP Holdings, Inc.*, 64 AD3d 407 (2009) at 413. All relevant factors may be considered in determining whether a word or statement is defamatory. See, *Farber v. Jefferys*, 33 Misc 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011], affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858, citing, *Steinhilber v. Alphonse*, 68 NY2d 283, 291-292 [1986], and courts have considerable discretion in deciding whether a statement is defamatory, guided only by "the words themselves and their purpose, the circumstances surrounding their use, and the manner, tone

and style with which they are used . . . ." <u>See</u>, *Steinhilber*, <u>supra</u>, 68 NY2d at 291-292. While notably, the New York Court of Appeals has repeatedly held that the New York Constitution provides greater protection than the United States Constitution and, accordingly that the inquiry under the two constitutional regimes is different, (<u>see</u>, *600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d at 136 & 138, 589 N.Y.S.2d at 827 & 829, 603 N.E.2d at 932 & 934 (1992); *Immuno AG v. J. Moor-Jankowski*, 77 N.Y.2d at 248-49, 566 N.Y.S.2d at 913-14, 567 N.E.2d at 1277-78 (1991)), the thrust of the dispositive inquiry under both New York and constitutional law is "whether a reasonable [person]" could have concluded that there was a conveyance of facts about the plaintiff." <u>See</u>, *Gross v. New York Times Co.*, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (1993); *600 West 115th Street*, <u>supra</u>, at 829, 603 N.E.2d at 934 (Under <u>either</u> Federal or State law, the dispositive question is whether a reasonable person….could have concluded that [defendant] was conveying facts about the plaintiff). Clearly a reasonable viewer in this instance would believe that the statements were conveying facts about the Plaintiff [this is evidenced by the vicious attacks and public outcry for social justice that continued followed by the Plaintiff's removal from her position as a New York City teacher], and would believe that the statements constituted reports of a proceeding, which they did not. There never was a reporting of any truth, to wit: there was NEVER any proceedings investigating the Plaintiff for "*singling out black students and making them act like slaves;*" or telling them to "*lie on the floor for a lesson on slavery and then stepping on their backs to show them what slavery felt like.*" **THIS ERRONEOUS ACCUSATION WAS NEVER THE SUBJECT OF ANY INQUIRY BY THE DEPARTMENT OF EDUCATION OR OTHERWISE.** It was entirely **INACCURATE**. <u>See</u>, *Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York*, 101 AD2d 175, 182. This was never something investigated by OSI. It was completely ignored that the Plaintiff was <u>never</u> being accused or investigated of "racist acts." She was investigated by the DOE for an allegation of corporal punishment. The Defendant evidently preferred his constituents to believe the false narrative of a "slavery controversy" that they themselves promoted.

**The Defendant DID NOT Fairly and Accurately Comment on the Actual Proceedings**

The Plaintiff <u>does</u> allege that the Defendant's statements present inaccurate summaries of the allegations against her. The Defendant attempts to distract this Court with an analysis of truth or falsity of the underlying allegations; however, he concedes that the ultimate question is whether his statements truly and fairly report the allegations, and it this case, they clearly did not. The glaring distinctions in the allegations are clear and disqualify this report from any protections. It is important to also note that the student that was interviewed by the Defendant, Ben Chapman, and who allegedly reported that the Plaintiff "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" was **absent** on the day of the lesson in question and could not have possibly witnessed the lesson. Absolutely no fact checking was done in presenting these erroneous facts to the public. The Defendant disingenuously argues that he merely commented what had been previously published by the Defendant *New York Daily News* and Ben Chapman and others.

The Plaintiff has plead and proven that Senator Parker's comments addressing the Plaintiff were made with "gross irresponsibility." The Amended Verified Complaint sufficiently alleges that Senator Parker "knowingly" and intentionally **made false statements**. On a motion to dismiss, the Court accepts this assertion as true, considering the additional facts pleaded by the Plaintiff and the glaring fact that the accusation was not even plausible. <u>See</u>, *Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10, 18, 486 N.Y.S.2d 11 (2d Dep't 1985) (plaintiff satisfied the "minimum requirements for stating a cause of action" by alleging that "defendant acted negligently, maliciously and with a reckless disregard for the truth"), aff'd, 67 N.Y.2d 778, 492 N.E.2d 125, 501 N.Y.S.2d 17 (1986). Intentional lies not only satisfy, but surpass, the culpability of "gross irresponsibility," which signifies "something more than . . . negligence." <u>See</u>, *Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 875 (N.D.N.Y. 1994), aff'd, 112 F.3d 504 (2d Cir. 1996); <u>see also</u>, *Mitre Sports Int'l Ltd. v. Home Box Office, Inc.*, 22 F. Supp. 3d 240, 255 (S.D.N.Y. 2014) (regarding knowing falsities as a level of fault

29

"[b]eyond gross irresponsibility"); *Lopez v. Univision Commc'ns, Inc.*, 45 F. Supp. 2d 348, 362 (S.D.N.Y. 1999) (observing that at least one court has equated gross irresponsibility with "gross negligence"). Accordingly, the complaint sufficiently alleges that Senator Parker acted with the requisite level of fault and it cannot be dismissed on this basis.

## CONCLUSION

Based on the foregoing, it has been demonstrated that Defendant Parker has failed to meet the standards in this Circuit that are necessary on a Motion to Dismiss under Rule 12 (b) (6). Accordingly, Defendant's Motion to Dismiss should be denied in all respects, and Plaintiff should have such other and further relief that this Court may deem just and proper.

Dated:  Garden City, New York
        August 20, 2020

_____
THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL 4471)
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*