UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| PATRICIA CUMMINGS, | : |
| *Plaintiff*, | : Case No. 1:19-cv-07723-CM-OTW |
| − against − | : |
| THE CITY OF NEW YORK; NEW YORK CITY DEPARTMENT OF EDUCATION; GIULIA COX; COURTNEY WARE; BEN CHAPMAN; NEW YORK DAILY NEWS; DR. ANDRE PERRY; THE HECHINGER REPORT a/k/a HECHINGER INSTITUTE ON EDUCATION AND THE MEDIA; LENARD LARRY McKELVEY a/k/a CHARLAMAGNE THA GOD; WWPR-FM (105.1 MHZ); iHEARTMEDIA; CLEAR CHANNEL COMMUNICATIONS, INC.; NEW YORK STATE SENATOR, KEVIN S. PARKER; COALITION OF EDUCATIONAL JUSTICE; ANGEL MARTINEZ; NATASHA CAPERS; PHILIP SCOTT; ADVISE MEDIA NETWORK n/k/a AFRICAN DIASPORA NEWS CHANNEL, and "JOHN DOE AND JANE DOE # 1-100" said names being fictitious, it being the intent of Plaintiff to designate any and all individuals, officers, members, agents, servants, and/or employees of the aforementioned agencies owing a duty of care to Plaintiff, individually and jointly and severally, | : |
| *Defendants*. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANT CHARLAMAGNE'S MOTION TO DISMISS THE
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

                                                **GREENBERG TRAURIG LLP**
                                                Michael J. Grygiel
                                                Cynthia E. Neidl
                                                54 State Street, 6th Floor
                                                Albany, New York 12207
                                                Tel: (518) 689-1400
                                                grygielm@gtlaw.com
                                                neidlc@gtlaw.com

                                                *Attorneys for Defendant Lenard Larry McKelvey*
                                                *a/k/a Charlamagne tha God*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

POINT I   AS THIS COURT CORRECTLY DETERMINED, CHARLAMAGNE'S OPINIONS ARE CONSTITUTIONALLY PROTECTED ........................................................ 2

    A. The Defamatory Meaning of the Challenged Statements Is Not At Issue. ............................ 2

    B. The Full Context Of the Broadcast Establishes That Charlamagne's Commentary Is Nonactionable Opinion. .................................................................................................... 3

    C. Charlamagne's Remarks Are Inherently Subjective and Nonverifiable Criticism. ................ 4

    D. Charlamagne's Conclusions Were Based On a CBS News Report Embedded In the Broadcast and Therefore Do Not Constitute "Mixed Opinion." ............................................ 6

    E. The Use Of Rhetorical Hyperbole and Figurative Language Signals Protected Opinion. ...................................................................................................................... 7

    F. Charlamagne's Speculation Over Plaintiff's Motives Fails To Provide the Predicate For a Defamation Claim. ..................................................................................................... 9

POINT II   THE AMENDED COMPLAINT ALSO FAILS BECAUSE NO CAUSE OF ACTION SOUNDING IN FALSE LIGHT EXISTS UNDER NEW YORK LAW ............................... 10

CONCLUSION .................................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Biro v. Condé Nast*,
 883 F.Supp.2d 441 (S.D.N.Y. 2012) ............................................................................... 2 n.2, 8

*Brahms v. Carver*,
 33 F.Supp.3d 192 (E.D.N.Y. 2014) .............................................................................................. 7

*Brattis v. Rainbow Advertising Holdings, L.L.C.*,
 99 Civ. 10144, 2000 U.S. Dist. LEXIS 7345 (S.D.N.Y. May 30, 2000) ........................................ 2 n.2

*Buckley v. Littell*,
 539 F.2d 882 (2d Cir. 1976) ......................................................................................................... 5

*Chau v. Lewis*,
 771 F.3d 118 (2d Cir. 2014) ................................................................................................. 3, 6, 8

