UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - - - - - - - - -X
PATRICIA CUMMINGS,

                Plaintiff,

    -against-

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; CITY OF NEW YORK
OFFICE OF SPECIAL INVESTIGATIONS; NYC MAYOR
BILL de BLASIO; GIULIA COX; COURTNEY WARE; BEN
CHAPMAN; NEW YORK DAILY NEWS; DR. ANDRE PERRY;
THE HECHINGER REPORT a/k/a HECHINGER INSTITUTE ON
EDUCATION AND THE MEDIA; LENARD LARRY McKELVEY
a/k/a CHARLAMAGNE THA GOD; WWPR-FM (105.1 MHZ);
iHEARTMEDIA; CLEAR CHANNEL COMMUNICATIONS, INC.;
NEW YORK STATE SENATOR, KEVIN S. PARKER; COUNCILMAN,
JUMAANE D. WILLIAMS; COUNCILMAN, DANIEL DROMM;
COALITION OF EDUCATIONAL JUSTICE; ANGEL MARTINEZ;
NATASHA CAPERS, and "JOHN DOE AND JANE DOE # 1-100"
said names being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants, and/or
employees of the aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally, Defendants

                Docket No.
                19-cv-07723 (CM)
                (OTW)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
DAILY NEWS DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

DAVIS WRIGHT TREMAINE LLP

Laura R. Handman
James Rosenfeld
Amanda B. Levine
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
Phone:   (212) 489-8230
Fax:       (212) 489-8340
laurahandman@dwt.com
jamesrosenfeld@dwt.com
amandalevine@dwt.com

*Attorneys for the Daily News Defendants*

*Of Counsel*:
Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ........................................................................................................................ 1

    I.    PLAINTIFF'S "FACTS" CONTRADICT THE DOCUMENTS THAT SHE INCORPORATES BY REFERENCE INTO THE AMENDED COMPLAINT ........................................................................................... 1

    II.    THE COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT ...................................................................................................... 3

        A.    The Purportedly Defamatory Statements Are Absolutely Privileged ......... 3

            1.    The OSI Investigation and Plaintiff's Own Judicial Filings Are "Proceedings" Under Section 74 ............................................ 3

            2.    The Articles Fairly and Accurately Reported on the Proceedings ................................................................................. 6

        B.    References to Plaintiff's Lesson as "Racist" and "Insensitive" Are Opinions ................................................................................................. 8

        C.    The Remaining Statements Are Substantially True ................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Gonzalez v. Gray*,
   69 F. Supp. 2d 561 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000) ..............................3

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ...........................................................................................................9

*Turner v. Sidorowicz*,
   2014 WL 641454 (S.D.N.Y. Feb. 18, 2014) ................................................................................1

**State Cases**

*Arrington v. N.Y. Times Co.*,
   55 N.Y.2d 433 (1982) .................................................................................................................10

*Beecher v. Troy Publ'g Co.*,
   183 A.D.2d 230 (3d Dep't 1992) .................................................................................................7

*Bellezza v. Holland*,
   2011 WL 2848141 (S.D.N.Y. July 12, 2011) ..............................................................................1

*Gurda v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*,
   56 N.Y.2d 705 (1982) ..................................................................................................................7

*Jahr Printing & Publ'g*,
   94 N.Y.2d 436 (2000) ................................................................................................................10

*Louis v. NYP Holdings, Inc.*,
   54 Misc. 3d 1222(A), (Sup. Ct. N.Y. Cty. 2017) .........................................................................7

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) ..................................................................................................................8

*Mulder v. Donaldson, Lufkin & Jenrette*,
   161 Misc. 2d 698 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 208 A.D.2d 301 (1st Dep't
   1995) ............................................................................................................................................7

*SentosaCare LLC v. Lehman*,
   2018 WL 692588 (Sup. Ct. Kings Cty. Jan. 25, 2018) ................................................................5

*Silverman v. Daily News, L.P.*,
   129 A.D.3d 1054 (2d Dep't 2015) ...............................................................................................8

*Themed Rests., Inc. v. Zagat Survey, LLC*,
  4 Misc. 3d 974 (Sup. Ct. N.Y. Cty. 2004), *aff'd*, 21 A.D.3d 826 (1st Dep't
  2005) ................................................................................................................................8

*Three Amigos SJL Rest., Inc. v. CBS News Inc.*,
  132 A.D.3d 82 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016) ....................................................6

## PRELIMINARY STATEMENT

Plaintiff's lengthy Opposition to the *Daily News* Defendants' Motion to Dismiss (the "Opposition")[1] is once again heavy on rhetoric and lacking in cogent responses to Defendants' legal arguments. Plaintiff continues to misconstrue legal standards, make inaccurate assertions, and rebut arguments that the *Daily News* Defendants never made. In addition, without any legal support, she now asks this Court to consider the "temper of the times" in assessing the Motion (including a two-page single-spaced chart about race in America) and to recognize a tort that does not exist in New York.

