UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

PATRICIA CUMMINGS,

Plaintiff,

    -against-                                 No. 19-cv-7723 (CM)(OTW)

THE CITY OF NEW YORK; NEW YORK CITY
DEPARTMENT OF EDUCATION; GIULIA COX; COURTNEY
WARE; BEN CHAPMAN; NEW YORK DAILY NEWS; DR.
ANDRE PERRY; THE HECHINGER REPORT a/k/a
HECHINGER INSTITUTE ON EDUCATION AND THE
MEDIA; LENARD LARRY McKELVEY a/k/a
CHARLAMAGNE THA GOD; WWPR-FM (105.1 MHZ);
iHEARTMEDIA; CLEAR CHANNEL COMMUNICATIONS,
INC.; NEW YORK STATE SENATOR KEVIN S. PARKER;
COALITION OF EDUCATIONAL JUSTICE; ANGEL
MARTINEZ; NATASHA CAPERS; PHILIP SCOTT; ADVISE
MEDIA NETWORK n/k/a AFRICAN DIASPORA NEWS
CHANNEL; and "JOHN DOE AND JANE DOE #1-100" said
names being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants, and/or
employees of the aforementioned agencies owing a duty of care to
Plaintiff, individually and jointly and severally,

Defendants.

_____x


**MEMORANDUM DECISION AND ORDER DISMISSING AMENDED COMPLAINT**

McMahon, C.J.:

On March 16, 2020, after the court entered an order dismissing Plaintiff Patricia

Cummings's May 17, 2019 Complaint, but granting leave to amend (Dkt. No. 13, "Complaint"),

Plaintiff filed her Amended Verified Complaint (Dkt. No. 95, "Amended Complaint") against the

City of New York, the New York Department of Education ("DOE"), Giulia Cox, Courtney Ware

(together with the City of New York, DOE and Defendant Cox the "City Defendants"), Ben

1

Chapman, Daily News, L.P. ("Daily News," together with Defendant Chapman the "Daily News Defendants"), Dr. Andre Perry, the Hechinger Institute on Education and the Media, Lenard Larry McKelvey a/k/a Charlamagne tha God ("Charlamagne"), (together with Perry and the Hechinger Institute, the "Media Defendants"), WWPR-FM, iHeartMedia, Clear Channel Communications, New York State Senator Kevin S. Parker, Coalition of Educational Justice, Angel Martinez, Natasha Capers, Philip Scott, and Advise Media Network, a/k/a African Diaspora News Channel. On May 15, 2020, Plaintiff filed a Second Amended Verified Complaint, after the March 16 document was rejected by the Clerk's office because it misnamed a defendant.  (Dkt. No. 100, "Second Amended Complaint.")

The Amended Complaint asserts claims for defamation – including both libel and slander – and false light against the Daily News Defendants, the Media Defendants, Senator Parker, Scott, the African Diaspora News Channel, Martinez, Capers, and the Coalition of Educational Justice. The Amended Complaint also asserts claims against the City Defendants under the United States Constitution for discrimination and violation of Plaintiff's due process rights, as well as state law claims for fraud, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress.

The City Defendants, the Daily News Defendants, the Media Defendants, and Senator Parker now move to dismiss the Amended Complaint. (Dkt. Nos. 104, 105, 108, 110, 113.)  The remaining defendants have not appeared.

For the reasons below, the motions are GRANTED; Plaintiff's Amended Complaint is DISMISSED.

## BACKGROUND

The Court presumes the parties' familiarity with the facts of this case, which this Court set forth in great detail in its Memorandum Decision and Order dismissing the original Complaint. (Dkt. No. 94.)  In short, Plaintiff – a probationary teacher at the William W. Niles School – Middle School 118 ("X118") in the Bronx – alleges that she was fired in violation of her right to due process after students and a parent complained to the school about a lesson that Plaintiff taught her seventh-grade social studies class on the Middle Passage and slavery.  Students reported that, after showing a clip from the movie *Freedom*, Plaintiff, who is white, directed several students to sit or lay on the classroom floor and pushed them closer together to demonstrate the cramped conditions on a slave ship.  (AC ¶ 55.)  The school referred her conduct to the DOE's Office of Special Investigations ("OSI"), which found that Plaintiff had not engaged in corporal punishment, but nonetheless concluded that Plaintiff's lesson exhibited poor judgment.  (AC ¶ 92.)

The *New York Daily News* reported on the allegations against Plaintiff and the OSI investigation into her conduct in an article first published on February 1, 2018 ("February 1 article").  (AC ¶ 106.)  The story was eventually picked up by other media outlets and sparked public controversy.

On February 1, Plaintiff was "reassigned" (i.e., removed from classroom teaching) for the remainder of the school year.  (AC ¶ 74.)  In August 2018, after being cleared of any allegations of corporal punishment by OSI, she was told to report back to X118 for the fall semester, only to be reassigned for a second time on September 4, 2018.  (AC ¶ 90.)  The DOE terminated Plaintiff's probationary employment on October 18, 2018.  (AC ¶ 93.)  Throughout this time, the *Daily News* continued to report on Plaintiff and the investigation, including in an October 20, 2018 article published two days after she as fired.  (AC ¶ 95.)

The Complaint asserted claims against the City of New York, the New York City Department of Education, The New York Office of Special Investigations, Giulia Cox, and Courtney Ware for violations of the Fourteenth, First, Second, Fourth, Fifth, Sixth, Seventh, and Eighth Amendments to the Constitution.  It asserted state law defamation claims against the Daily News, Chapman, Dr. Perry, the Hechinger Report, Charlamagne, WWPR-FM, iHeartMedia, Clear Channel Communications Senator Parker, City Council Member Williams, Mayor de Blasio, Dromm, Capers, Martinez, and the Coalition of Educational Justice. And it asserted claims for negligence, negligent inflection of emotional distress, and intentional infliction of emotional distress against all defendants.

On February 24, 2020, I dismissed Plaintiff's Complaint in its entirety. I gave Plaintiff leave to file an amended pleading to correct the deficiencies that could be corrected.  (Dkt. No. 94.)

## I.     The Amended Complaint(s)

On March 16, 2020, Plaintiff filed an Amended Complaint. It no longer included any allegations against Mayor Bill de Blasio, Jumaane Williams, or Daniel Dromm, but it added two new media defendants: multi-media journalist Philip Scott and Advise Media Network.

