UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
PATRICIA CUMMINGS,

                                      Plaintiff,

                                                              Docket No. 19-cv-07723 (CM)

              -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
GIULIA COX; COURTNEY WARE; BEN CHAPMAN;
NEW YORK DAILY NEWS; DR. ANDRE PERRY;
THE HECHINGER REPORT a/k/a HECHINGER
INSTITUTE ON EDUCATION AND THE MEDIA;
LENARD LARRY McKELVEY a/k/a
CHARLAMAGNE THA GOD;
WWPR-FM (105.1 MHZ); iHEARTMEDIA;
CLEAR CHANNEL COMMUNICATIONS, INC.;
NEW YORK STATE SENATOR, KEVIN S. PARKER;
COALITION OF EDUCATIONAL JUSTICE;
ANGEL MARTINEZ2; NATASHA CAPERS;
PHILIP SCOTT; ADVISE MEDIA NETWORK
n/k/a AFRICAN DIASPORA NEWS CHANNEL, and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants,
and/or employees of the aforementioned agencies owing a
duty of care to Plaintiff, individually and jointly and
severally,

                                      Defendants.
-----------------------------------------------------------------------X

## PLAINTIFF'S BRIEF IN SUPPORT OF ACTION AGAINST REMAINING DEFENDANTS

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax: (516) 794-2816
E-mail: Tom@TLiotti.com

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................... *i*

PRELIMINARY STATEMENT ......................................................................................................1

STATEMENT OF FACTS .............................................................................................................1

      **THE PLAINTIFF HAS SUBSTANTIATED ALLEGATIONS
SUFFICIENT TO JUSTIFY A DEFAMATION CLAIM AGAINST
THE REMAINING DEFENDANTS** ...............................................................................2

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*600 W. 15th St. Corp. v. VonGutfeld,*
    80 NY2d 130,139 (1992) ........................................................................................8, 14

*Armstrong v. Simon & Schuster,*
    85 N.Y.2d 373, at 380, 649 N.E.2d 825,
    625 N.Y.S.2d 477, 1995 N.Y. LEXIS 699 .........................................................4

*Aronson v. Wiersma,*
    65 N.Y.2d 592, at 593-594, 483 N.E.2d 1138,
    493 N.Y.S.2d 1006, 1985 N.Y. LEXIS 15929,
    12 Media L. Rep. 1150 ....................................................................................3, 8

*Beauharnais v. Illinois,*
    343 U.S. 250 (1952) ..........................................................................................12

*Brian v. Richardson,*
    87 NY2d 46, 51, 660 NE2d 1126, 637 NYS2d 347 [1995] ........................5, 10

*Bufalino v. Associated Press,*
    692 F.2d 266, 269 (2d Cir. 1982) ......................................................................6

*Buckley v. Littell,*
    539 F.2d 882, at 883, 1976 U.S. App. LEXIS 8226,
    1 Media L. Rep. 1762 .........................................................................................8

*Celle v. Filipino Reporter Enters.,*
    209 F.3d 163, 2000 U.S. App. LEXIS 6785 .......................................................8

*Christopher v. American News Co.,*
    171 F.2d 275 (7th Cir. 1948) ............................................................................10

*Clemente v. Espinosa,*
    749 F. Supp. 672, 677 (E.D. Pa. 1990) ..............................................................6

*Conley v. Gibson,*
    355 U.S. 41 (1957) ...........................................................................................13

*Davis v. Boeheim,*
    24 NY3d 262, 268 [2014] [citations omitted] ...........................................4, 9, 10

*Davis v. Ross,*
    754 F.2d 80, 1985 U.S. App. LEXIS 28944at 82 ...............................................8

*Doe v. Doe,*
No. 16 Civ. 0332 (NSR), 2017 WL 3025885,
(SDNY July 14, 2017) ........................................................................................11

*Egiazaryan v. Zalmayev,*
880 F Supp 2d 494, 503 [SD NY 2012] .............................................................10

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC,*
F Supp 3d , 2016 WL 3773394, [SD NY 2016] ...............................................10

*Farber v. Jefferys,*
33 Misc. 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011],
affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858.........................14

*Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York,*
101 AD2d 175, 182..............................................................................................15

*Gertz v. Welch,*
418 U.S. 313-45 (1974) ..............................................................................3, 7, 9

*Golub v. Enquirer/Star Group,*
89 N.Y.2d 1074, at 1076, 681 N.E.2d 1282, 659 N.Y.S.2d 836,
1997 N.Y. LEXIS 761, 25 Media L. Rep. 1863 ..................................................3

*Gross v. New York Times Co.,*
82 N.Y.2d 146, 623 N.E.2d 1163, 603 N.Y.S.2d 813,
1993 N.Y. LEXIS 3358, 21 Media L. Rep. 2142 ...................................5, 10, 14

