UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
PATRICIA CUMMINGS,

                                        Plaintiff,

                                                                Docket No. 19-cv-07723 (CM)

                        -against-

THE CITY OF NEW YORK;
NEW YORK CITY DEPARTMENT OF EDUCATION;
GIULIA COX; COURTNEY WARE; BEN CHAPMAN;
NEW YORK DAILY NEWS; DR. ANDRE PERRY;
THE HECHINGER REPORT a/k/a HECHINGER
INSTITUTE ON EDUCATION AND THE MEDIA;
LENARD LARRY McKELVEY a/k/a
CHARLAMAGNE THA GOD;
WWPR-FM (105.1 MHZ); iHEARTMEDIA;
CLEAR CHANNEL COMMUNICATIONS, INC.;
NEW YORK STATE SENATOR, KEVIN S. PARKER;
COALITION OF EDUCATIONAL JUSTICE;
ANGEL MARTINEZ2; NATASHA CAPERS;
PHILIP SCOTT; ADVISE MEDIA NETWORK
n/k/a AFRICAN DIASPORA NEWS CHANNEL, and
"JOHN DOE AND JANE DOE # 1-100" said names
being fictitious, it being the intent of Plaintiff to designate
any and all individuals, officers, members, agents, servants,
and/or employees of the aforementioned agencies owing a
duty of care to Plaintiff, individually and jointly and
severally,

                                        Defendants.
------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR REARGUMENT AND RECONSIDERATION

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq.
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*
600 Old Country Road, Suite 530
Garden City, New York 11530
Phone: (516) 794-4700
Fax: (516) 794-2816
E-mail: Tom@TLiotti.com

## PRELIMINARY STATEMENT

Patricia Cummings (hereinafter, "Plaintiff" or "Ms. Cummings") makes this motion for reargument and reconsideration with respect to the Court's March 26, 2021 Memorandum Decision and Order Dismissing Amended Complaint. Plaintiff respectfully seeks reconsideration based on the Court's Memorandum Decision and Order (hereinafter "Decision" for several reasons: First, the Decision's analyses were premised on material misapprehensions of, or unjustifiable inferences from, the facts of record, and Second, the Plaintiff presents herein the discovery and availability of new evidence not previously available at the time of the Court's consideration of the dismissal of the Amended Complaint.

## LEGAL ARGUMENT

### I. STANDARD FOR MOTION FOR RECONSIDERATION

Under Fed. R. Civ. P. 59(e) and Local Rule 6.3, motions for reconsideration may be granted where (1) the moving party can show an intervening change in the controlling law; (2) upon discovery of new evidence not previously available; or (3) on a showing of the need to correct a clear error of law or prevent manifest injustice. See, *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990) (quoting, *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)); *In re Beacon Associates Litig.*, 818 F. Supp. 2d 697, 701-02 (S.D.N.Y. 2011) (granting motion for reconsideration); see also, *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F.Supp.2d 696, 701 (S.D.N.Y.2001); and *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). In *Dookie v. Woo*, 2020 NY Slip Op 00975 (1st Dept. 2020), a party's submission of new evidence or argument in reply on the underlying motion, constitutes reasonable justification for granting renewal. See, *Schenectady Steel Co. v. Meyer Contr. Corp.*, 73 AD3d 1013, 1015-1016 (2nd Dept. 2010).

1

Plaintiff seeks reconsideration under the second and third categories. In particular, a motion for reconsideration on such grounds will be granted where "the moving party can point to controlling decisions or data that the court overlooked." See, 3 Motions in Federal Court § 9:36.50 (3d ed.), citing, *Analytical Surveys, Inc. v. Tonga Partners*, L.P., 684 F.3d 36, Fed. Sec. L. Rep. (CCH) P 96903, Fed. Sec. L. Rep. (CCH) P 96936 (2d Cir. 2012). The key is whether the "controlling decisions or data" that the court overlooked "might reasonably be expected to alter the conclusion reached by the court." See, *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256–57 (2d Cir.1995).

For the reasons set forth below herein, Plaintiff meets the high standard for reconsideration. Either a shift in the legal standard on which the Order hinges, or a full appreciation of the facts of record in light of the new evidence presented, could reasonably be expected to change the outcome.

## II. THE DECISION MISAPPREHENDS KEY FACTS THAT BEAR DIRECTLY ON THE IRREPARABLE HARM CAUSED TO THE PLAINTIFF

The Decision is premised on a number of distinct and significant facts that weighed heavily in the Court's analysis and conclusion. Plaintiff respectfully submits that under any evidentiary standard for finding a likelihood of success on the merits, and certainly under the "clear" or "substantial" evidence standards, reconsideration of the record is warranted because the Court appears to have overlooked material facts or made inferences not justified by the record and which were central to the outcome here. Given the overwhelming facts and evidence which fail to demonstrate a basis for dismissal of the Plaintiff's claims and the significance of the new evidence made available, Plaintiff submits that upon reconsideration the Court will likely conclude that its earlier determination should be revised.