*Center for Immigration Studies v. Cohen*,
 2019 WL 4394838 (D.D.C. Sept. 13, 2019) ................................................................................. 5

*Cummings v. City of New York*,
 2020 U.S. Dist. LEXIS 31572 (S.D.N.Y. Feb. 24, 2020) ..................................................... 2, 4, 6, 7, 9

*Dworin v. Deutsch*,
 2008 U.S. Dist. LEXIS 13655 (S.D.N.Y. Feb. 22, 2008) .............................................................. 2 n.2

*Edelman v. Croonquist*,
 2010 WL 1816180 (D.N.J. May 4, 2010) ..................................................................................... 4

*Egiazaryan v. Zalmayev*,
 880 F.Supp.2d 494 (S.D.N.Y. 2012) ............................................................................................. 9

*Enigma Software Group USA, LLC vs. Bleeping Computer LLC*,
 194 F.Supp.3d 263 (S.D.N.Y. 2016) ............................................................................................. 7

*Forte v. Jones*,
 2013 U.S. Dist. LEXIS 39113 (E.D. Cal. Mar. 20, 2013) ............................................................. 5

*Gertz v. Robert Welch, Inc.*,
 418 U.S. 323 (1974) ..................................................................................................................... 1

*Greenbelt Cooperative Publishing Association, Inc. v. Bresler*,
 398 U.S. 6 (1970) .......................................................................................................................... 9

*Hayashi v. Shunzo Ozawa*,
 2019 U.S. Dist. LEXIS 53130 (S.D.N.Y. Mar. 28, 2019) ............................................................. 7

*Levin v. McPhee*,
 917 F.Supp. 230 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) ............................... 1, 6, 8 n.7

*Matthews v. Malkus*,
 377 F.Supp.2d 350 (S.D.N.Y. 2005) ........................................................................................... 10

*McCafferty v. Newsweek Media Group, Ltd.*,
 955 F.3d 352 (3d Cir. 2020) ......................................................................................................... 9

*McCaskill v. Gallaudet University*,
    36 F.Supp.3d 145 (D.D.C. 2014) .................................................................................. 6

*Mirage Entertainment,, Inc. v. FEG Entretenimientos, S.A.*,
    326 F.Supp.3d 26 (S.D.N.Y. 2018) ........................................................................... 6-7

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
    759 F.2d 219 (2d Cir. 1985) ......................................................................................... 5

*Qureshi v. St. Barnabas Hospital Center*,
    430 F.Supp.2d 279 (S.D.N.Y. 2006) ...................................................................... 3 n.4

*Small Business Bodyguard Inc. v. House of Moxie, Inc.*,
    230 F.Supp.3d 290 (S.D.N.Y. 2017) ............................................................................ 8

*Treppel v. Biovail Corp.*,
    2004 U.S. Dist. LEXIS 20714 (S.D.N.Y. Oct. 15, 2004) ............................................. 8

*Wexler v. Dorsey & Whitney LLP*,
    815 Fed. Appx. 618 (2d Cir. 2020) .............................................................................. 3

**State Cases**

*Albano v. Sylvester*,
    222 A.D.2d 472 (2d Dep't 1995) .................................................................................. 8

*Ansorian v. Zimmerman*,
    215 A.D.2d 614 (2d Dep't 1995) .................................................................................. 5

*Covino v. Hagemann*,
    627 N.Y.S.2d 894 (Sup. Ct. Richmond Cnty. 1995) .................................................... 4

*Goetz v. Kunstler*,
    625 N.Y.S.2d 447 (Sup. Ct. N.Y. Cnty. 1995) ............................................................. 4

*Gross v. New York Times Company*,
    82 N.Y.2d 146 (1993) ................................................................................................... 4

*Hobbs v. Imus*,
    266 A.D.2d 36 (1st Dep't 1999) ................................................................................... 7

*Immuno AG. v. Moor-Jankowski*,
    77 N.Y.2d 235 (1991) ................................................................................................... 4