The Court already ruled correctly.[2] The statements that Plaintiff previously challenged are either privileged summaries of proceedings or non-actionable opinions. And the new statements that she identifies in the Amended Complaint are substantially true. Plaintiff has had her chance to correct her pleading; the Amended Complaint should now be dismissed with prejudice.

## ARGUMENT

### I. PLAINTIFF'S "FACTS" CONTRADICT THE DOCUMENTS THAT SHE INCORPORATES BY REFERENCE INTO THE AMENDED COMPLAINT

"When a court considers documents that are outside the four corners of the complaint, it is not required to accept as true any facts alleged in the complaint that are contradicted by the documents considered." *Turner v. Sidorowicz*, 2014 WL 641454, at *5 (S.D.N.Y. Feb. 18, 2014).

---

[1] Unless otherwise noted, this Reply Brief uses the same abbreviations and capitalized terms as those set forth in Defendants' memorandum of law in support of its motion to dismiss ("Motion").

[2] Plaintiff claims that the "law of the case doctrine [d]oes not control where an amended complaint contained more detailed claims than the original complaint." Opp'n at 13. Yet the authority Plaintiff cites, *Bellezza v. Holland*, states that the law of the case doctrine does not control when an Amended Complaint "alleges ***materially different*** and more detailed claims than the original Complaint." *See* 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (emphasis added). Here, the allegations in the Amended Complaint are largely identical to those in the Complaint, and provide no basis for the Court to diverge from its initial decision. As discussed in Section II.C, *infra*, the new allegations in the Amended Complaint are deficient and should be dismissed.

Thus, the various supposed "facts" included in the Opposition, which are contradicted by the OSI Report, the *Daily News* Defendants' articles, and Plaintiff's own judicial filings, should not be accepted by this Court. For example:

- Plaintiff alleges that the OSI Report contradicts the *Daily News* Defendants' assertion that "multiple students reported that Plaintiff used her feet or hands to push these students even closer together." Opp'n at 6. She cites to the accounts of Students B, I, and J in support of her argument. *Id.* But Student B stated that Plaintiff "shifted [the students'] positions by placing her hands on the students' upper backs," *see* Rosenfeld Decl. Ex. D at 2, and Student I stated Plaintiff "then placed her hands on Student A's upper shoulder and back region and pushed her closer to the student seated in front of her," *id.* at 4. In reality, as the *Daily News* Defendants indicated in their Motion, Students A, B, D, E, H, and I, as well as one teacher who was present during the demonstration each reported that Plaintiff used her hands or feet to push the students closer together. *See id.* at 2-4, 8.

- Plaintiff states that it was "***acknowledged***" that she sought random volunteers from the class to participate in the demonstration." Opp'n at 6 (emphasis added). However, Students B, D, E, H, I, and J each reported that Plaintiff selected students to participate in the demonstration; she did not seek "volunteers." *See* Rosenfeld Decl. Ex. D at 2-4.

- Plaintiff alleges that the OSI Report "recommended training, not termination." Opp'n at 7 (emphasis in original). This is not supported by the Report. It first recommended that Principal Cox "take appropriate disciplinary action against [Plaintiff]," leaving the nature of that action to the Principal's discretion. Rosenfeld Decl. Ex. D at 12. It "further recommended that Principal Cox and the Office of Academic Policy collaborate to determine how to provide Ms. Cummings with appropriate training." *Id.* It never stated that Principal Cox could not use her discretion to terminate Plaintiff.

- Plaintiff claims that "OSI did not get involved until the Department of Education learned on February 1, 2018 that the *Daily News* by Ben Chapman were publishing a story about the Plaintiff." Opp'n at 8. But the OSI Report itself states that it received a complaint from Principal Cox on January 18, 2018, *see* Rosenfeld Decl. Ex. D at 1, thus starting the investigation weeks before the *Daily News* Defendants published the first article.