The Clerk's Office rejected the Amended Complaint as deficient because it misidentified one of the defendants as NYC Coalition for Educational Justice rather than the Coalition of Educational Justice.[1]  (Dkt. No. 95.)  Two months later, on May 20, Plaintiff's counsel sought

---

[1] The original complaint named as a defendant an entity called Coalition of Educational Justice; the Amended Complaint sued NYC Coalition for Educational Justice, which was not a name appearing on the court's ECF system. It seems that Plaintiff's attorney learned the correct name of the entity she wished to sue and made the correction, but ECF was not able to process the change without a specific court order. As Mr. Liotta pointed out in his letter requesting leave to make the correction (Dkt. No. 98), this all happened in the first days after the pandemic shutdown, which made what should have been a routine error correction overly complicated.

leave to re-file the Amended Complaint for the sole purpose of correcting name; he identified no other amendment that he wished to make.  I granted leave to amend for the sole purpose of allowing Plaintiff to remedy this error.  (Dkt. No. 99.)

On May 28, Plaintiff filed a Second Amended Complaint.  (Dkt. No. 100.)  However, Plaintiff did more than simply correct the name of a single defendant in the ECF system. She added a number of allegations that were not pleaded in the Amended Complaint, without moving for leave to so amend or obtaining the permission of the Court to file yet another amended pleading.

No defendant has moved to strike the supplementary allegations pursuant to Federal Rule 12(f). The Daily News Defendants explicitly chose not to pursue that remedy, arguing instead that the new allegations "are largely Plaintiff's own argumentative characterizations [that] are either not factual and not entitled to any presumption of truth on this motion to dismiss, or are contradicted by documents incorporated into the Amended Complaint."  (Dkt. No. 114 at 1 n.1.)

The Court, however, will strike the newly asserted allegations to the extent they are beyond the scope of the leave to amend I granted.  Rule 12(f) provides, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" – and it may do so on its own, without a motion made by any party.  Fed. R. Civ. P. 12(f).  While motions to strike are generally disfavored, "District courts in this Circuit have routinely dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted."  *Miles v. City of New York*, 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018) (quoting *Palm Beach Strategic Income, LP v. Salzman*, 457 Fed. App'x 40, 43 (2d Cir. 2012)).  I allowed Plaintiff to re-file her Amended Complaint for the specific purpose of correcting the name of a party, not to

supplement her already amended pleadings with new claims or factual allegations – or with legal arguments that have no place in a pleading in any event.

Accordingly, this court considers the Amended Complaint filed on March 16, 2020 to be the operative pleading for purposes of these motions to dismiss. Any "allegations" that were added to the version filed on May 28 will not be considered.

## II.   New Allegations

The additions to the Amended Complaint fall into four buckets: (1) new factual allegations, (2) conclusory allegations not supported by well-pleaded facts, (3) background information about Plaintiff and several defendants, and (4) legal arguments that Plaintiff seems to have inserted in anticipation of a second round of motions to dismiss the complaint (and that read much like a motion for reconsideration of the Court's order dismissing the Complaint).

The new *factual* allegations are summarized as follows:

*A.  New Allegations Against the City Defendants*

Plaintiff identifies several ways in which she believes that the DOE's investigation into her conduct and her ensuing termination were procedurally deficient, thereby violating her right to due process:

1. Ralph Hudson, a teacher who was in Plaintiff's classroom during her lesson, submitted an affidavit (the Amended Complaint does not specify to whom, though presumably to the school) stating that he witnessed Plaintiff's lesson on the slave trade, and denying that any student laid on the floor at any time or that Plaintiff made physical contact with any student during the lesson. (AC ¶ 57.) It is not clear from the text of the Amended Complaint, but it appears that Plaintiff believes if this affidavit had been credited, she would have been fully cleared and not found to have exercised poor judgment.

2. OSI's finding that the Plaintiff "acted with poor judgment" was outside the scope of OSI's function – i.e., was not a finding that OSI was authorized to make – since OSI is only to investigate allegations of corporal punishment and verbal abuse. (AC ¶ 216.)

3. When OSI investigators questioned Plaintiff, she learned that there were two sets of written statements from students dated January 11, 2018 – the first taken by Ware (which had been shown to Plaintiff during the January 18, 2018 meeting with Cox) and the second taken by Assistant Principal Leah Dyer. (AC ¶¶ 80, 186.)  Plaintiff alleges that the existence of two sets of statements resulted in the "erroneous and egregious" articles, including the *Daily News* articles, and subjected her to "an erroneous and unsubstantiated process" that led to her termination.  (AC ¶¶ 187-190.)

She also alleges that it was never alleged that she engaged in corporal punishment during her lesson on the Middle Passage in class 408, as evidenced by the following facts:

1. Plaintiff was removed from teaching only class 408 between January 23, 2018 and January 25, 2018, and continued to teach her other classes at X118 during that time. (AC ¶ 179.)

2. Plaintiff was not informed of the OSI investigation until February 1, 2018.  Had the school received any complaints of corporal punishment, the United Federation of Teachers Contract would have required OSI to open an investigation immediately and inform Plaintiff within five school days. (AC ¶¶ 60, 179.)

The Amended Complaint also identified an additional statement made to the media and attributed to Doug Cohen, the DOE spokesperson. It alleges that on February 2, 2018, Cohen said to the media, "[W]hile the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or in our society."  (AC ¶ 180.) Plaintiff claims that this statement branded her with a "badge of infamy."

The Amended Complaint alleges that Cox took steps to make it appear as though X118 planned to reemploy Plaintiff that fall, when the DOE had already decided to end her employment. Plaintiff alleges that, on August 22, 2018, Cox emailed Plaintiff to tell her that she was released from reassignment (i.e., allowed to return to classroom teaching), and gave her a false schedule for the upcoming semester at X118 that assigned her to teach sixth-grade social studies; she asserts that the schedule was false because her assigned classes were scheduled for the same periods and classrooms as classes taught by other teachers – double scheduling of the same times and locations. (AC ¶ 184.)  Plaintiff further alleges that, as of September 4, 2018 – the day before the fall semester

started – there was no record that any substitute teacher had been assigned to cover the classes that the August 22 schedule showed she would be teaching starting on September 5. Plaintiff infers that the lack of any substitute assignment to cover her classes indicates that X118 never intended for Plaintiff to teach that semester.  (AC ¶ 185.)