*Immuno AG. v. Moor-Jankowski,*
77 NY2d 235, 254, 567 NE2d 1270, 566 NYS2d 906 [1991],
cert denied 500 US 954, 111 S Ct 2261, 114 L Ed 2d 713 [1991] ..............5, 14

*James v. Gannett Co.,*
40 N.Y.2d 415, at 418, 353 N.E.2d 834, 386 N.Y.S.2d 871,
1976 N.Y. LEXIS 2900 .........................................................................................4

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
341 U.S. 123 (1951) .............................................................................................7

*Leon v. Martinez,*
84 NY2d 83, 87-88, 638 NE2d 511, 614 NYS2d 972 [1994] ...........................5

*Leonard F. v. Isr. Disc. Bank of N.Y.,*
199 F.3d 99, 107 (2d Cir. 1999) .......................................................................13

*Liberman v. Gelstein,*
    80 NY2d 429, 435 (1992) .......................................................................................11

*Mann v. Abel,*
    10 NY3d 271, 276, 885 NE2d 884, 856 NYS2d 31 [2008], cert denied
    555 US 1170, 129 S Ct 1315, 173 L Ed 2d 584 [2009] ...........................4, 5, 10

*Mencher v. Chelsey,*
    297NY 94, 100 [1947] ...........................................................................................4

*Mr. Chow of New York v. Ste. Jour Azur S.A.,*
    759 F.2d 219, 224, (2d. Cir. 1985) U.S. App. LEXIS 30321,
    11 Media L. Rep. 1713 ..........................................................................................9

*Parks v. Steinbrenner,*
    131 AD2d 60, 62-63 [1st Dept. 1987] .................................................................10

*Patel v. Searles,*
    305 F.3d 130, 135 (2d Cir. 2002) ........................................................................13

*Penn Warranty Corp. v. DiGiovanni,*
    2005 NY Slip Op 25449 10 Misc3d 998 (2005) .................................................11

*Qureshi v. St. Barnabas Hosp. Ctr.,*
    430 F.Supp.2d 279, 287 (SDNY 2006) ................................................................9

*Restis v. Am. Coalition v. Nuclear Iran, Inc.,*
    53 F. Supp. 3d 705, 2014 U.S. Dist. LEXIS 139402 ............................................8

*Rosenblatt v. Baer,*
    383 U.S. 75, 92 (1966) ..........................................................................................6

*Shields v. Citytrust Bancorp, Inc.,*
    25 F.3d 1124, 1127 (2d Cir. 1994) .......................................................................9

*Silsdorf v. Levine,*
    59 NY2d 8, 12 [1983], cert denied, 464 US 831 ............................................4, 10

*Silverman v. Daily News, LP,*
    129 AD3d 1054 (2nd Dept. 2015) .....................................................................12

*Smith v. City of New York,*
    No. 13-CV-2395, 2014 U.S. Dist. LEXIS 139267,
    2014 WL 4904557, (E.D.N.Y. Sept. 30, 2014) ............................................13, 14

*Steinhilber v. Alphonse,*
    68 NY2d 283 at 289 (1986) .......................................................................9, 10, 14

*Thomas H. v. Paul B.*,
    18 NY3d 580, 584, 965 NE2d 939, 942 NYS2d 437 [2012] .........................................4, 5

*Wenz v. Becker*,
    948 F Supp. 319, 323 [SDNY] ...................................................................................7

*Wieman v. Updegraff*,
    344 U.S. 183 ...........................................................................................................7

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971) ................................................................................................7

**Rules**

Fed. R. Civ. P. 8 (a) (2) ...................................................................................................13

Fed. R. Civ. P. 12 (c) .....................................................................................................13

**Secondary Sources**

Bruce W. Sanford, Libel and Privacy, 4.12, at 129–30 (2d ed. 1999)............................6

Restatement (Second) of Torts § 581A (1977) ...............................................................6

**PRELIMINARY STATEMENT**

In accordance with this Court's Memorandum Decision and Order Dismissing Amended Complaint dated March 26, 2021, Plaintiff, Patricia Cummings, (hereinafter "Plaintiff" or "Ms. Cummings"), respectfully submits this Brief in support of maintaining her claims against the remaining Defendants, to wit: the Coalition of Educational Justice (CEJ); Angel Martinez (Martinez); Natasha Capers (Capers); Philip Scott (Scott); and Advise Media Network n/k/a African Diaspora News Channel (Advise). The Plaintiff has amply demonstrated that the allegations against these Defendants sufficiently state a claim and would survive a scrutiny in accordance with Federal Rule of Civil Procedure 12(b)(6).