As a result of the extensive litigation in this matter, the Plaintiff will not reiterate all of the specific the facts of this case, nonetheless, it bears mentioning that Plaintiff seeks damages

against these Defendants, and as a result of the "*badge of infamy,*" with which Plaintiff has forever been branded, which has changed the entire course of her life. Plaintiff has been publicly shamed and falsely accused of "*child abuse,*" labeled as a "*racist,*" referred to as an "*oppressor,*" and as a "*white supremacist,*" by many, including politicians and activists, and specifically in various and extensive media outlets discussing this asserted issue. She has received direct threats of violence and death causing her to fear for her life. Plaintiff was ultimately exonerated of the erroneous and unreported allegation that she "pushed Student A's back with her knee and asked if it hurt," following an investigation by the New York City Department of Education's Office of Special Investigations. This is notably different than what was egregiously asserted and presented as fact that was decimated onto the public by the Defendants.

The Plaintiff is damaged by the assertions presented as fact, of grossly false information, which was completely different from the actual allegation that was investigated by OSI. The actual allegation involved a false report that the Plaintiff "pushed Student A's back with her knee and asked if it hurt," during her lesson; the allegation was **NEVER** that she "*singled out black students and made them act like slaves;*" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like,*" as was falsely and repeatedly reported as fact.

The record does not support the dichotomy suggested by the Decision between what was actually being investigated and what was reported by the Defendants about the Plaintiff. The record the Court could have relied on to make its finding of fact in this regard is the fact that the Plaintiff plead factual content sufficient to allow the court to draw the reasonable inference that the Defendants are liable for the misconduct alleged. In the Decision, however, the Court devotes substantial discussion to this controversy and concludes, with nothing more than the fact that

Defendants summarily cannot be held liable for their acts against the Plaintiff, which cause her to be severely and irreparable harmed. Indeed, that conclusion is incompatible with the record, which, as the Court acknowledged, contained <u>un-rebutted proof and disputes the Defendants' arguments</u> in favor of a dismissal of all of her claims. Plaintiff respectfully questions both the conclusions of the Court as stated herein and the facts in evidence on which the Court relies to reach those conclusions.

Plaintiff is aware, of course, that a motion for reargument is not the venue for submission of evidence that was, in theory, available beforehand, notwithstanding the lack of notice. What Plaintiff can represent to the Court however, and what her counsel are duty bound to make a matter of record, at least insofar as a proffer, is that Plaintiff would and could have readily rebutted a dismissal had the new evidence been made available to the Plaintiff earlier, and in this regard, the Court's factual conclusion would, under the circumstances, have turned out entirely different. For purposes of this motion, however, Plaintiff submits that even absent the opportunity to present adequate evidence to a motion seeking the extreme consequence of dismissal, the record supports a basis to allow the Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged.

### III. NEW EVIDENCE MADE AVAILABLE TO THE PLAINTIFF BEARS DIRECTLY ON THE COURT'S DETERMINATION

On October 11, 2019, Ms. Cummings made a Freedom of Information Law (FOIL) request to receive records from the New York City Department of Education (NYC DOE). The NYC DOE acknowledged the request on October 21, 2019, by the Office of Legal Services of the Department of Education. In their response, they asked Ms. Cummings to "provide clarification by November 18, 2019" to her request for emails, as her request was not reasonably described pursuant to Public Officers Law 89(3)(a). It was further stated that the NYC DOE anticipated providing Ms.

Cummings with a response by November 18, 2019. A copy of the e-mail dated October 21, 2019, is annexed hereto as **Exhibit A**. On November 22, 2019, Ms. Cummings replied to the email received on November 21, 2019, so that her request would comply with Public Officers Law 89(3)(a). A copy of the correspondence dated November 22, 2019 is annexed hereto as **Exhibit B**. The November 18, 2019, correspondence from the NYC DOE addressed the request (though erroneously addressed to "Mr. Feldman"). In the response, the DOE stated that they "anticipate providing you [Ms. Cummings] with a response by January 31, 2020. However, a response was not given until February 3, 2020.

On February 3, 2020, the NYC DOE sent correspondence to Ms. Cummings stating that they needed additional time to respond to her request citing the "need to review the records to determine to the extent to which they must be disclosed," and "the number of requests received by the agency." Upon information and belief, it is at this time that the DOE acknowledged that they obtained all records in the request. Simply stated, how could someone need more time to review records if they have not located or obtained them? The February 3, 2020 letter gave a date of March 5, 2020, as to when a response to Ms. Cummings October 11, 2019 request would be honored. A copy of the correspondence dated February 3, 2019, annexed hereto as **Exhibit C**.