*Rinaldi v. Holt, Rinehart & Winston, Inc.*,
    42 N.Y.2d 369 (1977) ................................................................................................... 3

*Russell v. Davies*,
    948 N.Y.S.2d 394 (2d Dep't 2012) ............................................................................... 4

*Silverman v. Daily News, L.P.*,
    129 A.D.3d 1054 (2d Dep't 2015) ................................................................................ 4

*Zuber v. Bordier*,
    135 A.D.2d 709 (2d Dep't 1987) .................................................................................. 5

**PRELIMINARY STATEMENT**

Defendant Lenard Larry McKelvey, a/k/a Charlamagne tha God, co-host of the New York City-based radio show *The Breakfast Club* broadcast on Power 105.1 (WWPR-FM), respectfully submits this reply brief in response to Plaintiff Patricia Cummings's papers opposing, and in further support of, his Rule 12(b)(6) motion to dismiss the Amended Complaint.[1]

Plaintiff's opposition to the dismissal of her defamation claims betrays a fundamental misapprehension of controlling constitutional principles. Try as she might, Plaintiff cannot evade that, under the First Amendment, only false statements can be grounds for a libel action. No liability may be imposed upon a speaker for expressions of opinion because "there is no such thing as a false idea." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974) ("However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries, but on the competition of other ideas."). The "dispositive inquiry" is "whether a reasonable [listener] could have concluded that [the statements were] conveying facts about the plaintiff." *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir. 1997) (internal quotations and citations omitted).

There is no close call to be made here in applying this standard. In the Amended Complaint, as with its predecessor, Plaintiff wants the Court to turn its back on this Circuit's long tradition of zealously protecting the right of citizens to express their opinions on matters of public interest. While little in the way of formal analysis is needed to see the emptiness of the Amended Complaint's claims, the established legal elements reinforce why this case should be dismissed for the second time. Those factors — whether the disputed language has precise meaning that is readily understood, whether the statements are capable of being proved true or false, and whether the context signals to listeners that what is being broadcast is a personal point of view — all underscore that Charlamagne's on-air commentary unquestionably qualifies as nonactionable opinion.

---

[1] Plaintiff's Amended Verified Complaint filed on May 28, 2020 [Dkt. No. 100] is cited herein by paragraph as "(AC ¶ ____)." Plaintiff's Memorandum of Law in Opposition to Charlamagne's Motion to Dismiss the Amended Complaint filed on August 27, 2020 [Dkt. No. 120] is referred to by page as "(Pl. Mem.____)," and her counsel's Declaration filed on that same date [Dkt. No. 119] is cited by paragraph as "(Liotti Dec. ¶ ____)."

Plaintiff apparently hopes that the Court will overlook the obvious use of rhetorically exaggerated language, distort contextual meaning, and ignore that the comments at issue were based on information widely — indeed, globally (Pl. Mem. 3, 23) — disseminated in the public domain.  This Court got it exactly right in dismissing the initial Complaint:  "Plaintiff cannot as a matter of law base a defamation claim on these remarks, because they offer expressions of opinion so subjective as to be insufficient to state a claim for defamation." *Cummings v. City of New York*, 2020 U.S. Dist. LEXIS 31572, *61 (S.D.N.Y. Feb. 24, 2020) (hereinafter cited by page as "Decision, *___").

Nothing has changed this time around; the exact same litany of statements is, once again, alleged to be actionable. (AC ¶¶ 71, 145; Pl. Mem. 15-16)  However, no amount of bloviating in the Amended Complaint can turn opinion into fact.[2]

### POINT I

### AS THIS COURT CORRECTLY DETERMINED, CHARLAMAGNE'S OPINIONS ARE CONSTITUTIONALLY PROTECTED

**A.  The Defamatory Meaning of the Challenged Statements Is Not At Issue.**

Plaintiff pronounces that "[t]he legal question to be resolved by this Court is whether a reasonable basis exists for defamatory interpretation of the words and statements spoken by Defendant." (Pl. Mem. 8).  She is wrong.  In arguing that the rules permitting a jury to determine whether a demonstrably false statement has any "defamatory meaning" also apply to the inquiry of whether the statement qualifies as protected opinion (Pl. Mem. 8-9, 11-12), Plaintiff impermissibly conflates two separate elements of a defamation claim.