- Plaintiff states that the *Daily News* Defendants "erroneously quoted [a] student who discussed the Plaintiff 'measuring the length and width to show how little space slave[s] had in the ship,' yet, that never happened in the Plaintiff's class 408." Opp'n at 8. But the article only says that this happened in "one of the lessons," Rosenfeld Decl. Ex. B at 4, and the OSI Report shows that a teacher present in Plaintiff's class ***407*** reported, "Student O laid on the floor, while Ms. Cummings used a ruler to provide measurements to show how close the quarters were for slaves." Rosenfeld Decl. Ex. D at 7.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S AMENDED COMPLAINT

### A. The Purportedly Defamatory Statements Are Absolutely Privileged

Plaintiff disputes that the *Daily News* Defendants' articles are privileged under Section 74. *See* Opp'n at 14-36. In support, she both disregards the testimony that she claims is inaccurate and improperly combines various legal standards, including the standard for assessing falsity, *see* Opp'n at 15 (citing to *Hirschfeld v. Daily News L.P.*, 269 A.D.2d 248 (1st Dep't 2000), a case that does not mention Section 74), and the standard for whether a statement is a fact or opinion, *see* Opp'n at 33 (erroneously stating that under Section 74, the dispositive inquiry is "whether a reasonable [reader] could have concluded that [the publications were] conveying facts about the plaintiff"), both of which are irrelevant to the Court's analysis of the fair report privilege.

Statements are privileged under Section 74 if a "reasonable viewer would . . . understand the [s]tatements to be a substantially accurate report . . . of any judicial proceeding, legislative proceeding or other official proceeding." *Gonzalez v. Gray*, 69 F. Supp. 2d 561, 568 (S.D.N.Y. 1999), *aff'd*, 216 F.3d 1072 (2d Cir. 2000). Because, as this Court already held, a reasonable reader would understand that the *Daily News* Defendants' articles report on a state investigation (including the allegations leading to that investigation) and judicial filings, and because they did so in a "substantially accurate" manner, they are absolutely privileged.

#### 1. *The OSI Investigation and Plaintiff's Own Judicial Filings Are "Proceedings" Under Section 74*

Plaintiff first claims that the OSI investigation was not a "proceeding" under Section 74 because it concerned only whether she used corporal punishment, not whether she singled out black students and made them act like slaves. Opp'n at 33-34. She similarly claims that the *Daily News* Defendants cannot invoke Section 74 with respect to their reporting on her filings because "Defendants' reporting related to Plaintiff's Notice of Claim and pleadings . . . continued to refer

3

to [Plaintiff] as a racist 'slave teacher.'" *Id.*[3] But these arguments concern how the *Daily News* Defendants reported on the proceedings, not whether they *were* "proceedings." As this Court recognized, state investigations and notices of claims are "proceedings" within the definition of Section 74. *See* Mem. Op. at 33-34. Plaintiff once again fails to cite any case supporting her argument that the OSI investigation and her Notice of Claim should lose their status as "proceedings" because she disagrees with the *Daily News* Defendants' characterizations.

In any event, Plaintiff's narrow description of the OSI investigation is belied by the OSI Report itself. While OSI sought in part to determine whether Plaintiff used corporal punishment, it cannot be contested that OSI investigated allegations that Plaintiff called her black students to the front of class and made them demonstrate the conditions on a slave ship. Specifically, under a section of the report titled "Origin of Complaint," OSI writes that on January 18, 2018, it received a complaint from Principal Cox that Plaintiff "had four students . . . sit on the floor very close together to reenact the conditions on a slave ship." Rosenfeld Decl. Ex. D at 1. According to Principal Cox, Plaintiff "pushed Student A's back with her knee and asked if it hurt or caused her discomfort." *Id.* OSI assessed claims from "Mother A" that Plaintiff instructed her daughter to "get on the floor" to demonstrate "how the slaves were on the boat," and allegations from "Student A" that Plaintiff "pushed [Student A's] back with her knees . . . like four or five times." *Id.* at 8-9. The investigation was not limited to determining whether Plaintiff engaged in corporal punishment, since Principal Cox also "alleged additional academic policy violations against Ms. Cummings." *Id.* at 1. Indeed, the Report concluded that Plaintiff acted with "poor judgment" in conducting the lesson because "DOE does not ever include or encourage reenactments of historical

---

[3] As explained in Section II.B, *infra*, statements characterizing Plaintiff as a "racist" are non-actionable opinions and therefore cannot support a defamation claim.