At this point, Plaintiff had not received a formal notice from the DOE authorizing her to teach at X118, and "was concerned about being falsely accused of insubordination" upon her return.  So on August 29, 2018, Plaintiff contacted the Manager of Reassigned Staffing, Colin Caldwell, and asked if there was any correspondence from the Division of Human Resources proving that she had been cleared of improper conduct and allowing her to return to the classroom. Caldwell told Plaintiff that the letter releasing Plaintiff from reassignment was mailed to X118, rather than to Plaintiff's home.  Plaintiff alleges that had she received the letter in a timely fashion, she would have been able to apply to a school in a different borough or district using the NYCDOE's Open Market System before the hiring season ended.  (AC ¶ 88.)

The Amended Complaint also alleges that Plaintiff interviewed for a teaching position in the Connetquot School District on Long Island and was offered a position on October 18, 2018. Plaintiff accepted the offer and filled out the employment paperwork the following day.  On October 22, 2018, four days after the DOE finally fired her (which the *Daily News* reported on two days later), the Connetquot School District rescinded its offer of employment.  (AC ¶¶ 94-96.)

Finally, in the context of Plaintiff's discrimination claim, the Amended Complaint alleges that Plaintiff, who is white, did not receive some unspecified benefit that was received by two individuals who are black: the parent of one of Plaintiff's students and the Commissioner of the DOE.  (AC ¶ 197.)

B. *New Allegations Against the Daily News Defendants*

The Amended Complaint does not attribute any new statements or articles to the *Daily News* or Chapman, but it does identify several specific statements from the February 1, 2018 article that Plaintiff asserts are false. Those statements are:

1. "Middle School 118 teacher Patricia Cummings shocked and traumatized children in her social studies classes when she singled out black students and told them to lie on the floor for a lesson on U.S. slavery – and then stepped on their backs to show them what slavery felt like, students and a staffer said."

2. "Kids and adults in Cummings' school . . . were horrified by the offensive lessons they said occurred roughly two weeks ago."

3. "Students said Cummings, who is white, pulled the insensitive stunt in multiple seventh-grade classes as part of a unit on the infamous Middle Passage, in which Africans were kidnapped and brought to America as part of the slave trade."

4. "'She picked three of the black kids,' the boy said, and instructed them to get on the floor in front of the class. 'She said, 'You see how it was to be a slave?' She said, 'How does it feel?''"

5. "When a girl on the floor made an uncomfortable joke and said she felt fine, Cummings stepped on her back, the student said."

6. "Cummings was removed from her post for a couple of days following the incident but then returned to the class and was in school Thursday."

(AC ¶ 106.) The Amended Complaint also asserts that a sub-headline on the October 20, 2018 article saying that Plaintiff "walked on students" is false. And it now alleges that the February 1 article was published before the Plaintiff was notified that she was the subject of an OSI investigation and that there was no investigation at the time the article was published. Plaintiff asserts that OSI opened the investigation in response to public outrage ignited by the February 1 article. (AC ¶¶ 74-76, 126.)

The Amended Complaint also includes several allegations that are entirely irrelevant to Plaintiff's causes of action, including the allegation that Ben Chapman questioned minors without parental consent (AC ¶ 77) and acted with disregard for the Journalistic Code of Ethics (AC ¶ 102).

### C.  The Other Moving Defendants

Although the Amended Complaint is rife with legal arguments and conclusory statements about the Media Defendants and Senator Parker, no new factual allegations are asserted against them.

### D.  The Non-Moving Defendants

Three of the defendants originally named in this lawsuit – WWPR-FM, iHeartMedia, and Clear Channel Communications – were not served with either the original Complaint or the Amended Complaint. Not surprisingly, none of them has appeared in this action.  The allegations against these three defendants are identical to the allegations against Charlamagne.

The Amended Complaint indicates iHeartMedia, Inc., which owns WWPR and Clear Channel, filed for Chapter 11 bankruptcy on March 15, 2018, before Plaintiff commenced this action.  (AC ¶ 33.)  In light of the automatic stay imposed on any judicial proceedings against iHeartMedia, Inc., Plaintiff has elected to "take[] no action to prosecute these claims." (*Id.*) These defendants are no longer part of this lawsuit.

Three other  defendants originally named in this lawsuit – Coalition of Educational Justice ("CEJ"), Angel Martinez, and Natasha Capers – were served with the original Complaint but did not appear. The claims originally asserted against them were not discussed in the court's first decision. Those claims have been reasserted in the Amended Complaint, along with an additional claim, for portraying Plaintiff in a false light. Because a new claim was asserted against each of these defaulting defendants, Federal Rule 5(a)(2) required Plaintiff to serve them with the

Amended Complaint in the manner provided under Rule 4.  There is no indication on the docket that these defendants were properly served with the Amended Complaint; they have not yet appeared in this action.

The Amended Complaint alleges that Capers made several statements to the media calling Plaintiff "racist" and urging parents and City officials to "take[] steps to ensure that this type of degrading and traumatic incident will not occur again." (AC ¶ 162.)  It alleges that Martinez, a parent leader of the Coalition of Educational Justice, referred to Plaintiff's lesson as an "outrageous, racist incident." (*Id.*)  And it alleges that CEJ described Plaintiff's lesson as a "racist and psychically damaging incident" and a "racist slavery lesson," and sent a petition to Mayor de Blasio stating, "It's been more than a month since the *Daily News* broke a story about a white teacher in the Bronx who, in a lesson on slavery and the Middle Passage, made Black students in several classes lay face down on the floor and even stepped on a female student while asking 'see how it feels to be a slave?'"  The petition added, "Parents need [Mayor de Blasio] to step up and take action." (*Id.*)  Plaintiff alleges that all three defendants "exhibited flagrant disregard as to whether the accusations made against the Plaintiff were actually true." (*Id.*)

The two newly named defendants – Philip Scott and Advise Media Network ("Advise") – have not been served with process, according to the docket, and so have not appeared.  The Amended Complaint alleges that Scott made several defamatory remarks about Plaintiff during an episode of Advise Show TV, of which he is the host and which is operated by Advise.  Although the Amended Complaint quotes nearly the entire show, the gravamen of Plaintiff's allegation is that Scott defamed Plaintiff when he described her as a "white supremacist teacher," reported that she instructed three students to "get on the ground" and "proceeded to step on [a student's] back," urged viewers to call the DOE and X118 to demand Plaintiff's termination from the school, and,

according to the Amended Complaint, implied that Plaintiff's conduct was criminal.  (AC ¶ 141.)
The allegations themselves are not new; they appeared in Plaintiff's original complaint, but Scott
and Advise were not named as defendants in the original caption.