**STATEMENT OF FACTS**

As a result of the extensive litigation in this matter, the Plaintiff presumes the Court's familiarity with the facts of this case, nonetheless, it bears mentioning that Plaintiff seeks damages related *inter alia* to defamation, defamation *per se*, slander, slander *per se*, libel, and libel *per se*, against these Defendants, and as a result of the "*badge of infamy,*" with which Plaintiff has forever been branded, which has changed the entire course of her life. Ms. Cummings has been publicly shamed and falsely accused of "*child abuse,*" labeled as a "*racist,*" referred to as a "*white supremacist,*" specifically in various and extensive media outlets discussing this reported issue. She has received direct threats of violence and death causing her to fear for her life. Ms. Cummings was ultimately exonerated of the erroneous allegation, which was investigated by the New York City Department of Education (DOE) Office of Special Investigations (OSI), that she "pushed Student A's back with her knee and asked if it hurt,"—Notably <u>NOT</u> what was reported and asserted as fact. The segments broadcasted by these Defendants asserted as fact, grossly false information, which was completely different from the allegation that was actually investigated by OSI. Ms. Cummings **NEVER** "*singled out black students and made them act like slaves;*" **NEVER**

1

told them to "*lie on the floor for a lesson on slavery*" and **NEVER** "*stepped on their backs to show them what slavery felt like.*" The Amended Complaint alleges that Defendant Capers, made several statements to the media calling Ms. Cummings "racist" and urging parents and City officials to "take steps to ensure that this type of degrading and traumatic incident will not occur again." (AC ¶ 162.) To reiterate, the "incident" **NEVER** occurred. It further alleges that Defendant, Martinez, referred to Plaintiff's lesson as an "outrageous, racist incident," (Id.), and it alleges that Defendant CEJ described Plaintiff's lesson as a "racist and '*psychically*' damaging incident" and a "racist slavery lesson," and sent a petition to Mayor de Blasio stating, "*It's been more than a month since the Daily News broke a story about a white teacher in the Bronx who, in a lesson on slavery and the Middle Passage, made Black students in several classes lay face down on the floor and even stepped on a female student while asking 'see how it feels to be a slave?*'" The petition added, "Parents need [Mayor de Blasio] to step up and take action."(Id.) In this regard, this Court correctly recognized in its decision that Plaintiff alleges that all three of these Defendants "exhibited flagrant disregard as to whether the accusations made against her were actually true." (Id.) The Amended Complaint also alleges that Defendant Scott made several defamatory remarks about Plaintiff during an episode of Advise Show TV, of which he is the host and which is operated by Advise. The substantial part of Plaintiff's allegation is that Scott defamed Ms. Cummings, when he falsely described her as a "white supremacist teacher," reported that she instructed three students to "get on the ground" and "proceeded to step on [a student's] back," and urged viewers to *call the DOE and the District to demand Plaintiff's termination from the school*, and proclaimed that Ms. Cummings' conduct was criminal. (AC ¶ 141.)

**THE PLAINTIFF HAS SUBSTANTIATED ALLEGATIONS
SUFFICIENT TO JUSTIFY A DEFAMATION CLAIM AGAINST THE REMAINING
DEFENDANTS**

Specifically, as to Defendants, Philip Scott and Advise Media Network n/k/a African Diaspora News Channel (Advise), there was a flagrant disregard as to whether the accusations

made against the Plaintiff were actually true. The Defendant, Philip Scott, in his official capacity as host of the Advise Show TV on his YouTube channel, made defamatory statements about Plaintiff. (AC ¶ 51-56.) Further, as to Defendants, the Coalition of Educational Justice (CEJ); Angel Martinez *[Harlem mother of three and CEJ parent leader]* (Martinez); Natasha Capers [*coordinator of the Coalition for Educational Justice*] (Capers), these parties subjected the Plaintiff to public ridicule and disparagement based upon the false and fabricated information solely to champion their platform regarding systemic racism and Culturally Responsive Education. These Defendants summarily, publicly, and falsely adjudicated and disseminated upon the public at large that Ms. Cummings traumatized, disrespected, and assaulted her students, also with a flagrant disregard as to whether the defamatory statements made against the Plaintiff were even true.

The law of defamation serves to protect an individual's right to one's reputation. See, *Gertz v. Welch*, 418 U.S. 313-45 (1974). It has long been recognized that "a person has a legal right to enjoy his reputation free from false or derogatory characterization by others." Id. Therefore, a statement that casts an individual unfavorably in society will constitute an infringement upon that person's reputational right and give rise to a cause of action for civil defamation, as it has done here. The legal question to be resolved by this Court is whether a reasonable basis exists for defamatory interpretation of the words and statements spoken by Defendants, who are public figures, against Ms. Cummings, a private figure. If the words are "not reasonably susceptible of a defamatory meaning, they are not actionable, and cannot be made so by a strained and artificial construction." See, *Golub v. Enquirer/Star Group*, 89 N.Y.2d 1074, at 1076, 681 N.E.2d 1282, 659 N.Y.S.2d 836, 1997 N.Y. LEXIS 761, 25 Media L. Rep. 1863; *Aronson v. Wiersma*, 65 N.Y.2d 592, at 593-594, 483 N.E.2d 1138, 493 N.Y.S.2d 1006, 1985 N.Y. LEXIS 15929, 12 Media L. Rep. 1150). Thus, the Court must determine "whether the contested statements are reasonably susceptible of a defamatory connotation,....[and] [i]f, upon **any** reasonable view of the stated facts, plaintiff would be entitled to recovery for defamation, the complaint must be deemed to