In this regard, the NYC DOE kept delaying their response and disclosure as demonstrated through their numerous monthly responses which later turned into quarterly delay letter responses between February 2020 and February 2021. Through the course of that year, Ms. Cummings began to respond to their email and delay letters. A copy of all correspondence for the NYC DOE is annexed hereto collectively as **Exhibit D**. After the NYC DOE received Ms. Cummings' response dated February 10, 2021, the NYC DOE *finally* complied with her request on February 26, 2021, (sixteen months after the initial request). A copy of the e-mail dated February 10, 2021 and letter

to the NYC DOE and the e-mail and correspondence from the NYC DOE dated February 26, 2021 are annexed collectively hereto as **Exhibit E**. It is at this time that Plaintiff, Patricia Cummings obtained indisputable evidence for the *first time* in support of her claims and subsequent Opposition to the Defendants' Motion to Dismiss. One of the documents disclosed, the OSI Intake Form submitted by Defendant Cox on January 18, 2018, explicitly evidences how Defendant Cox violated the Chancellor Regulation A-420; the intake form was not submitted in accordance with the regulation, to wit: (1) it was submitted after 6:00 pm; (2) the date and time of the incident were wrong; and (3) it violated the Plaintiff's due process by conducting the January 18, 2018, meeting upon the information and belief that she was aware of the mother's complaint submitted to the school on January 17, 2018. In accordance with the Chancellor Regulation A-420, with respect to the Plaintiff, the Defendant, Principal Cox did flagrantly violate the rule:

> Under the Regulation of the Chancellor, A-420, Section IV, (B), "[P]rincipal or designee must immediately report all allegations of corporal punishment of students by DOE employees, custodial workers, vendors, consultants, CBO staff and similar individuals to OSI within one school day of learning of the allegation by one of the following methods: (1) entering the information into the OORS; or (2) entering the information into the OSI reporting system, or calling OSI. If the Principal/designee enters a report of alleged corporal punishment into OORS, he/she will automatically be routed to the OSI's online reporting system.

Defendant Cox failed in following NYC DOE's policy and procedures by not submitting the alleged complaint timely, so that she could conduct a rogue investigation on January 18, 2018, thus violating Ms. Cummings' due process as outlined in the NYC DOE's policy and procedures. As the Regulations state the principal or designate must immediately report all allegations of corporal punishment within 24 hours of learning of the investigation. Id. Additionally, Defendant Cox showed Ms. Cummings the mother's written complaint, which further highlights Defendant Cox's misconduct, as well as her inability to follow NYC DOE policy and procedure.

It should be noted that conspicuously, the NYC DOE did not provide Ms. Cummings with everything she requested through FOIL. Notably, the DOE did not disclose the e-mail exchanges between OSI Deputy Director Christina Nowak, Director of Academic Policy Sara Shumway, and Chief of Staff Curriculum, Instruction and Professional Learning. According to the OSI Report, such email exchanges exist between April 3, 2018 and April 23, 2018. The Report further states at footnote 18: "A copy of the reference email exchange is maintained in the case file." A copy of the OSI Report is annexed hereto as **Exhibit F**. Upon information and belief, the NYC DOE did not disclose these e-mail exchanges because it would prove the causes of action alleged in Plaintiff's complaint. According to the Department of Education's own description of the duties and function of OSI, to wit: "OSI investigates allegations of improper and unlawful behavior, including corporal punishment and verbal abuse against students…,"alleged academic violations would not fall under the category of misconduct, because misconduct and academic violations are separate and apart from each other. This is further evidenced within the contract between NYSC DOE and UFT, because there are specific policies for dealing with pedagogy (i.e., academic violations). Issues with pedagogy would fall under incompetence in accordance with the contract. Therefore, OSI exceeded their scope when they probed the alleged curriculum/academic policy violations made by Defendant Cox against Ms. Cummings, and found her (Ms. Cummings) to have used "poor judgement." It was an improper finding, and upon information and belief, demonstrates the fraud and misconduct conducted by the NYC DOE.  Additionally, it is important to note that OSI Investigators are not New York State licensed teachers, nor do they have any knowledge of pedagogy; this is why OSI does not investigate pedagogical issues. According to the DOE's own policy, to evaluate a teacher's pedagogy/teaching practice, their lessons need to be observed. Ms. Cummings pointed this out in her letter to Superintendent Hulla. On October 5, 2018, Ms.

Cummings stated: "An important public policy issue is at stake here." "Everything about our evaluation and development system is based upon the understanding that a constructive professional process is the best way…..to help children learn." Furthermore, she stated that "the e-mail exchange between the OSI and the Office of Academic Policy violates the NYC DOE's own policy on how to evaluate a teacher's lesson and performance. Describing a lesson, (to which the investigator did not observe), to the Office of Academic Policy and anyone else, who did not observe the lesson for that matter, is negligent and an infringement upon the due process afforded to teachers with regard to evaluation; the lesson must be observed." This due process is afforded to all teachers regardless of their status as tenured or probationary teachers. Moreover, Ms. Cummings stated that the "conclusions" are based on hearsay evidence and have no basis in fact. The information [he – (Mr. Sandor)] received was hearsay due to the fact that neither he, nor the investigator, observed the lesson. Therefore, the conclusion of poor judgment…..has no basis in fact…."[and] cannot pass judgment and especially come up with a determination that the lesson "significantly diverged from best practices.'" As stated in the Amended Complaint, there was an observer of the lesson, Ralph Hudson.