The "defamatory meaning" defense, which examines whether the language at issue is reasonably capable of conveying a meaning injurious to an individual's reputation from proven falsities, is not raised on

---

[2]  Cognizant of the constitutional interests at stake, courts in this District commonly grant threshold dismissals of defamation cases on the basis of the constitutional opinion privilege.  *Biro v. Condé Nast*, 883 F.Supp.2d 441 (S.D.N.Y. 2012) (Oetken, J.); *Dworin v. Deutsch*, 06 Civ. 13265, 2008 U.S. Dist. LEXIS 13655 (S.D.N.Y. Feb. 22, 2008) (Castel, J.); *Brattis v. Rainbow Advert. Holdings, L.L.C.*, 99 Civ. 10144, 2000 U.S. Dist. LEXIS 7345 (S.D.N.Y. May 30, 2000) (Buchwald, J.).

2

the instant motion.³ The overriding point is that the constitutional opinion privilege, which protects speech "no matter how unreasonable, extreme or erroneous [it] might be," *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 380-81 (1977), is the principal issue on this motion. *See also Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014) ("New York law protects derogatory statements which may be categorized as 'opinion' as opposed to 'fact.'"). Its application compels dismissal of the Amended Complaint's defamation claims.

In distinguishing between potentially actionable statements of fact and protected expressions of opinion, the Second Circuit looks to three factors:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . listeners that what is being . . . heard is likely to be opinion, not fact.

*Wexler v. Dorsey & Whitney LLP*, 815 Fed. Appx. 618, 621 (2d Cir. 2020) (internal quotations and citation omitted). Plaintiff's mantra-like repetition of this standard throughout her opposing brief (Pl. Mem. 13, 22, 23-24) cannot obscure her failure to satisfy any of its requirements, as detailed below.

### B. The Full Context Of the Broadcast Establishes That Charlamagne's Commentary Is Nonactionable Opinion.

Although purporting to acknowledge its centrality to a determination of the opinion privilege (*see* Pl. Mem. 9), Plaintiff distorts the requisite contextual analysis beyond recognition.⁴ First, Charlamagne's commentary issued amidst a raging public controversy concerning the classroom Middle Passage incident that was "picked up by . . . various news outlets and appeared online and in media all over the world." (Pl. Mem.

---

3   The tables included at pp. 57-61 of the Amended Complaint present Plaintiff's take on the "defamatory meaning" of the statements she objects to. (Pl. Mem. 11) This amounts to mere disputation over semantics that is not only irrelevant to the constitutional opinion privilege governing this motion but does nothing to rescue Plaintiff's rehashed allegations from futility.

4   Plaintiff's chart (Liotti Dec. ¶ 3 and Ex. D) ostensibly providing the "contextual background" of Charlamagne's commentary completely misses the constitutional mark. While perhaps of educational value, the "historical," "physical," and "cultural" contexts of institutional racism have nothing whatsoever to do with New York's tripartite inquiry for distinguishing between a statement of fact and opinion, which focuses on the full context of the communication at issue. *See, e.g., Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F.Supp.2d 279, 288 (S.D.N.Y. 2006)