4

events where students take on roles of victimized people," and recommended "appropriate disciplinary action" against Plaintiff on that basis. *Id.* at 11-12.  In sum, while Plaintiff may wish to hide behind OSI's finding that the allegation of corporal punishment was unsubstantiated, OSI's investigation was far broader than Plaintiff claims.  The *Daily News* Defendants were entitled to report on all aspects of this proceeding, not just the narrow issue on which Plaintiff wishes to focus.

Plaintiff further claims, "Defendants did **NOT** explicitly state that [the February 1, 2018 article] was describing an official investigation or proceeding commenced against the Plaintiff." Opp'n at 21 (emphasis in original).  Rather, "[t]he subject of the February 1, 2018 Daily News article was the allegation." *Id.*  But the Court has rejected this very argument.  *See* Mem. Op. at 31-32 ("Any reasonable reader would know that the *Daily News* Articles were reports on the DOE's investigation into allegations made against Plaintiff.").  And even if this article were only reporting on the allegation, "reports on allegations that lead to a government investigation are fully protected."  *SentosaCare LLC v. Lehman*, 58 Misc. 3d 1216(A), 2018 WL 692588, at *7 (Sup. Ct. Kings Cty. Jan. 25, 2018).  Further, the February 1, 2018 article (and the other articles at issue) make clear that they are reporting on official proceedings.  *See* Rosenfeld Decl. Ex. B at 3 ("While the investigation has not been completed, these are deeply disturbing allegations."); Pl. Ex. C ("Education Department officials are investigating the allegations."); Pl. Ex. E ("City Department Education officials have failed to conclude investigations of two Bronx educators accused of racist acts . . . ."); Pl. Ex. F ("City Education Department officials have finished their probe of a teacher . . . ."); Pl. Ex. G ("A white Bronx social studies teacher . . . has filed a lawsuit, which her lawyer says could be worth $1 billion); Pl. Ex. H (quoting OSI Report).[4]

---

[4] While an April 26, 2018 article does not mention the investigation, it also does not include Plaintiff's name, merely stating, "In February, The News uncovered allegations of a white Bronx teacher who stepped on a black student during a lesson on slavery."  *See* Pl. Ex. D.  Under New

### 2.     *The Articles Fairly and Accurately Reported on the Proceedings*

Plaintiff claims that the *Daily News* Defendants' argument that the articles are "substantially accurate" is "laughable," Opp'n at 35, and that a more "cogent analogy would be a news entity reporting a proceeding, which states that the party is on trial for murder, when they are actually on trial for jay walking," *id.* at 17.  But to make this argument, Plaintiff removes the allegations of Student A and Parent A from their context, claiming that the original allegation was merely that Plaintiff "pushed Student A's back with her knee and asked if it hurt."  Opp'n at 3.  By contrast, she claims that the *Daily News* Defendants reported that Plaintiff "singled out black students and made them act like slaves," told them to "lie down on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like."  *Id.*

In reality, Student A alleged that Plaintiff, while teaching about slavery, told her students "I can show you how it is to be squashed on a boat," made the students sit on the floor in front of the class with their knees up, and  "pushed [Student A's] back with her knees . . . four or five times."  *See* Rosenfeld Decl. Ex. D at 8-9.  Plaintiff does not dispute that all of the students that were part of this demonstration were black.  *See* Section II.C, *infra*.  As this Court already recognized, the articles contain variations of these allegations, including that Plaintiff "stepped" on, "pressed," and "put her foot on" students' backs.  *See* Mem. Op. at 37.  The import from these formulations is the same—Plaintiff physically pushed select students in order to demonstrate the conditions on a slave ship.  New York courts, as a matter of law, permit variances between the contents of a proceeding and a report on the proceeding much larger than those here.  *See, e.g.*,

---

York law, while a defamation plaintiff need not be named in the publication, she must point to something that "would cause a reader to think defendant was referring to them."  *Three Amigos SJL Rest., Inc. v. CBS News Inc.*, 132 A.D.3d 82, 88 (1st Dep't 2015), *aff'd*, 28 N.Y.3d 82 (2016). Plaintiff does not do so.  Indeed, a reader would only understand this article to be "of and concerning" Plaintiff if that reader also reviewed the other articles, all of which make clear that the allegations against Plaintiff are part of an official investigation.