DISCUSSION

## I.      Legal Standard

To survive a motion to dismiss made pursuant to Federal Rule 12(b)(6), "a complaint must
contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its
face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.
544, 570 (2007)). The plaintiff must plead "factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating
whether the Complaint meets this standard, the Court must accept all factual allegations as true
and draw all reasonable inferences in Plaintiff's favor. *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493
F.3d 87, 98 (2d Cir. 2007). The Court is not, however, obligated to accept as true legal conclusions
couched as factual allegations. *Rolon v. Hennenman*, 517 F.3d 140, 148–49 (2d Cir. 2008); *see
also Iqbal*, 556 U.S. at 678. Unless a plaintiff's well-pleaded allegations have "nudged [its] claims
across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed."
*Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

## II.     To the Extent that Plaintiff's Amended Claims Are Based on Facts Underlying Claims Already Dismissed, those Claims Are Dismissed Under the Law of the Case Doctrine

Most of the Amended Complaint repeats the allegations made in the Complaint, and in her
papers responding to the various motions, Plaintiff urges the Court to reconsider its February 24,
2020, decision dismissing the Complaint.  I decline to do so.

The law of the case doctrine dictates that a court should adhere to its own decision at an
earlier stage of the litigation unless there are "cogent" or "compelling" reasons not to, such as "an

intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990) (quoting *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  Plaintiff did not make a timely motion for reconsideration[2] of its previous ruling, and has not given the Court any reason, let alone a "compelling" one, to deviate from its prior rulings. This is self-evident concerning the claims against the Media Defendants and Senator Parker, because no new factual allegations are asserted against them. It is also true of all of the claims dismissed previously, to the extent that those claims are predicated on the factual allegations that were previously found to be inadequate but that were repleaded anyway.  There has been no change in controlling law or any new evidence, and the Court sees nothing wrong with its dismissal of the claims that were already dismissed. Therefore, every claim in the Amended Complaint is dismissed as against every moving defendant, to the extent that the claim is predicated on the facts alleged in the original pleading.

The only question, then, is whether any of the dismissed claims has been resuscitated, as against any of the moving defendants, by any newly pleaded facts.

The answer is: no.

## III. Plaintiff's Amended Claims Are Dismissed Because Plaintiff Pleads No New Facts That Render Any of Her Claims Viable

### A. The Amended Complaint is Dismissed as Against the City Defendants

Plaintiff includes causes of action for violations of the due process guarantee of the Fourteenth Amendment, "discrimination," fraud, negligence, and negligent and intentional infliction of emotional distress.

---

[2] Local Rule 6.3 requires that motion for reconsideration be made within fourteen days after an adverse decision.

1.  <u>The Additional Facts Pleaded Do Not Revive Plaintiff's Procedural Due Process
    Claim</u>

The Court originally dismissed Plaintiff's procedural due process claim on a variety of

grounds: because Plaintiff had not pleaded any facts showing that she – a probationary teacher

who could have been fired for almost any reason (or no reason) –  possessed a protectable property

interest in  continued employment; because she had failed to avail herself of an adequate remedy

at state law; and because she did not allege any facts tending to show that any of the City

Defendants made false and injurious statements about her in close proximity to her termination.

Plaintiff has not remedied any of those deficiencies in her amended pleading, or pleaded any new

facts that would, if believed by a trier of fact, make out a viable due process claim. Therefore, her

due process claim against the City Defendants is dismissed with prejudice.

To state a claim for deprivation of procedural due process, "a plaintiff must show that a

government entity deprived her of a right secured by law." *Finley v. Giacobbe*, 79 F.3d 1285,

1296 (2d Cir. 1996).  When analyzing due process claims, the threshold issue is whether the

plaintiff possessed a valid property or liberty interest. *Oneida Indian Nation of N.Y. v. Madison

Cty.*, 665 F.3d 408, 427-28 (2d Cir. 2011).

Plaintiff alleges no new facts that bear on her due process claim under the Fourteenth

Amendment.  As a probationary teacher, Plaintiff possessed no property right in her job; that has

not changed since the dismissal of her original pleading.

Although the Amended Complaint adds several conclusory allegations that the City

Defendants did not follow proper procedures in investigating the allegations against Plaintiff (*see*

AC ¶¶ 178, 179), the Court already held that Plaintiff did not have a property interest in having the

allegations against her investigated using any specific procedures.  (Dkt. No. 94 at 19.)

Similarly, the Court already held that Plaintiff's "stigma-plus" claim (alleging deprivation of a liberty interest) failed because Plaintiff had an adequate state remedy available in the form of an Article 78 proceeding, which she chose not to pursue.  (Dkt. No 94 at 21.)  In a case "involving an at-will government employee, the availability of an adequate, reasonably prompt post termination name-clearing hearing is sufficient to defeat a stigma-plus claim."  *Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006).  Although Plaintiff argues, in response to the motion to dismiss, that no Article 78 proceeding was available to her, she does not cite any facts tending to show that the New York State Supreme Court would not have accepted such a filing from her, or any law in support of her contention that she had no state right of action.

Furthermore, even if Plaintiff could not have maintained an Article 78 proceeding, the Amended Complaint does not plead any new facts alleging that the City Defendants "made false and stigmatizing statements about her . . . in close proximity to [any] state-imposed burdens," as is required for Plaintiff to prevail on her "stigma-plus" claim.  *See Segal*, 459 F.3d at 212.  Doug Cohen's February 2, 2018, statement to the media that "while the investigation has not been completed, these are deeply disturbing allegations, and the alleged behavior has no place in our schools or in our society" – the only new statement identified in the Amended Complaint – was made over seven months prior to Plaintiff's termination.  *Cf. Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004).  And while Plaintiff argues that the statement falsely conveyed that the allegations of corporal punishment made against her were true, Cohen did not attribute any wrongdoing to Plaintiff.  His commentary conveyed only his opinion that the allegations against Plaintiff were disturbing. That statement of opinion does not give rise to a "stigma-plus" claim. *See Nat'l Rifle Ass'n of Am. V. Cuomo*, 350 F. Supp. 3d 94, 133 (N.D.N.Y. 2018) (citing *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010)).

Plaintiff's due process claim against the City Defendants is dismissed with prejudice.