3

sufficiently state a cause of action." See, *Davis v. Boeheim*, 24 NY3d 262, 268 [2014] [citations omitted]; See, *Armstrong v. Simon & Schuster*, 85 N.Y.2d 373, at 380, 649 N.E.2d 825, 625 N.Y.S.2d 477, 1995 N.Y. LEXIS 699; *Silsdorf v. Levine*, 59 NY2d 8, 12 [1983], cert denied, 464 US 831; *Mencher v. Chelsey*, 297NY 94, 100 [1947]; [court may **not** determine sole meaning of words, only whether reasonable basis exists for defamatory interpretation]) (Emphasis added). It is then for a jury to determine "whether that was the sense in which the words were likely to be understood by the ordinary and average person" See, *James v. Gannett Co.*, 40 N.Y.2d 415, at 418, 353 N.E.2d 834, 386 N.Y.S.2d 871, 1976 N.Y. LEXIS 2900, quoting, *Mencher v. Chesley*, supra, 297 N.Y. 94, at 100, 75 N.E.2d 257, 1947 N.Y. LEXIS 904. In *Davis v. Boeheim*, supra, at 110 A.D.3d 1431 (N.Y. 2014), the Court held that in determining whether a defamation claim is sufficient, it must look at whether the "contested statements are reasonably susceptible of a defamatory connotation." It is here too that the Court should see the right for redress. Notably, the dissent in *Davis*, supra, found that "[t]he issue at this early, pre-answer stage of the litigation, is whether [the complaint] sufficiently allege[s] false, defamatory statements of fact, rather than mere nonactionable statements of opinion" (Id. at 149). An analysis in this regard, is guided by the factors for distinguishing between expressions of opinion and assertions of fact, to wit: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact." See, *Mann v. Abel*, 10 NY3d 271, 276, 885 NE2d 884, 856 NYS2d 31 [2008], cert denied 555 US 1170, 129 S Ct 1315, 173 L Ed 2d 584 [2009]; see also, *Thomas H. v. Paul B.*, 18 NY3d 580, 584, 965 NE2d 939, 942 NYS2d 437 [2012]). In view of the majority's determination in *Davis*, supra, with respect to the first two factors, the analysis must focus on the third factor, and with respect to that factor, the Court noted the rule requiring an

inquiry "to the over-all context in which the assertions were made and determining on that basis 'whether the reasonable reader [or listener] would have believed that the challenged statements were conveying facts about the . . . plaintiff[s].'" See, *Brian v. Richardson*, 87 NY2d 46, 51, 660 NE2d 1126, 637 NYS2d 347 [1995], quoting, *Immuno AG. v. Moor-Jankowski*, 77 NY2d 235, 254, 567 NE2d 1270, 566 NYS2d 906 [1991], cert denied 500 US 954, 111 S Ct 2261, 114 L Ed 2d 713 [1991]; see, *Mann*, *supra*, 10 NY3d at 276. Applying that rule here, and noting the principles set forth in *Leon v. Martinez*, (84 NY2d 83, 87-88, 638 NE2d 511, 614 NYS2d 972 [1994]), in light of the important point that this matter concerns a pre-answer analysis, it is clear that the Amended Complaint does sufficiently allege false, defamatory statements of fact. See, *Gross v. New York Times Co.*, 82 N.Y.2d 146, 623 N.E.2d 1163, 603 N.Y.S.2d 813, 1993 N.Y. LEXIS 3358, 21 Media L. Rep. 2142. As such, it can be concluded that through the statements noted in the pleadings, the amended complaint sufficiently alleges false, defamatory representations of fact about the Plaintiff, i.e., Ms. Cummings "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" Thus, constituting "child abuse," labeling her as a "racist," and falsely referring to and describing her as a "white supremacist teacher," and in the case of Defendant, Scott, urging his audience to call the DOE and the District to demand Ms. Cummings' termination from the school. The Defendants concluded that Ms. Cumming's conduct was criminal, as having traumatized, disrespected, and assaulted her students. See, *Thomas H.*, supra, 18 NY3d at 584; *Gross*, supra, 82 NY2d at 156; cf. *Mann*, supra, 10 NY3d at 276-277. Thus, it can be said that the statements constitute mixed opinion, i.e., opinion that "implies a basis in facts, which are not disclosed to the reader or listener," and therefore, are actionable. See, *Gross*, supra, 82 NY2d at 153). Also, "the defamatory nature of the statement[s] [at issue here] cannot be immunized by pairing [them] with [the words,]" See, *Thomas H.*, supra, 18 NY3d at 585.