As stated in the amended verified complaint and is evidenced by the OSI report, Ms. Cummings was cleared of the allegations of corporal punishment on July 24, 2018. According to the NYC DOE policy, teachers are to be informed in writing when they are authorized to go back to their teaching position. Ms. Cummings should have received a letter from Rodi, Director of Employee Relations, at some point in July, but that never occurred. Instead, Ms. Cummings was contacted by the District 10 UFT Representative, Marcus Escobar, *via* telephone, that she (Ms. Cummings) is being returned to her building and the investigation has been reduced to writing. Ms. Cummings did receive written notification of her reinstatement to her teaching position at

8

Bronx Middle School 118 on Sept. 4, 2018, when she reported to the school for the 2018-2019 school year. According to Chancellor Regulation A-420:VII.B "[I]f the accused employee was reassigned during the pendency of investigation <u>and there is no other reason for reassignment, the employee must be returned to his or her regular assignment</u>." So upon information and belief, there was no other reason for reassignment, therefore the NYC DOE returned Ms. Cummings to her regular assignment.

On August 22, 2018, at 3:05 pm, Ms. Cummings "received an email from Defendant Cox advising she was released from her reassignment in August, (which is factually wrong) and would be scheduled to be teaching at the William W. Niles School/Middle School 118 in September. Defendant Cox stated that Plaintiff would be tentatively teaching 6th grade social studies, the position that another teacher, (Mr. Cavallo), had vacated when he took an open market transfer in June. This is extremely notable, as the Plaintiff believes that was how the Defendant Cox knew the Plaintiff was going to be terminated…" (<u>See</u>, Amended Verified Complaint at #183). Ms. Cummings is certified in NYS to teach grades 7 through 12. According to state regulations, teachers are only permitted to be assigned no more than 1 period a day outside their certification, license/appointment area.  This is called incidental teaching. Therefore, upon information and belief, Principal Cox was attempting to either violate educational law, or knew Ms. Cummings was going to be terminated and she would be able to justify her hiring someone with that schedule.

On August 29, 2018, Ms. Cummings replied to Defendant Cox's email at 1:37 pm confirming her return to teach at the William W. Niles School – Middle School 118 for the 2018-2019 school year. It is at that time that Defendant Cox continued her misconduct and fraud. To fully comprehend this, one must look at the email exchanges between Defendant Cox and Katherine Rodi, beginning August 29th, 2018 at 3:56 pm, notably <u>AFTER</u> Ms. Cummings replied

to Defendant Cox's August 22nd e-mail confirming her return to the building to teach. The e-mails provided by the DOE through Ms. Cummings' FOIL request have all been redacted, to wit: there is no body of the email to read due to the redaction. However, all said emails have the subject line that reads: "Cummings Response / Teaching Assignment Sept. 2018." Defendant Cox's August 29th e-mail at 3:56 pm was not only to Katherine Rodi, Director of Employee Relations, but to Maribel Hulla, the District Superintendent, and Jeffrey Gamils, Senior Field Counsel at City of New York in the Bronx for the Department of Education. Copies of the Defendant Cox's August e-mails are collectively annexed hereto as **Exhibit G**. Upon information and belief, this is the correspondence, which the NYC DOE has redacted, that evidences Defendant Cox and the NYC DOE's misconduct, fraud, and inexplicable reassignment of Ms. Cummings' from her teaching position because she (Ms. Cummings), was all of a sudden now the "subject of pending employee discipline." Nowhere in the contract, Chancellor Regulations or the NYC DOE letter dated April 15, 2010, to which reassignment was further clarified, states "pending discipline" as an appropriate, proper, and valid use of reassignment. Therefore, Ms. Cummings' second reassignment on September 4, 2018, was arbitrary and capricious and violated her due process and rights afforded to her. The fact of the matter is that the Department of Education returned the Plaintiff, Ms. Cummings, to her to her regular assignment: teacher at the William W. Niles School – Middle School 118, evidencing there was NO reason for reassignment.

Upon information and belief, the moment Defendant Cox knew of Ms. Cummings' confirmation to return (August 29, 2018), she further set on a course of misconduct and fraud. Upon information and belief, Defendant Cox had Ms. Cummings reassigned from her teaching position for a second time because she knew Ms. Cummings' fate of termination and had already consolidated her out of the building. The consolidation out of the building is evidenced by the fact

that Ms. Cummings was given a "Fake Schedule," made to look as if Defendant Cox and the Department of Education provided Ms. Cummings with the due process that is afforded to her. If the schedule was actually true, she [Ms. Cummings], would have been the teacher of record for the classes listed on her schedule and a substitute would have been present from September 6 until October 18, and upon information and belief, there are no payroll documents supporting the payments of a substitute teacher for Ms. Cummings' class, or any documentation stating Ms. Cummings was the actual teacher of record. Additionally, the Principal is an NYC DOE agent that recommends termination of an employee to the Superintendent. The OSI Report recommended training for Ms. Cummings in accordance with progressive discipline as outlined in the contract, notably, <u>not</u> termination. Upon information and belief, the school's "Galaxy Budget System," (i.e. budget), would provide information such as the teachers on the school's payroll and would indicate that Defendant Cox already replaced Ms. Cummings as a teacher in the building. Therefore, the Plaintiff has demonstrated that the Court's consideration of this previously unavailable evidence would have adequately stated claims for the relief requested.