3) Second, the challenged statements were made on the "Donkey of the Day" segment of Charlamagne's radio show, in which, as aptly described by Plaintiff herself, "he speaks out on racial inequality and call [sic] out a person or place that embodies foolery for the given moment." (*Id.* 2)  The forum in which the remarks were made — a "traditional haven for cajoling, invective and hyperbole," *Immuno AG. v. Moor-Jankowski*, 77 N.Y.2d 235, 244 (1991) — supports that Charlamagne was expressing his personal point of view in criticizing Plaintiff's classroom teaching performance.  Decision, *64 (emphasizing that "Charlamagne's comments were made in the setting of a freewheeling morning radio show dedicated to animated discussion of public controversies").  Thus, both the immediate and broader social contexts reinforce the conclusion that the statements challenged by Plaintiff are the stuff of opinion:

> When understood in their respective contexts, statements made by Defendant[ ] Charlamagne . . . could only be understood by listeners . . . as impassioned criticism of the conduct reported in media coverage, and as [his] personal ruminations concerning the educational impropriety and racial insensitivity of that conduct.  The statements therefore do not give rise to a cause of action for defamation.

*Id.*, *60.

### C. Charlamagne's Remarks Are Inherently Subjective and Nonverifiable Criticism.

In addition, the disputed statements at issue lack "a precise meaning which is readily understood" or is "capable of being proven true or false." *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993).  Applying this principle, "[c]ourts in New York have consistently held that terms like 'racist' constitute nonactionable opinion." Decision, *56 (citing *Silverman v. Daily News, L.P.*, 129 A.D.3d 1054 (2d Dep't 2015); *Russell v. Davies*, 948 N.Y.S.2d 394 (2d Dep't 2012); *Goetz v. Kunstler*, 625 N.Y.S.2d 447 (Sup. Ct. N.Y. Cnty. 1995); *Covino v. Hagemann*, 627 N.Y.S.2d 894 (Sup. Ct. Richmond Cnty. 1995)).

As these and numerous other decisions make clear, assertions of racism, bigotry, and prejudice are in the eye of the beholder and therefore constitute subjective opinion that cannot be the basis for a defamation claim.[5]  *Edelman v. Croonquist*, 2010 WL 1816180, *6 (D.N.J. May 4, 2010) ("characterization of [someone]

---

[5]   Tellingly, Plaintiff acknowledges that "[m]any courts in other jurisdictions that have faced the issue of defamation claims based on accusations of bigotry or racism have held the statements to be

4

as racist[ ] is a subjective assertion, not sufficiently susceptible to being proved true or false to constitute defamation"); *Forte v. Jones*, 2013 U.S. Dist. LEXIS 39113, *15, *16 (E.D. Cal. Mar. 20, 2013) ("the allegation that a person is a 'racist' . . . is not actionable because the term 'racist' has no factually-verifiable meaning'" and therefore "cannot be proven or disproven"); *Ctr. for Immigration Studies v. Cohen*, No. CV-19-0087, 2019 WL 4394838, *4 (D.D.C. Sept. 13, 2019) (designation of plaintiff as a "hate group" does not constitute a false statement of "fact" because it is "an entirely subjective inquiry"). Charlamagne's use of the terms "racist," "bigot," "cracker" and "white devil" (AC ¶ 71) are "so debatable, loose and varying" in meaning that they are "insusceptible to proof of truth or falsity." *Buckley v. Littell*, 539 F.2d 882, 894 (2d Cir. 1976). At the risk of stating the obvious, an average listener would not understand the challenged commentary to be "an attempt to convey with technical precision literal facts" about Plaintiff. *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 229 (2d Cir. 1985).

In the final analysis, Plaintiff's characterization of Charlamagne's on-air remarks as "<u>criticism of her skills</u> and <u>competence</u>" (Pl. Mem. 15; emphasis in original) only confirms its constitutional status as protected opinion. *Zuber v. Bordier*, 135 A.D.2d 709, 710 (2d Dep't 1987) (statements charging that plaintiff was "ill-suited to teaching" and attacking her "competency as a teacher" found protected as expressions of opinion); *Ansorian v. Zimmerman*, 215 A.D.2d 614, 614 (2d Dep't 1995) (statements to the effect that plaintiff was "incompetent" as a teacher and requesting her replacement constituted personal opinion rather than objective fact and were thus constitutionally protected). While Plaintiff may disagree with Charlamagne's intemperate evaluation of her instructional methods as a "highly educated white teacher" (Pl. Mem. 11) because (according to Plaintiff) "he possess [*sic*] no degree in education [and] has [no] experience in the educational system o[r] knowledge of the appropriate curriculum" (AC ¶ 151), others (including Charlamagne) are entitled to believe otherwise. Where "different constituencies can hold different — and completely plausible — views of