*Beecher v. Troy Publ'g Co.*, 183 A.D.2d 230, 236 (3d Dep't 1992) (article privileged even when it could imply that plaintiff was charged with felony bribery when he had only been charged with misdemeanor of making a false statement); *Gurda v. Orange Cty. Publ'ns Div. of Ottaway Newspapers, Inc.*, 56 N.Y.2d 705, 708 (1982) (article reporting on civil insurance fraud case substantially accurate even though it used words connoting criminal liability).[5]

While one sub-headline in a print edition of the *Daily News* indicated that Plaintiff "walked on" students, as the *Daily News* Defendants explained in their Motion, the sub-headline must be read in context of the article, which accurately reported on the OSI Report. *See* Mot. at 11-12; *see also Louis v. NYP Holdings, Inc.*, 54 Misc. 3d 1222(A), at *2 (Sup. Ct. N.Y. Cty. 2017) (headline "Drunk Driving Pothead Thinks He's Fit to be a Corrections Officer" deemed non-actionable even though plaintiff insisted he did not drive drunk and all marijuana charges against him were dropped, because the full article included this relevant context). Plaintiff does not engage with the *Daily News* Defendants' case law, merely repeating that "Plaintiff was **NEVER** the subject of an investigation alleging that she 'walked' on students." *See* Opp'n at 10.

Finally, Plaintiff contends the charges against her were unsubstantiated, Opp'n at 8, and that her own statement to a reporter should have been a "red flag" that the allegations were untrue. Opp'n at 20. But Section 74 protects reporting on allegations made in proceedings regardless of whether they are in fact true or false. *See Mulder v. Donaldson, Lufkin & Jenrette*, 161 Misc. 2d 698, 705 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 208 A.D.2d 301 (1st Dep't 1995). And the inclusion of Plaintiff's own statement only further shows that the *Daily News* Defendants were "substantially

---

[5] Plaintiff baselessly claims that "the student that was interviewed by the Defendant, Ben Chapman . . . was **absent** on the day of the lesson in question." Opp'n at 35 (emphasis in original). But even if this were true, as this Court recognized, the fact that the *Daily News* defendants may have derived information about the proceedings from secondary sources does not mean that Section 74 is inapplicable. Mem. Op. at 35.

7

accurate" in their reporting, as they mentioned Plaintiff's only comments on the events in question.

In sum, because Plaintiff still cannot explain why Section 74 does not apply to the *Daily News* Defendants' articles, the articles are privileged, and Plaintiff's claims should be dismissed.

### B. References to Plaintiff's Lesson as "Racist" and "Insensitive" Are Opinions

Expressions of opinion are privileged and, "no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008). Indeed, courts—including this one—have held time and again that referring to someone as "racist" is a non-actionable opinion, since the term has no defined meaning and cannot be proven true or false. *See* Mem. Op. at 39. Plaintiff attempts to distinguish these cases: ***First***, she claims that some involved public figure plaintiffs. *Id.* But whether a plaintiff teacher is a public figure only affects the level of fault that he or she must plead; it has no bearing on whether words should be construed as facts or opinions. *See Silverman v. Daily News, L.P.*, 129 A.D.3d 1054, 1055 (2d Dep't 2015) (dismissing case on opinion grounds without determining whether principal plaintiff is a public figure). ***Second***, Plaintiff alleges that these precedent cases involve slander, not libel. Opp'n at 39. This is patently untrue; for example, *Silverman* was a libel case. Regardless, the standard for libel and slander is the same. *See Themed Rests., Inc. v. Zagat Survey, LLC*, 4 Misc. 3d 974, 976 (Sup. Ct. N.Y. Cty. 2004), *aff'd*, 21 A.D.3d 826 (1st Dep't 2005).

Plaintiff also alleges that statements characterizing her actions as "racist" or "insensitive" are actionable because they imply the existence of undisclosed facts. *See* Opp'n at 40. But the articles explain the reasons for these characterizations—according to students, during a lesson on slavery, Plaintiff "picked three . . . black kids, . . . instructed them to get on the floor in front of the class," "put her foot on [a student's] back," asked "how does it feel," and had students "lie on the floor" to "measur[e] the length and width" of a slave ship. *See* Rosenfeld Decl. Ex. B at 3-4. Plaintiff claims that these are "lies disguised as facts." Opp'n at 41. But, even accepting Plaintiff's

8

allegation as true, an opinion based on disclosed facts is actionable only when "the disparity between the stated facts and truth would cause a reader to question the opinion's validity." Opp'n at 37 (citing *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d (S.D.N.Y. 2016)).  Here, Plaintiff herself admits that she called black students to the front of her classroom during a slavery lesson and urged these students closer together in order to replicate the spatial conditions on slave ships.  Even if she did not make physical contact with students, these facts are enough to support the description of her lesson as "racist" and "insensitive."[6]