2.  The Additional Facts Pleaded Do Not Revive Plaintiff's Equal
    Protection/Discrimination Claim

The Amended Complaint purports to include a cause of action for "violation [of] civil rights and discrimination." This could be read to be an equal protection claim arising under the Fourteenth Amendment and actionable under 28 U.S.C. § 1983, or a race discrimination in employment claim brought under 18 U.S.C. § 1981[3] or under Title VII of the Civil Rights Act of 1964.  Read generously, the Amended Complaint now alleges that, because of her race, Plaintiff was treated differently than (1) the parent of one of her students, and (2) the Chancellor of the DOE, both of whom are black, and both of whom apparently received some unspecified benefit that Plaintiff did not.  (AC ¶ 197.)

Whatever her theory, the flaw in this new claim is obvious. To state a claim under § 1983, a plaintiff must show that she was treated differently than others similarly situated as a result of intentional or purposeful discrimination.  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). And to state a *prima facie* case of race discrimination claim in employment under either Title VII or Section 1981, Plaintiff would need to allege "that similarly situated employees of a different race were treated more favorably," *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)); *Brown v. Daikin America, Inc.*, 756 F.3d 219, 229-30 (2d Cir. 2014); Albert v. Carovano, 851 F.2d 561, 573 (2d Cir.1988).

---

[3] Although Section 1981 does not provide a distinct private right of action against state actors, *Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018), Section 1983 provides a remedy (and the exclusive remedy) for violations of rights guaranteed under Section 1981, *Gladwin v. Pozzi*, 403 F. App'x 603, 604-05 (2d Cir. 2010).

When dismissing the original complaint, the Court noted that Plaintiff pleaded no facts from which one could infer that any similarly situated person of a different – which in her case would be a non-Caucasian probationary teacher who taught a controversial lesson – was treated any differently than Plaintiff.  Plaintiff's effort to resurrect that claim by identifying specific comparators only makes patent the deficiency in her claim, since she is not similarly situated to either a parent of a student or to the Chancellor of the DOE.  The Amended Complaint, like its predecessor, is devoid of any allegation that a non-Caucasian teacher – someone similarly situated to plaintiff but of a different race – taught a controversial lesson without suffering any consequence.  Her equal protection claim and race discrimination claims under § 1983 are dismissed with prejudice.

To the extent Plaintiff asserts a § 1983 claim against the City of New York, her claim also fails because the Amended Complaint does not plead municipal liability under *Monell v. Department of Social Services*, 436 U.S. 21, 25 (1991).  In dismissing the original complaint, the Court held that Plaintiff failed to plead her *Monell* claim because the Complaint did not allege an underlying constitutional violation or a pattern or practice of discrimination.  While the Amended Complaint makes a passing and wholly conclusory reference to a pattern of discriminatory behavior against non-tenured teachers (AC ¶ 198), it does not allege a single fact in support of that claim.  Plaintiff has again failed to plead a *Monell* claim against the City.

Finally, the Amended Complaint makes a passing reference to 42 U.S.C. § 1985 as a basis for federal jurisdiction.  (AC ¶ 1.)  However, Plaintiff does not even mention Section 1985 in her brief in opposition to the City Defendants' motion to dismiss, nor does the Amended Complaint include any allegation that any combination of defendants conspired to deprive Plaintiff of equal

protection under the law.  This Court views Plaintiff's silence as a concession that the Amended Complaint does not state a claim for a violation of Section 1985.

These claims are all dismissed with prejudice.

3. <u>The Additional Facts Pleaded Do Not Revive Plaintiff's State Law Claims Against the City Defendants</u>

Plaintiff originally brought claims for negligent and intentional infliction of emotional distress, and negligence, against the all the defendants, including the City Defendants.  The Court dismissed these claims as against all Defendants.  In her Amended Complaint, Plaintiff restates those claims, but only as against the City Defendants.  Plaintiff also restates her claim for fraud against the City Defendants.  Those claims are dismissed with prejudice.

*Negligent and intentional infliction of emotional distress*.  The Court previously dismissed Plaintiff's claims for negligent and intentional infliction of emotional distress because they were duplicative of Plaintiff's claims for defamation.  (Dkt. No. 94 at 53.)  But the Amended Complaint does not assert a defamation claim against the City Defendants. So I analyze these claims relying on traditional common law principles.

To satisfy the standard for intentional infliction of emotional distress, a plaintiff must describe conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Murphy v. American Home Prod. Corp.*, 461 N.Y.S.2d 232, 236 (N.Y. 1983) (quoting Rest. Second Torts § 46(1), comment d).  This standard is "rigorous, and difficult to satisfy." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 122 (1993) (citation omitted).  "New York courts are exceedingly wary of claims for intentional infliction of emotional distress in the employment context because of their reluctance to allow plaintiffs to avoid the consequences of the employment-at-will doctrine by bringing a wrongful discharge claim under a different name."

*Mariani v. Consol. Edison Co.*, 982 F. Supp. 267, 275 (S.D.N.Y.1997) (collecting cases), *aff'd*, 172 F.3d 38 (2d Cir.1998).

Plaintiff's claim for intentional infliction of emotional distress fails for several reasons. First, "It is well settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity." *Lauer v. City of New York*, 659 N.Y.S.2d 57, 57 (2d Dep't 1997) (collecting cases). Second, Plaintiff's allegations against the City Defendants do not rise to the level of intentional infliction of emotional distress.

The factual allegations undergirding her IIED claim are as follows: Defendants violated the New York City Chancellor Regulations and United Federation of Teachers Contract while investigating the complaints against her; made several statements to the media about those allegations and the ensuing investigation that Plaintiff deems offensive; "deceived" Plaintiff by inviting her back to X118, only to reassign her before the start of the Fall 2018 semester; and "wrongfully" terminated Plaintiff.

The statements made by the City Defendants to the media are not sued on as defamatory, and the fact that they were offensive to Plaintiff does not cause them to be "outrageous" or "extreme" or to go "beyond all possible bounds of decency." Those statements conveyed only that there was an ongoing investigation against Plaintiff, that a spokesperson for the DOE found Plaintiff's alleged behavior to be disturbing, and that, in September 2018, the DOE had begun the process of firing Plaintiff due to her "unacceptable behavior and performance as an educator." (AC ¶¶ 180, 181.) As discussed above, none of these statements accuses Plaintiff of any wrongdoing; descriptions of Plaintiff's behavior as "disturbing" and "unacceptable" are statements of opinion that cannot form the basis of a claim for IIED. *See Zuber v. Bordier*, 135 A.D. 709 (2d Dep't 1987).