"The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being—a concept at the root of any decent system of ordered liberty." See, *Rosenblatt v. Baer*, 383 U.S. 75, 92 (1966) (Stewart, J., concurring) Justice Stewart's observation indicates the right to petition the government for a redress of grievances and the individual's right to the protection of his reputation from defamatory falsehoods are fundamental liberties. A statement that casts an individual unfavorably in society will constitute an infringement upon that person's reputational right and fundamental liberty, thus giving rise to a cause of action for civil defamation, as it has done here. The Plaintiff is a "<u>private person</u>" who should not be required to bear the substantial, "actual malice" burden in order to prove defamation or defamation *per se*, as might otherwise be required under constitutional free-speech principles, in situations, where the defamed person can be considered a "public official" or "public figure." Furthermore, imputations of criminality are one of the most common categories of defamation. See, Bruce W. Sanford, <u>Libel and Privacy</u>, 4.12, at 129–30 (2d ed. 1999). In addition to being defamatory, imputations of a criminal offense, historically have been considered as slander *per se*, because of their serious threat to reputation and, therefore, do not require proof of special damages. <u>See</u>, Restatement (Second) of Torts § 581A (1977). (Claim of "alleged mob ties" was enough for defamation). <u>See</u>, *Bufalino v. Associated Press*, 692 F.2d 266, 269 (2d Cir. 1982); <u>see</u> <u>also</u>, *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990). Ms. Cummings was defamed publicly, and as such has irrevocably impugned her reputation. Given the weight attributed by society to the words disseminated by media and other organized public activists, Ms. Cummings is unable to effectively come back against such defamatory assertions of fact and characterizations. Thus, Ms. Cummings has been branded with a "*badge of infamy*" that will forever stay with the community, the community's thoughts and impressions of her. Once the Plaintiff is officially branded with a "*badge of infamy,*"

society's impression about her is forever changed and can never be reverted back. Given these circumstances, Ms. Cummings will be unable to effectively combat the effects of defamatory characterization. "A public forum and the award of damages after the fact cannot undo either the deep and unforgettable harm suffered by an innocent victim, or removed the impression etched upon the minds of those around him/[her]." See, *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); see also, *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123 (1951). The Supreme Court held that defamatory attacks… upon a citizen's reputation may constitute a deprivation of "liberty." See, *Wieman v. Updegraff*, 344 U.S. 183. Moreover, the Court has viewed liberty as encompassing the right to contract and to engage in a particular livelihood. This constitutional interest in reputation was conceived during the days of the "Red Scare" following World War II and it was originally adopted to limit the ability to label someone as a "communist." See, *Wenz v. Becker*, 948 F Supp. 319, 323 [SDNY]. The Court must see the correlation and take the same stance when labeling a private figure a "racist" or "white supremacist," especially with the racial tensions and divide in our society today.

A key word in this case is "context," which is defined in Merriam Webster's dictionary as "*the part of a discourse that surround a word or passage and can throw light on its meaning.*" Simply put, it is the circumstances that form the background of an event, idea, or statement in such a way as to enable readers to understand the narrative, i.e. what is being told. The circumstances that formed the background of Defendants' respective narratives are the assertions of false information as facts about and concerning Plaintiff and the polarizing stigmatizations regarding white Americans. It is asserted as fact that Ms. Cummings "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" An assertion of this magnitude, in the racially divided social climate we see today is extremely damaging. While it has been held that an assertion that cannot be proved false cannot be held libelous, (see, *Gertz v. Robert Welch, Inc.*, supra, 418

US at 339–40, 94S. CT. 2997; *Buckley v. Littell*, 539 F.2d 882, at 883, 1976 U.S. App. LEXIS 8226, 1 Media L. Rep. 1762), the Defendants' remarks and statements attributable to the Plaintiff herein **can** be proven false. Under both Federal and New York Constitutions, only statements that are demonstratively false are actionable, especially in regards to a matter of public concern. "Because falsity is a necessary element in a defamation claim involving statements of public concern, it follows that only statements alleging fact can properly be the subject of a defamation action." See, *600 W. 15th St. Corp. v. VonGutfeld*, 80 NY2d 130,139 (1992). Notably, there can be no First Amendment privilege. By making the claimed statements, Defendants are stating **and asserting as a fact** that Ms. Cummings "*laid students on the floor on their stomachs and stepped on their backs*", thus constituting a criminal act under New York State Penal Law; particularly the "assault" as falsely indicated by Defendant Capers. (AC ¶ 66.) What these respective Defendants discussed and promoted, never happened, nor was Ms. Cummings ever charged with any crime, which could have easily been verified. Moreover, what was stated by these Defendants could easily be interpreted by an individual with reasonable intelligence as stating facts about Ms. Cummings, a private figure. Their respective statements are not only demonstratively false, they are also tortious since they are "reasonably susceptible to a defamatory meaning when it tends to expose a person" to those things, e.g., "hatred, contempt or aversion, or to induce an evil or unsavory opinion of him[/her] in the minds of a substantial number in the community." See, *Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 2014 U.S. Dist. LEXIS 139402 (quotations and alterations omitted).