### IV. THE LAW OF THE CASE DOCTRINE WOULD NOT BE APPLICABLE

This Court found that to the extent that Plaintiff's amended claims are based on facts underlying claims already dismissed, those claims are dismissed under the "Law of the Case Doctrine." As such, respectfully, the Court erroneously declined to reconsider its February 24, 2020 decision dismissing the complaint, as "*The Law of the Case Doctrine*" permits reconsideration where there are 'cogent' or 'compelling' reasons to do so, such as here, where there is the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>See</u>, *Sanders v. Sullivan*, 900 F.2d 601, 605 (2d Cir. 1990) (<u>quoting</u>, *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). In this regard, Plaintiff has provided

a "compelling" reason for the Court to deviate from its prior rulings. Moreover, the dismissed claims have been resuscitated, as against any of the moving Defendants, by these newly presented facts.

As against the City Defendants, Plaintiff includes causes of action for violations of the due process guarantee of the Fourteenth Amendment, "discrimination," fraud, negligence, and negligent and intentional infliction of emotional distress. The Court originally dismissed Plaintiff's procedural due process primarily because it was asserted that Plaintiff had not pleaded any facts showing that she, (a) is a probationary teacher who could have been fired for almost any reason (or no reason); (b) possessed a protectable property interest in continued employment; (3) she had failed to avail herself of an adequate remedy at state law; and (4) because she did not allege any facts tending to show that any of the City Defendants made false and injurious statements about her in close proximity to her termination. Contrary to the findings of the Court, Plaintiff has remedied any of those deficiencies and plead new facts that would make out a viable due process claim. Therefore, her due process claim against the City Defendants should be upheld.

When analyzing due process claims, the threshold issue is whether the Plaintiff possessed a valid property or liberty interest. See, *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 427-28 (2d Cir. 2011). The Due Process Clause of the Fourteenth Amendment prohibits a state actor from depriving a person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1. Whereas "a person's interest in his or her good reputation alone, apart from a more tangible interest, is not a liberty or property interest sufficient to invoke the procedural protections of the Due Process Clause," loss of reputation can be a cognizable deprivation of a liberty interest when "coupled with the deprivation of a more tangible interest,

such as government employment." See, *Patterson v. City of Utica*, 370 F.3d 322, 329-30 (2d Cir. 2004). An individual asserting such a claim is said to be pursuing a "*stigma-plus*" claim. Id.

To support a *stigma-plus* claim, a plaintiff must first prove the utterance of "stigmatizing statements about [her]—statements that call into question [the] plaintiff's 'good name, reputation, honor, or integrity.'" Id. (quoting, *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980)); see also, *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (stating that *stigma plus* claim requires "utterance of a statement about [plaintiff] that is injurious to her reputation, that is capable of being proved false, and that he or she claims is false." Statements that "denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession" satisfy the stigma requirement. See, *Donato v. Plainview—Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996). Next, "[the] plaintiff must prove these stigmatizing statements were made public." See, Patterson, 370 F.3d at 330 (citing, *Abramson v. Pataki*, 278 F.3d 93, 101-02 (2d Cir. 2002)); see also, *Velez*, 401 F.3d at 87 ("The defamatory statement must be sufficiently public to create or threaten a stigma . . . ."). To satisfy the "plus" element of a *stigma-plus* claim, a plaintiff must prove "a specific and adverse action clearly restricting the plaintiff's liberty," such as the loss of employment or the termination or alteration of some other legal status or right. See, *Velez*, 401 F.3d at 87-88. The stigmatizing statements must be made concurrently with, or in close temporal relationship to, the tangible and material state-imposed burden. See, *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006); and, finally, the plaintiff must prove that the deprivation of her liberty interest occurred "without due process of law." Id.