---

nonactionable statements of opinion." (Pl. Mem. 19) Charlamagne's Rule 12 motion brief in support of dismissal of the original Complaint cited the extensive body of case law dismissing such claims under the First Amendment. *See* Dkt. No. 28-3, p. 13 n.7.

Plaintiff's actions, statements characterizing those actions constitute protected opinion." *McCaskill v. Gallaudet Univ.*, 36 F.Supp.3d 145, 159 (D.D.C. 2014).

### D. Charlamagne's Conclusions Were Based On a CBS News Report Embedded In the Broadcast and Therefore Do Not Constitute "Mixed Opinion."

The above doctrine applies with special force where, as here, the speaker outlines the basis for his opinion. New York law is clear that "if a statement of opinion . . . discloses the facts on which it is based . . ., the opinion is not actionable." *Levin v. McPhee*, 119 F.3d at 197; *see also Chau v. Lewis*, 771 F.3d at 129 (pure opinion is a "statement of opinion accompanied by a recitation of the facts upon which it is based") (internal quotations and citation omitted). Such statements are not actionable because the listener "is able to draw his or her own conclusion from the facts and agree or disagree with [the] statement." *Levin v. McPhee*, 917 F.Supp. 230, 240 (S.D.N.Y. 1996) (Kaplan, J.) (footnote omitted), *aff'd*, 119 F.3d 189 (2d Cir. 1997).

In attempting to stave off dismissal of her defamation claims yet again, Plaintiff latches onto the notion of "mixed opinion," whereby a statement "may yet be actionable if [it] impl[ies] that the speaker's opinion is based on the speaker's knowledge of facts that are not disclosed to the reader." *Levin*, 119 F.3d at 197. (*See* Pl. Mem. 12-13) That effort is unavailing here given, as this Court recognized, that "[t]he factual predicate for Charlamagne's commentary was contained in a CBS news broadcast that was expressly incorporated as part of the 'Donkey of the Day' segment." Decision, *63. Contrary to Plaintiff's contention, there is therefore nothing to suggest that Charlamagne possessed any facts that were unknown to his listeners. *Levin*, 917 F.Supp. at 240.

In *Mirage Entm't, Inc. v. FEG Entretenimientos, S.A.*, 326 F.Supp.3d 26 (S.D.N.Y. 2018), this Court dismissed a defamation claim predicated on a tweet by the singer Mariah Carey. Agreeing with the defendants' argument that "the Tweet is not actionable because it was Carey's opinion," Judge Pauley explained that it had "provided the basis for her opinion — the E! News article reporting that Carey's concerts had been cancelled." *Id*. at *36, *38. Thus, "[i]t would be clear to any reader that Carey's opinion that her fans 'deserve better' was based on the contents of that article." *Id*. at *38. Therefore, "Carey did not imply that she 'knows certain facts,

6

unknown to the audience, which support[ed] [her] opinion,'" but instead, "by linking to the E! News article, she provided the basis for her opinion[.]" *Id.* (citation omitted).