### C. The Remaining Statements Are Substantially True

Plaintiff's arguments concerning the remaining statements only further confirm that they are substantially true, and any claims arising from them must be dismissed:

*First*, Plaintiff claims that the statements that she "shocked and traumatized children" and that "kids and adults . . . were horrified by the offensive lessons" are not opinions. Opp'n at 43. This misses the point; even assuming the statements are factual, they are substantially true. A student, parent, and staff member were sufficiently upset about Plaintiff's lessons to report her to the school, leading to the OSI investigation. *See* Mot. at 20-21.

*Second*, with respect to the statement that Plaintiff "pulled the insensitive stunt in multiple seventh-grade classes," Plaintiff does not deny that she gave "lessons" on slavery in ***both*** classes 407 and 408, during which she had students sit in the front of the classroom to demonstrate the

---

[6] The Second Circuit's recent decision in *La Liberte v. Reid*, 966 F.3d 79 (2d Cir. 2020) has no bearing on this case, as Plaintiff appears to acknowledge by failing to mention it.  *La Liberte* construed California defamation law, not New York law.  Moreover, there the court held that falsely accusing someone of specific racist conduct (yelling at a Hispanic boy when, in reality, plaintiff and the boy had a civil conversation) was not a non-actionable opinion. Here, by contrast, Plaintiff takes issue with the *Daily News* Defendants characterizing her undisputed acts (*i.e.*, making students reenact the "spatial conditions" on slave ships) as "racist."  This case aligns with the many cases which conclude that labeling conduct as "racist" has no defined meaning and, therefore, cannot form the basis of a defamation action.   *See* Mot. at 16; *Reid*, 966 F.3d at 93.

conditions on slave ships. This statement, therefore, is substantially true.

***Third***, Plaintiff admits that her lesson was "about the Triangle Trade" but claims that "Plaintiff taught about the Triangle Trade as part of the NYS curriculum" and she was "adhering to the directives in teaching this topic." Opp'n at 45. But the *Daily News* Defendants never state or imply that Plaintiff diverged from the curriculum in teaching about the subject, just that her lesson on the topic was "ill-conceived."

***Fourth***, with respect to the statement that Plaintiff "picked three of the black kids" from the class to participate in the demonstration, Plaintiff does not deny that these students were black. *See* Opp'n at 45-46. Instead, she says that this Court should recognize the tort of false light invasion of privacy. However, New York courts do not recognize this tort. *See, e.g.*, *Messenger v. Gruner + Jahr Printing & Publ'g*, 94 N.Y.2d 436 (2000). And, despite Plaintiff's claim that false light can fall under Civil Rights Law § 51, Section 51 (and its criminal counterpart, N.Y. Civ. Rights Law § 50) "were drafted narrowly to encompass only the commercial use of an individual's name or likeness and no more." *Arrington v. N.Y. Times Co.*, 55 N.Y.2d 433, 439 (1982).

***Fifth***, Plaintiff admits that she was "removed from her post for a couple of days following the incident," as she states, "she was removed from her classroom in January, 2018." *See* Opp'n at 7, 10. Therefore, this statement too is substantially true.

## CONCLUSION

The Court already decided this case correctly, and Plaintiff's Amended Complaint and Opposition should not change its conclusion. The *Daily News* Defendants respectfully request that the Court dismiss the Amended Complaint against them with prejudice and grant such other further relief as the Court deems just and proper.

Dated: September 22, 2020

                                                 Respectfully submitted,

                                                 DAVIS WRIGHT TREMAINE LLP

                                                 By: */s/ James Rosenfeld*

                                                 Laura R. Handman
                                                 James Rosenfeld
                                                 Amanda B. Levine
                                                 DAVIS WRIGHT TREMAINE LLP
                                                 1251 Avenue of the Americas, 21st Floor
                                                 New York, New York 10020
                                                 Phone: (212) 489-8230
                                                 Fax:   (212) 489-8340
                                                 laurahandman@dwt.com
                                                 jamesrosenfeld@dwt.com
                                                 amandalevine@dwt.com

                                                 *Attorneys for Defendants Daily News L.P. & Ben Chapman*

*Of Counsel*:
Matthew A. Leish
Assistant General Counsel
Daily News, L.P.
4 New York Plaza, 7th Floor
New York, New York 10004
Phone: (212) 210-2144

11