As noted in the original decision dismissing Plaintiff's due process claim, she had no right to have particular procedures followed during the investigation into the offending lesson, so her claim that the failure to follow procedure rose to the requisite level of outrageousness has no basis in fact. However, even if the City Defendants had failed to follow all correct procedures while investigating Plaintiff's conduct, that would not be "atrocious, and utterly intolerable in a civilized community" – especially as Plaintiff was a probationary teacher and could be fired at any time.

Similarly, the allegation that she was fired wrongfully does not rise to the level of IIED, for the reasons stated in *Mariani, supra*., – namely, that IIED claims cannot be used to avoid the employment at will doctrine. Plaintiff was a probationary teacher with no right to continued employment. It did not matter whether her employer did not like her lesson plan because it offended parents, or was somehow racially offensive, or simply because they thought there were better ways to make the point, or because the employer did not like the way she dressed. Plaintiff had no right to continue as a teacher in the New York City Public Schools. Had she been past her probationary period, matters might be different; but because she was a probationer, she was an at-will employee, and nothing about her firing could be characterized as "outrageous" or "extreme."

For the same reason, the contention that Plaintiff was "deceived" into thinking that she would keep her old job does not rise to the level of a disfavored IIED claim.

Plaintiff has also failed to state a claim against the City Defendants for negligent infliction of emotional distress.

A cause of action for negligent infliction of emotional distress only exists where a defendant owes a "special duty" to the plaintiff. *Cucchi v. New York City Off–Track Betting Corp.*, 818 F. Supp. 647, 656 (S.D.N.Y. 1993). An employer does not owe a special duty to an individual employee, because it has an obligation to treat all employees in the same manner. *Id.*

Plaintiff nonetheless claims that "Defendants were required to monitor, supervise and control, thereby creating a special relationship." (Dkt. No. 127 at 45.) Aside from the fact that Plaintiff fails to specify what Defendants were required to monitor, supervise, and control, a relationship stemming from Defendants' obligation to oversee their employees would not be unique to Plaintiff. Therefore, Plaintiff's argument with respect to a special relationship with the City Defendants is meritless.

_Negligence_. Though far from clear, Plaintiff's negligence claim against the City Defendants appears to be premised on the allegation that Defendants "depart[ed] from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff" and "fail[ed] to perform certain procedures" throughout the investigation. (AC ¶ 199.) As with a claim for negligent infliction of emotional distress, liability for negligence may not be imposed on a government entity in the absence of a special duty. _Johnson v. New York City Bd. of Educ._, 671 N.Y.S.2d 112, 112 (2d Dep't 1998). Plaintiff has not pled the existence of a special duty. In addition, as a probationary employee, her employment was terminable at will, without regard to the procedures that were or were not followed in firing her. Accordingly, the negligence claim is dismissed.

_Fraud_. The Court originally dismissed Plaintiff's fraud claim against the City Defendants because the Complaint did not plead the elements of fraud and came nowhere close to the level of particularity demanded by Rule 9(b). The Amended Complaint does not cure those deficiencies.

To state a claim for common law fraud in New York, a plaintiff must plead that (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of

21

such reliance plaintiff sustained pecuniary loss." *Stephenson v. PricewaterhouseCoopers, Ltd. Liab. P'ship*, 482 F. App'x 618, 622 (2d Cir. 2012) (citation omitted).

There is only one newly pleaded representation that Plaintiff claims was false and that was made to her (rather than to OSI investigators), such that she could have relied upon it: Plaintiff was given a schedule for the upcoming school year at X118 on August 22, when in fact the classrooms assigned to her at X118 had already been assigned to other teachers, and, according to Plaintiff, there were no plans for Plaintiff to resume her position at her old school. Plaintiff alleges that this was done to mislead her into thinking that she still had a job with the DOE.

The logic behind Plaintiff's allegation escapes me. If, as she insists, the DOE had already decided to fire her in August, it is not plausible that the City Defendants would have tried to mislead her into thinking that she still had her old job. Under the *Twombley/Iqbal* pleading standard, a plaintiff's allegations must "nudge [her] claims across the line from conceivable to plausible" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's allegation does not allow the Court to infer that the City Defendants acted with any intent to deceive her by giving her the schedule.

But in the end, the fraud claim fails for a different reason: Plaintiff alleges no facts tending to show that she believed and relied on this schedule by engaging, or refraining from engaging, in any course of conduct.

There are two allegations in the Amended Complaint that might, generously read, be seen as intending to plead that Plaintiff justifiably relied and, as a result of that reliance, suffered some pecuniary loss. Neither does.

The first is Plaintiff's contention that she was told that she was released from reassignment (i.e., permitted to return to X118) and given a "false" schedule on August 22 – at a time when the DOE had no intention of allowing her to teach at X118 – and her reliance thereon prevented her from applying for a position elsewhere with the DOE using the NYC Open Market System.  The problem is that Plaintiff also affirmatively alleges that she did not rely on the schedule. She alleges that she thought receipt of the schedule was not enough of a reason for her to conclude that she was being reinstated at X118; she alleges that she needed formal notice from the DOE authorizing her return to the school, which she had not received. (AC ¶ 88.)  Indeed, Plaintiff pleads that she was concerned that she would be accused of insubordination if she went back to X118 – even though she had received a schedule.  (*Id.*)  These facts are inconsistent with any allegation that Plaintiff was comfortable enough about her position to refrain from applying for jobs elsewhere in the New York City School System. So is the fact that, as affirmatively pleaded by Plaintiff, the DOE had already decided to fire her by August 22 (AC ¶ 185); if that were indeed the case (and I must presume that allegation to be true on a motion to dismiss) she could not reasonably have relied on the schedule to refrain from applying for other jobs, since there is no way that the same DOE that just fired her because of an event that led to bad publicity for the DOE (as Plaintiff's unfortunate lesson did) would have hired her at another school.[4]

The contention that Plaintiff did *not* apply for jobs at other schools, in reliance on the "false" schedule, is further belied by Plaintiff's allegation that, had she received the formal notice

---

[4] There are other problems with Plaintiff's "reasonable reliance on the false schedule" argument. For example, Plaintiff contends that she would have applied for jobs at other schools if she had formal notice that the disciplinary matter against her was over and that she could return to X118. (AC ¶ 88.) This means she did not refrain from applying to other schools because of the false notice; it means she refrained from applying to other schools because she did not get the formal notice from the DOE authorizing her to return to her old position.

of reinstatement from the DOE in a timely fashion – i.e., had she known that the DOE would permit her to return to X118 – she *would* have applied for jobs at other schools.  (*See* AC ¶ 88.) Both cannot be true.