In a defamation action, in particular slander, a plaintiff must identify "a plausible defamatory meaning of the challenged statement or publication. If the statement is susceptible of only one meaning, the court "must determine, as a matter of law, whether that one meaning is defamatory." See, *Celle v. Filipino Reporter Enters.*, 209 F.3d 163, 2000 U.S. App. LEXIS 6785, quoting, *Davis v. Ross*, 754 F.2d 80, 1985 U.S. App. LEXIS 28944at 82; see also, *Aronson*, supra,

483 N.E.2d at 1139. Plaintiff provided the meaning for the Court within the charts listed in the Amended Verified Complaint, (AC ¶s 51-55 and 66-68), and "[T]he inquiry into whether a statement should be viewed as one of fact or one of opinion must be made from the perspective of an ordinary reader [listener] of the statement." See, *Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 224, (2d. Cir. 1985) U.S. App. LEXIS 30321, 11 Media L. Rep. 1713 [alteration added]. Defendants, cannot cloak tortious defamatory actions as protected speech, even though such behavior and words, most certainly, do have specific meanings, and when in context of reporting, they are personal in their invective and designed to expose Plaintiff, (a highly educated, Caucasian teacher, teaching in a predominantly minority populated school), to public contempt and ridicule, impugn her character and professional integrity, and have her terminated.  "Generally, it has been held that a dismissal of a claim will be upheld, only if it appears that the plaintiff can prove no set of facts upon which relief may be granted." See, *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir. 1994). Such is not the case herein. A statement is defamatory "if it tends to expose the plaintiff to public contempt, ridicule, aversion, or disgrace, or induce an evil opinion of [him] in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." See, *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F.Supp.2d 279, 287 (SDNY 2006). Clearly, Plaintiff has demonstrated the defamatory nature of Defendants' statements. These statements undoubtedly exposed the Plaintiff to public contempt, ridicule, aversion, or disgrace, and induced an evil opinion of her in the minds of right-thinking persons, and have deprived her of her friendly intercourse in society and her liberty. Their speech incited true threats and is evident in the demonstrations, ridicule, harassment, and threats of violence against her which followed. Further, the anticipated argument in opposition to defamation is a characterization as privileged opinion. The privilege protecting the expression of an opinion is rooted in the preference that ideas be fully aired. See, *Davis v. Boeheim*, 24 NY3d 262 at 269 (2014), citing, *Steinhilber v. Alphonse*, 68 NY2d 283 at 289 (1986), and *Gertz v. Robert Welch, Inc., supra*, 418 US 323, 339-340 (1974).

9

Nonetheless, privileged statements of opinion are either accompanied by the **facts** on which they are based, or do not imply that they are based on undisclosed facts. See, *Gross v. New York Times Co.*, 82 NY2d 146 at 53-154 (1993). "When a statement of opinion implies that it is based on unstated facts that justify the opinion, the opinion becomes an actionable 'mixed opinion." See, *Egiazaryan v. Zalmayev*, 880 F Supp 2d 494, 503 [SD NY 2012], quoting, *Steinhilber*, supra, 68 NY2d at 289, "because a reasonable listener or reader would infer that 'the speaker [or writer] knows certain facts, unknown to [the] audience, which support [the] opinion and are detrimental to the person [toward] whom [the communication is directed]'" See, *Gross*, supra, 82 NY2d at 153-154, quoting, *Steinhilber*, 68 NY2d at 290, and "if the predicate facts are disclosed, but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity," the statement may be actionable as a "defamatory opinion." See, *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, F Supp 3d , 2016 WL 3773394, [SD NY 2016], citing *Silsdorf v. Levine*, 59 NY2d 8, 15-16 [1983], cert denied 464 US 831; see also, *Parks v. Steinbrenner*, 131 AD2d 60, 62-63 [1st Dept. 1987].

An asserted fact may be distinguished from a non-actionable opinion if the statement: (1) has a precise, readily understood meaning, that is (2) capable of being proven true or false, and (3) where the full context in which it is asserted or its broader social context and surrounding circumstances indicate to readers or listeners that it is likely fact, not opinion. See, *Davis*, supra, 24 NY3d at 271, citing, *Mann v. Abel*, 10 NY3d 271 at 276 (2008), and *Brian v Richardson*, 87 NY2d 46, 51 [1995]; *Gross*, supra, 82 NY2d at 153; *Steinhilber*, supra, 68 NY2d at 292. "Where readers/listeners would understand a defamatory meaning, liability cannot be avoided merely because the publication is alleged to be cast in the form of an opinion, belief, insinuation or even question. A statement about one's attitude is defamatory if it tends to lower him in the esteem of the community." See, *Christopher v. American News Co.*, 171 F.2d 275 (7th Cir. 1948). "[T]he following factors should be considered in distinguishing fact from opinion: (1) whether the

10

language used has a precise meaning or whether it is indefinite or ambiguous, (2) whether the statement is capable of objectively being true or false, and (3) the full context of the entire communication or the broader social context surrounding the communication. Moreover, the Court of Appeals makes a distinction between a statement of opinion that implies a factual basis that is not disclosed to the reader, and an opinion that is accompanied by a recitation of facts on which it is based. The former is actionable, the latter is not." <u>See</u>, *Penn Warranty Corp. v. DiGiovanni*, 2005 NY Slip Op 25449 10 Misc3d 998 (2005). Defendants lead their respective audiences to believe that the recitation of the "facts" presented were accurate.