13

In a *stigma-plus* claim, the allegedly stigmatizing statement must be false and capable of being proven false. See, *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004); *Brevot v. N.Y.C. Dep't of Educ.*, No. 04-CV-7959, 2007 U.S. Dist. LEXIS 16109, 2007 WL 690130, at (S.D.N.Y. Mar. 6, 2007). Federal courts often look to state substantive law of defamation in analyzing the "stigma" component of a "*stigma-plus*" claim. See, *Paterno v. City of New York*, No. 17-CV-8278, 2018 U.S. Dist. LEXIS 128175, 2018 WL 3632526, at (S.D.N.Y. July 31, 2018) (citing, *Sharpe v. City of New York*, No. 11-CV-5494, 2013 U.S. Dist. LEXIS 75094, 2013 WL 2356063, at n.10 (E.D.N.Y. May 29, 2013)). There is no dispute that, in the defamation context, statements of opinion are not actionable. See, e.g., *Oakley v. Dolan*, No. 17-CV-6903 (RJS), 2020 U.S. Dist. LEXIS 28267, 2020 WL 818920, at (S.D.N.Y. Feb. 19, 2020), rev'd in part, 980 F.3d 279 (2d Cir. 2020), and aff'd in part, 833 F. App'x 896 (2d Cir. 2020) (dismissing defamation claim where "Defendants' statements referred to [the plaintiff]'s behavior as being 'inappropriate' and 'abusive,' with [a defendant] stating that [the plaintiff] was 'physically and verbally abusive' and that he 'abused' many individuals'"); see, *Colantonio v. Mercy Med. Ctr.*, 73 A.D.3d 966, 968, 901 N.Y.S.2d 370 (2d Dep't 2010) (dismissing defamation claims, because the defendants' statements that "the plaintiff 'is belligerent and very unreasonable,' cannot be interacted with, is 'not stable' ... is 'bizarre,' is 'inappropriate' and 'doesn't listen'" were all expressions of opinion). This is very different from the facts of the matter herein. Defendants' statements that "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like.*" are not only capable of being proven false, they were never anything that the Plaintiff was ever accused of having done by the NYC DOE, and as a matter of law that statement is blatantly stigmatizing. Plaintiff argues that the statement is extremely stigmatizing given her education background and otherwise unblemished

14

career in teaching. Plaintiff also asserts that the statement that she "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*" is analogous to an accusation equivalent of assault, child abuse, and/or child endangerment and violation of New York's Penal Law. Both arguments are persuasive.

A stigmatizing statement is one that "call[s] into question [the] plaintiff's 'good name, reputation, honor, or integrity.'" See, *Patterson*, 370 F.3d at 330. Courts, therefore, have found that statements attacking an individual's professional competence can support a *stigma-plus* claim, given the likelihood that such statements would have a negative impact on that individual's future employment prospects. See, *Donato*, 96 F.3d at 631 (deeming stigmatizing "strongly negative evaluations" of a supervisor's relevant skills, finding the statements to "read like a bill of indictment, methodically reciting a litany of lack of professional competence"). Based on this analysis, even the finding of poor judgment by OSI, which was nonetheless, inappropriate, as such a determination, is not within the function or capability of OSI would constitute a statement of attack of the Plaintiff's professional competence. Here, in this regard, Plaintiff has demonstrated with distinct particularity, such statements, which can carry a defamatory and stigmatizing meaning. See, *Albert v. Loksen*, 239 F.3d 256, 267 (2d Cir. 2001) (finding that statements accusing hospital worker of "compromising the welfare of patients" and "disobeying orders from his superiors with respect to safety" were capable of a defamatory meaning). Accusations as presented by Plaintiff herein go to the heart of [an educator's] professional competence. See, *Schlesinger v. N.Y.C. Transit Auth.*, No. 00-CIV-4759, 2001 U.S. Dist. LEXIS 632, 2001 WL 62868, (S.D.N.Y. Jan. 24, 2001) (statements that accused the plaintiff, a manager for the New York City Transit

15

Authority, of "intimidation, harassment, and abuse," as well as cursing and acting in a "belligerent" manner were not sufficiently stigmatizing to be actionable).

Further, it is clearly established that the connotation of criminal conduct qualifies as stigmatizing. See, *Quinn*, 613 F.2d at 446 n.4; *LaForgia v. Davis*, No. 01-CV-7599, 2004 U.S. Dist. LEXIS 25143, 2004 WL 2884524, (S.D.N.Y. Dec. 14, 2004). Here, Defendants' statements are much less accusing Plaintiff of acting in an "improper manner" than they are to accusing her of criminal conduct. In short, Plaintiff has succeeded in raising a genuine dispute of material fact as to whether statements that she "*singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*" satisfies the "stigma" element of her claim. Furthermore, NYC DOE spokesman Doug Cohen, said in a September 27, 2018, Daily News article, "*We've begun the process of firing Ms. Cummings based on an investigation of this unacceptable behavior and her performance as an educator.*" This statement goes to the heart of a *stigma-plus* claim. The NYC DOE did not correct the egregiously false and erroneous allegation that the Daily News Defendants reported and stated as fact; they allowed the public to believe that the Daily News was reporting was true, when it was false. Moreover, the finding within the investigation about her "performance as an educator" is an improper finding and outside the scope of OSI; thereby damaging Ms. Cummings' reputation, both personally and professionally and branding her with a "*badge of infamy.*" Moreover, the Amended Complaint includes several claims that the City Defendants did not follow proper procedures in investigating the allegations against Plaintiff (see, AC ¶¶ 178, 179), and based on the foregoing Plaintiff has demonstrated a property interest in having the allegations against her investigated using the specific procedures afforded by the NYC DOE. (Dkt. No. 94 at 19.)