So too here, given that Charlamagne's "Donkey of the Day" comments were grounded in a contemporaneous CBS news report that was expressly incorporated into the broadcast segment.[6]  They are therefore not actionable as "mixed opinion."  *Hayashi v. Shunzo Ozawa*, 17 Civ. 2558, 2019 U.S. Dist. LEXIS 53130, *14 (S.D.N.Y. Mar. 28, 2019) (Nathan, J.) ("Because Defendant[] does not indicate that his statements [were] based on undisclosed facts to which the listener is not privy, they do not cross over into actionable 'mixed opinion.'"); *Brahms v. Carver*, 33 F.Supp.3d 192, 200 (E.D.N.Y. 2014) (dismissing defamation claim where alleged defamatory posting "was accompanied by the news article on which it was so obviously based"); *Hobbs v. Imus*, 266 A.D.2d 36, 37 (1st Dep't 1999) ("In addition, as defendants recited the facts upon which their opinions were based, plaintiff's contention that the statements constituted 'mixed opinion' and were actionable as such is unavailing.") (citations omitted).

In sum, there was nothing in the "Donkey of the Day" segment that would imply or suggest that Charlamagne knew certain facts unknown to his listening audience, thereby distinguishing *Enigma Software Group USA, LLC vs. Bleeping Computer LLC*, 194 F.Supp.3d 263, 286 (S.D.N.Y. 2016).  His comments are therefore protected under the First Amendment.

### E. The Use Of Rhetorical Hyperbole and Figurative Language Signals Protected Opinion.

Further, the nature of the language employed by Charlamagne signals impassioned protest rather than a reasoned presentation of fact.  Indeed, it cannot be gainsaid that "Charlamagne's memorable description of the Middle Passage lesson as 'heavy' on the Hellman's and covered with 'extra mayonnaise' — i.e., drenched in whiteness — can only be understood as figurative criticism." Decision, *64.  As such, it represents the very

---

[6]  In the course of the Middle Passage incident's worldwide virality, "Plaintiff was featured in several prominent newspapers and televised news programs, as well as on YouTube[.]" (Pl. Mem. 3)  Even without benefit of CBS's embedded reportage, *The Breakfast Club*'s audience would have been aware of the underlying factual background owing to the tsunami of media coverage triggered by Plaintiff's classroom staging of this event.

7

type of "fiery rhetoric" that courts in this District have repeatedly protected as "'rhetorical hyperbole' and 'imaginative expression' that is typically understood as a statement of opinion." *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F.Supp.3d 290, 312 (S.D.N.Y. 2017) (concluding that statement the plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" is a "vague statement[] of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation") (citation omitted); *Biro*, 883 F.Supp.2d at 463 (holding that "the use of the terms 'shyster,' 'con man,' and finding an 'easy mark' is the type of rhetorical hyperbole and 'imaginative expression' that is typically understood as a statement of opinion"); *Chau,* 771 F.3d at 129 ("[T]he epithets … 'sucker,' 'fool,' 'frontman,' 'industrial waste,' . . . and 'crooks or morons' . . . are hyperbole and therefore not actionable opinion."); *Albano v. Sylvester*, 222 A.D.2d 472, 475 (2d Dep't 1995) (held, statements by school board trustee that principal's transfer of children from elementary school to another school without first contacting their mother was "cruel" and "inhumane" are rhetorical hyperbole rather than objective fact and thus constitutionally protected).

The broadcast segment was laced with provocative slang terms along with controversial personal observations and asides. A reasonable listener would likely view Charlamagne's description of Plaintiff to be his opinions — "personal in their invective" (Pl. Mem. 11) — rather than conveying any objective facts about Plaintiff. *See Treppel v. Biovail Corp.*, No. 03-CV-3002 (PKL), 2004 U.S. Dist. LEXIS 20714, *38, (S.D.N.Y. Oct. 15, 2004) ("[A]n opinion may be offered with such excessive language that a reasonable audience may not fairly conclude that the opinion has any basis in fact.").

Plaintiff's aggrandizement of the on-air criticism into an accusation of criminality (AC ¶ 150; Pl. Mem. 10, 14) nowhere mentioned on the broadcast[7] fails to grasp something very basic about language and libel law: words can have different meanings in different contexts. The case law is replete with decisions in which words that in other contexts would describe a serious crime have been found to be protected expressions of opinion.