The second possibility is that Plaintiff lost her job with the Connetquot School District, for which she applied in October 2018, when the news of her final termination became public. But Plaintiff does not allege that she would have applied for the job in Connetquot in August had she known she would not be teaching at X118 in September; indeed, she does not allege that there was any job in Connetquot (or anywhere else) for which she would and could have applied between August 22 (when the "false" schedule was given to her) and September 4 (when she was told that she would not be allowed to return to the classroom). Therefore, Plaintiff does not plead facts tending to show that the loss of her job in Connetquot – which occurred long after she learned that she would not be teaching in accordance with the schedule she was given on August 22 – was occasioned by her reasonable reliance on that schedule, reliance that necessarily ended no later than September 4.

Therefore, Plaintiff's fraud claim against the City Defendants is dismissed with prejudice.

B. *The Amended Complaint is Dismissed as Against the Remaining Defendants*

1. The Newly Pleaded "False Light" Claim is Dismissed as Legally Insufficient

The Amended Complaint adds a new cause of action for presenting her in a false light against the Daily News Defendants, the Media Defendants, Senator Parker, Scott, Advise, Capers, Martinez, and CEJ.

New York law, which governs Plaintiff's state law claims, does not recognize the tort of "presenting [someone] in a false light." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 357 (S.D.N.Y. 1998) (citing *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. 1993); *Freeman v. Johnston*, 192 A.D.2d 250 (1st Dep't 1993)).  Either a statement is defamatory, or it is not.

Therefore, this newly pleaded claim is dismissed with prejudice.

2. <u>The Defamation Claims Are Dismissed Against All Defendants</u>

     i.   *The Media Defendants and Senator Parker*

The defamation claims against these defendants were dismissed in the original decision because they were non-actionable statements of opinion rather than assertions of fact that are capable of being proved true or false, *see* Dkt. No. 94. Therefore, the amended pleading could only state a claim for defamation if it identified some new statement made by these defendants that was capable of being defamatory. It does not. In fact, the Amended Complaint asserts no new factual allegations against the Media Defendants or Senator Parker. Although the pleading tries to identify all of the ways in which the previously pleaded statements were false, it does not identify a single new statement that was not discussed in the earlier pleading. Plaintiff's "new" allegations thus do not cure the defects in her original complaint; they are mere reargument, which the court rejects, both as untimely under the Local Rules (S.D.N.Y. R. 6.3) and as just plain wrong.

The defamation claims against the Media Defendants and Senator Parker are, therefore, dismissed – this time, with prejudice.

     ii.   *The Daily News Defendants*

This Court previously held that the *Daily News* articles were privileged under New York Civil Rights Law, § 74 ("Section 74"), which provides, "A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published." Under Section 74, a report of an official proceeding that is "fair and true" is protected by an "absolute privilege," and this privilege is "not defeated by the presence of malice or bad faith." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 477 (S.D.N.Y. 2012) (internal quotation marks and citations omitted). Courts look to the context

of the statements in order to determine whether a reasonable observer would find that they constitute reports of a proceeding. *See Gonzalez v. Gray*, 69 F. Supp. 2d 561, 570 (S.D.N.Y. 1999).

While the Amended Complaint does not identify any new articles or statements that were made by the Daily News Defendants, it now alleges that the February 1 article was not reporting on an official proceeding, because the OSI investigation began after the February 1 article was published, thereby removing it from the protection of Section 74. (AC ¶¶ 74-76, 126.)

"New York courts have broadly construed the meaning of an official proceeding as used in Section 74." *TestMasters Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 588 (S.D.N.Y. 2009) (internal citations omitted). "[E]ven the announcement of an investigation by a public agency, made before the formal investigation has begun, is protected as a report of an official proceeding within the contemplation of the statute, as the report is of an ongoing investigation." *Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of New York*, 475 N.Y.S.2d 383, 388 (1st Dep't 1984) (internal citations omitted." Similarly, "reports on allegations that lead to a government investigation are fully protected." *SentosaCare LLC v. Lehman*, 58 Misc. 3d 1216(A), 2018 WL 692588, at *7 (Sup. Ct. Kings Cty. Jan. 25, 2018).

Plaintiff's argument relies on her assertion that she did not receive a formal notice of any investigation until February 1. However, the date on which she received notice is not particularly relevant, since the United Federation of Teacher's Contract and Chancellor's Regulations – which are quoted in the Amended Complaint – require OSI to notify Plaintiff of any investigation into corporal punishment allegations "within five school days of its commencement." (AC ¶ 60.) Therefore, her receipt of notice on February 1 means only that an investigation was opened at some point on or after January 26. The February 1 article reports that a spokesperson for the DOE told the *Daily News* that there was an ongoing but incomplete investigation (Rosenfeld Decl. Ex. B at

4). As of February 1, when this statement appeared, it was a true statement, since Plaintiff by her own admission received notice of the investigation no later than February 1.  Moreover, even if one accepts Plaintiff's own account of the events, the article was true because it was published after the OSI investigation began.  Plaintiff alleges that "there was no allegation being investigated . . . until the afternoon of February 1, 2018," but according to the Amended Complaint (and the timestamp on the article), it was first published online at 9:00 PM.  (AC ¶ 76; Rosenfeld Decl. Ex. B at 1.)

Plaintiff also asserts (again) that the *Daily News* articles published myriad false statements about Plaintiff and the OSI investigation that were "fair and true."  But they are the same statements that were considered in connection with the original motion to dismiss. All Plaintiff does in her Amended Complaint is to explain in greater detail why these statements are not "fair and true." (AC ¶¶ 106, 138.)  That does not get her around the law of the case doctrine. But even if it did, her defamation claim would have to be dismissed.