Defendants' statements are not opinion. They are admittedly a *reaction*. A reaction is an action or statement in response to a stimulus; the way someone responds to a situation at the time that it is taking place. Contrarily, an opinion is a belief that a person has formed about a topic or issue; someone's state of mind towards something, as in if they like or don't like it or if they agree or disagree about it. It bears mentioning that Under New York law, some statements are considered defamation (slander or libel) *per se* if they "(1) charge plaintiff with a serious crime; (2) tend to injure plaintiff in its business, trade or profession; (3) [communicate that] plaintiff has some loathsome disease; or (4) impute unchastity. <u>See</u>, *Doe v. Doe*, No. 16 Civ. 0332 (NSR), 2017 WL 3025885, (SDNY July 14, 2017) (a statement is *per se* defamatory when it tends to injure another in his or her trade, business, or profession) (<u>citing</u> *Liberman v. Gelstein*, 80 NY2d 429, 435 (1992)). Such statements are presumed to cause injury, so a separate showing of harm is not necessary. Here, their actions and speech, integral to illegal conduct, stating that Ms.Cummings committed a serious crime, to wit: walking on the backs of students, is akin to assault, child abuse, and endangerment. Additionally, Defendants' false labeling of Plaintiff as a racist, who committed such an atrocity, has irreparably injured Plaintiff in her profession as a school teacher and otherwise. <u>Most notably, Ms. Cummings was never accused or investigated on an allegation of a racist act by the City Department of Education, because the NYC DOE Office of Equal</u>

11

Opportunity (OEO) <u>declined to investigate the actual allegation.</u> She was investigated on **ONE** allegation of corporal punishment that did **NOT** involve any of the facts presented by the media, in particular, these Defendants. Notably, the United States Supreme Court in *Beauharnais v. Illinois*, [343 U.S. 250 (1952)], upheld the constitutionality of a municipal statute in affirming a $200 fine against Beauharnais for distributing leaflets, which attributed criminal proclivities to African-Americans. Id. at 251–52, 266, 267. In the instant matter, Defendant Philip Scott's publication portrayed depravity, criminality, and a lack of virtue of a Caucasian woman and exposed her to contempt, derision and ridicule, which has harmed her personal and professional reputation. Scott's statements that were presented as fact are tortious, as he has shown a complete and reckless disregard for whether it was true or false. Indeed, the framers of the United States Constitution could not have foreseen the technological developments that have advanced our society and the world. Though technology has had a profound, positive impact on our everyday lives, especially with regard to communication, it has also had the power to amplify hate, hate speech, speech integral to illegal conduct, discrimination based on race and their stereotypes, and defamatory statements. Recognizing the harm of perpetuating stereotypes, the law must provide that racial or ethnic defamation and communications that foment racial hatred are not protected speech, and just as in *Beauharnais,* <u>supra</u>, this Court must take the same stance.

Further, contrary to the defendant in *Silverman v. Daily News, LP*, 129 AD3d 1054 (2nd Dept. 2015), Defendants commented on and promoted erroneous and fallacious facts. There were no allegations from parents, students, or staff that the Plaintiff ever "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" Likewise, plaintiff contests that she ever admitted to "having misbehaving students sit in the front of the room to demonstrate the conditions on slave ships, or that a parent reported that she 'pushed her knee' into *students'* (plural) backs and asked if students (plural) felt pain." It cannot be said that there was <u>nothing</u> in the statements,

12

which disparage the Plaintiff's professional skills or competence or attributes wrongdoing to her. The entirety of Defendants' comments was a <u>criticism of Ms. Cummings' skills, competence, and professional integrity</u>, along with falsely accusing her of the equivalent of assault, child abuse, and/or child endangerment; speech integral to criminal conduct.