Accordingly, the Court may find that a reasonable jury would be able to find that the statements attributable to the Plaintiff were stigmatizing, and thus Plaintiff has demonstrated the existence of a valid property or liberty interest.

Similarly, the Court's conclusion that Plaintiff had an adequate state remedy available in the form of an Article 78 proceeding, which she chose not to pursue is respectfully incorrect. (Dkt. No 94 at 21.) The Plaintiff did not have the ability for a post-termination "*name-clearing hearing.*" The Plaintiff was precluded from such relief as a result of the delays caused by the City Defendants. Thus, a *stigma-plus* claim cannot be defeated. See, *Segal v. City of New York*, 459 F.3d 207, 214 (2d Cir. 2006). Furthermore, the Plaintiff cannot remedy the OSI Report with a "*name clearing hearing,*" because the Article 78 Petition would have had to have been filed by November 24, 2018, and none of the information required to proceed in that fashion was discovered or provided within the applicable time period. Thus, the Plaintiff was precluded from pursuing that relief.

Based on what has been demonstrated in this matter, Plaintiff has more than established not only that the statements were false statements of fact, but that the NYC DOE Defendants acted in a "grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." See, *Chapadeau v. Utica Observer-Dispatch*, 38 NY2d 196, 199 (1975); see also, *Bloom v. Fox News of LA*, 528 F. Supp. 2d 69, (EDNY 2007). It is notable to mention, as argued elsewhere herein, that the Department of Education had failed to release any of the supporting documentation of the OSI Report to Plaintiff despite the fact that she has repeatedly requested through the Freedom of Information Act. This failure to act appropriately further violates Plaintiff's rights and demonstrates the Defendants' blatant disregard for rules and the law, and further highlights their misconduct. Additionally, the fact they have failed to release the requested documents to Plaintiff in a timely and complete

manner, it can be inferred that they believed that providing these documents would further substantiate what has been alleged in the Amended Verified Complaint and what Ms. Cummings had testified to at her 50-h hearing in January, 2019.

The Defendants erroneously plead that Plaintiff cannot, as a matter of law, plead negligent infliction of emotional distress (NIED) or intentional infliction of emotional distress. In fact, the Amended Verified Complaint presents a cause of action only for intentional infliction of emotional distress. Initially, while claims of intentional infliction of emotional distress against government bodies have been shown to be barred as a matter of public policy (see, *Lauer v. City of New York*, 240 AD2d 543, lv denied 91 NY2d 807; *Wheeler v. State of New York*, 104 AD2d 496, 498), in any event, the pleadings are otherwise sufficient. A cause of action for either intentional or negligent infliction of emotional distress must be supported by allegations of conduct by a defendant "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." See, *Murphy v. American Home Prods. Corp.*, 58 NY2d 293, 303, [citation omitted]; see also, *Howell v. New York Post Co.*, 81 NY2d 115, 121-122. The same standard is applied to both the intentional and negligence theories of emotional distress. See, *Young v. GSL Enters.*, 237 AD2d 119; *Naturman v. Crain Communications*, 216 AD2d 150. Such extreme and outrageous conduct has been plead and thus, the pleadings should survive dismissal. See, *Trachtman v. Empire Blue Cross & Blue Shield*, 251 AD2d 322. To the extent that the statements complained of are true, Plaintiffs can claim sufficient distress; thus, dismissal is inappropriate in this case. Moreover, the extreme disparagement of Plaintiff's character in this case more than rises to that standard.

Moreover, Plaintiff has substantially pled that the DOE and City Defendants engaged in any extreme and outrageous conduct, and demonstrated a causal connection between the conduct,

and her injuries and severe emotional distress. Plaintiff's claims are in substance, much more than a mere reiteration of Plaintiff's belief that she was unfairly terminated. Further, as to the arguments concerning a demonstration of the existence of a special duty, Plaintiff has sufficiently alleged a special relationship; she claims that Defendants were required to monitor, supervise and control, thereby, creating a special relationship. A special relationship giving rise to a duty of care can be created in three ways: "(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; and, (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation." See, *Valdez v. City of New York*, 936 NYS2d at 592; *Pelaez v. Seide*, 778 NYS2d 111, 117 (2004). Plaintiff has adequately alleged facts sufficient to demonstrate that she had a special relationship with municipal Defendants, such that they owed her a special duty.

The Amended Complaint also includes a cause of action for violation of Plaintiff's civil rights and discrimination. Respectfully, this Court held that "if read generously," the Amended Complaint alleges that, because of her race, Plaintiff was treated differently than (1) the parent of one of her students, and (2) the Chancellor of the DOE, both of whom are black, and both of whom apparently received some unspecified benefit that Plaintiff did not. (AC ¶ 197.) In actuality, the argument offered by Plaintiff alleges that had the Plaintiff been black and not Caucasian, the teaching of the lesson and what occurred in the classroom that day would not have been problematic. Plaintiff would not have been branded as a "*racist*," and referred to as an "*oppressor*," and a "*white supremacist*." In this regard, Plaintiff provided evidence to this Court of individuals who concurred that nothing would have happened had Plaintiff been white, and that there is a deep-seated belief that black history should be taught by black teachers.