---

[7] Even if, based on the facts disclosed in the CBS news report, Charlamagne had concluded that Plaintiff "committed crimes punishable by NYS law" (AC ¶ 150) — and he did not — any such statements would nevertheless qualify as protected opinion under the First Amendment. *Levin*, 917 F. Supp. at 240-41.

In *Greenbelt Coop. Pub. Assoc. v. Bresler*, a real estate developer who was accused by a citizen of engaging in "blackmail" sued for libel. The Supreme Court found that the word, uttered during a public debate over a proposed land project, "was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] negotiating position extremely unreasonable." 338 U.S. 6, 14 (1970). In *Egiazaryan v. Zalmayev*, 880 F.Supp.2d 494 (S.D.N.Y. 2012), the plaintiff was accused of being "'responsible for war crimes or contribut[ing] to human rights violations.'" *Id*. at 510. This Court held that the statements amounted to "epithets, fiery rhetoric, [and] hyperbole" which "signal advocacy" and a partisan viewpoint. *Id*. at 505, 507 (explaining that "the communication would 'represent the viewpoint of [its] author[ ] and . . . contain considerable hyperbole, speculation, diversified forms of expression and opinion'") (internal quotations and citations omitted). Charlamagne's statements are no different.

F. **Charlamagne's Speculation Over Plaintiff's Motives Fails To Provide the Predicate For a Defamation Claim.**

Charlamagne's theorizing about Plaintiff's motives for the classroom exercise with her students — that she "wanted to break their spirits" and "give them an inferiority complex" — has nothing to do with whether he "should have known the statements were false at the time of the broadcast." (Pl. Mem. 21) Charlamagne was offering conjecture about what Plaintiff must have been thinking at the time, not introducing new information as investigative reporting. Commenting about someone else's motives — which necessarily entails speculation about what is going on inside another person's head — is classic opinion under the law of libel. Whether *The Breakfast Club*'s listeners found Charlamagne's speculation in this regard insightful or misguided, on target or off base, this much is beyond doubt: it is no basis for a libel suit, because "[a] person's internal thoughts are hardly capable of being proven false, and anyone is entitled to speculate about a person's motives from known facts of h[er] behavior." Decision, *62; *see also McCafferty v. Newsweek Media Group, Ltd.*, 955 F.3d 352, 359 (3d Cir. 2020) (same).

## POINT II

### THE AMENDED COMPLAINT ALSO FAILS BECAUSE NO CAUSE OF ACTION SOUNDING IN FALSE LIGHT EXISTS UNDER NEW YORK LAW

Plaintiff's assertion that "[e]ven assuming" a cause of action sounding in false light "is not cognizable in this State, by all means, this case measures up to this kind of criterion," is nothing more than a *non sequitur*. (Pl. Mem. 25)  Whatever this means, it need scarcely detain the Court.  No such cause of action exists under New York law.  *Matthews v. Malkus*, 377 F.Supp.2d 350, 358-59 (S.D.N.Y. 2005).  The Amended Complaint's newly added false light claim should therefore be dismissed.

### CONCLUSION

For the foregoing reasons, and those set forth in this Court's Decision, in Charlamagne's motion to dismiss the initial Complaint, and in his opening brief in support of this motion, the Amended Complaint should be dismissed as against Charlamagne, in its entirety and with prejudice, for failure to state a cause of action, together with such other and further relief as the Court deems just and proper.

Dated: September 16, 2020  Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: */s/ Michael J. Grygiel*
  Michael J. Grygiel
  Cynthia E. Neidl
  54 State Street, 6th Floor
  Albany, New York 12207
  Tel: (518) 689-1400
  grygielm@gtlaw.com
  neidlc@gtlaw.com

  *Attorneys for Defendant Lenard Larry McKelvey a/k/a Charlamagne tha God*

ACTIVE 52582117v3