To meet the "fair and true" requirement of Section 74, the substance of the allegedly defamatory article must be "substantially accurate."  *Holy Spirit Ass'n*, 399 N.E.2d 1185, 1187 (N.Y. 1979).  However, "[t]he question is not whether or not the statement is 'true.'  The question is whether it is a substantially accurate description of the claims made in the . . . proceeding." *Mulder v. Donaldson, Lufkin & Jenrette*, 611 N.Y.S.2d 1019, 1024-25 (Sup. Ct. N.Y. Cty. 1994), *aff'd*, 623 N.Y.S.2d 560 (1st Dep't 1995).  The language "should not be dissected and analyzed with a lexicographer's precision."  *Id.*  Rather, the "test is whether the published account of the proceeding would have a different effect on the reader's mind than the actual truth, if published." *Proctor & Gamble*, 974 F. Supp. 190, 196 (E.D.N.Y. 1997) (quoting *Daniel Goldreyer, Ltd. V. Van der Wetering*, 630 N.Y.S.2d 18, 22 (1st Dep't 1995)).

This Court already ruled that the articles as a whole were substantially accurate, chiefly because the use of phrases like "students said" demonstrates that the articles were reporting on allegations made by students. In her original complaint, Plaintiff did not allege that the Daily News' *descriptions* of the student allegations were erroneous.  (Dkt. No. 94 at 34-35.)  The same is true of all but two of the statements identified in the Amended Complaint. So I turn to those two exceptions.

First, Plaintiff argues that the sub-headline "walked on students," which appears in the October 20, 2018 article, is a gross mischaracterization of the students' allegations. Plaintiff did not in fact walk on any students and no student so alleged; rather, students alleged that Plaintiff used her hands and feet to push the students closer together during the demonstration.

While the sub-headline is admittedly dramatic, it does not, in the opinion of this Court, remove the October 20 article from the protection of Section 74.  A sub-headline must be construed in conjunction with the body of the article.  *See Mann v. Abel*, 885 N.E.2d 884, 886 (N.Y. 2008). The article reports that students claimed Plaintiff "pressed on a student's back during the demonstration." That report is consistent with the students' complaints that Plaintiff pressed on students' backs using her hands and/or feet (*see* Rosenfeld Decl. Ex. B at 234). But the article acknowledges that the OSI investigation "did not substantiate the allegations that [Plaintiff] engaged in corporal punishment by walking on students' backs."  (Rosenfeld Decl. Ex. C at 1.)  A reasonable reader would understand from the context of the entire article that Plaintiff did not literally walk on the backs of her students, and that she was not fired for walking on the backs of her students.  *See Cholowsky v. Civiletti*, 16 Misc. 3d 1138(A), at *5 (Sup. Ct. Suffolk Cty. 2007).

Second, Plaintiff takes issue with a sentence from the February 1 article that reads, "Cummings was removed from her post for a couple of days following the incident but then

returned to the class and was in school Thursday." Plaintiff contends that the statement is false because she taught a different class during those three days. It is not. The statement accurately reflects that Plaintiff, by her own admission, was removed from her post in class 408 from January 23 until January 25, 2018. (*See* AC ¶ 116.) The article says nothing about what Plaintiff did during those three days; it discusses what she indisputably did not do, which was teach her regular class – her "post."

Finally, Plaintiff alleges that because the *Daily News* articles were not labeled as "op-ed" or "opinion" pieces on the publication's website, the articles must contain only assertions of fact and are therefore defamatory. (AC ¶ 128.) This line of argument is irrelevant in light of the Court's conclusion that the *Daily News* articles contained fair and true reports of the allegations against Plaintiff. However, the argument is also wrong as a matter of law. "The key inquiry is whether challenged expression, *however labeled by defendant*, would reasonably appear to state or imply assertions of objective fact." *Immuno AG v. Moore-Jankowski*, 77 N.Y. 2d 235, 243 (N.Y. 1991) (emphasis added). The Court has already held that several of the statements that Plaintiff challenges are expressions of opinion (*see* Dkt. No. 94 at 37-41) and will not revisit that ruling.

The defamation claims against the Daily News Defendants are dismissed with prejudice.

3.  The Non-Moving Defendants

This leaves us with the defamation claims against the defendants who have not yet appeared in this action: formerly sued defendants Capers, Martinez and CEJ, and newly-added defendants Scott and Advise.

As noted above, Capers, Martinez and CEJ have not been properly served with the Amended Complaint. The docket contains no indication that Scott and Advise have been served

with anything. The question is whether to do something about the claims against these non-served, non-moving defendants.

While dismissing a complaint as to a non-moving defendant is not an ordinary practice, a district court may dismiss claims *sua sponte* for failure to state a claim, particularly where a defendant has neither been served nor appeared. *Alki Partners, L.P. v. Vatas Holding GMBH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2016). However, the plaintiff must be given notice and opportunity to be heard on the issue. *Antidote Intern. Films, Inc. v. Bloomsbury Pub., PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) (citing *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 580 (S.D.N.Y. 2002); *Wachtler v. Cty. Of Herkimer*, 35 F.3d 77, 82 (2d Cir. 1994).

Plaintiff has filed three complaints and nearly 200 pages of arguments opposing the motions to dismiss the Amended Complaint, some portions of which seem to anticipate the arguments for dismissing the allegations that would be made by these five defendants. And it appears to the Court that none of her claims against any of these defendants states a claim for relief. Indeed, some of the claims asserted against these defendants are legally deficient because they are identical to legally deficient claims asserted against one or more moving defendants. For example: the "presented in a false light" claim no more states a claim against these five defendants than it does against the moving defendants.

However, since I am required to give notice, I hereby advise Plaintiff that I am considering dismissing all claims against Capers, Martinez, CEJ, Scott and Advise because they have not been properly served (or, in the case of Scott and Advise, served at all), and because it appears from the face of the pleading that the allegations against them fail to state a claim under Rule 12(b)(6). Plaintiff has five business days to submit a brief of no more than fifteen double spaced pages

addressing whether any of her claims is viable as against any of these five defendants.  I mean what I say – there can be ONE and only ONE brief; it can be no more than FIFTEEN pages long; it has to be in 12-point type; it cannot contain footnotes; and it must address the allegations against all five of these defendants.

## CONCLUSION

Defendants' motions to dismiss Plaintiff's Amended Complaint are granted.  The Amended Complaint is dismissed with prejudice as against the City Defendants, the Daily News Defendants, the Media Defendants, and Senator Parker.  The Clerk of the Court is directed to remove the motions at Dkt. Nos. 104, 105, 108, 110, and 113 from the Court's list of pending motions.

Dated: March 26, 2021

_____

Chief Judge

BY ECF TO ALL COUNSEL