A defamation plaintiff must usually establish the following elements to recover: (1) <u>Identification</u>: The plaintiff must show that the publication was "of and concerning" himself or herself; (2) <u>Publication</u>: The plaintiff must show that the defamatory statements were disseminated to a third party; (3) <u>Defamatory meaning</u>: The plaintiff must establish that the statements in question were defamatory. For example, the language must do more than simply annoy a person or hurt a person's feelings; (4) <u>Falsity</u>: The statements must be false; truth is a defense to a defamation claim. Generally, the plaintiff bears the burden of proof of establishing falsity; (5) <u>Statements of fact</u>: The statements in question must be objectively verifiable as <u>false</u> statements of fact. In other words, the statements must be provable as false; and (6) <u>Damages</u>: The false and defamatory statements must cause actual injury or special damages. Clearly, the Plaintiff has successfully demonstrated each of the elements. Further, in *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002), the Court discussed the high burden of proof necessary on a motion to dismiss under Fed. R. Civ. P. 12 (c) and held: "A complaint will only be dismissed under Rule 12(c) if it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." <u>See</u>, *Patel*, <u>supra</u>. (internal quotations omitted).

Further, the Court has referenced Fed. R. Civ. P. 8 (a) (2) to illustrate the liberal system of pleading in a federal action. <u>See</u>, *Conley v. Gibson*, 355 U.S. 41 (1957). "A District Court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." <u>See</u>, *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); <u>see also</u>, *Smith v. City of New York*, No. 13-CV-2395, 2014 U.S. Dist.

LEXIS 139267, 2014 WL 4904557, (E.D.N.Y. Sept. 30, 2014) ("When deciding a motion on the pleadings, the court must confine its consideration to the pleadings and their attachments, to documents . . . incorporated in the complaint by reference, and to matters of which judicial notice may be taken") (internal quotation marks omitted). All relevant factors may be considered in determining whether a word or statement is defamatory. See, *Farber v. Jefferys*, 33 Misc. 3d 1218[A], 2011 NY Slip Op 51966, [Sup Ct, NY County 2011], affd 103 AD3d 514 [1st Dept. 2013], lv denied 21 NY3d 858, citing, *Steinhilber v. Alphonse*, 68 NY2d 283, 291-292 [1986], and courts have considerable discretion in deciding whether a statement is defamatory, guided only by "the words themselves and their purpose, the circumstances surrounding their use, and the manner, tone and style with which they are used…" See, *Steinhilber*, supra, 68 NY2d at 291-292. While notably, the New York Court of Appeals has repeatedly held that the New York Constitution provides greater protection than the United States Constitution and, accordingly that the inquiry under the two constitutional regimes is different, (see, *600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d at 136 & 138, 589 N.Y.S.2d at 827 & 829, 603 N.E.2d at 932 & 934 (1992); *Immuno AG v. J. Moor-Jankowski*, 77 N.Y.2d at 248-49, 566 N.Y.S.2d at 913-14, 567 N.E.2d at 1277-78 (1991)), the thrust of the dispositive inquiry under both New York and constitutional law is "whether a reasonable [person]" could have concluded that there was a conveyance of facts about the plaintiff." See, *Gross v. New York Times Co.*, 82 N.Y.2d at 153, 603 N.Y.S.2d at 817, 623 N.E.2d at 1167 (1993); *600 West 115th Street*, supra, at 829, 603 N.E.2d at 934 (Under either Federal or State law, the dispositive question is whether a reasonable person….could have concluded that [defendant] was conveying facts about the plaintiff). Clearly a reasonable audience in this instance would believe that the statements were conveying facts about the Plaintiff [this is evidenced by the vicious attacks and public outcry for social justice that continued followed by the Plaintiff's removal from her position as a New York City teacher], and would believe that the statements constituted reports of a proceeding, which they did not. There never was a reporting of

14

any truth, to wit: there was NEVER any proceedings investigating the Plaintiff for "*singling out black students and making them act like slaves*;" or telling them to "*lie on the floor for a lesson on slavery and then stepping on their backs to show them what slavery felt like*." THIS ERRONEOUS ACCUSATION WAS NEVER THE SUBJECT OF ANY INQUIRY BY THE DEPARTMENT OF EDUCATION OR OTHERWISE. It was entirely **INACCURATE**. See, *Freeze Right Refrigeration & Air Conditioning Services, Inc. v. City of New York*, 101 AD2d 175, 182. This was never something investigated by OSI. It was completely ignored that the Plaintiff was never being accused or investigated of "racist acts." She was investigated by the DOE for an allegation of corporal punishment. The Defendants evidently preferred their respective audiences to believe the false narrative of a "slavery controversy" that they themselves promoted, in a furtherance of demonstrating the existence of systemic racism and the need for Cultural Responsive Education.

**CONCLUSION**

Based on the foregoing, the Plaintiff has demonstrated the existence of viable claims against the remaining Defendants, to wit: the Coalition of Educational Justice (CEJ); Angel Martinez (Martinez); Natasha Capers (Capers); Philip Scott (Scott); and Advise Media Network n/k/a African Diaspora News Channel (Advise) that would survive a Motion to Dismiss in accordance with Rule 12 (b)(6), and for such other and further relief that this Court may deem just and proper.

Dated: Garden City, New York
      March 30, 2021

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL 4471)
Attorneys for the Plaintiff, *PATRICIA CUMMINGS*

15