19

In this regard, Plaintiff has demonstrated a *prima facie* case of race discrimination claim in employment under either Title VII or Section 1981, alleging "that similarly situated employees of a different race were treated more favorably," to wit: a black teacher would not have been subjected to allegations or scrutiny to which Plaintiff was subjected. See, *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir.1999) (quoting, *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir.1997)); *Brown v. Daikin America, Inc.*, 756 F.3d 219, 229-30 (2d Cir. 2014); *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir.1988).

The Court reasons that the defamation claims against the Defendants were dismissed in the original decision because they were non-actionable statements of opinion rather than assertions of fact that are capable of being proved true or false and with respect to the Daily News Defendants, that were privileged under New York Civil Rights Law, § 74 ("Section 74"). See, Dkt. No. 94. Therefore, the amended pleading could only state a claim for defamation if it identified some new statement made by these defendants that was capable of being defamatory.

With respect to non-actionable statements of opinion, the Court's analysis respectfully overlooks the specificity of these facts. In *Mann v Abel*, (10 NY3d 271, 885 N.E.2d 884, 856 N.Y.S.2d 31 [2008]), the Court of Appeals summarized the law regarding the protection of opinions from defamation claims as follows:

> "Whether a particular statement constitutes an opinion or an objective fact is a question of law. Expressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation. Distinguishing between opinion and fact has proved a difficult task, but this Court, in furtherance of that endeavor, has set out the following factors to be considered: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal... readers or

listeners that what is being read or heard is likely to be opinion, not fact."

In *Immuno AG. v. Moor-Jankowski*, (10 NY3d at 276 (internal citations omitted)), the Court declined to adopt an analysis that would require courts first to search the article for particular factual statements and then to hold such statements actionable unless couched in figurative or hyperbolic language. Rather, the Court held that 'courts must consider the content of the communication as a whole, as well as its tone and apparent purpose' and in particular 'should look to the over-all context in which the assertions were made' and determine on that basis 'whether the reasonable reader would have believed that the challenged statements were conveying facts about the libel plaintiff.'" Id. Here, the "content of the reports, as a whole," and their "tone and apparent context," show that it was not simply a reporting of an investigation, nor was it, in any way, accurate. Thus, the "over-all context" in which the media Defendants made the challenged statements about Ms. Cummings was not within a mere public announcement. Those reports made more than just passing references about Ms. Cummings and specifically for what they claimed she was being investigated. Notably, there was no investigation at this time of the February 1, 2018, exclusive Daily News article as evidenced by the e-mail exchange disclosed to Ms. Cummings through her FOIL request. A copy of the February 1, 2018 e-mail is annexed hereto as **Exhibit H**. It cannot be justified that a "reasonable reader" would likely regard the claim that Plaintiff had *singled out black students and made them act like slaves;"* told them to *"lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*," as a fact, and that false event is what drove the decision to remove Plaintiff from her teaching post, place her in teacher jail, and subsequently terminate her. Thus, it cannot be substantiated that the reports on the Plaintiff contain expressions of opinion, but instead it can be demonstrated that the reports contain actionable false statements, and thus, on these unique facts, the First Amendment

protections of expressions of opinion from defamation claims would be inapplicable as a matter of law. See e.g., *Jacobus v. Trump*, 156 AD3d 452, 453, 64 N.Y.S.3d 889 (1st Dept. 2017) (statements of opinion are not actionable). Accordingly, Plaintiff's defamation claims are viable and should not have been dismissed.

Likewise, the conclusory finding that the Daily News article was true merely because, it was published after the OSI investigation began, is misleading. The article never reported on the actual investigation, additionally, there was no investigation at the time of the February 1, 2018 article that "broke the story." The Court mentions that the article acknowledges that the OSI investigation "did not substantiate the allegations that [Plaintiff] engaged in corporal punishment by walking on students' backs," and that a reasonable reader would understand from the context of the entire article that Plaintiff did not literally walk on the backs of her students, but this is not the case. Every media Defendant in this matter presented the alleged "facts" of this matter to be that Plaintiff literally *singled out black students and made them act like slaves*;" told them to "*lie on the floor for a lesson on slavery and then stepped on their backs to show them what slavery felt like*" The hostile, derogatory, and threatening responses received by Plaintiff in this regard, demonstrates this fact. In this regard, the Court erroneously concluded the Daily News articles contained fair and true reports of the allegations against Plaintiff; this is not the case.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully request that this Court grant the instant motion for reargument and reconsideration of the March 26, 2021 Memorandum Decision and Order Dismissing Amended Complaint and, in light of the legal and factual issues raised herein, dissolve or modify the same in the interest of justice.

Dated: Garden City, New York
      April 7, 2021

THE LAW OFFICE OF THOMAS F. LIOTTI, LLC
By: Thomas F. Liotti, Esq. (TL 4471)
Attorneys for the Plaintiff
*PATRICIA CUMMINGS*

23